UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GENE H. CARSWELL et al,<br>individually and on behalf of<br>all others similarly situated,<br>119 Woodhaven Dr.<br>Hendersonville, NC 28739<br>828-243-6826<br><br>Plaintiff *Pro Se*,<br><br><br>v.<br><br><br><br>AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,<br>1625 Massachusetts Ave., NW<br>Washington, DC 20036<br><br>US AIRWAYS GROUP, INC.,<br>111 W. Salado Pkwy.<br>Tempe, AZ 85281<br><br>AMERICAN FEDERATION OF LABOR AND<br>CONGRESS OF INDUSTRIAL ORGANIZATION<br>815 16th St. NW<br>Washington, DC 20006<br><br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      Civil Action No. |

## COLLECTIVE ACTION COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiff, on behalf of himself and all other similarly situated former and current employees of the US Airways Group, Inc. ("US Airways), alleges as follows:

### PRELIMINARY STATEMENT

1. This is a collective action brought by one individual Plaintiff on behalf of himself and other similarly situated individuals throughout the United States (the "Class") against the Air Line Pilots Association, International ("ALPA"), US Airways, and the American Federation of Labor and Congress of Industrial Organization ("AFL-CIO"), to remedy discrimination in employment on the basis of age, in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 626 et seq ("ADEA"). The Plaintiff also brings this suit under the Railway Labor Act, 45 U.S.C. §§ 151 et seq., against ALPA and the AFL-CIO, his exclusive bargaining representatives, for breach of duty of fair representation. The provisions of the Railway Labor Act govern labor disputes involving the airline industry. See 45 U.S.C. § 181. Plaintiff seeks declaratory and injunctive relief, compensatory and liquidated. This age discrimination breach of duty of fair representation case arose out of forced terminations that occurred at US Airways between 1997 and the present. US Airways, a corporation headquartered in Tempe, Arizona, but having major operations in Washington, D.C., engaged in age discrimination when it required the Plaintiff and 99.9% of US Airways pilots to retire when they turned sixty (60) years of age. US Airways' policy specified that a pilot's normal retirement date shall be the first day of the month coincident with, or next following, the pilot's sixtieth (60th) birthday.

2.  The named Plaintiff and approximately 500 to 1500 other US Airways pilots age forty (40) and older, who were and are employed by US Airways since 1997, were  and are subject to US Airways' company-wide, mandatory retirement policy.  This ongoing policy is based solely on age, and does not give consideration to a pilot's health, experience, or ability.  The Plaintiff and other former employees learned that their positions were and would be filled before and after their terminations.  They also learned that their positions were and would be filled by younger pilots.

3.  After months of investigation and analysis of information, the named Plaintiff, Gene H. Carswell, discovered that US Airways had violated all standard norms associated with federal age discrimination laws.  He learned, for example, that since 1959, US Airways (formerly known by the trade names "Lake Central," "Alleghany," "PSA," "Piedmont," and "US Air") has instituted a policy that requires 99.9% of its pilots to retire from flying, or be terminated, by the first day of the month coincident with, or next following, the pilots' 60th birthday.  Less than .1% of US Airways pilots are retained in employment after their 60th birthday; and these pilots are retained only in administrative and instructional positions.

4. The named Plaintiff further discovered that the AFL-CIO and ALPA breached their "duty of fair representation" to him and all other similarly situated employees.  The duty of fair representation is the obligation, incumbent upon US. labor unions that are the exclusive bargaining representative of workers in a particular group, to represent all those employees fairly, in good faith, and without discrimination.  The duty applies to virtually every action that a union might take in dealing with an employer as the representative of employees, from its negotiation of the terms of a Collective Bargaining Agreement, to its handling of grievances arising under that agreement, as well as its operation of an exclusive hiring hall and its enforcement of the union security provisions of a Collective Bargaining Agreement.

3

5. The named Plaintiff discovered that US Airways pilots were forced to accept the terms of ALPA's monopoly bargaining contract with US Airways, and forced to accept all of its provisions regarding salary, benefits, seniority, and pensions. Under the Railway Labor Act, it is unlawful for employees to negotiate their own, more-favorable contracts with their employer.

6. The named Plaintiff discovered that US Airways engaged in collusion with the Defendant unions to enforce its discriminatory retirement policy. Although ALPA and the AFL-CIO were paid by pilot union members to represent pilot interests, they colluded with US Airways to discriminate against US Airways pilots. The two unions contracted with US Airways to remove US Airways pilots from their corporate employment following the first of day of the following month of their 60th birthday, as described in Section 28 of the Collective Bargaining Agreement.

7. The Plaintiff has complied with the necessary administrative prerequisites to suit, including timely filings with the Equal Employment Opportunity Commission ("EEOC"). He also filed a grievance with ALPA, arguing that ALPA had not adequately represented his interests. All such filings contained information from which US Airways, ALPA, and AFL-CIO were placed on notice that the claims were filed on behalf of all persons similarly situated, and that collective and class litigation was contemplated.

8. ALPA, US Airways, and the AFL-CIO have given reasons for enforcing and promoting US Airways' company-wide, discriminatory "age 60" policy, namely stating that the age 60 termination policy is a Bona Fide Occupational Qualification (BFOQ) under the ADEA. The Defendants stated they violated the ADEA because the U.S. Department of Transportation, Federal Aviation Administration ("FAA"),

regulation, Part 121, prohibits US pilots over the age of 60 from flying commercial aircraft in US airspace.

9. The FAA's "Age 60 Rule" bars individuals who have reached their 60th birthday from serving as pilots or co-pilots in flight operations governed by Part 121 of the FAA's rules, typically commercial flights. The FAA has stated it created the rule for reasons of safety, arguing that physical and mental abilities decline with age.

10. The FAA has since retracted its claim that the Age 60 Rule is a BFOQ based on safety.

11. According to the FAA's website, the FAA has the authority to grant a waiver or exemption to the Age 60 Rule if the pilot's airline makes an exemption request on behalf of a specific pilot. The process for filing a petition for an exemption is outlined in Federal Aviation Regulations, Part 11. A waiver or exemption would afford US pilots the same opportunities currently afforded to foreign pilots and would enable US pilots to work past the age of 60.

12. While the Defendants cannot change the FAA's age limit, the Defendants are able to seek exemptions from the FAA for its pilots. An exemption would allow US Airways pilots to continue flying and working past the age of 60.

13. While US Airways cannot change the FAA's age limit, US Airways is able to retain pilots over the age of 60 in an employment status. Retaining pilots in an employment status would allow them to continue to receive employment benefits past the age of 60.

14. While the Defendants cannot independently change the FAA's age limit, the Defendants can actively lobby for a change to the Age 60 Rule.

15. Although US Airways, ALPA and the AFL-CIO are covered entities under the ADEA, and are aware that the FAA no longer believes the Age 60 Rule is a BFOQ, the Defendants refused to protect the Plaintiff's employment status by retaining him in employment status, supporting his exemption request, or lobbying for a change to the Age 60 Rule.

16. In the months prior to the Plaintiff's forced resignation in February 2007, the Defendants knew or should have known that the Age 60 Rule was discriminatory and no longer a BFOQ.

17. The Defendants had an affirmative duty to protect the Plaintiff's employment and not discriminate against him under the ADEA and the Railway Labor Act.

## FACTUAL STATEMENT

18. On October 25, 2006, the FAA published a request in the Federal Register, 71 Fed. Reg. 62399, for comments about whether the United States should revise the Age 60 Rule and adopt an amendment that the International Civil Aviation Organization (ICAO) planned to adopt in November 2006. The FAA proposed to increase the "upper age limit" of airline pilots to age 65, provided another crewmember pilot is under age 60.

19. On November 15, 2006, EEOC Chair Naomi C. Earp responded to the FAA's request for comments

concerning the FAA's proposed change to the Age 60 Rule. Chair Earp told the FAA that the Age 60

Rule runs counter to the narrow scope of the ADEA defense and the fact-specific, case-by-case analysis

the ADEA requires. According to Chair Earp:

> pilot skills and health can be assessed accurately on an individual basis, regardless of age, thus
> eliminating the need for dependence on a maximum age limit. The FAA itself relies on
> individualized testing as a basis for issuing medical certificates to people of all ages, including
> those age 60 and above, who serve as pilots in non-Part 121 flight operations. Moreover, Part 121
> pilots are currently required to undergo physical examinations and cockpit-performance tests every
> six months. These tests would allow airlines to monitor the health and reaction time of pilots 60
> and over, just as they currently monitor the health of pilots under 60. In Commission litigation
> challenging pilot age limits imposed by employers whose flight operations are not governed
> exclusively by Part 121, the EEOC's experts have testified that Class I medical testing is fully
> sufficient to identify health or performance problems that may surface for pilots regardless of age.
> These experts have also testified that, to the extent further testing may be desirable, cardiac stress
> tests, enhanced blood work-ups, and neurological screening could be added to the standard battery
> of Class I tests for all pilots ... In other words, the studies relied on by the FAA to justify the Age
> 60 Rule have never established a correlation between accident rates and the increased age of the
> pilots. The Commission therefore strongly encourages the FAA to lift the Age 60 Rule. Medical
> and proficiency tests on an individual basis are effective and non-discriminatory ways to ensure
> that commercial pilots maintain the highest standards of safety at all ages.

20. Chair Earp's comments were consistent with the EEOC's longstanding view that the Age 60 Rule was

discriminatory. Since 1981, the EEOC has voiced concerns about the discriminatory effect and

discriminatory impact of the Age 60 Rule. The EEOC enforces the ADEA and also has responsibility

under Executive Order 12067 to coordinate the federal government's enforcement of laws, Executive

orders, regulations, and policies that require equal employment opportunity without regard to race, color,

religion, sex, national origin, age or disability. See 43 Fed. Reg. 28967 (1978). The Executive Order

requires the FAA to coordinate with the EEOC to ensure that its rules are consistent with the

Commission's interpretation of the ADEA. In 1995, the EEOC specifically stated that the Age 60 Rule

was violative of the ADEA. The EEOC stated:

> Finally, we again urge the FAA to vigorously pursue its reconsideration of the Age 60 Rule
> and ultimately to change that rule. The practical experience of older pilots has great value in
> a profession calling for complex and split-second judgments. Moreover... medical and

7

proficiency tests are effective and non-discriminatory ways to assure that commercial pilots maintain the highest standards of safety at all ages.

21.  On November 23, 2006, ICAO, the association that regulates international aviation, raised the upper age limit for aircraft commanders to age 65.  As of that day, foreign aircraft pilots over the age of 60 have been allowed to fly passengers, including Americans, to and from the United States.  While foreign aircraft co-pilots over the age of 60 have always been allowed to fly into the US and carry American citizens abroad, now foreign pilot commanders over the age of 60 are also permitted to fly in US airspace. This is in stark contrast to US pilots and co-pilots over the age of 60.  US pilot commanders and US co-pilots over the age of 60 continue to be prohibited from flying commercial aircraft in their own country. Although the FAA's Age 60 Rule was premised on "safety," the rule is obviously pretextual because the government allows foreign pilots over the age of 60 to fly in US airspace.

22.  Between November 2006 and January 2007, thousands of US pilots and members of the public (including a "class" of US Airways pilots) publicly commented on the FAA's rule website, stating the Age 60 Rule was discriminatory.

23.  In January 2007, the FAA publicly retracted the BFOQ defense.  On January 30, 2007, FAA Administrator, Marion C. Blakey, announced that the U.S. Department of Transportation intended to issue a Notice of Proposed Rule Making (NPRM) seeking to change the Age 60 Rule.  She stated the FAA seeks to raise the mandatory retirement age for US pilots from age 60 to age 65.  Administrator Blakey affirmatively stated that there was no sound scientific backing to the FAA's previous view that it was not "safe" for pilots over the age of 60 to operate commercial aircrafts in US airspace.  On behalf of the FAA, Administrator Blakey stated that there was no medical or empirical basis for grounding US pilots upon

8

their 60th birthday.

24. On January 30, 2007, FAA Administrator Blakey confirmed what the Plaintiff and other US pilots have always believed -- that a pilot's ability to safely fly in US airspace cannot be based on age, but rather, can be tested by medical examinations, performance standards, and other objective factors unrelated to age.

25. The FAA's recent change of opinion on the Age 60 Rule is consistent with the EEOC's longstanding position that the Age 60 Rule violates the ADEA.

26. Although US Airways is aware of the EEOC's position on the Age 60 Rule, US Airways has refused to object to the Age 60 Rule, lobby against the Age 60 Rule, or request exemptions from the FAA for the named Plaintiff and other similarly situated employees.

27. Although ALPA and the AFL-CIO are aware of the EEOC's position on the age 60 Rule, they continue to support the Age 60 Rule and continue to beach their duty of representation to their union members and, instead, lobby against the pilots they are supposed to be representing.

28. On January 30, 2007, ALPA publicly stated to the press that ALPA was aware of the FAA's proposal to change the Age 60 Rule, but that it continued to oppose a change to the age 60. ALPA stated that it has a governing policy developed and maintained by ALPA to oppose pilot employment beyond age 60.

29. To date, US Airways has not proposed a change to the Age 60 Rule or issued a comment on the

9

FAA's NPRM.

30. Several times in 2006 and 2007, the Plaintiff asked US Airways not to terminate him. US Airways denied his request.

31. In December 2006, the Plaintiff requested an exemption from the FAA so that he could continue to fly past the age of 60. To date, the FAA has not granted his request.

32. The FAA has the authority to grant exemptions to the Age 60 Rule if the airline also supports the exemption.

33. Plaintiff filed a grievance with ALPA, grieving his forced retirement. The grievance was not acted on by ALPA or US Airways and was not supported by ALPA. In February 2007, the FAA had not granted or responded to plaintiffs request for an exemption and the Plaintiffs request for exemption from his Airline had not been responded to. The FAA has acknowledged verbally that it had received his application for exemption and has included it in the DOT docket.

34. Although US Airways is aware that foreign pilots over the age of 60 are permitted to operate commercial aircraft in US airspace, US Airways continues to force its pilots to resign or be terminated upon reaching the age of 60.

35. Although US Airways is aware that foreign pilots over the age of 60 are permitted to operate commercial aircraft in US airspace, US Airways refuses to seek waivers or exemptions from the FAA.

36. Although ALPA and the AFL-CIO are aware that foreign pilots over the age of 60 are permitted to transport US citizens to and from US airports, ALPA and the AFL-CIO continue to aggressively lobby against permitting US pilots to fly commercial aircraft in US airspace past the age of 60.

37. Because the Defendants US Airways, ALPA and the AFL-CIO refused to seek a waivers or exemption for the Plaintiff from the FAA, he was forced to resign in February 2007.

38. US Airways' documents reveal that US Airways forced the retirement of 500 to 1500 pilots since 1997.

39. US Airways' documents will show that US Airways hired younger pilots, predominantly under the age of 40, to replace the pilots forced to retire at age 60.

40. US Airways' documents will show that Plaintiff and other pilots had been meeting their performance goals and had excellent work records prior to their forced terminations.

41. US Airways' documents will show that Plaintiff and other pilots were never warned about poor performance; nor were they ever told that they were being discharged for poor performance.

## JURISDICTION AND VENUE

42. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1331 and the ADEA, 29 U.S.C. § 626(c).

43. On January 10, 2007 or thereafter, the individual named Plaintiff filed on his own behalf and on behalf of similarly situated individuals a timely charge of discrimination against ALPA, US Airways, and AFL-CIO with the Equal Employment Opportunity Commission (the "EEOC") complaining of the unlawful acts alleged herein.

44. Sixty days have elapsed from the filing with the EEOC of the first charges, and Plaintiff has complied with all statutory prerequisites to the filing of this action.

45. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because two Defendants, ALPA and the AFL-CIO, are headquartered in the District of Columbia. The Defendant US Airways has offices in the District of Columbia, conducts business in the District of Columbia, and can be found in the District of Columbia. Some of the class members reside in the District of Columbia.

## COLLECTIVE ACTION ALLEGATIONS

46. Plaintiff brings the action for violations of the ADEA on behalf of himself and as a representative of a class as defined by 29 U.S.C. § 216(b). The class consists of all US Airways pilots who worked for US Airways between 1997 and the date of this complaint, and who were terminated or forced to retire before the age 60 or upon reaching age 60. Hereinafter, the class of pilots referred to in paragraphs 1-41 will be

12

referred to as the "class," or "members of the class" or "class members."

47. Plaintiff is unable to state the exact number of persons in "the class" without discovery of the Defendants' books and records, but avers on information and belief that the class exceeds fifteen hundred members. The members of the class are so numerous as to make it impracticable to bring them all before the Court. There are liability, injunction and damages questions of law and fact common to the class, which predominates over any questions affecting individual members only, as specifically described hereinafter. Defendants have acted and refused to act on grounds generally applicable to the class.

48. The claims of the representative Plaintiff are typical of the claims of the class because all pilots were/are subjected to the same company-wide retirement policy, and Plaintiff is able to and will fairly and adequately protect the interests of the class. The attorney for the Plaintiff is experienced and capable in litigation in the field of age discrimination. There is no known conflict between the individual members of the class, which would preclude class representation.

49. The prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications in different jurisdictions with respect to individual members of the class which would establish incompatible standards of conduct for Defendants; and adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of the members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

50. The class action is superior to other available methods for the fair and efficient adjudication of the issues.

13

51. The class consists of all pilots of US Airways covered by its Collective Bargaining Agreement with ALPA.

52. This class action is brought pursuant to the ADEA, including its incorporation of the Fair Labor Standards Act, 29 U.S.C. § 216(b), by the individual named Plaintiff on behalf of himself and all former US Airways pilots age forty and older who were discharged between 1997 and 2007, or otherwise discriminated against in the implementation of ALPA's collective bargaining agreement with US Airways because of their age and who have given or will give their written consent to be Plaintiffs herein pursuant to 29 U.S.C, § 216(b).

53. Since all members of the Class have been damaged by the same wrongful acts alleged herein perpetrated by the same decision makers, they are all similarly situated as contemplated by the ADEA. These common questions include, but are not limited to:

(a) whether US Airways terminated Plaintiff's employment pursuant to a pattern and practice of discriminating against employees on the basis of their age;

(b) whether US Airways' mandatory company-wide retirement policy operates in such a manner as to have a discriminatory impact against employees who were forty years old or older;

(c) whether US Airways' selection process and criteria used in determining who would be discharged discriminated against employees on the basis of their age;

(d) whether US Airways' termination of the Plaintiff's employment was motivated by an intent to discriminate on the basis of age.

(e) whether US Airways, ALPA, and the ALF-CIO engaged in collusion to discriminate against pilots on the basis of their age;

(f) whether ALPA and the AFL-CIO breached its duty of fair representation to US Airways employees; and

(g) whether ALPA and the AFL-CIO discriminated against pilot union members when it contracted and colluded with US Airways to deprive US Airways pilots of their rights under the ADEA.

54. From 1997 to the present, US Airways hired younger pilots to replace the discharged Plaintiff and the class he represents. US Airways hired younger pilots from a list of furloughed pilots. Through discovery, the Plaintiff and the group he represents will be able to determine the exact number of younger pilots hired and US Airways hiring method.

55. US Airways' mandatory retirement policy had a disproportionate and discriminatory impact on older employees. Approximately 25 to 125 US Airways pilots over the age of 60 are forced to retire each year.

## PARTIES

56. Plaintiff Gene H. Carswell is a resident of Hendersonville, North Carolina. He resides at 119 Woodhaven Dr., Hendersonville, NC 28739.

57. The Plaintiff began working at US Airways in 1977 and was employed as a pilot by US Airways for more than 29 years.

58. When the Plaintiff was hired at US Airways, he was told by ALPA and US Airways' personnel that he had to retire when he reached age 60.

59. On January 12, 2007, the Plaintiff turned 60 years old.

60. US Airways forced the Plaintiff to retire on Feb 1, 2007, pursuant to Section 28 of US Airways' Collective Bargaining Agreement with ALPA. Although the Plaintiff applied for an exemption with the FAA on December 10th 2006, and asked US Airways to not terminate him on several separate occasions, US Airways did not support the exemption request and, instead, terminated him.

61. Defendant ALPA is an airline pilot union headquartered in Washington, D.C. ALPA is responsible for representing the collective interests of its members who are US pilots engaged in commercial aviation. ALPA's mission is to represent pilot interests in collective bargaining activities. According to its website, www.alpa.org, ALPA works on behalf of member pilots to promote the health and welfare of the members of the Association. ALPA specifically holds itself out to be "the ultimate guardian and defender of the rights and privileges of the professional pilots who are members of the Association." ALPA's address is: 1625 Massachusetts Ave., NW, Washington, DC 20036.

62. Defendant US Airways is an airline headquartered in Tempe, Arizona, and owned by US Airways Group, Inc. The airline is the fifth largest airline in the United States. Including aircraft operated by its America West Airlines affiliate, US Airways has a fleet of 357 mainline jet aircraft and 352 express aircraft connecting 240 destinations in North America, Central America, the Caribbean, Hawaii, and Europe. US Airways currently employs 35,180 people worldwide and operates 3,860 daily flights. US Airways operates primary hubs in Charlotte, Philadelphia, Phoenix, and Las Vegas, with the latter two being former America West operations. Additionally, US Airways has a secondary hub in Pittsburgh. US

Airways also maintains focus city operations at New York LaGuardia, Washington Reagan, and Boston. US Airways' address is: 111 W. Salado Pkwy, Tempe, AZ, 85281.

63. Defendant AFL-CIO is the largest federation of unions in the United States, made up of 54 national and international unions, together representing more than 9 million workers. Defendant ALPA is a member union. From 1955 until 2005, the AFL-CIO's member unions represented virtually all unionized workers in the United States. The AFL-CIO's address is: 815 16th St. NW, Washington, DC 20006

64. During the relevant time period in this Complaint, ALPA and the AFL-CIO were responsible for acting on behalf of the Plaintiff and other pilots at US Airways. They were responsible for negotiating employment terms and conditions with US Airways on behalf of its member pilots. However, instead of aiding US Airways pilots, ALPA and the AFL-CIO contracted away the pilots' rights under the ADEA. ALPA and AFL-CIO lobbied intensely to keep US Airways pilots from flying (and hence working) beyond the age of 60.

65. US Airways is an employer within the meaning of the ADEA, 29 U.S.C. § 621, et seq.

66. Section 623 of the ADEA states:

(c) It shall be unlawful for a labor organization-

(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his age;

(2) to limit, segregate, or classify its membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's

age;

(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

67. US Airways engages in code sharing and other marketing schemes with international

carriers, thus enabling it earn revenue when foreign pilots over the age of 60 fly

International "partner" aircraft.

## ALLEGATIONS OF THE INDIVIDUAL PLAINTIFF

Gene Carswell's Claims

68. Each paragraph above is incorporated herein by reference.

69. Plaintiff Gene H. Carswell is 60 years old and had been employed by US Airways for almost 30 years

when US Airways forced him to retire on Feb 1, 2007. His certification of retirement date states "January

2007."

70. On June 16, 2006, August 30, 2006, September 6, 2006, September 22, 2006, and January 22, 2007,

the Defendant informed the Plaintiff that his retirement would be based on the fact that he was turning 60.

71. At the time of the Plaintiff's forced retirement, he was employed as a Captain at US Airways.

72. US Airways replaced the Plaintiff with a pilot significantly younger than he.

73. The Plaintiff filed an age discrimination charge with the EEOC on January 10, 2007, and has not yet received a "right to sue letter." However, more than 60 days have passed since the charge was filed.

## COUNT I

**Violation of the ADEA**

74. Each paragraph above is incorporated herein by reference.

75. The Defendants have violated the ADEA by discriminating against the Plaintiff and members of the class because of their age in the terms and conditions of their employment, as described above.

76. The Defendants willfully violated the ADEA by discriminating on the basis of age knowingly and with reckless disregard of the law.

## COUNT II

**Age Discrimination (Disparate Treatment)**

**ADEA Collective Action**

77. Plaintiff hereby incorporates by reference each and every allegation and averment made above as though fully set forth herein.

78. This is a representative action under 29 U.S.C. §§ 626(b) and (c) and 29 U.S.C. § 216(b) by the above-named Plaintiff and other similarly situated persons who opt into this action by filing an appropriate notice.

19

79. As elsewhere more fully set forth in this Complaint, the Defendants engaged in an unlawful pattern or practice of age discrimination that adversely affected the Plaintiff and other similarly situated former US Airways employees in violation of 29 U.S.C. § 621 et seq.

80. The unlawful pattern or practice of age discrimination by the Defendants alleged herein constitutes a willful violation of the ADEA.

81. The Plaintiff's charges of discrimination filed with the EEOC asserted claims on behalf of the Plaintiff and others similarly situated, and adequately placed the Defendants on notice that a collective action was forthcoming.

82. The Plaintiff and others similarly situated were adversely affected by the pattern or practice of unlawful, willful age discrimination by the Defendants as elsewhere described herein, and by the Defendant unions' breach of its duty of fair representation. ALPA's and the AFL-CIO's actions toward US Airways' pilots were arbitrary, discriminatory, and in bad faith. Defendant US Airways contracted with the Defendant unions under the Collective Bargaining Agreement, knowing the Defendant unions were contracting in bad faith. The Plaintiff and others similarly situated suffered actual damages in the form of lost salary and wages, bonuses, stock options, fringe benefits, retirement and insurance benefits, and other forms of compensation, as well as loss of career opportunity and advancement, costs of seeking alternate income, and in other respects, all in amounts yet to be determined, but reasonably believed to exceed $150,000 per year per Plaintiff.

## Count III

**Age Discrimination (Disparate Impact)**

**ADEA Collective Action**

83. The Plaintiff hereby incorporates by reference each and every allegation and averment made above as though fully set forth herein.

84. This is a representative action under 29 U.S.C. §§ 626(b) and (c) and 29 U.S.C. § 216(b) by the above-named Plaintiff and other similarly situated persons who opt into this action by filing an appropriate notice, and an individual action under the ADEA.

85. As set forth more fully above, US Airways has utilized practices, policies and procedures that have disparately impacted US Airways' employees, resulting in an unlawful pattern or practice of age discrimination in violation of the ADEA, 29 U.S.C. § 621 et seq.

86. The above-named Plaintiff and others similarly situated were disparately impacted by US Airways' practices, policies and procedures, in violation of the ADEA.

87. As a direct and proximate result of the aforesaid age discrimination by US Airways, the Plaintiff and others similarly situated have suffered damages in an amount to be determined at trial, but reasonably believed to exceed $150,000 per year per Plaintiff, including, but not limited to, lost salary, bonuses, stock options and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits.

## Count IV

**Age Discrimination (Collusion)**

**Individual Claims**

89. The Plaintiff hereby incorporates by reference each and every allegation and averment made above as though fully set forth herein.

90. The above-named Plaintiff and others similarly situated were discriminated against in violation of the ADEA when the Defendants engaged in collusion to discriminate against the Plaintiff and others similarly situated.

91. As a direct and proximate result of the aforesaid age discrimination by the Defendants, the Plaintiff and others similarly situated have suffered damages in an amount to be determined at trial, but reasonably believed to exceed $150,000 per year per Plaintiff, including, but not limited to, lost salary, bonuses, stock options and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter judgment:

(a) Certifying the case as a collective action under the ADEA;

(b) Declaring the acts and practices complained of to be in violation of the ADEA;

(c) Enjoining and restraining the Defendants from any further violations of the ADEA; in particular, enjoining US Airways from terminating any pilots over the age of 60 and enjoining the Defendants from actively lobbying for the Age 60 Rule;

(d) Directing the Defendants to take such affirmative steps as are necessary to ensure that the effects of its unlawful employment practices are eliminated;

(e) Directing the Defendants to place the Plaintiffs in the positions they would have been in but for the discriminatory and wrongful treatment of them, and making them whole for all earnings, compensation and benefits they would have received but for the Defendants discriminatory and otherwise wrongful actions, including, but not limited to, wages, supplements, bonuses, sales commissions, pension, severance benefits, benefits that would have otherwise been included in the Plaintiffs' 401(k) pension plans, medical insurance, life insurance, and other lost benefits;

(f) Awarding the Plaintiffs any and all amounts owing to them that have been withheld in violation of the ADEA, together with interest thereon;

(g) Awarding the Plaintiffs liquidated damages pursuant to the ADEA;

(h) Awarding the Plaintiffs the costs of this action, together with reasonable attorneys' fees;

(i) Awarding the named representative Plaintiff an incentive award;

(j) Issuing an order declaring that ALPA and the AFL-CIO breached their duty of fair representation; and

(k) Granting such other and further relief as this Court may deem just and proper.

23

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff hereby demands a trial by jury in this action of all issues so triable.

This the 5th day of April, 2007

Respectfully Submitted,

Gene H. Carswell, *Pro Se* Plaintiff
119 Woodhaven Drive
Hendersonville, NC 28739
828-243-6826

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS  Gene H. Carswell et al, individually and on behalf of all others similarly situated | DEFENDANTS  Air Line Pilots Association, International, US Airways Group, Inc., Am. Fed. of Labor & Congress of Ind. Org. |
|---|---|
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888 (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  11001 (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)  N/A | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff))
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| □ **G.** *Habeas Corpus/ 2255*<br><br>□ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | ☒ **H.** *Employment Discrimination*<br><br>☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ **I.** *FOIA/PRIVACY ACT*<br><br>□ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ **J.** *Student Loan*<br><br>□ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| □ **K.** *Labor/ERISA (non-employment)*<br><br>□ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ **L.** *Other Civil Rights (non-employment)*<br><br>□ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ **M.** *Contract*<br><br>□ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ **N.** *Three-Judge Court*<br><br>□ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding  □ 2 Removed from State Court  □ 3 Remanded from Appellate Court  □ 4 Reinstated or Reopened  □ 5 Transferred from another district (specify)  □ Multi district Litigation  □ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. Sec. 1331 & 29 U.S.C. Sec. 626(c)-class action re: age cap for airline pilots

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS  ☒ ACTION UNDER F.R.C.P. 23    **DEMAND $**    Check YES only if demanded in complaint    **JURY DEMAND:** ☒ YES    □ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    □ YES    ☒ NO    If yes, please complete related case form.

DATE    SIGNATURE OF ATTORNEY OF RECORD –Plaintiff Pro Se Gene H. Carswell

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.