UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GENE H. CARSWELL et al<br>individually and on behalf of<br>all others similarly situated,<br><br>Plaintiff,<br><br><br>v.<br><br><br>AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,<br>US AIRWAYS GROUP, INC., and AMERICAN<br>FEDERATION OF LABOR AND<br>CONGRESS OF INDUSTRIAL ORGANIZATION.<br><br>Defendants. | Civil Action No.<br>1:07-cv-00651<br><br>Judge Reggie B. Walton |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, on behalf of himself and all other similarly situated former employees of the US Airways Group, Inc. ("US Airways"), through his attorney, Rosemary Dettling, Esq., alleges as follows:

PRELIMINARY STATEMENT

1. This is a collective action brought by one individual Plaintiff on behalf of himself and other similarly situated individuals throughout the United States (the "Class") against the Air Line Pilots Association, International ("ALPA"), US Airways, and the American Federation of Labor and Congress of Industrial

Organization ("AFL-CIO"), to remedy discrimination in employment on the basis of age, in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 626 et seq ("ADEA"). The Plaintiff also brings this suit under the Railway Labor Act, 45 U.S.C. §§ 151 et seq., against ALPA and the AFL-CIO, his exclusive bargaining representatives, to remedy breach of duty of fair representation and breach of contract. The provisions of the Railway Labor Act govern labor disputes involving the airline industry. See 45 U.S.C. § 181. Plaintiff seeks declaratory and injunctive relief, compensatory and liquidated. This age discrimination, breach of fiduciary duty, and breach of contract case arose out of forced terminations that occurred at US Airways between 1997 and the present. US Airways, a Corporation headquartered in Tempe, Arizona, but having major operations in Washington, D.C., engaged in age discrimination when it required the Plaintiff and 99.9% of its pilots to retire when they turned sixty (60) years of age. US Airways' policy specified that a pilot's normal retirement date shall be the first day of the month coincident with, or next following, the pilot's sixtieth (60th) birthday.

2. The named Plaintiff and approximately 500 to 1500 other US Airways pilots age forty (40) and older, who were employed by US Airways since 1997, were subject to US Airways' company-wide, mandatory retirement policy. This ongoing policy is based solely on age, and does not give consideration to a pilot's health, experience, or ability. The Plaintiff and other former employees learned that their positions were filled before and after their terminations. They also learned that their positions were filled by younger pilots.

3. After months of investigation and analysis of information, the named Plaintiff, Gene H. Carswell, discovered that US Airways had violated all standard norms associated with federal age discrimination laws. He learned, for example, that since 1959, US Airways (formerly known by the trade names "Lake

2

Central," "Alleghany," "PSA," "Piedmont," and "US Air") has instituted a policy that requires 99.9% of its pilots to retire from flying, or be terminated, by the first day of the month coincident with, or next following, the pilots' 60th birthday. Less than .1% of US Airways pilots are retained in employment after their 60th birthday; and these pilots are retained only in administrative and instructional positions.

4. The AFL-CIO and ALPA breached their "duty of fair representation" and breached the collective bargaining agreement they had with Plaintiff and all other similarly situated employees at US Airways. The duty of fair representation is the obligation, incumbent upon US labor unions that are the exclusive bargaining representative of workers in a particular group, to represent all those employees fairly, in good faith, and without discrimination. The duty applies to virtually every action that a union might take in dealing with an employer and employee as the representative of employees, from its negotiation of the terms of a Collective Bargaining Agreement, to its handling of grievances arising under that agreement, as well as its operation of an exclusive hiring hall and its enforcement of all provisions of a Collective Bargaining Agreement. The named Plaintiff discovered that US Airways pilots were forced to accept the terms of ALPA's monopoly bargaining contract with US Airways and forced to accept all of its provisions regarding salary, benefits, seniority, and pensions. Under the Railway Labor Act, it is unlawful for employees to negotiate their own, more-favorable contracts with their employer.

5. The named Plaintiff discovered that US Airways engaged in collusion with the Defendant unions to enforce this discriminatory retirement policy. Although ALPA and the AFL-CIO were paid by pilot union members to represent pilot interests, they colluded with US Airways to discriminate against US Airways pilots. The two union Defendants contracted with the Defendant US Airways to remove US Airways pilots from their corporate employment following the first of day of the following month of their 60th

birthday, as described in Section 28 of the Collective Bargaining Agreement.

6. The Plaintiff has complied with the necessary administrative prerequisites to suit, including timely filings with the Equal Employment Opportunity Commission ("EEOC") and filing an internal grievance with ALPA. All such filings contained information from which US Airways, ALPA, and AFL-CIO were placed on notice that the claims were filed on behalf of all persons similarly situated, and that collective and class litigation was contemplated.

7. The Plaintiff requests that the Court certify a "Subclass" in this case. The Subclass consists of current and former commercial aircraft pilots from US airlines (i.e., United Airlines, Delta Airlines, Continental Airlines, among others) who have suffered damages due to ALPA's breach of contract and breach of duty of fair representation. The Subclass brings suit under the Railway Labor Act, 45 U.S.C. §§ 151 et seq. The Subclass pilots have contemplated filing their own lawsuits against ALPA, but would prefer to participate in this suit so as to avoid multiple findings. Certification of the Subclass is appropriate because: 1) ALPA has been the exclusive bargaining representative for 90% of commercial US pilots; 2) the Subclass pilots indicated that they want to join the class against ALPA; 3) the Subclass have common allegations; 4) and the Subclass was forced to accept the terms of ALPA's monopoly bargaining contract with their respective airlines and forced to accept all of its provisions regarding salary, benefits, seniority, and pensions. Plaintiff and members of the Subclass have complied with the necessary administrative prerequisites to suit. All such filings contained information from which ALPA was placed on notice that the claims were filed on behalf of all persons similarly situated, and that collective and class litigation was contemplated.

8.  ALPA, US Airways, and the AFL-CIO have given reasons for enforcing and promoting its discriminatory "age 60" policy, namely stating that the age 60 termination policy is a Bona Fide Occupational Qualification (BFOQ) under the ADEA.  The Defendants have stated they are, in essence, required to violate the ADEA because the U.S. Department of Transportation, Federal Aviation Administration ("FAA"), has a regulation (Part 121) that prohibits US pilots over the age of 60 from flying commercial aircraft in US airspace.

9.  The FAA's "Age 60 Rule" bars individuals who have reached their 60th birthday from serving as pilots or copilots in flight operations governed by Part 121 of the FAA's rules, typically commercial flights.  The FAA has stated it created the rule for reasons of safety, arguing that physical and mental abilities decline with age.

10.  The FAA has since retracted its claim that the Age 60 Rule is based on safety, and has proposed changing the Age 60 Rule to age 65.

11.  According to the FAA's website, the FAA has the authority to grant a waiver or exemption to the Age 60 Rule if the pilot's airline makes an exemption request on behalf of a specific individual.  The process for filing a petition for an exemption is outlined in the Federal Aviation Regulations, Part 11.  A waiver or exemption would afford US pilots the same opportunities currently afforded to foreign pilots and would enable US pilots to work past the age of 60.

12.  While the Defendants cannot change the FAA's age limit, the Defendants are able to seek exemptions from the FAA for its employees and union members.  An exemption would allow US Airways pilots to

continue flying and working past the age of 60.

13.  While US Airways cannot change the FAA's age limit, US Airways are able to retain pilots over the age of 60 in an employment status.  Retaining pilots in an employment status would allow them to continue to receive employment benefits past the age of 60.

14.  While the Defendants cannot independently change the FAA's age limit, the Defendants can actively lobby for a change to the Age 60 Rule.

15.  Although US Airways, ALPA and the AFL-CIO are covered entities under the ADEA, and are aware that the FAA no longer believes the Age 60 Rule is a BFOQ, the Defendants refused to protect the Plaintiff's employment status by retaining him in employment status, supporting his exemption request, or lobbying for a change to the Age 60 Rule.

16.  In the months prior to the Plaintiff's forced resignation in February 2007, the Defendants knew or should have known that the Age 60 Rule was discriminatory and no longer a BFOQ.

17.  The Defendants had an affirmative duty to protect the Plaintiff's employment and not discriminate against him under the ADEA.

## FACTUAL STATEMENT

18.  On October 25, 2006, the FAA published a request in the Federal Register, 71 Fed. Reg. 62399, for comments about whether the United States should revise the Age 60 Rule and adopt an amendment that the International Civil Aviation Organization (ICAO) planned to adopt in

November 2006.  The FAA proposed to increase the "upper age limit" of airline pilots to age 65,

provided another crewmember pilot is under age 60.

19.  On November 15, 2006, EEOC Chair Naomi C. Earp responded to the FAA's request for comments

concerning the FAA's proposed change to the Age 60 Rule.  Chair Earp told the FAA that the Age 60

Rule runs counter to the narrow scope of the ADEA defense and the fact-specific, case-by-case analysis

the ADEA requires.  According to Chair Earp:

> pilot skills and health can be assessed accurately on an individual basis, regardless of age, thus
> eliminating the need for dependence on a maximum age limit.  The FAA itself relies on
> individualized testing as a basis for issuing medical certificates to people of all ages, including
> those age 60 and above, who serve as pilots in non-Part 121 flight operations. Moreover, Part 121
> pilots are currently required to undergo physical examinations and cockpit-performance tests every
> six months. These tests would allow airlines to monitor the health and reaction time of pilots 60
> and over, just as they currently monitor the health of pilots under 60. In Commission litigation
> challenging pilot age limits imposed by employers whose flight operations are not governed
> exclusively by Part 121, the EEOC's experts have testified that Class I medical testing is fully
> sufficient to identify health or performance problems that may surface for pilots regardless of age.
> These experts have also testified that, to the extent further testing may be desirable, cardiac stress
> tests, enhanced blood work-ups, and neurological screening could be added to the standard battery
> of Class I tests for all pilots …  In other words, the studies relied on by the FAA to justify the Age
> 60 Rule have never established a correlation between accident rates and the increased age of the
> pilots.  The Commission therefore strongly encourages the FAA to lift the Age 60 Rule. Medical
> and proficiency tests on an individual basis are effective and non-discriminatory ways to ensure
> that commercial pilots maintain the highest standards of safety at all ages.

20.  Chair Earp's comments were consistent with the EEOC's longstanding view that the Age 60 Rule was

discriminatory.  Since 1981, the EEOC has voiced concerns about the discriminatory effect and

discriminatory impact of the Age 60 Rule.  The EEOC enforces the ADEA and also has responsibility

under Executive Order 12067 to coordinate the federal government's enforcement of laws, Executive

orders, regulations, and policies that require equal employment opportunity without regard to race, color,

religion, sex, national origin, age or disability.  See 43 Fed. Reg. 28967 (1978).  The Executive Order

requires the FAA to coordinate with the EEOC to ensure that its rules are consistent with the

Commission's interpretation of the ADEA. In 1995, the EEOC specifically stated that the Age 60 Rule was violative of the ADEA. The EEOC stated:

> Finally, we again urge the FAA to vigorously pursue its reconsideration of the Age 60 Rule and ultimately to change that rule. The practical experience of older pilots has great value in a profession calling for complex and split-second judgments. Moreover... medical and proficiency tests are effective and non-discriminatory ways to assure that commercial pilots maintain the highest standards of safety at all ages.

21. On November 23, 2006, ICAO, the association that regulates international aviation, raised the upper age limit for aircraft commanders to age 65. As of that day, foreign aircraft pilots over the age of 60 have been allowed to fly passengers, including Americans, to and from the United States. While foreign aircraft co-pilots over the age of 60 have always been allowed to fly into the US and carry American citizens abroad, now foreign pilots commanders over the age of 60 are also permitted to fly in US airspace. This is in stark contrast to US pilots and co-pilots over the age of 60. US pilot commanders and US co-pilots over the age of 60 continue to be prohibited from flying commercial aircraft in their own country. Although the FAA's Age 60 Rule was premised on "safety," the rule is obviously pretextual because the government allows foreign pilots over the age of 60 to fly in US airspace.

22. Between November 2006 and January 2007, thousands of US pilots and members of the public (including a "class" of US Airways pilots) publicly commented on the FAA's rule website, stating the Age 60 Rule was discriminatory.

23. In January 2007, the FAA publicly retracted the BFOQ defense. On January 30, 2007, FAA Administrator, Marion C. Blakey, announced that the U.S. Department of Transportation intended to issue a Notice of Proposed Rule Making (NPRM) seeking to change the Age 60 Rule. She stated the FAA seeks to raise the mandatory retirement age for US pilots from age 60 to age 65. Administrator Blakey

affirmatively stated that there was no sound scientific backing to the FAA's previous view that it was not "safe" for pilots over the age of 60 to operate commercial aircrafts in US airspace.  On behalf of the FAA, Administrator Blakey stated that there was no medical or empirical basis for grounding US pilots upon their 60th birthday.

24.  On January 30, 2007, FAA Administrator Blakey confirmed what the Plaintiff and other US pilots have always believed -- that a pilot's ability to safely fly in US airspace cannot be based on age, but rather, can be tested by medical examinations, performance standards, and other objective factors unrelated to age.

25.  The FAA's recent change of opinion on the Age 60 Rule is consistent with the EEOC's longstanding position that the Age 60 Rule violates the ADEA.

26.  Although US Airways is aware of the EEOC's position on the Age 60 Rule, US Airways has refused to object to the Age 60 Rule, lobby against the Age 60 Rule, or request exemptions from the FAA for the named Plaintiff and other similarly situated employees.

27.  Although ALPA and the AFL-CIO are aware of the EEOC's position on the age 60 Rule, they continue to support the Age 60 Rule and continue to beach their duty of representation to their union members and, instead, lobby against the pilots they are supposed to be representing.

28.  On January 30, 2007, ALPA publicly stated to the press that ALPA was aware of the FAA's proposal to change the Age 60 Rule, but that it continued to oppose a change to the age 60.  ALPA stated that it has

a governing policy developed and maintained by ALPA to oppose pilot employment beyond age 60.

29.  To date, US Airways has not proposed a change to the Age 60 Rule or issued a comment on the FAA's NPRM.

30.  Several times in 2006 and 2007, the Plaintiff asked US Airways not to terminate him.  US Airways denied his request.

31.  In December 2006, the Plaintiff requested an exemption from the FAA so that he could continue to fly past the age of 60.  To date, the FAA has not granted his request.

32.  The FAA has the authority to grant exemptions to the Age 60 Rule if the airline also supports the exemption.

33.   Plaintiff filed a grievance with ALPA within six months of filing this suit, grieving his forced retirement.  The grievance was not acted on by ALPA or US Airways and was not supported by ALPA. In February 2007, the FAA had not granted or responded to plaintiffs request for an exemption and the Plaintiffs request for exemption from his Airline had not been responded to. The FAA has acknowledged verbally that it had received his application for exemption and has included it in the DOT docket.

34.  Although US Airways is aware that foreign pilots over the age of 60 are permitted to operate commercial aircraft in US airspace, US Airways continues to force its pilots to resign or be terminated upon reaching the age of 60.

35.  Although US Airways is aware that foreign pilots over the age of 60 are permitted to operate commercial aircraft in US airspace, US Airways refuses to seek waivers or exemptions from the FAA.

36.  Although ALPA and the AFL-CIO are aware that foreign pilots over the age of 60 are permitted to transport US citizens to and from US airports, ALPA and the AFL-CIO continue to aggressively lobby against permitting US pilots to fly commercial aircraft in US airspace past the age of 60.

37.  Because the Defendants US Airways, ALPA and the AFL-CIO refused to seek a waivers or exemption for the Plaintiff from the FAA, he was forced to resign in February 2007.

38.  US Airways' documents reveal that US Airways forced the retirement of 500 to 1500 pilots since 1997.

39.  US Airways' documents will show that US Airways hired younger pilots, predominantly under the age of 40, to replace the pilots forced to retire at age 60.

40.  US Airways' documents will show that Plaintiff and other pilots had been meeting their performance goals and had excellent work records prior to their forced terminations.

41.  US Airways' documents will show that Plaintiff and other pilots were never warned about poor performance; nor were they ever told that they were being discharged for poor performance.

JURISDICTION AND VENUE

42. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1331 and the ADEA, 29 U.S.C. § 626(c).

43. On January 10, 2007 or thereafter, the individual named Plaintiff filed on his own behalf and on behalf of similarly situated individuals a timely charge of discrimination against ALPA, US Airways, and AFL-CIO with the Equal Employment Opportunity Commission (the "EEOC") complaining of the unlawful acts alleged herein.

44. Sixty days have elapsed from the filing with the EEOC of the first charges, and Plaintiff has complied with all statutory prerequisites to the filing of this action.

45. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because two Defendants, ALPA and the AFL-CIO, are headquartered in the District of Columbia. The Defendant US Airways has offices in the District of Columbia, conducts business in the District of Columbia, and can be found in the District of Columbia. Some of the class members reside in the District of Columbia.

"CLASS" ALLEGATIONS

46. Plaintiff brings the action for violations of the ADEA on behalf of himself and as a representative of a class as defined by 29 U.S.C. § 216(b). The class consists of all US Airways pilots who worked for US Airways between 1997 and the date of this complaint, and who were terminated or forced to retire before the age 60 or upon reaching age 60. Hereinafter, the class of pilots referred to in paragraphs 1-34, will be referred to as the "class," or "members of the class" or "class members."

47.  Plaintiff is unable to state the exact number of persons in "the class" without discovery of the Defendants' books and records, but avers on information and belief that the class exceeds fifteen hundred members.  The members of the class are so numerous as to make it impracticable to bring them all before the Court.  There are liability, injunction and damages questions of law and fact common to the class, which predominates over any questions affecting individual members only, as specifically described hereinafter.  Defendants have acted and refused to act on grounds generally applicable to the class.

48.  The claims of the representative Plaintiff are typical of the claims of the class because all pilots were/are subjected to the same company-wide retirement policy, and Plaintiff is able to and will fairly and adequately protect the interests of the class.  The attorney for the Plaintiff is experienced and capable in litigation in the field of age discrimination.  There is no known conflict between the individual members of the class, which would preclude class representation.

49.  The prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications in different jurisdictions with respect to individual members of the class which would establish incompatible standards of conduct for Defendants; and adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of the members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

50.  The class action is superior to other available methods for the fair and efficient adjudication of the issues.

51.  The class consists of all pilots of US Airways covered by its Collective Bargaining Agreement with ALPA.

52.  This class action is brought pursuant to the ADEA, including its incorporation of the Fair Labor Standards Act, 29 U.S.C. § 216(b), by the individual named Plaintiff on behalf of himself and all former US Airways pilots age forty and older who were discharged between 1997 and 2007, or otherwise discriminated against in the implementation of ALPA's collective bargaining agreement with US Airways because of their age and who have given or will give their written consent to be Plaintiffs herein pursuant to 29 U.S.C, § 216(b).

53.  Since all members of the Class have been damaged by the same wrongful acts alleged herein perpetrated by the same decision makers, they are all similarly situated as contemplated by the ADEA. These common questions include, but are not limited to:

(a) whether US Airways terminated Plaintiff's employment pursuant to a pattern and practice of discriminating against employees on the basis of their age;

(b) whether US Airways' mandatory company-wide retirement policy operates in such a manner as to have a discriminatory impact against employees who were forty years old or older;

(c) whether US Airways' selection process and criteria used in determining who would be discharged discriminated against employees on the basis of their age;

(d) whether US Airways' termination of the Plaintiff's employment was motivated by an intent to discriminate on the basis of age.

(e) whether US Airways, ALPA, and the ALF-CIO engaged in collusion to discriminate against pilots on the basis of their age;

(f) whether ALPA and the AFL-CIO breached its duty of fair representation to US Airways employees; and

(g) whether ALPA and the AFL-CIO discriminated against pilot union members when it contracted and colluded with US Airways to deprive US Airways pilots of their rights under the ADEA.

54. From 1997 to the present, US Airways hired younger pilots to replace the discharged Plaintiff and the class he represents.  US Airways hired younger pilots from a list of furloughed pilots.  Through discovery, the Plaintiff and the group he represents will be able to determine the exact number of younger pilots hired and US Airways hiring method.

55. US Airways' mandatory retirement policy had a disproportionate and discriminatory impact on older employees.  Approximately 25 to 125 US Airways pilots over the age of 60 are forced to retire each year.

## "SUBCLASS" ALLEGATIONS

56. Plaintiff brings this action for violations of the Railway Labor Act on behalf of himself and a Subclass of pilots.  The Subclass consists of all US pilots who entered into a collective bargaining agreement with ALPA dating back to 1997 and who were harmed by ALPA's breach of contract and breach of  its duty of fair representation.

57. Plaintiff is unable to state the exact number of persons in the Subclass without discovery of ALPA's books and records, but avers on information and belief that the Subclass exceeds three thousand members.  The members of the Subclass are so numerous as to make it impracticable for them to file separate actions against ALPA.  There are liability, injunction and damages questions of law and fact common to the Subclass, which predominates over any questions affecting individual members only, as specifically described hereinafter.

58.  The claims of the representative Plaintiff are typical of the claims of the Subclass because 90% of US pilots have been members of a Collective Bargaining Agreement with ALPA.

59.  The prosecution of separate actions by individual members of the Subclass would create the risk of inconsistent or varying adjudications in different jurisdictions with respect to individual members of the class which would establish incompatible standards of conduct for Defendants; and adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of the members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

60.  The class action is superior to other available methods for the fair and efficient adjudication of the issues.

PARTIES

61.  Plaintiff Gene H. Carswell is a resident of Hendersonville, North Carolina.  He resides at 119 Woodhaven Dr., Hendersonville, NC 28739.

62.  The Plaintiff began working at US Airways in 1977 and was employed as a pilot by US Airways for more than 29 years.

63.  When the Plaintiff was hired at US Airways, he was told by ALPA and US Airways' personnel that he had to retire when he reached age 60.

64.  On January 12, 2007, the Plaintiff turned 60 years old.

65.  US Airways forced the Plaintiff to retire on Feb 1, 2007, pursuant to Section 28 of US Airways'
Collective Bargaining Agreement with ALPA.  Although the Plaintiff applied for an exemption with the
FAA on February 6, 2007, and asked US Airways to not terminate him in December 2006, US Airways
did not support the exemption request and, instead, terminated him.

66.  Defendant ALPA is an airline pilot union headquartered in Washington, D.C.  ALPA is responsible
for representing the collective interests of its members who are US pilots engaged in commercial aviation.
ALPA's mission is to represent pilot interests in collective bargaining activities.  According to its website,
www.alpa.org, ALPA works on behalf of member pilots to promote the health and welfare of the members
of the Association.  ALPA specifically holds itself out to be "the ultimate guardian and defender of the
rights and privileges of the professional pilots who are members of the Association."  ALPA's address is:
1625 Massachusetts Ave., NW, Washington, DC 20036.

67.  Defendant US Airways is an airline headquartered in Tempe, Arizona, and owned by US Airways
Group, Inc.  The airline is the fifth largest airline in the United States.  Including aircraft operated by its
America West Airlines affiliate, US Airways has a fleet of 357 mainline jet aircraft and 352 express
aircraft connecting 240 destinations in North America, Central America, the Caribbean, Hawaii, and
Europe.  US Airways currently employs 35,180 people worldwide and operates 3,860 daily flights.  US
Airways operates primary hubs in Charlotte, Philadelphia, Phoenix, and Las Vegas, with the latter two
being former America West operations.  Additionally, US Airways has a secondary hub in Pittsburgh.  US
Airways also maintains focus city operations at New York LaGuardia, Washington Reagan, and Boston.
US Airways' address is: 111 W. Salado Pkwy, Tempe, AZ, 85281.

68. Defendant AFL-CIO is the largest federation of unions in the United States, made up of 54 national and international unions, together representing more than 9 million workers. Defendant ALPA is a member union. From 1955 until 2005, the AFL-CIO's member unions represented virtually all unionized workers in the United States. The AFL-CIO's address is: 815 16th St. NW, Washington, DC 20006.

69. During the relevant time period in this Complaint, ALPA and the AFL-CIO were responsible for acting on behalf of the Plaintiff and other pilots at US Airways. They were responsible for negotiating employment terms and conditions with US Airways on behalf of its member pilots. However, instead of aiding US Airways pilots, ALPA and the AFL-CIO contracted away the pilots' rights under the ADEA. ALPA and AFL-CIO lobbied intensely to keep US Airways pilots from flying (and hence working) beyond the age of 60.

70. US Airways is an employer within the meaning of the ADEA, 29 U.S.C. § 621, et seq.

71. US Airways engages in code sharing and other marketing schemes with international carriers, thus enabling it earn revenue when foreign pilots over the age of 60 fly International "partner" aircraft.


ALLEGATIONS OF THE INDIVIDUAL PLAINTIFF

Gene Carswell's Claims

72. Each paragraph above is incorporated herein by reference.


73. Plaintiff Gene H. Carswell is 60 years old and had been employed by US Airways for almost 30 years when US Airways forced him to retire on Feb 1, 2007. His certification of retirement date states "January

2007."

74.  On June 16, 2006, August 30, 2006, September 6, 2006, September 22, 2006, and January 22, 2007, the Defendant informed the Plaintiff that his retirement would be based on the fact that he was turning 60.

75.  At the time of the Plaintiff's forced retirement, he was employed as a Captain at US Airways.

76.  US Airways replaced the Plaintiff with a pilot significantly younger than he.

77.  The Plaintiff filed an age discrimination charge with the EEOC on January 10, 2007, and has not yet received a "right to sue letter."  However, more than 60 days have passed since the charge was filed.

COUNT I

(On Behalf of the Plaintiff and Class)

Violation of the ADEA

78.  Each paragraph above is incorporated herein by reference.

79.  The Defendants have violated the ADEA by discriminating against the Plaintiff and members of the class because of their age in the terms and conditions of their employment, as described above.

80.  The Defendants willfully violated the ADEA by discriminating on the basis of age knowingly and with reckless disregard of the law.

COUNT II

(On Behalf of the Plaintiff and Class)

Age Discrimination (Disparate Treatment)

ADEA Collective Action

81.  Plaintiff hereby incorporates by reference each and every allegation and averment made above as though fully set forth herein.

82.  This is a representative action under 29 U.S.C. §§ 626(b) and (c) and 29 U.S.C. § 216(b) by the above-named Plaintiff and other similarly situated persons who opt into this action by filing an appropriate notice.

83.  As elsewhere more fully set forth in this Complaint, the Defendants engaged in an unlawful pattern or practice of age discrimination that adversely affected the Plaintiff and other similarly situated former US Airways employees in violation of 29 U.S.C. § 621 et seq.

84.  The unlawful pattern or practice of age discrimination by the Defendants alleged herein constitutes a willful violation of the ADEA.

85.  The Plaintiff's charges of discrimination filed with the EEOC asserted claims on behalf of the Plaintiff and others similarly situated, and adequately placed the Defendants on notice that a collective action was forthcoming.

86.  The Plaintiff and others similarly situated were adversely affected by the pattern or practice of

unlawful, willful age discrimination by the Defendants as elsewhere described herein.  The Plaintiff and others similarly situated suffered actual damages in the form of lost salary and wages, bonuses, stock options, fringe benefits, retirement and insurance benefits, and other forms of compensation, as well as loss of career opportunity and advancement, costs of seeking alternate income, and in other respects, all in amounts yet to be determined, but reasonably believed to exceed $150,000 per year per Plaintiff.


Count III

(On Behalf of the Plaintiff and Class)

Age Discrimination (Disparate Impact)

ADEA Collective Action

87.  The Plaintiff hereby incorporates by reference each and every allegation and averment made above as though fully set forth herein.


88.  This is a representative action under 29 U.S.C. §§ 626(b) and (c) and 29 U.S.C. § 216(b) by the above-named Plaintiff and other similarly situated persons who opt into this action by filing an appropriate notice, and an individual action under the ADEA.


89.  As set forth more fully above, US Airways has utilized practices, policies and procedures that have disparately impacted US Airways' employees, resulting in an unlawful pattern or practice of age discrimination in violation of the ADEA, 29 U.S.C. § 621 et seq.


90.  The above-named Plaintiff and others similarly situated were disparately impacted by US Airways' practices, policies and procedures, in violation of the ADEA.

91.  As a direct and proximate result of the aforesaid age discrimination by US Airways, the Plaintiff and others similarly situated have suffered damages in an amount to be determined at trial, but reasonably believed to exceed $150,000 per year per Plaintiff, including, but not limited to, lost salary, bonuses, stock options, and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits.

Count IV

(On Behalf of the Plaintiff and Class)

Age Discrimination (Collusion)

92.  The Plaintiff hereby incorporates by reference each and every allegation and averment made above as though fully set forth herein.

93.  The above-named Plaintiff and others similarly situated were discriminated against in violation of the ADEA when the Defendants engaged in collusion to discriminate against the Plaintiff and others similarly situated.

94.  As a direct and proximate result of the aforesaid age discrimination by the Defendants, the Plaintiff and others similarly situated have suffered damages in an amount to be determined at trial, but reasonably believed to exceed $150,000 per year per Plaintiff, including, but not limited to, lost salary, bonuses, stock options, and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits.

Count V

(On Behalf of the Plaintiff and Class)

Breach of Collective Bargaining Contract

95.  The Plaintiff hereby incorporates by reference each and every allegation and averment made above as though fully set forth herein.

96. The employment relationship between US Airways and the Class members is governed by a Collective Bargaining Agreement contract with ALPA, and supported by the AFL-CIO.

97.  In agreeing to be the exclusive bargaining representative of the Class members, ALPA and the AFL-CIO agreed to not violate the Railway Labor Act or the ADEA, to not allow or support any age discrimination, to process all grievances in an unbiased manner, to not allow discriminatory policies in their governing documents; and to follow all Union promises and requirements outlined in the ALPA and AFL-CIO Constitution including the AFL-CIO preambles and ALPA Administration Manual Policies. ALPA agreed to represent all members fairly without showing bias to any group.

98.  The Plaintiff and Class members fully performed all of their obligations under the collective bargaining agreement.

99. ALPA and the AFL-CIO breached the Collective Bargaining Agreement when they promoted an illegal age discrimination policy under the pretense of it being a "safety issue." They perpetuated a discriminatory retirement program for pilot members while spending Union resources to negotiate deals to allow foreign pilots to continue working past age 60.

100.  ALPA's and the AFL-CIO's actions were in material breach of ALPA's express and implied

obligations under the Collective Bargaining Agreement.


101.  As a result of Defendants' breach of its contractual obligations, the class members have suffered

losses, including but not limited to, termination of employment, loss of investment capital, loss of income

and loss of benefits.

Count VI

(On Behalf of the Plaintiff and Class)

Breach of Duty of Fair Representation

102.  The Plaintiff hereby incorporates by reference each and every allegation and averment made above

as though fully set forth herein.


103.  The Plaintiff hereby incorporates by reference each and every allegation and averment made above

as though fully set forth herein.


104.  ALPA and the AFL-CIO breached its duty of fair representation when it conspired with US Airways

to permit his discharge, failed to represent his interests, and took active steps to deprive him of his

employment.


105.  Plaintiff exhausted his administrative remedies within the prescribed six-month period.


106.  The unions' conduct toward the plaintiff was arbitrary, discriminatory, and in bad faith.

107.  The unions' behavior is so outside the range of reasonableness as to be irrational.

108.  Plaintiff and others similarly situated have suffered damages in an amount to be determined at trial, but reasonably believed to exceed $150,000 per year per Plaintiff, including, but not limited to, lost salary, bonuses, stock options, and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits.

Count VII

(On Behalf of the Plaintiff and Subclass against Defendant ALPA)

Breach of Collective Bargaining Contract

109.  The Plaintiff hereby incorporates by reference each and every allegation and averment made above as though fully set forth herein.

110. The employment relationship between US Airways and the Class members is governed by a Collective Bargaining Agreement contract with ALPA, and supported by the AFL-CIO.

111. In agreeing to be the exclusive bargaining representative of the Class members, ALPA agreed to not violate the Railway Labor Act or the ADEA, to not allow or support any age discrimination, to process all grievances in an unbiased manner, to not allow discriminatory policies in their governing documents; and to follow all Union promises and requirements outlined in the ALPA and AFL-CIO Constitution including the AFL-CIO preambles and ALPA Administration Manual Policies. ALPA agreed to represent all members fairly without showing bias to any group.

112. The Plaintiff and Class members fully performed all of their obligations under the collective bargaining agreement.

113. ALPA breached their Collective Bargaining Agreements when it promoted an illegal age discrimination policy under the pretense of it being a "safety issue." They perpetuated a discriminatory retirement program for pilot members while spending Union resources to negotiate deals to allow foreign pilots to continue working past age 60.

114. ALPA's actions were in material breach of ALPA's express and implied obligations under the Collective Bargaining Agreement.

115. As a result of ALPA's breach of its contractual obligations, the class members have suffered losses, including but not limited to, termination of employment, loss of investment capital, loss of income and loss of benefits.

Count VIII

(On Behalf of the Plaintiff and Subclass against Defendant ALPA)

Breach of Duty of Fair Representation

116. The Plaintiff hereby incorporates by reference each and every allegation and averment made above as though fully set forth herein.

117. The Plaintiff hereby incorporates by reference each and every allegation and averment made above as though fully set forth herein.

118.  ALPA breached its duty of fair representation when failed to represent its members' interests  and took active steps to deprive them of their employment.

119.  Plaintiff and numerous other Subclass members exhausted their administrative remedies within the prescribed six-month period.

120.  The union's conduct toward the plaintiff and the Subclass was arbitrary, discriminatory, and in bad faith.

121.  The union's behavior is so outside the range of reasonableness as to be irrational.

122.  Plaintiff and others similarly situated have suffered damages in an amount to be determined at trial, but reasonably believed to exceed $150,000 per year per Plaintiff, including, but not limited to, lost salary, bonuses, stock options, and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment:

(a) Certifying the case as a collective action under the ADEA;

(b) Declaring the acts and practices complained of to be in violation of the ADEA;

(c) Enjoining and restraining the Defendants from any further violations of the ADEA; in particular, enjoining US Airways from terminating any pilots over the age of 60 and enjoining the Defendants from actively lobbying for the Age 60 Rule;

(d) Directing the Defendants to take such affirmative steps as are necessary to ensure that the effects of its unlawful employment practices are eliminated;

(e) Directing the Defendants to place the Plaintiffs in the positions they would have been in but for the discriminatory and wrongful treatment of them, and making them whole for all earnings, compensation and benefits they would have received but for the Defendants discriminatory and otherwise wrongful actions, including, but not limited to, wages, supplements, bonuses, sales commissions, pension, severance benefits, benefits that would have otherwise been included in the Plaintiffs' 401(k) pension plans, medical insurance, life insurance, and other lost benefits;

(f) Awarding the Plaintiffs any and all amounts owing to them that have been withheld in violation of the ADEA, together with interest thereon;

(g) Awarding the Plaintiffs liquidated damages pursuant to the ADEA;

(h) Awarding the Plaintiffs the costs of this action, together with reasonable attorney's fees;

(i) Awarding the named representative Plaintiff an incentive award;

(j) Issuing an order declaring that ALPA and the AFL-CIO breached their duty of fair representation and breached the collective bargaining agreement; and

(k) Granting such other and further relief as this Court may deem just and proper.

Date: July 5, 2007

Respectfully Submitted,

/s/  Rosemary Dettling
Rosemary Dettling, Esq. (DC Bar 441483)
3120 Brandywine Street, NW
Washington, DC 20008
(202) 362-1888 Telephone

28

(888) 241- 6719 Facsimile
Counsel for Plaintiff,
 Gene H. Carswell

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this [5th] day of July, 2007, the foregoing Plaintiff's First Amended Complaint was sent to the below addresses by the delivery method indicated:

Clerk's Office
United States District Court for the District of Columbia
By electronic document filing (ECF) system

David M. Semanchik, Esq.
Air Line Pilots Association, International
1625 Massachusetts Avenue, NW
Washington, DC 20036
By ECF

Leon Dayan, Esq.
BREDHOFF & KAISER, PLLC
805 Fifteenth Street, NW
Washington, DC 20005-2207
Counsel for American Federation of Labor and Congress of
  Industrial Organization
815 16th Street, NW
Washington, DC 20006
By ECF

Thomas B. Almy, Esquire
Mark A. Dombroff, Esquire
Mark E. McKinnon, Esquire
DOMBROFF GILMORE JACQUES & FRENCH, PC
1676 International Drive, PC
McLean, Virginia 22102
Counsel for US Airways Group, Inc.
By ECF

Erin Flaherty Lewin, Esquire
Entered *Pro Hac Vice*
US Airways Group, Inc.
111 W. Rio Salado Parkway
Tempe, Arizona 85281
By ECF

                              */s/ Rosemary Dettling*