UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GENE H. CARSWELL et al<br>individually and on behalf of<br>all others similarly situated,<br><br>Plaintiff,<br><br><br>v.<br><br><br>AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,<br>US AIRWAYS GROUP, INC., and AMERICAN<br>FEDERATION OF LABOR AND<br>CONGRESS OF INDUSTRIAL ORGANIZATION.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No.<br>)   1:07-cv-00651<br>)<br>)<br>)   Judge Reggie B. Walton<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MOTION FOR CONDITIONAL CLASS CERTIFICATION,
ISSUANCE OF NOTICE AND AN ORDER FOR CERTAIN DISCOVERY**

For the reasons set forth in the attached Memorandum, Plaintiff respectfully requests, pursuant to

29 U.S.C. 216(b), Federal Rule of Civil Procedure (FRCP) 23, and Local Rule 23(c)(1), that this Court:

1) Conditionally certify a Class of "all persons who are or have been employed by US Airways

as pilots dating back to 1997 and who are or have been subject to a mandatory retirement policy

and collective bargaining agreement with the Air Line Pilots Association, International";

2) Conditionally certify a Subclass of "all commercial pilots in the United States who are or have

been subject to the terms and conditions of a collective bargaining agreement with the Air Line

Pilots Association, International, dating back to 1997";

3) Authorize notices in this action to all members of the above-described "Class" and "Subclass";

4) Order US Airways to produce to Plaintiff the names and last known addresses of all current and former US Airways pilots dating back to 1997;

5) Order the Air Line Pilots Association, International, to produce to Plaintiff the names and last known addresses of all commercial pilots in the United States who are or have been subject to the terms and conditions of a collective bargaining agreement with the Air Line Pilots Association, International, dating back to 1997.


DATED: July 5, 2007


Respectfully Submitted,

*/s/  Rosemary Dettling*
Rosemary Dettling, Esq. (DC Bar 441483)
3120 Brandywine Street, NW
Washington, DC 20008
(202) 362-1888 Telephone
(888) 241- 6719 Facsimile

*Counsel for Plaintiff,*
  *Gene H. Carswell*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GENE H. CARSWELL et al<br>individually and on behalf of<br>all others similarly situated,<br><br>Plaintiff,<br><br><br>v.<br><br><br>AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,<br>US AIRWAYS GROUP, INC., and AMERICAN<br>FEDERATION OF LABOR AND<br>CONGRESS OF INDUSTRIAL ORGANIZATION.<br><br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br>1:07-cv-00651<br><br><br>Judge Reggie B. Walton |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

*/s/ Rosemary Dettling*
Rosemary Dettling, Esq. (DC Bar 441483)
3120 Brandywine Street, NW
Washington, DC 20008
(202) 362-1888 Telephone
(888) 241- 6719 Facsimile

*Counsel for Plaintiff,
Gene H. Carswell*

i

# Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii
Table of Statutes, Rules and Regulations ……………………………………………iii
STATEMENT OF FACTS AND QUESTIONS OF LAW………………………………..2
THE PROPOSED CLASS………………………………………………………………3
ARGUMENT…………………………………………………………………………….7
CERTIFICATION OF THE CLASS UNDER THE ADEA……………………………7

THE PROPOSED CLASS MEETS
THE REQUIREMENTS OF RULE 23(A)……………………………………………12
A. Rule 23(a)'s Requirement Of Numerosity Is Met Because
The Proposed Class Members Make Joinder Impracticable………………………12
B. Plaintiff Meets the 23(a)'s Requirement of Commonality
Because The Proposed Class Members Share Common
Questions of Law and Fact……………………………………………………………13
C. The Claims of Plaintiff Are Typical
of Those of the Class………………………………………………………………14
D. The Plaintiff and His Counsel Will Adequately
Represent the Proposed Class…………………………………………………………15
THE PROPOSED CLASS MEETS THE REQUIREMENTS
OF RULE 23(B)……………………………………………………………………16

THE PROPOSED SUBCLASS MEETS
THE REQUIREMENTS OF RULE 23(A)……………………………………………16
A. Rule 23(a)'s Requirement Of Numerosity Is Met Because
The Proposed Subclass Members Make Joinder Impracticable…………………………17
B. Plaintiff Meets the 23(a)'s Requirement of Commonality
Because The Proposed Subclass Members Share Common
Questions of Law and Fact……………………………………………………………17
C. The Claims of the Named Plaintiff Are Typical
of Those of the Subclass………………………………………………………………17
D. The Plaintiff and His Counsel Will Adequately
Represent the Proposed Subclass………………………………………………………..18
THE PROPOSED SUBCLASS MEETS THE REQUIREMENTS
OF RULE 23(B)……………………………………………………………………18

APPROVAL AND FACILITATION OF PLAINTIFF'S
PROPOSED NOTICE IS APPROPRIATE………………………………………………..19
A. The Form of the Proposed Notice Satisfies the

Requirements of Due Process and Rule 23…………………………………………………19

B. Defendants Should Provide Necessary Data…………………………………………20
CONCLUSION…………………………………………………………………………..22

## STATUTES, RULES, AND REGULATIONS

Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 626 *et seq*

Railway Labor Act, 45 U.S.C. §§ 151 *et seq.*, 45 U.S.C. § 181.

29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA)

Federal Rule of Civil Procedure (FRCP or "Rule") 23

Local Rule 23(c)(1)

## TABLE OF CASES

*Thiessen v. General Electric Capital Corporation*, 996 F.Supp. 1071, 1074-75 (10th Cir. 2001).

*Foster v. RuhrPumpen, Inc.*, 365 F.3d 1191, 1197 (10th Cir. 2004)

*DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 155 (1983)

*Scott v. Local 863, Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 752 F.2d 226, 229 (3d Cir. 1984)

*General Dynamics Land Systems v. Cline*, 540 U.S. 581, 591 (2004)

*Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989)

*McNeil v. District of Columbia*, Civ. Act. No. 98-3142, 1999 U.S. Dist. LEXIS 23388, at 5-6 (D.D.C. Aug. 5, 1999)

*Hunter, et al. v. Sprint Corp.*, 346 F. Supp. 2d 113, 17 (D.D.C. 2004)

*Robinson-Smith, et al. v. GEICO*, Civ. Act. No. 01-1340, 2001 U.S. Dist. LEXIS 25516, at 5-6 (D.D.C. Nov. 16, 2001)

*Hyman v. First Union Corp., et al.,* 982 F. Supp. 1, 3-5 (D.D.C. 1997)

*Lockhart v. Westinghouse Credit Corp.,* 879 F.2d 43, 51 (3d Cir. 1989)

*Hazen Paper Co. et al. v. Biggins,* 507 U.S. 604 (1993)

*Shaffer v. Farm Fresh, Inc.,* 966 F.2d 142, 147 (4th Cir. 1992), *cert. denied,* 113 S.Ct. 657 (1993)

*Dybach v. State of Florida Dep't of Corrections,* 942 F.2d 1562, 1567 (11th Cir. 1991)

*Severtson v. Phillips Beverage Co.,* 141 F.R.D. 276, 280 (D.Minn. 1992)

*Garner v. G.D. Searle Pharmaceuticals & Co.,* 802 F. Supp. 418, 424 (M.D.Ala. 1991)

*In re Qwest Savings and Investment Plan ERISA Litigation,* 2004 U.S. Dist. LEXIS 24693 at 11

(D.Colo. 2004).

*Horn v. Associated Wholesale Grocers, Inc.,* 555 F.2d 270, 273 (10th Cir. 1977)

*Schwartz v. Celestial Seasonings,* 178 F.R.D. 545, 551 (D.Colo. 1998)

*Milonas v. Williams,* 691 F.2d 931, 938 (10th Cir. 1982)

*Colorado Cross-Disability Coalition v. Taco Bell Corp.,* 184 F.R.D. 354, 359 (D.Colo. 1999)

*Cook v. Rockwell International Corp.,* 181 F.R.D. 473, 480 (D.Colo. 1998).

*Milonas v. Williams,* 691 F.2d 931, 938 (10th Cir. 1982), *cert. denied,* 460 U.S. 1069 (1983)

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625 (1997)

*Steiner v. Ideal Basic Industries, Inc.,* 127 F.R.D. 192, 194 (D.Colo. 1987).

*Bjustrom v. Trust One Mortgage Corp.,* 199 F.R.D. 346, 348 (W.D. Wash. 2001)

*Mortimore v. FDIC,* 197 F.R.D. 432, 436 (W.D. Wash. 2000)

*Kleiner v. First Nat'l Bank,* 97 F.R.D. 683, 692 (N.D. Ga. 1983)

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)

*Kyriazi v. Western Elec. Co.,* 647 F.2d 388, 395 (3d Cir. 1981)

*Geller v. Markham,* 481 F.Supp. 835 (D.Conn. 1979).

*Rosen v. Reckitt & Colman, Inc.*, 1991 U.S. Dist. LEXIS 14663, 1 (S.D.N.Y. 1991)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GENE H. CARSWELL et al<br>individually and on behalf of<br>all others similarly situated, | ) ) ) ) | |
| | ) ) | |
| Plaintiff, | ) ) ) ) | |
| | ) | |
| v. | ) ) ) | Civil Action No.<br>1:07-cv-00651 |
| | ) ) | Judge Reggie B. Walton |
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,<br>US AIRWAYS GROUP, INC., and AMERICAN<br>FEDERATION OF LABOR AND<br>CONGRESS OF INDUSTRIAL ORGANIZATION. | ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |

_____

**MEMORANDUM IN SUPPORT OF MOTION
FOR CONDITIONAL CLASS CERTIFICATION, ISSUANCE OF NOTICE
AND AN ORDER FOR CERTAIN DISCOVERY**

**I.     Introduction.**

This is a collective and class action brought by Plaintiff Gene H. Carswell on behalf of himself

and other similarly situated individuals throughout the United States (the "Class" and "Subclass")

against the Air Line Pilots Association, International ("ALPA"), US Airways Group, Inc. (US

Airways), and the American Federation of Labor and Congress of Industrial Organization ("AFL-

CIO"), under the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 626 *et*

*seq*, and the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* The provisions of the Railway Labor Act

govern labor disputes involving the airline industry.  *See* 45 U.S.C. § 181.

For the reasons described below, and pursuant to 29 U.S.C. § 216(b) of the Fair Labor

Standards Act (FLSA), Federal Rule of Civil Procedure (FRCP or "Rule") 23, and Local Rule 23(c)(1),

Plaintiff respectfully requests that this Court conditionally certify this § 216(b) and FRCP 23 collective

and class action; approve the issuance of Plaintiff's proposed notices, attached as Exhibits A and B;

order US Airways to produce to the Plaintiff the names and last known addresses of all current and

former US Airways pilots dating back to 1997;  and order ALPA to produce to the Plaintiff the names

and last known addresses of all commercial pilots in the United States who are or have been subject to

the terms and conditions of a collective bargaining agreement with ALPA dating back to 1997.

II.    **Background.**

    A.    **Factual Background.**

Plaintiff, Gene H. Carswell, worked for Defendant US Airways as a commercial airline pilot

from 1977 until US Airways terminated him in 2007.  *See* Amended Complaint at ¶¶ 16, 62.

Defendant US Airways is a commercial airline headquartered in Tempe, Arizona, and owned by

US Airways Group, Inc.  The airline is the fifth largest airline in the United States.  Including aircraft

operated by its America West Airlines affiliate, US Airways has a fleet of 357 mainline jet aircraft and

352 express aircraft connecting 240 destinations in North America, Central America, the Caribbean,

Hawaii, and Europe.  US Airways currently employs 35,180 people worldwide and operates 3,860 daily

flights.  *See* Amended Complaint at ¶ 67.

Defendant ALPA is an airline pilot union headquartered in Washington, D.C.  ALPA is

responsible for representing the collective interests of its members who are US pilots engaged in

commercial aviation.  ALPA's purported mission is to represent pilot interests in collective bargaining

activities.  *See* Amended Complaint at ¶ 66.

Defendant AFL-CIO is the largest federation of unions in the United States, made up of 54

national and international unions, together representing more than 9 million workers.  Defendant ALPA is a member union.  From 1955 until 2005, the AFL-CIO's member unions represented virtually all unionized workers in the United States.  *See* Amended Complaint at ¶ 68.

During the relevant time period, Defendants ALPA and the AFL-CIO were responsible for negotiating employment terms and conditions with US Airways on behalf of its member US Airways pilots.  *See* Amended Complaint at ¶ 68.  However, instead of aiding US Airways pilots, ALPA and the AFL-CIO contracted away the pilots' rights under the ADEA, and publicly lobbied against the pilots' interests in violation of the Railway Labor Act.  ALPA and AFL-CIO lobbied intensely to keep US Airways pilots from flying and working beyond the age of 60, even though they were aware foreign pilots were flying in the United States past the age of 60.[1]

Plaintiff alleged in the Amended Complaint that US Airways conspired with ALPA and the AFL-CIO to force him to retire on February 1, 2007.  *See* Amended Complaint at ¶ 73.  Although Plaintiff applied for an exemption with the FAA in February 2007, and asked US Airways and ALPA to support his exemption request, they did not support his exemption request and, instead, forced him to retire.  *See* Amended Complaint at ¶ 65.  The airline then replaced him with a less expensive, younger pilot.

Plaintiff alleged that US Airways systematically discriminated against him and other US Airways pilots (the "Class") on the basis of their age when it 1) forced him and other pilots to retire at age sixty (60); 2) refusing to support requests for exemptions or waivers; 3) refused to select him for another US Airways position after he turned age 60; and 4) colluded with the unions to enforce this discriminatory policy.  *See* Amended Complaint at Count I, Count II, Count III, and Count IV.  Because this unlawful

---

[1] On November 23, 2006, the International Civil Aviation Organization (ICAO), the association that regulates international aviation, raised the upper age limit for aircraft commanders to age 65.  As of that day, foreign aircraft pilots over the age of 60 have been allowed to fly passengers, including Americans, to and from the United States.  While foreign aircraft co-pilots over the age of 60 have always been allowed to fly into the US and carry American citizens abroad, now foreign pilots commanders over the age of 60 are also permitted to fly in US airspace.

conduct was US Airways' general practice, it affected a sizable percentage of employees, who numbered

over 500 or more during the period in question.  *See* Amended Complaint at ¶ 2.  Through discovery,

Plaintiff will show that the Defendants profited from the discriminatory practice of terminating older pilots

and replacing them with younger pilots.

Plaintiff also brings this action for violations of the Railway Labor Act on behalf of a "Class" of

pilots.  The Class consists of all US Airway pilots who were subject to the terms and conditions of a

collective bargaining agreement with ALPA.  Plaintiff averred that the AFL-CIO is culpable because

the it receives a portion of pilot dues from ALPA and it, like ALPA, failed to represent the pilots'

interests.

Plaintiff alleged that this "Class" of pilots was harmed by ALPA and AFL-CIO's breach of

contract and breach of duty of fair representation.  Plaintiff alleged that ALPA and the AFL-CIO

breached its collective bargaining agreement with the Class when they publicly failed to represent the

pilot's interests and, instead, actively and publicly lobbied against the Class' interests.  Although the

unions are required to represent members fairly without showing bias to any group, and are prohibited

from condoning an illegal age discrimination policy, the Defendant unions consistently lobbied to

uphold the Age 60 Rule and force pilots out of work.  They did so while actively negotiating more

favorable employment terms for foreign pilots and profiting from the pilots' terminations.  *See*

Amended Complaint at ¶ 99.

Plaintiff also brings this action for violations of the Railway Labor Act on behalf of a

"Subclass" of pilots.  The Subclass brings claims against Defendant ALPA.  The Subclass consists of

<u>all</u> US commercial airline pilots who entered into collective bargaining agreements with ALPA dating

back to 1997, and who were harmed by ALPA's breach of contract and breach of duty of fair

representation.  Plaintiff, on behalf of the Subclass, alleged that ALPA breached its duty of fair

representation and breached terms and conditions of the collective bargaining agreements it had with

similarly situated US pilots.  *See* Amended Complaint at Count VII and Count VIII.  Plaintiff alleged

that in total, over 3000 pilots were subject to collective bargaining agreements with ALPA and were

damaged by ALPA's breach of the collective bargaining agreement and breach of its duty of fair

representation.  *See* Declaration of Gene H. Carswell, Ex. C at ¶ 13.  Plaintiff Carswell's claims are

supported by declarations from his colleagues.  *See* Ex. D.

       Although a federal regulation was promulgated to enforce the FAA's Age 60 Rule, the Age 60

Rule is not a general "pass" to discriminate against employees.  The Age 60 Rule prohibits pilots from

flying commercial aircrafts after they reach age 60, but it does not prohibit an airline from retaining an

employee in employment status beyond age 60.  The Age 60 Rule is silent as to an employer's obligation

to support an exemption request.  It is common knowledge that the FAA will grant exemptions if the

airlines and unions both support the exemption request.  Armed with this knowledge, the Defendants had

a duty to support exemption requests, especially when they knew refusal to do so would result in loss of

employment.  Plaintiff now seeks certification and notice to ensure that he, and all employees similarly

situated, are fully compensated for the Defendants' violations.

      **B.**    **Procedural Background.**

       In January 2007, the Plaintiff sent a letter to the United States Equal Employment Opportunity

Commission ("EEOC") notifying it that he intended to file suit against US Airways, ALPA, and the

AFL-CIO pursuant to the ADEA.  *See* Ex. C at ¶ 6.  He notified the EEOC and Defendants that he

contemplated class-wide litigation.  On January 8, 2007, the Plaintiff also sent a letter to ALPA stating

that he wanted to file a grievance against the ALPA for failure to breach of the collective bargaining

agreement.  *See* Ex. C at ¶ 7.  Between January 2007 and April 2007, Plaintiff telephoned and emailed

the EEOC elucidating  his allegations and notifying them that current and former pilots intending to file

suit.  *See* Ex. C at ¶ 6.  In each of his contacts, Plaintiff put the Defendants on notice that class-wide

allegations were contemplated.  *Id.*

The ADEA Section 7(d), 29 U.S.C. §626(d), requires a plaintiff to file an age discrimination charge with the EEOC before bringing a collective action.  *Thiessen v. General Electric Capital Corporation*, 996 F.Supp. 1071, 1074-75 (10th Cir. 2001).

Under the "single filing" rule, only one named Plaintiff need file a timely charge in order to satisfy the requirements on behalf of a class of similarly situated individuals.  *Id.* at 1075; *Foster v. RuhrPumpen, Inc.*, 365 F.3d 1191, 1197 (10th Cir. 2004) ("if one plaintiff has filed a timely EEOC complaint as to that plaintiff's individual claim, then the plaintiffs with individual claims arising out of similar discriminatory treatment in the same time frame need not have satisfied the filing requirement").  In this instance, Plaintiff Carswell satisfied the filing requirement on behalf of the entire class.

It is undisputed that the statute of limitations for a duty of fair representation claim against a union under the Railway Labor Act is six months.  That time period comes from *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 155 (1983), in which the Supreme Court borrowed the six month period from Section 10(b) of the National Labor Relations Act.  As a general matter, a duty of fair representation claim accrues and the six month limitations period commences when "the futility of further union appeals becomes apparent or should have become apparent*."  Scott v. Local 863, Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 752 F.2d 226, 229 (3d Cir. 1984).

Here, Plaintiff met the Railway Labor Act's statute of limitations.  In January 2007, Plaintiff notified ALPA that he wanted to file a grievance against ALPA for not representing his interests under the collective bargaining agreement.  *See* Ex. C at ¶ 7.  ALPA never followed up on his grievance request. *See* Ex. C at ¶ 8.  At that point, it would have been futile for Plaintiff to have sought further redress from ALPA, as the union's actions were arbitrary, discriminatory, and in bad faith.

### III.   Argument.

####    A.    Certification of the "Class" under the ADEA.

Plaintiff alleged that the Defendants discriminated against him and a Class of US Airways pilots because of their age when they subjected pilots to mandatory retirement, refused to support exemption requests, refused to retain pilots in employment in other positions, and colluded with each other to maintain a discriminatory retirement policy.  *See* Count I, II, III, and IV of the Amended Complaint. The ADEA, 29 U.S.C. §621 *et seq.,* was enacted "to protect a relatively older worker from discrimination that works to the advantage of the relatively young." *General Dynamics Land Systems v. Cline*, 540 U.S. 581, 591 (2004).  The ADEA prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions or privileges of employment, including employee benefits, because of the individual's age. 29 U.S.C. §§623(a)(1) and 630(l).  The ADEA also prohibits an employer from limiting, segregating or classifying its employees in any way that adversely affects their status as employees because of age.  29 U.S.C. §623(a)(2).

"The ADEA expressly authorizes employees to bring collective actions on behalf of themselves and other employees similarly situated." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989). "Congress has stated its policy that ADEA plaintiffs should have the opportunity to proceed collectively.  A collective action allows age discrimination plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.  The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Id.* at 170.

Actions brought under the ADEA are approved for treatment as collective actions under the procedures established by Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. §216(b).  Under the

FLSA and the ADEA, notice is given to individuals who are affected by the unlawful practice. Those individuals must then decide whether to "opt-in" to the action. By contrast, inclusion in a class certified under FRCP 23 is either automatic or subject to an "opt-out" procedure. *See Newberg on Class Actions* (3d ed.), §4.01.

Recognizing that individual wage and hour claims "might be too small in dollar terms to support a litigation effort," *McNeil v. District of Columbia*, Civ. Act. No. 98-3142, 1999 U.S. Dist. LEXIS 23388, at 5-6 (D.D.C. Aug. 5, 1999), the Fair Labor Standards Act permits an employee to pursue a collective action by suing on his own behalf and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). The "similarly-situated" requirement helps ensure "the efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). In FLSA cases, courts conditionally certify the collective action class early in the litigation and then later may revisit certification as the case develops. *See Hunter, et al. v. Sprint Corp.*, 346 F. Supp. 2d 113, 117 (D.D.C. 2004) (citations omitted); *Robinson-Smith, et al. v. GEICO*, Civ. Act. No. 01-1340, 2001 U.S. Dist. LEXIS 25516, at 5-6 (D.D.C. Nov. 16, 2001). This early certification is important in FLSA collective actions because class members must affirmatively opt-in, and the statute of limitations continues to run on the unnamed class members' claims until they join the action. *See* 29 U.S.C. §§216(b), 256. For this reason, early notice to the class members is essential. *See Hoffman-La Roche, Inc.*, 493 U.S. at 170 (explaining that the benefits of a collective action "depend on employees receiving accurate and *timely* notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate") (emphasis added).

At this stage, the Plaintiff is only required to make a "modest factual showing sufficient To demonstrate that he and other potential plaintiffs together were victims of a common policy or plan that violated the law." *Hunter*, 346 F. Supp. 2d at 117; *Robinson-Smith*, 2001 U.S. Dist. LEXIS 25516, at 5-6. Such a showing is "ordinarily based mostly on the parties' pleadings and

affidavits." *Hunter*, 346 F. Supp. 2d at 117.[2]

After an EEOC charge is filed, Plaintiff must demonstrate that he is "similarly situated" with other putative class members in order to maintain a collective action. This Court has looked to two similar tests to determine whether FLSA claimants are "similarly situated." In *Hyman v. First Union Corp., et al.*, 982 F. Supp. 1, 3-5 (D.D.C. 1997), this Court considered three categories:

> The first set of factors involve an examination of the alleged activities of defendant. If there is evidence that the alleged [misconduct] was part of a[n] institution wide practice, such evidence would support the use of a collective action. . . . The second group of factors evaluate the similarities of members of the proposed collective action. Weighing very strongly in favor of a collective action is the fact that the challenged employment practice . . . is the same for each of the members. . . . The third group of factors involves the extent to which members of the proposed action will rely on common evidence to prove the alleged [misconduct].

982 F. Supp. at 3-5. *See also Robinson-Smith*, 2001 U.S. Dist. LEXIS 25516, at *6 n.4 (adopting the *Hyman* test in an FLSA action).

Similarly, in *Hunter*, the court employed a three-part test, assessing whether all class members worked in the same department, division, and location; whether they advanced similar claims; and whether they sought substantially the same form of relief. *See Hunter*, 346 F. Supp. 2d at 119 (relying on *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 51 (3d Cir. 1989), *overruled in part on other grounds by Hazen Paper Co. et al. v. Biggins,* 507 U.S. 604 (1993)).

Under either test, Plaintiff and proposed Class members are similarly situated. First, the Plaintiff has alleged that the Defendants engaged in a practice and course of conduct of that systematically denied their employment, (i.e., their continuation of pay). This practice was formulated by US Airways' corporate department, headquartered in Tempe, Arizona, and was enforced by ALPA's collective bargaining agreement with US Airways. The collective bargaining agreement was formulated and enforced by ALPA and the AFL-CIO. Both are headquartered in Washington, DC. All US Airways pilots in the "Class" were subject to the same collective bargaining agreement with ALPA, and all seek

---

[2] At this stage of the litigation, the Court "need only reach a preliminary determination that potential Plaintiff are 'similarly situated,'" *Hoffman et al. v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997), which is a less stringent standard than that used during the ultimate determination that the class is proper. *Jackson v. New York Telephone Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995).

the same form of relief.  The terms of the collective bargaining agreement that are at issue in this case were systematically applied to all US Airways pilots in the proposed Class.  All members of the proposed Class were subject to the same discriminatory policy and practice.

The Defendants' conduct satisfies the first *Hyman* factor, which corresponds to *Hunter's* assessment of the similarity of the claims.  *See Hyman*, 982 F. Supp. at 3 (finding the first factor satisfied and discussing evidence of an "institution wide practice" based on a "centralized decision-making process").  Second, the Plaintiff and proposed Class members share strong similarities, satisfying the second *Hyman* factor.  This factor—the similarities of the members of the proposed collective action—relies heavily on the fact that there is a common challenged employment practice.  *See* 982 F. Supp. at 4. This factor relates both to *Hunter*'s "similar claim" element and its "same corporate department, division and location" element.  As noted above, all potential Class members were permanent US Airways pilots who were subjected to US Airways collective bargaining agreement with ALPA, and its mandatory retirement policy.  Although the proposed Class members are from different geographical locations, the conduct emanates from similar circumstances.  Moreover, the decision-making was done at the Defendants' headquarters.  Other than the amount of back pay due to each Class member, there are no variations in the Class members' individual claims.  *See Robinson-Smith*, 2001 U.S. Dist. LEXIS 25516, at 7 (stating that possible variations in individual damage claims do not defeat class certification and noting that individual loss calculations can "readily be determined later on an individual basis").

Third, common evidence will be used to demonstrate the unlawful conduct at issue, satisfying the third *Hyman* factor.  As explained above, the evidence in support of this case falls into four main categories, which are relevant to all class members: 1) payroll records; 2) testimonial evidence from employees who worked in US Airways' offices; 3) testimonial evidence from the Class members and public showing that the Defendants colluded to discriminate against the Class members and benefited from their collusion; and 4) US Airways' collective bargaining agreement with ALPA along with any other relevant company policies or procedures.

Finally, Plaintiff and the proposed Class members seek the same form of relief, satisfying the remaining consideration discussed in *Hunter*.  For these reasons, Plaintiff meets all of the elements of the

*Hunter* test as well.  The evidence submitted with this motion to establish these facts is more than sufficient to support conditional certification of the collective action at this stage: 1) affidavits from Plaintiff (Ex. C); and 2) affidavits from other pilots who want to join the Class and Subclass (Ex. D)

Notice at this time to the potential Class members is appropriate and essential.  In FLSA class actions, the statute of limitations continues to run on the unnamed Class members' claims until they join the action by filing a consent with the court.  The FLSA provides that in a collective action such as this, an action shall not commence as to opt-in Plaintiff until such Plaintiff file written consent with the court.  *See* 29 U.S.C. §§216(b), 256.

In *Hoffman,* the Supreme Court authorized district courts to facilitate notice to putative class members. 493 U.S. at 171-72.  Since this decision, trial and appellate courts, including this Court, have uniformly authorized the type of notice sought in this case.  *See Hunter,* 346 F. Supp. 2d at 121; *Robinson-Smith*, 2001 U.S. Dist. LEXIS 25516, at 8-9; *McNeil*, 1999 U.S. Dist. LEXIS 23388, at 4-7.[3] Furthermore, as recognized and relied upon by this Court, the Supreme Court has also authorized district courts to order a defendant to produce names and addresses of putative class members in a collective action.  *See Hoffman,* 493 U.S. at 170; *Hunter,* 346 F. Supp. 2d at 121; *Robinson-Smith*, 2001 U.S. Dist. LEXIS 25516, at 3, 9; *McNeil*, 1999 U.S. Dist. LEXIS 23388, at 5-10.  The Plaintiff requests both notice and such information dating back ten years from the filing of the Complaint.

Courts "have endorsed expedited notice as a means of facilitating the FLSA's broad remedial purpose of promoting efficient case management." *Hoffman*, 982 F. Supp. at 262.  *See, e.g., Shaffer v. Farm Fresh, Inc*., 966 F.2d 142, 147 (4th Cir. 1992), *cert. denied*, 113 S.Ct. 657 (1993); *Dybach v. State of Florida Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991); *Severtson v. Phillips Beverage Co*., 141 F.R.D. 276, 280 (D.Minn. 1992); *Garner v. G.D. Searle Pharmaceuticals & Co*., 802 F. Supp. 418, 424 (M.D.Ala. 1991).

Need for early notice is particularly compelling in cases, like this one, where it is "evident that a group of 'similarly situated' potential Plaintiffs exist." *See id*. at 264.  And, in light of the evidence the Plaintiff has already obtained to show a pattern of conduct and similarity among Class members, there is no need to allow time for preliminary discovery before the Class is conditionally certified and notice is

issued. Because of the nature of the Defendants' misconduct, timely notification to FLSA class members is essential here. The Defendants' misrepresentation about the age 60 rule have likely lulled many putative Class members into believing that they were not entitled to an exemption or continued employment. The Plaintiff in this case has a very strong argument that the violations alleged in this case were willful and intentional and, therefore, that Plaintiff may recover reinstatement and back pay, along with other forms of equitable relief.

**B.     Certification of the "Class" under Rule 23.**

The Plaintiff requests that this Court also certify a "Class" of pilots for Counts V and VI. In Counts V and VI, respectively, Plaintiff alleged that ALPA and the AFL-CIO breached the terms of its collective bargaining agreement and breached its duty of fair representation to the Class members under the Railway Labor Act. Plaintiff requests that this Court certify a "Class" under Rule 23(c)(1)(B) consisting of any and all person who:

A. Are former or current US Airways pilots;

B. Were subject to the terms and conditions of a collective bargaining agreement with ALPA; and

C. Were damaged by ALPA's and the AFL-CIO's breach of contract and breach of its duty of fair representation.

**1.     The Members of the "Class" Are So Numerous that Joinder is Impracticable.**

To satisfy the numerosity requirement, the Plaintiff must show that the proposed class "is so numerous that joinder of all numbers is impractical." F.R.C.P. 23(a)(1). There is "no minimum numerical threshold which must be exceeded to satisfy this requirement." *In re Qwest Savings and Investment Plan ERISA Litigation*, 2004 U.S. Dist. LEXIS 24693 at 11 (D.Colo. 2004). Instead, "the nature of the particular case, and the nature of the proposed class, are key considerations in determining whether joinder of all parties is not practical." *Id*. at 11. *See also Horn v. Associated Wholesale*

*Grocers, Inc.*, 555 F.2d 270, 273 (10th Cir. 1977) ("impracticability does not mean that joinder must have been shown to have been impossible, but only that it would have been difficult or manifestly inconvenient").

Here, discovery results will show that over 500 US Airways pilots were affected by the Defendants' breach of the collective bargaining agreement.  This number satisfies the numerosity requirement of FRCP 23(a)(1).

## 2.    Plaintiff's Claims Present Common Questions of Law and Fact.

The commonality requirement of Rule 23(a)(2) is easily met here.  Rule 23(a)(2) requires "questions of law or fact common to the class."  "The claims of the class members need not be identical for there to be commonality; either common questions of law or fact will suffice."  *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 551 (D.Colo. 1998) (citing *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982)); *Colorado Cross-Disability Coalition v. Taco Bell Corp.*, 184 F.R.D. 354, 359 (D.Colo. 1999) ("Not every issue must be common to the class so long as the claims of the Plaintiff and other class members are based on the same legal or remedial theory").  Even if "some of the facts underlying each Plaintiff's claims may vary," commonality exists where "the claims arise from the same set of broad circumstances." *Cook v. Rockwell International Corp.*, 181 F.R.D. 473, 480 (D.Colo. 1998).

In this case, Plaintiff alleged statutory violations that are common to all members of the class.  In particular, Plaintiff alleged class-wide claims under the Railway Labor Act.  The claims of the Class share questions of law and fact in each circumstance.  The facts show that all the purported Class members were subjected to the same breach.  Because the common issue was whether the Defendants engaged in disparate treatment and enforced a discriminatory policy under the ADEA, and whether the Defendant unions breached its collective bargaining agreement and duty of fair representation with US

Airways pilots, the Plaintiff has met the commonality requirement.

      **3.**      **The Named Plaintiff's Claims Are Typical of the "Class."**

The typicality requirement in Rule 23(a)(3) is also satisfied because the claims of the named Plaintiff are based on the same legal theories and course of conduct as the claims of other class members. The named Plaintiff and the Class were all current and former US Airways pilots. Of course, no two class members are identical. But "[s]o long as there is a nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class," the typicality requirement is met. *Schwartz*, 178 F.R.D. at 551. "[T]he threshold for typicality is low and the claims asserted by the class representative need only be typical of, not identical to, those of other class members." *Cook*, 181 F.R.D. at 481. Any "differing fact situations of class members" will not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory. *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982), *cert. denied*, 460 U.S. 1069 (1983)("Factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist"); *Amara*, 2002 WL 31993224, (fact that plaintiff left CIGNA's employment and then returned "does not render her claim fundamentally different from those of the other class members"). Likewise, "[d]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *Richards*, 235 F.R.D. at 173. In *Richards*, the court found that "each class member's claim arises from the same course of events and that each makes similar legal arguments to prove the defendants' liability." *Id.* See also *Cooper*, supra, Ex. 3 at 7 (typicality met where "[a]ll members of the class have a common interest in maximizing their benefits under the Plan by compelling Defendants to comply with the law").

In this instance, the named Plaintiff does not assert claims that are any different from those of

the members of the proposed Class.  While the amount of back pay may differ from pilot to pilot, their claims are identical.

### 4.    Plaintiff Will Fairly and Adequately Protect the "Class'" Interests.

Rule 23(a)(4) requires that the proposed class representatives fairly and adequately protect the interests of the class they wish to represent. "This requirement dovetails with the last in that typicality ensures that the class representatives' claims resemble the class claims to an extent that adequate representation can be expected." *Vaszlavik*, supra, 183 F.R.D. at 271.  The class representatives must (1) have common interests with the class members and (2) the class representatives must vigorously prosecute the interests of the class through qualified counsel.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Schwartz*, supra, 178 F.R.D. at 552.  A presumption of adequate representation exists, and any doubt regarding whether this requirement is fulfilled "should be resolved in favor of the upholding the class, subject to later possible reconsideration."  *Schwartz*, 178 F.R.D. at 552.

No conflicts exist between the interests of the named Plaintiff and the interests of putative Class members.  As described above, the named does not assert claims that are different from those of the members of the proposed Class.  Plaintiff has spent a great deal of time compiling relevant data, discussing these issues with his colleagues, and researching his case.  Given these factors, Plaintiff is qualified to represent the Class of US Airways pilots.

"The adequacy requirement of Rule 23(a)(4) also requires th[e] court to determine whether Plaintiff's attorneys are qualified, experienced and able to conduct the proposed litigation." *Steiner v. Ideal Basic Industries, Inc.*, 127 F.R.D. 192, 194 (D.Colo. 1987).  Plaintiff is represented by lead counsel Rosemary Dettling of Washington, DC, of the Federal Employee Legal Services Center

(FELSC). Ms. Dettling has handled employment cases in the federal and private sector since 1991. She

is assisted by co-counsel, Joanne Donohue. Ms. Donohue is a sole practitioner in Leesburg, Virginia.

Ms. Donohue has litigated employment cases for over twenty years. Because Plaintiff's counsel has

substantial experience representing plaintiffs and employers in employment discrimination matters,

they are qualified to represent the Class.

C.    The Proposed "Subclass" Satisfies the Requirement of FRCP 23.

Approval also is warranted for the Subclass proposed under Rule 23. The Subclass consists of

current and former commercial aircraft pilots from US airlines (i.e., United Airlines, Delta Airlines,

Continental Airlines, among others) who have suffered damages due to ALPA's breach of contract and

breach of duty of fair representation. The Subclass brings suit under the Railway Labor Act, 45 U.S.C.

§§ 151 *et seq.* The Subclass pilots have contemplated filing their own lawsuits against ALPA, but

would prefer to participate in this suit so as to avoid multiple findings and expensive litigation.

Certification of the Subclass is appropriate because: 1) ALPA has been the exclusive bargaining

representative for 90% of commercial US pilots; 2) the Subclass pilots indicated that they want to join

the class against ALPA; 3) the Subclass have common allegations; 4) and the Subclass was forced to

accept the terms of ALPA's monopoly bargaining contract with their respective airlines and forced to

accept all of its provisions regarding salary, benefits, seniority, and pensions. Plaintiff and members of

the Subclass have complied with the necessary administrative prerequisites to suit. All such filings

contained information from which ALPA was placed on notice that the claims were filed on behalf of

all persons similarly situated, and that collective and class litigation was contemplated.

Plaintiff requests that this Court certify a Subclass under Rule 23(c)(1)(B) consisting of any and

all person who:

A. Are former or current US commercial airline pilots;

16

B. Were subject to the terms and conditions of a collective bargaining agreement with ALPA; and

C. Were damaged by ALPA's breach of contract and breach of duty of fair representation.

**1.     The Members of the "Subclass" Are So Numerous that Joinder is Impracticable.**

Indisputably, the Subclass, numbering about 3,000 pilots across the nation has sufficient members to make joinder impracticable.

**2.     Common Questions of Law and Fact Exist for The "Subclass."**

The members of the Subclass share common questions of law and fact.  Factually, Plaintiff Carswell and each Subclass member are (or were) subject to the terms and conditions of a collective bargaining agreement with ALPA.  While the collective bargaining agreements had minor differences (i.e., they named different airlines as the "employer"), the terms and conditions that gave rise to the members' damages were identical amongst all US commercial pilots.

Under similar facts, courts have found class certification appropriate for breach of contract claims.  *See e.g., Bjustrom v. Trust One Mortgage Corp.*, 199 F.R.D. 346, 348 (W.D. Wash. 2001) (certifying class whose claims raise the issue of the proper "interpretation of a form contract"); *Mortimore v. FDIC*, 197 F.R.D. 432, 436 (W.D. Wash. 2000) (certifying class challenging defendant's failure to apply a provision in their contracts despite defendant's argument that the laws of fifty states concerning contractual interpretation would have to be applied); *Kleiner v. First Nat'l Bank*, 97 F.R.D. 683, 692 (N.D. Ga. 1983) ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such") (citing numerous cases).

**3.     The Subclass Representative's Claims are Typical of the "Subclass'" Claims.**

The typicality requirement in Rule 23(a)(3) is also satisfied here because the claims of the

named Plaintiff are based on the same legal theories and course of conduct as the claims of the Subclass

members. The named Plaintiff and the Subclass are all current and former US commercial airline pilots.

The Subclass members were subjected to, and damaged by, terms and conditions of collective bargaining

agreements with ALPA. While no two Subclass members are identical, there is a nexus between the

class representative's claims and the common questions of fact or law which unite the Subclass.

Because each Subclass member's claim arose from the same course of events as the Plaintiff and is

subject to the same legal arguments, typicality is met with respect to the Subclass. In this instance,

ALPA's vocal, public objections to raising the age 60 ceiling, and its public objection to exemptions,

affected all Subclass members.

### 4.    The Proposed Subclass will be Adequately Represented.

Plaintiff will adequately represent the Subclass for the same reasons discussed above. The

Subclass representative has shown he has the same interests as other Subclass members and has selected

experienced counsel. The Subclass therefore meets all of the requirements of Rule 23(a). For these

reasons, the proposed Subclass qualifies for certification under Rule 23(b)(3).

### D.    Approval and Facilitation of Plaintiff's Proposed Notice is Appropriate.

The Plaintiff has provided the Court with a proposed combined Notice and Consent form for

approval pursuant to Rule 23 and the ADEA. *See* Ex. A, Ex. B. If the Court certifies some counts

under Rule 23(b)(3) as Plaintiff has requested, this will trigger the notice requirement set out in Rule

23(c)(2). That rule instructs courts to "direct to the members of the [23(b)(3)] class the best notice

practicable under the circumstances, including individual notice to all members who can be identified

through reasonable effort." Rule 23(c)(2). As discussed above, the Court may also facilitate and

approve the form of the notice and consent for an ADEA collective action. Accordingly, Plaintiff

18

requests the Court to (1) approve the form of the proposed combined Notice and Consent to Join Suit;

(2) approve the method of providing the Notice to the Class and Subclass; and (3) order the Defendants

to provide Plaintiff with computer readable data to facilitate sending notice.

### 1.    The Form of the Proposed Combined Notice and Consent Satisfy the Requirements of Due Process, Rule 23 and the ADEA.

The class action procedure is subject to the requirements of due process because it has a *res*

*judicata* effect on the members of the class.  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S.

306, 314 (1950).  A class action notice that affects substantial rights "must be sufficiently informative

and give sufficient opportunity for response, to satisfy due process." *Kyriazi v. Western Elec. Co.*, 647

F.2d 388, 395 (3d Cir. 1981) (citing *Mullane*).  In addition, Rule 23(c)(2) directs the court to include

certain specific content in a notice to a Rule 23(b)(3) class: The notice shall advise each member that

(A) the court will exclude the member from the class if the member so requests by a specified date; (B)

the judgment, whether favorable or not, will include all members who do not request exclusion; and (C)

any member who does not request exclusion may, if the member desires, enter an appearance through

counsel.  Fed. R. Civ. P. 23(c).  Potential Plaintiffs in an ADEA collective action need to receive

"accurate and timely notice concerning the pendency of the collective action, so that they can make

informed decisions about whether to participate." *Sperling*, 493 U.S. at 170.  Such a notice should

provide a reasonable cutoff date for the filing of consents.  *Id.* at 172.

The content of the Notice provided to the class members here meets the requirements of due

process, Rule 23 and the ADEA.  It provides information about the pendency of the action, the nature

of the claims and the steps the Class and Subclass members must take to "opt out" of the Rule 23(b)(3)

counts and "opt in" to the ADEA action.  It contains the explicit content mandated by Rule 23(b)(3).

While the deadlines for response to the Notice have not yet been determined, Plaintiff will ask the

Court to set those deadlines in the context of case management orders, and they will be stated clearly in

the Notice.  The neutral language of the Notice does not create any appearance of judicial endorsement.

In sum, by reading the Notice, class members will be able to make an independent, informed decision

about whether and how to participate in the lawsuit and will understand the consequences of their

choices.

> **2.      Delivery of the Notice by United States Mail to the Last Known Address Is the "Best Notice Practicable."**

All of the potential Class and Subclass members 1) are or were in the service of US Airways, or

2) are or were subject to the terms and conditions of a collective bargaining agreement with ALPA.  US

Airways and ALPA therefore can individually identify them, even though the Class and Subclass are

large.  Under these circumstances, individual notice is appropriate because the Class and Subclass

members "can be identified through reasonable effort."  Rule 23(c)(2).  Plaintiff therefore requests the

Court to approve delivery of the Notice by mailing, via First Class United States Mail, postage

prepaid, a copy of the Notice to each class member at his or her last known address.  The United States

Supreme Court has found this method of providing notice acceptable as the "best notice practicable" for

a class action such as this.  The Notice and Consent form also will be posted on a website maintained

by class counsel, www.age60classaction.com.

> **3.      US Airways and ALPA Should Provide Necessary Data.**

US Airways and ALPA possess the names of the employee members of the proposed Class and

Subclass and other objective information needed to achieve proper notice to all potential Class and

Subclass members.  Plaintiff requests the Court to order US Airways and ALPA to provide him with

the following computer-readable data for each potential class member:

1) first, middle and last names

2) last known home address

3) last known office address

4) last known home telephone number

5) last known office telephone number

6) date of birth

7) social security number

8) date of termination

9) type of contract under which employee worked

10) name of airline

This data will allow the Plaintiff to identify the Class and Subclass members. It also provides information that will assist in finding Class and Subclass members if they cannot be located at their last known home or office address. The Court has the authority to order US Airways and ALPA to produce this data pursuant to Rule 23(d)(2) and (5), which provide that the Court may make appropriate orders directing the manner of providing notice and dealing with any other procedural matters. Case law related to collective actions also affirms the appropriateness of such an order. *See Sperling*, 493 U.S. at 168-70 (affirming district court's requirement that defendant produce data to facilitate notice to ADEA class).

### 4.    Plaintiff's Counsel Will Follow-Up on the Notices.

Plaintiff's counsel will pay the cost of the mailing and related services. In addition to notifying potential Class and Subclass members by mail, Plaintiff will provide notice through the Internet. *See*

*Geller v. Markham*, 481 F.Supp. 835 (D.Conn. 1979), *aff'd in part, rev'd in part on other grounds*, 635

F.2d 1027 (2d Cir. 1980), *cert. denied*, 451 U.S. 945 (1981) (newspaper notice given in addition to

mailing).

Plaintiff proposes that the time limit for consents will be 90 days after the mailing is complete.

See *Sperling*, 24 F.3d 463, 472 (3d Cir. 1994) (district court can set "reasonable cut-off date for closing

the opt-in class"); *Rosen v. Reckitt & Colman, Inc.*, 1991 U.S. Dist. LEXIS 14663, 1 (S.D.N.Y. 1991)

(adopting 90-day limit).  If no response is received in the first 45 days, Plaintiff will mail reminder

notices to ensure that participants have the notice and respond on a timely basis.  If notices are required

to be re-mailed because any addresses continue to be out of date, the time period for responding will

start with the date of the re-mailed notice.

## IV.    Conclusion.

WHEREFORE, Plaintiff respectfully request that this Court conditionally certify a Class of "all

persons who are or have been employed by US Airways as pilots dating back to 1997 and who are or have

been subject to a mandatory retirement policy and collective bargaining agreement with the Air Line Pilots

Association, International"; conditionally certify a Subclass of "all commercial pilots in the United States

who are or have been subject to the terms and conditions of a collective bargaining agreement with the Air

Line Pilots Association, International, dating back to 1997"; authorize notices in this action to all members

of the above described "Class" and "Subclass"; 4) Order US Airways to produce to Plaintiff the names

and last known addresses of all current and former US Airways pilots dating back to 1997; and 5) Order

ALPA to produce to Plaintiff the names and last known addresses of all commercial pilots in the United

States who are or have been subject to the terms and conditions of a collective bargaining agreement with

ALPA dating back to 1997.

DATED: July 5, 2007

Respectfully Submitted,

*/s/  Rosemary Dettling*
Rosemary Dettling, Esq. (DC Bar 441483)
3120 Brandywine Street, NW
Washington, DC 20008
(202) 362-1888 Telephone
(888) 241- 6719 Facsimile

*Counsel for Plaintiff,*
 *Gene H. Carswell*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 5th day of July, 2007, the foregoing Plaintiff's Motion for Conditional Class Certification, Issuance of Notice and an Order for Certain Discovery and attachments were sent to the below addresses by the delivery method indicated:

Clerk's Office
United States District Court for the District of Columbia
By electronic document filing (ECF) system

David M. Semanchik, Esquire
Air Line Pilots Association, International
1625 Massachusetts Avenue, NW
Washington, DC 20036
By ECF

Leon Dayan, Esquire
BREDHOFF & KAISER, PLLC
805 Fifteenth Street, NW
Washington, DC 20005-2207
Counsel for American Federation of Labor and Congress of
  Industrial Organization
815 16th Street, NW
Washington, DC 20006
By ECF

Thomas B. Almy, Esquire
Mark A. Dombroff, Esquire
Mark E. McKinnon, Esquire
DOMBROFF GILMORE JACQUES & FRENCH, PC
1676 International Drive, PC
McLean, Virginia 22102
Counsel for US Airways Group, Inc.
By ECF

Erin Flaherty Lewin, Esquire
Entered *Pro Hac Vice*
US Airways Group, Inc.
111 W. Rio Salado Parkway
Tempe, Arizona 85281
By ECF

*/s/ Rosemary Dettling*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GENE H. CARSWELL et al<br>individually and on behalf of<br>all others similarly situated,<br><br>Plaintiff,<br><br><br>v.<br><br><br>AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,<br>US AIRWAYS GROUP, INC., and AMERICAN<br>FEDERATION OF LABOR AND<br>CONGRESS OF INDUSTRIAL ORGANIZATION.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br>1:07-cv-00651 |

**[PROPOSED] ORDER CERTIFYING CLASS AND
AUTHORIZING CLASS NOTICE AND LIMITED DISCOVERY**

This matter having come before the Court upon the Motion of Plaintiff, Gene H. Carswell,

individually and on behalf of a class of persons, for conditional class certification, issuance of notice, and

an order for certain discovery.  IT IS HEREBY ORDERED AS FOLLOWS:

1)    The Court certifies a collective action under 29 USC 216(b) and class action under FRCP

23 defined as "all persons who are or have been employed by US Airways as pilots dating back to

1997 and who are or have been subject to a mandatory retirement policy and collective bargaining

agreement with the Air Line Pilots Association, International."

2)    The Court certifies a Subclass of "all commercial pilots in the United States who are or

have been subject to the terms and conditions of a collective bargaining agreement with the Air

Line Pilots Association, International, dating back to 1997."

3)      The Court approves the proposed Class Notice submitted with Plaintiff's Motion.

4)      The Court approves the proposed Subclass Notice submitted with Plaintiff's Motion.

5)      The Court orders US Airways to produce to Plaintiff the names and last known addresses of all current and former US Airways pilots dating back to 1997.

6)      The Court orders the Air Line Pilots Association, International, to produce to Plaintiff the names and last known addresses of all commercial pilots in the United States who are or have been subject to the terms and conditions of a collective bargaining agreement with the Air Line Pilots Association, International, dating back to 1997.


Dated: _____        _____
                                                Judge Reggie B. Walton
                                                United States District Judge

EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GENE H. CARSWELL et al<br>individually and on behalf of<br>all others similarly situated,<br><br>Plaintiff,<br><br><br>v.<br><br><br>AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,<br>US AIRWAYS GROUP, INC., and AMERICAN<br>FEDERATION OF LABOR AND<br>CONGRESS OF INDUSTRIAL ORGANIZATION.<br><br><br>Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br>1:07-cv-00651<br><br>Judge Reggie B. Walton |

**NOTICE OF LAWSUIT AGAINST THE AIR LINES ASSOCIATION
INTERNATIONAL, US AIRWAYS GROUP, INC., AND THE AMERICAN
FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATION**

A court has authorized this Notice. This is not an advertisement. Please review this Notice carefully, as it details certain legal rights that you may have.

This Notice is to inform you of your right to join a lawsuit filed against US Airways, the Air Line Pilots Association, International, and the American Federation of Labor and Congress of Industrial Organization. The lawsuit seeks to recover backpay, damages, and injunctive and declaratory relief. If you wish to join this suit, you must complete and return the attached Notice of Consent to the address indicated below by _____.

You may participate in this lawsuit even if you have filed a formal or informal charge with the Equal Employment Opportunity Commission (EEOC).

**What This Lawsuit Is About.**

The Plaintiff in his lawsuit alleged that that he and similarly situated US Airways pilots were discriminated against under the ADEA on the basis of their age when they were terminated from their employment at US Airways upon their 60th birthday. Plaintiff alleged that US Airways colluded with ALPA and the AFL-CIO to keep them from working past their 60th birthday and routinely denied exemption requests. Plaintiff further argued that ALPA and the AFL-CIO breached its duty of fair representation and breached its collective bargaining agreement under the Railway Labor Act. Plaintiff seeks to recover backpay, damages, and injunctive and declaratory relief.

As a current or former US Airways pilot, you have been identified as an individual who may be entitled to damages. The proposed class in this action is defined as "all persons who are or have been employed by US Airways as pilots dating back to 1997 and who are or have been subject to a mandatory retirement policy and collective bargaining agreement with the Air Line Pilots Association, International."

Pursuant to the rules that govern these particular allegations, you that the right to "opt in" to the age discrimination class allegations. To opt in, you need to file a consent form with the Court. A consent form is attached to this Notice.

If you decide you do not want to participate as a "class" member in the breach of contract and breach of duty of fair representation allegations, you will need to "opt out" of the case. The court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel. Fed. R. Civ. P. 23(c).

**Protection Against Retaliation.**

Federal law forbids the Defendants from retaliating or discriminating against you in any way if you decide to join this lawsuit.

**How To Join This Lawsuit.**

Enclosed with the Notice are a Notice of Consent and envelope addressed to the attorney who represent the Plaintiff. If you decide to join this lawsuit, you must complete and sign the notice of Consent form, postmarked on or before _____ 2007, and mail it to:

Rosemary Dettling, Esq.
3120 Brandywine Street, NW
Washington, DC 20008

If your Notice of Consent if postmarked after _____, 2007, you will not be allowed to join the lawsuit.

**The Legal Effect Of Joining Or Notice Joining This Lawsuit.**

If you decide to join this lawsuit, you will be bound by any judgment entered buy the Court. While the lawsuit is proceeding, you may have to answer written questions under oath or to give sworn testimony.

**The Court Has Not Made Any Decision About The Merits Of Plaintiff's Claims.**

This Notice is issued to inform potential class members of their right to participate in this case. Although the Court has approved this Notice, it has not yet made any decision as to the merits of the

claims and defenses of each party.

_____

Judge Reggie B. Walton
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GENE H. CARSWELL et al<br>individually and on behalf of<br>all others similarly situated,<br><br>Plaintiff,<br><br><br>v.<br><br><br><br>AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,<br>US AIRWAYS GROUP, INC., and AMERICAN<br>FEDERATION OF LABOR AND<br>CONGRESS OF INDUSTRIAL ORGANIZATION.<br><br><br>Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)  1:07-cv-00651<br>)<br>)<br>)  Judge Reggie B. Walton<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CONSENT FORM**

I, _____, consent to be a Plaintiff in the above-captioned case as a member of the Class.

_____
Name

_____
_____
_____
Address

_____
Phone Number

_____
Date

EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GENE H. CARSWELL et al<br>individually and on behalf of<br>all others similarly situated,<br><br>Plaintiff,<br><br><br>v.<br><br><br>AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,<br>US AIRWAYS GROUP, INC., and AMERICAN<br>FEDERATION OF LABOR AND<br>CONGRESS OF INDUSTRIAL ORGANIZATION.<br><br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br>1:07-cv-00651<br><br>Judge Reggie B. Walton |

**NOTICE OF LAWSUIT AGAINST THE AIR LINES ASSOCIATION
INTERNATIONAL, US AIRWAYS GROUP, INC., AND THE AMERICAN
FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATION**

A court has authorized this Notice.  This is not an advertisement.  Please review this Notice carefully, as it details certain legal rights that you may have.

This Notice is to inform you of your right to join a lawsuit filed against US Airways, the Air Line Pilots Association, International, and the American Federation of Labor and Congress of Industrial Organization.  Plaintiff filed an action on behalf of a Subclass of commercial airline pilots.  The Subclass consists of current and former US commercial airline pilots who were subject to the terms and conditions of a collective bargaining agreement with ALPA and who were damaged by ALPA's breach of the collective bargaining agreement and breach of duty of fair representation.  The lawsuit seeks to recover backpay, damages, and injunctive and declaratory relief.  If you wish to join this suit, you must complete and return the attached Notice of Consent to the address indicated below by _____.

You may participate in this lawsuit even if you have filed a formal or informal charge with the Equal Employment Opportunity Commission (EEOC).

As a current or former US commercial airline pilot, you have been identified as an individual who may be entitled to damages. The proposed Subclass in this action is defined as "all commercial pilots in the United States who are or have been subject to the terms and conditions of a collective bargaining agreement with the Air Line Pilots Association, International, dating back to 1997."

If you decide you do not want to participate as a "Subclass" member in the breach of contract and breach of duty of fair representation allegations, you will need to "opt out" of the case. The court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel. Fed. R. Civ. P. 23(c).

**Protection Against Retaliation.**

Federal law forbids US Airways from retaliating or discriminating against you in any way if you decide to join this lawsuit.

**How To Join This Lawsuit.**

Enclosed with the Notice are a Notice of Consent and envelope addressed to the attorney who represent the Plaintiff. If you decide NOT to join this lawsuit, you must inform the following attorney by mail on or before _____ 2007, and mail it to:

Rosemary Dettling, Esq.
3120 Brandywine Street, NW
Washington, DC 20008

**The Legal Effect Of Joining Or Notice Joining This Lawsuit.**

If you decide to join this lawsuit, you will be bound by any judgment entered by the Court. While the lawsuit is proceeding, you may have to answer written questions under oath or to give sworn testimony.

**The Court Has Not Made Any Decision About The Merits Of Plaintiff's Claims.**

This Notice is issued to inform potential class members of their right to participate in this case. Although the Court has approved this Notice, it has not yet made any decision as to the merits of the claims and defenses of each party.

_____
Judge Reggie B. Walton
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GENE H. CARSWELL et al<br>individually and on behalf of<br>all others similarly situated,<br><br>Plaintiff,<br><br><br>v.<br><br><br>AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,<br>US AIRWAYS GROUP, INC., and AMERICAN<br>FEDERATION OF LABOR AND<br>CONGRESS OF INDUSTRIAL ORGANIZATION.<br><br>Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No.<br>)    1:07-cv-00651<br>)<br>)<br>)    Judge Reggie B. Walton<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CONSENT FORM**

I, _____, consent to be a Plaintiff in the above-captioned case as a member of the
Subclass.


_____
Name


_____
_____
_____
Address


_____
Phone Number


_____
Date

EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GENE H. CARSWELL et al                    )
individually and on behalf of             )
all others similarly situated,            )
                                          )
                                          )
            Plaintiff,                     )
                                          )
                                          )
                                          )
                                          )       Civil
                                          )   Action No.
                        v.                )       1:07-
cv-00651
                                          )
                                          )
                                          )
      Judge Reggie B. Walton
AIR LINE PILOTS ASSOCIATION, INTERNATIONAL. )
US AIRWAYS GROUP, INC., and AMERICAN       )
FEDERATION OF LABOR AND                    )
CONGRESS OF INDUSTRIAL ORGANIZATION.       )
                                          )
                                          )
            Defendants.                    )
                                          )
_____   )

**Declaration of Gene H. Carswell**

I, Gene H. Carswell, declare as follows:

1.      My name is Gene H. Carswell.  I am over 18 years of age and am legally

2

competent to make this Declaration. The statement is based on my personal knowledge.

2.    I have carefully read over this Declaration before signing it, and it represents my statement. I understand that in signing this Declaration. I am swearing to tell the truth under penalty of perjury, and that it may be used in the lawsuit against the Air Lines Pilots Association. International, US Airways Group. Inc., and the American Federation of Labor and Congress of Industrial Organization. I also understand that I may be called as a witness in this matter and, if so, I would be able to testify competently about the facts that are in this Declaration.

3.    Starting in April 1977, I began working for Pacific Southwest Airlines. as a commercial air line pilot. They subsequently merged with US Air Group. Then shortly thereafter US Air Group changed its name to US Airways. Inc.

4.    I was terminated from my employment in February 2007.

5.    On Dec 10th I requested an exemption from the FAA on the Age 60 rule. On Feb 6th 2007, I requested that US Airways support my request for an exemption to the FAA's age 60 Rule. To this date and to my knowledge US Airways has not supported any pilots request for an exemption including my request. Retired US Airways pilot Steven Avery wrote me and stated that he was contacted by US Airways and US Airways suggested they might support his request for exemption if he would drop his EEOC charges. ALPA also did not support my request for an exemption they did not respond to my letter sent to their MEC representative on Dec 17th 2006, and thru their representative on

3

Jan 8th Capt. Tracy Parrella informed me that they would not support my
request for an exemption/wavier.

6.      On Jan10th, 2007, I filed several charges with the EEOC at the EEOC''s
Phoenix office, Washington, DC Office and the Philadelphia Office. Then
additionally at the Greenville, SC office which was subsequently forwarded to
the Charlotte, NC regional office. EEOC Attorney Chester Bailey (Phoenix),
EEOC attorney Carol Miaskoff (Washington DC) and senior attorney advisor
Kerry Leibig (Washington DC) gave me advice, encouragement and assistance
in the preparation of these documents. This included the locations to file the
charges etc. so as to put all defendants on notice that I contemplated class
litigation. I even informed the EEOC as to who my attorney would be.


7.      I filed a grievance with ALPA on Jan 8th, 2007. I followed the protocol
of contacting the Local (LEC) grievance chairman then proceeded to the Master
executive level using every administrative option available to resolve my
grievance with this issue. After several phone calls. ALPA had their grievance
chairman contact me through e-mail and through phone contact. Her name is
Captain Tracy Parrella and she was the US Airways Captain grievance
chairman.

8. On Jan 8th during this process, she informed me that ALPA "did not support my grievance."
Quoting her "Therefore, under the well established policies of labor arbitration, your grievance will fail
each and every test as outlined in the "bible" of arbitration *Elkouri & Elkouri*.

Therefore, I must again reiterate what I have stated previously," **the Association will not support your**

4

grievance", as it is my opinion as well as that of our attorney's that your argument lacks merit. However, with that being said, as I stated to you last week, we will help you with the preparation and give you access to the grievance process. "ALPA failed to even follow through on the process of allowing me to present my own grievance and on Jan 14th 2007cut my communications with the ALPA web site. This restricts any pilot ability to log on as an active pilot even though my retirement was not affective until Feb 1st 2007. Additionally on Dec 17th, 2007 I wrote to my ALPA MEC Chairman requesting intervention from ALPA on my behalf and received NO response. Copies of the letter were sent to Ms Marion Blakey FAA Administrator and several key people in ALPA and the EEOC.

9.      During the relevant time period in this Complaint, ALPA and the AFL-CIO were responsible for acting on behalf of pilots at US Airways. They were responsible for negotiating employment terms and conditions with US Airways on behalf of its member pilots.

10.     However, instead of aiding US Airways pilots, ALPA and the AFL-CIO contracted away my rights under the ADEA. ALPA and AFL-CIO lobbied intensely to keep US Airways pilots from working beyond the age of 60 – in any position.

11.     Prior to my termination, I asked US Airways to place me in another position, but it refused to do so and said that I should take the issue up with ALPA. Additionally they suggested that I log on to US Airways Hub website so as to inquire as any positions that might be open company wide. The US Airways Personal director (Jennifer Tonge) spoke to me on several occasions apologizing as to computer problems and as to why the US Airways HUB web

5

site was "down". As a result, no positions were made available to me.

12.    ALPA and AFL-CIO breached my collective bargaining agreement
when they ignored their requirement to grieve my termination on Jan 30th.
When they cutoff my communications on Jan 14th with the ALPA National web
site prior to my termination Feb1st even though they affirmed my ACTIVE and
GOOD status on Jan 11th 2007 thus disallowing access to ALPA officers and
ALPA legal assistance. ALPA required my termination while it allowed code
share agreements with international carriers and US Airways that clearly had
pilots over the age of 60 participating in revenues generated to enhance US
Airways bottom line while disallowing me that same opportunity. ALPA
representatives failed to return my calls

13.    ALPA and the AFL-CIO breached its duty of fair representation when
it...allowed other ALPA affiliates to fly beyond age 60 and actually negotiated
Collective Bargaining Agreements with these carriers. ALPA continued to do
this while maintaining the safety pretext that has never been substantiated
medically or statistically. ALPA continued this pretext in collaboration with US
Airways throughout 2006. This ruse was obviously pretextual and in my
opinion is a violation of RICO laws. Aviation safety interest within the United
States is charged to the guard of the FAA. The FAA, DOT have allowed pilots
over age 60 to fly commercially for years. The FAA pilots have been granted
that same privilege. Even international copilots have been allowed to fly over
age 60 with in the United States for decades. ALPA especially ALPA president
Captain Duane E. Woerth made this pretext argument July 19th 2005 to the

6

aviation subcommittee of the United Sates Senate stating Age 60 is a "safety
issue" citing no medical empirical data. This pretext was maintained by ALPA
and the Airlines to damage the older pilots so as to provide economic gain for
the Airlines and ALPA while maintaining a younger pilot work force with less
wages and less medical claims. This enhanced ALPA also with substantial
economic support base from the younger pilots that stood to gain more from
promotions accelerated through early terminations of senior Captains.
The above referenced speech affected all of the airlines that ALPA represented
thus ALPA did not provide constitutional mandated  equality in regard to age by
lobbying ,as this example illustrates, for my job removal through out  several
years, but primarily 2005 and 2006 , and ALPA didn't provide equal
representation of older pilots as it failed to lobby for legislation to provide for
my welfare and actually lobbied for legislation to promote my removal from my
job which is in direct opposition to the ALPA constitution and the AFL-CIO
constitution. ALPA failed to approach management concerning the Age 60 rule
when management stated that ALPA was the key (see June 16th letter from US
Airways), when they refused to act on a poll of the pilot  membership to oppose
the Age 60 rule (mid 2005). The Airlines and ALPA's apparent collusion was
omnipresent.

14.     Pilots at numerous other airlines have been subject to the exact same
breach of duty of fair representation claim and breach of collective bargaining
claims.

15.     In total, over 3000 pilots were subject to collective bargaining

agreements with ALPA and were damaged by ALPA's breach of the collective

bargaining agreement and breach of its duty of fair representation. All of the

claims are the same.

Date July 4th, 2007                        Gene H. Carswell

EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GENE H. CARSWELL et al<br>individually and on behalf of<br>all others similarly situated, | )<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>)<br>)<br>)<br>) |
| v. | )        Civil<br>Action No.<br>)        1:07- |
| cv-00651 | )<br>)<br>) |
| Judge Reggie B. Walton<br>AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,<br>US AIRWAYS GROUP, INC., and AMERICAN<br>FEDERATION OF LABOR AND<br>CONGRESS OF INDUSTRIAL ORGANIZATION, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

**Declaration of Gene H. Carswell**

I, Gene H. Carswell, declare as follows:

1.    My name is Gene H. Carswell.  I am over 18 years of age and am legally

2

competent to make this Declaration. The statement is based on my personal
knowledge.

2.      I have carefully read over this Declaration before signing it, and it
represents my statement. I understand that in signing this Declaration. I am
swearing to tell the truth under penalty of perjury, and that it may be used in the
lawsuit against the Air Lines Pilots Association. International, US Airways
Group. Inc., and the American Federation of Labor and Congress of Industrial
Organization. I also understand that I may be called as a witness in this matter
and, if so, I would be able to testify competently about the facts that are in this
Declaration.

3.      Starting in April 1977, I began working for Pacific Southwest Airlines.
as a commercial air line pilot. They subsequently merged with US Air Group.
Then shortly thereafter US Air Group changed its name to US Airways. Inc.

4.      I was terminated from my employment in February 2007.

5.      On Dec 10th I requested an exemption from the FAA on the Age 60
rule. On Feb 6th 2007, I requested that US Airways support my request for an
exemption to the FAA's age 60 Rule. To this date and to my knowledge US
Airways has not supported any pilots request for an exemption including my
request. Retired US Airways pilot Steven Avery wrote me and stated that he
was contacted by US Airways and US Airways suggested they might support
his request for exemption if he would drop his EEOC charges. ALPA also did
not support my request for an exemption they did not respond to my letter sent
to their MEC representative on Dec 17th 2006, and thru their representative on

3

Jan 8th Capt. Tracy Parrella informed me that they would not support my
request for an exemption/waiver.

6.     On Jan 10th, 2007, I filed several charges with the EEOC at the EEOC's
Phoenix office, Washington, DC Office and the Philadelphia Office. Then
additionally at the Greenville, SC office which was subsequently forwarded to
the Charlotte, NC regional office. EEOC Attorney Chester Bailey (Phoenix),
EEOC attorney Carol Miaskoff (Washington DC) and senior attorney advisor
Kerry Leibig (Washington DC) gave me advice, encouragement and assistance
in the preparation of these documents. This included the locations to file the
charges etc. so as to put all defendants on notice that I contemplated class
litigation. I even informed the EEOC as to who my attorney would be.


7.     I filed a grievance with ALPA on Jan 8th, 2007. I followed the protocol
of contacting the Local (LEC) grievance chairman then proceeded to the Master
executive level using every administrative option available to resolve my
grievance with this issue. After several phone calls. ALPA had their grievance
chairman contact me through e-mail and through phone contact. Her name is
Captain Tracy Parrella and she was the US Airways Captain grievance
chairman.

8. On Jan 8th during this process, she informed me that ALPA "did not support my grievance."
 Quoting her "Therefore, under the well established policies of labor arbitration, your grievance will fail
each and every test as outlined in the "bible" of arbitration *Elkouri & Elkouri*.

Therefore, I must again reiterate what I have stated previously," **the Association will not support your**

4

grievance", as it is my opinion as well as that of our attorney's that your argument lacks merit.
However, with that being said, as I stated to you last week, we will help you with the preparation and
give you access to the grievance process. "ALPA failed to even follow through on the process of
allowing me to present my own grievance and on Jan 14th 2007cut my communications with the ALPA
web site. This restricts any pilot ability to log on as an active pilot even though my retirement was not
affective until Feb 1st 2007. Additionally on Dec 17th, 2007 I wrote to my ALPA MEC Chairman
requesting intervention from ALPA on my behalf and received NO response. Copies of the letter were
sent to Ms Marion Blakey FAA Administrator and several key people in ALPA and the EEOC.

9.      During the relevant time period in this Complaint, ALPA and the AFL-
CIO were responsible for acting on behalf of pilots at US Airways. They were
responsible for negotiating employment terms and conditions with US Airways
on behalf of its member pilots.

10.     However, instead of aiding US Airways pilots, ALPA and the AFL-CIO
contracted away my rights under the ADEA. ALPA and AFL-CIO lobbied
intensely to keep US Airways pilots from working beyond the age of 60 – in
any position.

11.     Prior to my termination, I asked US Airways to place me in another
position, but it refused to do so and said that I should take the issue up with
ALPA. Additionally they suggested that I log on to US Airways Hub website so
as to inquire as any positions that might be open company wide. The US
Airways Personal director (Jennifer Tonge) spoke to me on several occasions
apologizing as to computer problems and as to why the US Airways HUB web

5

site was "down". As a result, no positions were made available to me.

12.    ALPA and AFL-CIO breached my collective bargaining agreement when they ignored their requirement to grieve my termination on Jan 30th. When they cutoff my communications on Jan 14th with the ALPA National web site prior to my termination Feb1st even though they affirmed my ACTIVE and GOOD status on Jan 11th 2007 thus disallowing access to ALPA officers and ALPA legal assistance. ALPA required my termination while it allowed code share agreements with international carriers and US Airways that clearly had pilots over the age of 60 participating in revenues generated to enhance US Airways bottom line while disallowing me that same opportunity. ALPA representatives failed to return my calls

13.    ALPA and the AFL-CIO breached its duty of fair representation when it...allowed other ALPA affiliates to fly beyond age 60 and actually negotiated Collective Bargaining Agreements with these carriers. ALPA continued to do this while maintaining the safety pretext that has never been substantiated medically or statistically. ALPA continued this pretext in collaboration with US Airways throughout 2006. This ruse was obviously pretextual and in my opinion is a violation of RICO laws. Aviation safety interest within the United States is charged to the guard of the FAA. The FAA, DOT have allowed pilots over age 60 to fly commercially for years. The FAA pilots have been granted that same privilege. Even international copilots have been allowed to fly over age 60 with in the United States for decades. ALPA especially ALPA president Captain Duane E. Woerth made this pretext argument July 19th 2005 to the

6

aviation subcommittee of the United Sates Senate stating Age 60 is a "safety
issue" citing no medical empirical data. This pretext was maintained by ALPA
and the Airlines to damage the older pilots so as to provide economic gain for
the Airlines and ALPA while maintaining a younger pilot work force with less
wages and less medical claims. This enhanced ALPA also with substantial
economic support base from the younger pilots that stood to gain more from
promotions accelerated through early terminations of senior Captains.
The above referenced speech affected all of the airlines that ALPA represented
thus ALPA did not provide constitutional mandated equality in regard to age by
lobbying ,as this example illustrates, for my job removal through out several
years, but primarily 2005 and 2006 , and ALPA didn't provide equal
representation of older pilots as it failed to lobby for legislation to provide for
my welfare and actually lobbied for legislation to promote my removal from my
job which is in direct opposition to the ALPA constitution and the AFL-CIO
constitution, ALPA failed to approach management concerning the Age 60 rule
when management stated that ALPA was the key (see June 16th letter from US
Airways), when they refused to act on a poll of the pilot membership to oppose
the Age 60 rule (mid 2005). The Airlines and ALPA's apparent collusion was
omnipresent.

14.    Pilots at numerous other airlines have been subject to the exact same
breach of duty of fair representation claim and breach of collective bargaining
claims.

15.    In total, over 3000 pilots were subject to collective bargaining

agreements with ALPA and were damaged by ALPA's breach of the collective

bargaining agreement and breach of its duty of fair representation. All of the

claims are the same.

Date July 4th, 2007                          Gene H. Carswell

8