**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GENE H. CARSWELL, individually and on behalf of all others similarly situated,

     Plaintiff,

     v.

AIR LINE PILOTS ASSOCIATION, INTERNATIONAL; US AIRWAYS GROUP, INC.; and AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS,

     Defendants.

Case No. 1:07-CV-00651 (RBW)

**DEFENDANT AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, defendant American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") respectfully moves this Court for an order imposing sanctions against plaintiff Gene H. Carswell, as a result of Carswell's refusal to dismiss the AFL-CIO as a defendant from his Complaint, filed April 6, 2007. The AFL-CIO further requests that this Court award it the costs and reasonable attorney's fees it has incurred in defending this action. Sanctions are appropriate because:

1. The Complaint asserts claims against the AFL-CIO under the Age Discrimination in Employment Act ("ADEA") on the basis of allegations that the AFL-CIO is the plaintiff's exclusive bargaining representative and consequently owes a duty of fair representation to the plaintiff, or, alternatively, because the AFL-CIO has a "parent-

subsidiary" type relationship with Carswell's union, the Air Line Pilots Association

("ALPA");

2. Any reasonable, or even minimal, inquiry into these allegations would have demonstrated

that these allegations lack any possible evidentiary support;

3. It is also well established, as a legal matter, that any political advocacy allegedly engaged

in by AFL-CIO which forms the basis of Carswell's Complaint is not actionable under

the First Amendment; and

4. Carswell's counsel has failed to voluntarily dismiss the Complaint against the AFL-CIO

after being informed of its patent legal and factual defects.

The grounds for this motion are more fully set forth in the accompanying Memorandum of

Law in Support of Motion for Sanctions.  For the reasons stated therein, the AFL-CIO's

Motion for Sanctions should be granted.


Dated: June 18, 2007                          ___/s/Leon Dayan_____
                                              Leon Dayan (D.C. Bar No. 444144)
                                              Joshua B. Shiffrin (D.C. Bar No. 501008)*
                                              BREDHOFF & KAISER P.L.L.C.
                                              805 Fifteenth Street NW
                                              Suite 1000
                                              Washington, DC 20008
                                              (202)842-2600

                                              Counsel for Defendant AFL-CIO



*Admission to Bar of U.S. District Court for District of Columbia currently pending.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GENE H. CARSWELL, individually and on
behalf of all others similarly situated,

      Plaintiff,

      v.

AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL; US AIRWAYS
GROUP, INC.; and AMERICAN
FEDERATION OF LABOR AND
CONGRESS OF INDUSTRIAL
ORGANIZATIONS,

      Defendants.

Case No. 1:07-CV-00651 (RBW)

**MEMORANDUM IN SUPPORT OF DEFENDANT AMERICAN FEDERATION OF
LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS' MOTION FOR
SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, defendant American

Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") respectfully submits

this Memorandum of Law in support of its Motion for Sanctions against plaintiff Gene H.

Carswell and/or his counsel pursuant to Fed. R. Civ. P. 11.   Sanctions should be imposed on

Carswell and his counsel for asserting claims against the AFL-CIO that have no basis in fact or

law; that were not based on even the barest investigation into the facts relevant to the AFL-CIO;

and that have put the AFL-CIO to the unnecessary expense of litigating this motion and

preparing a motion to dismiss.

## FACTUAL BACKGROUND

On April 6, 2007, Gene H. Carswell filed a Complaint asserting claims under the Age

Discrimination in Employment Act, 29 U.S.C. §§ 626 et seq. ("ADEA") against (1) his

employer, U.S. Airways Group, Inc. ("U.S. Airways"), (2) the union that represents him in

connection with his employment, the Air Line Pilots Association ("ALPA"), and (3) the AFL-

CIO, which neither employs him nor represents him. After the Complaint was filed as a pro se

action, but before the Complaint was served on the AFL-CIO, an attorney, Rosemary Dettling,

Esq., entered an appearance on behalf of Carswell.  The Complaint is in the form of a purported

class action, but no motion to certify any class has been filed.

The Complaint alleges that Carswell was employed by U.S. Airways until February 2007

as a pilot, and that he was forced to retire from service as a pilot due to U.S. Airways' and his

union's compliance with the Federal Aviation Administration's long-standing "Age 60 Rule"

that mandates that airline pilots may not fly past age 60.  See Complaint, ¶¶ 1, 2, 6, 15, 16;  see

also 14 C.F.R. § 121.383(c) ("the Age 60 Rule").  The crux of his complaint is that US Airways

discriminated against him based on age through its continued compliance with the Age 60 Rule,

and that his bargaining representative, rather than stopping this discrimination, has supported,

through political activity, his employer's efforts to maintain the rule.  See Complaint ¶¶ 1-17.

Carswell's theory of liability in his claims against the AFL-CIO is premised on the

assertion, repeated throughout the Complaint, that the AFL-CIO represents Mr. Carswell

regarding his employment rights and therefore owes a "duty of fair representation" to Mr.

Carswell.  See, e.g., id. at  ¶¶  1 ("The Plaintiff also brings this suit . . . against ALPA and the

AFL-CIO, his exclusive bargaining representatives, for breach of duty of fair representation"), 4

("The named Plaintiff further discovered that the AFL-CIO and ALPA breached their 'duty of

fair representation' to him and all other similarly situated employees."); 27 ("ALPA and the

AFL-CIO . . . continue to breach their duty of representation to their union members . . ."); 64

("ALPA and the AFL-CIO were responsible for acting on behalf of the Plaintiff and other pilots

at US Airways."). Carswell's complaint repeatedly lumps the AFL-CIO together with ALPA; it

alleges no specific conduct by the AFL-CIO performed independently from ALPA and therefore

appears to proceed on the premise that the AFL-CIO is vicariously liable for ALPA's

performance of its functions as the representative of US Airways pilots.

However, as counsel for the AFL-CIO explained to counsel for Carswell in a detailed

letter dated June 1, 2007, the AFL-CIO is not AFL-CIO a party to any collective bargaining

agreement involving pilots at US Airways. See Affidavit of Nancy Schiffer, Associate General

Counsel for the AFL-CIO, ¶ 3 (attached herewith as Attachment 1). Nor is the AFL-CIO a

bargaining agent for Carswell or for any other group of pilots potentially included in Carswell's

class action allegations. Id. at ¶ 4. Instead, the AFL-CIO is a federation of 55 national and

international unions, including ALPA. Id. at ¶ 5. The 55 affiliated unions, in turn, represent

approximately 10,000,000 working men and women. Id. Those individuals (such as Carswell)

are not members of bargaining units represented by the AFL-CIO in connection with their

employment. Id. at ¶ 6. It is, rather, only the affiliate (here, ALPA) that represents those

individuals in that connection. Id.

The AFL-CIO also lacks any legal or practical means to control the activities of ALPA or

ALPA's local unions. AFL-CIO's affiliated unions are autonomous legal entities, and the AFL-

CIO Constitution states expressly that the affiliated unions are neither subordinate to, nor subject

to the direction or control of, the Federation. See Id. at ¶¶ 7-9; AFL-CIO Const., Article III,

Section 1 (attached herewith as Attachment 2). The AFL-CIO has no ownership, or financial

control or responsibility over ALPA, nor does it have control over its operations, policies, or personnel. Schiffer Aff. at ¶ 7-9. There is no interrelation of operations, no common management, no common ownership, and no shared accounts, employment benefits, payroll accounts or health and welfare plans. Id. at ¶ 9. Each entity files its own separate income tax returns; they do not share services, equipment employees or office space. Id. The AFL-CIO does not select or hire the officers or employees of ALPA, nor does the AFL-CIO participate in ALPA's employment activities. Id. ALPA's employees are not employees of the AFL-CIO and the AFL-CIO does not engage in employment-related activities with respect to employees of its affiliate members or their local unions. Id.; see also ALPA's LCvR 7.1 Certificate (Docket Entry No. 11) (stating ALPA has no parent company).

The June 1, 2007 letter referenced above informed Plaintiff's counsel of the foregoing facts, as well as of the state of the law regarding a labor organization's general non-liability for the acts of another organization, and advised her that any reasonable inquiry into the claims made against the AFL-CIO in the Complaint would demonstrate that the claims were wholly unwarranted and without basis in fact or law. The letter also invited Carswell's counsel to voluntarily dismiss the AFL-CIO from the suit. Counsel for the AFL-CIO and Carswell conferred by telephone subsequent to the transmission of the letter, and counsel for the AFL-CIO advised Carswell's counsel of its intention to proceed under Rule 11 if Carswell would not agree to dismiss the AFL-CIO from suit. To date, Carswell has not dismissed the AFL-CIO from this action nor has he produced to the AFL-CIO any evidence contradicting the facts described above.

**ARGUMENT**

**I.**  **The Complaint Does Not Meet the Standard of Fed. R. Civ. P. 11**

Federal Rule of Civil Procedure 11(b) provides that an attorney's or a party's signature

on a pleading certifies that "to the best of the person's knowledge, information, and belief,

formed after an inquiry reasonable under the circumstances . . . (2) the claims, defenses, and

other legal contentions therein are warranted by existing law or by a nonfrivolous argument for

the extension, modification, or reversal of existing law or the establishment of new law; [and] (3)

the allegations and other factual contentions have evidentiary support or, if specifically so

identified, are likely to have evidentiary support after a reasonable opportunity for further

investigation or discovery . . . . " Fed. R. Civ. P. 11(b).

Whether the signatory of a filing has violated Rule 11 is determined by a standard of

objective reasonableness.  See Lucas v. Spellings, 408 F. Supp. 2d 8 (D.D.C. 2006).  The test is

"'whether a reasonable inquiry would have revealed there was no basis in law or fact for the

asserted claim.'"  Reynolds v. United States Capitol Police Bd., 357 F. Supp. 2d 19, 23 (D.D.C.

2004) (quoting Washington Bancorporation v. Said, 812 F. Supp. 1256, 1275 (D.D.C. 1993); see

also Morley v. CIBA-Geigy Corp., 66 F.3d 21, 25 (2d Cir. 1995) ("An argument constitutes a

frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of

reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to

extend, modify or reverse the law as it stands.") (citation and quotation marks omitted).

Sanctions may be appropriate where "a plaintiff makes a factual allegation without evidentiary

support, and without the prospect of obtaining such support," Independence Fed. Sav. Bank v.

Bender, 230 F.R.D. 11, 16 (D.D.C. 2005) (citing Clinton v. Jones, 520 U.S. 681, 709 n.42

(1997)), or where a plaintiff files a "groundless complaint[]," Geller v. Randi, 40 F.3d 1300,

1304 (D.C. Cir. 1994). Moreover, "[w]hen it becomes apparent that a case lacks evidentiary support, a client and his lawyer have a duty to withdraw their complaint." Byrnes v. Lockheed-Martin, Inc., No. C-04-03941 (RMW), 2005 WL 3555701, at *9 (N.D. Cal. Dec 28, 2005). While pro se litigants receive some latitude from courts with regard to lacking expertise in the law, they do not receive a similar degree of latitude with respect to pleading facts under Rule 11. See Ferluga v. Eickhoff, 408 F. Supp. 2d 1153, 1163 (D. Kan. 2006). Moreover, Carswell's pro se status here was fleeting, as his attorney entered her appearance shortly after the Complaint was filed and before it was served; and the case law establishes that counsel is subject to sanction under Rule 11 for filing a notice of appearance on behalf of a client on the basis of meritless allegations previously made in a case. See Turner v. Sunguard Bus. Sys., Inc., 91 F.3d 1418 (11th Cir. 1996)

As we now show, Carswell's Complaint against the AFL-CIO fails to meet the standard of Fed.R.Civ.P. 11(b).

A. The False Factual Allegations in the Complaint Regarding the AFL-CIO Have No Evidentiary Support and Were Asserted Without the Required Inquiry—an Inquiry that Would Have Revealed that the AFL-CIO is not Mr. Carswell's Bargaining Agent and is not the Signatory to the Collective Bargaining Agreement that Covers Him

1. As outlined above, see supra at pp. 2-3, Carswell's claims against the AFL-CIO rest on the assertion that the AFL-CIO has breached a duty of fair representation it owes to Carswell by virtue of acting as Carswell's exclusive bargaining agent regarding his employment at US Airways. A private sector union generally becomes the exclusive bargaining agent of a group of employees when a majority of employees has chosen the union to act as their bargaining representative pursuant to the procedures set out in either the National Labor Relations Act (NLRA), which governs most private sector labor relations matters or the Railway

6

Labor Act (RLA), which governs labor relations in the rail and airline industries.  See generally NLRA § 9(a), 29 U.S.C. § 159(a); RLA § 2, 45 U.S.C. § 152.  However, as the facts clearly demonstrate, see supra at p. 3, the AFL-CIO has never been selected by a majority of pilots at US Airways to act as their exclusive bargaining representative.  Nor, contrary to Carswell's allegations, is it a signatory to the collective bargaining agreement governing pilots at US Airways.  See supra at p. 3.

As such, the law is well settled that the AFL-CIO owes no duty of fair representation to Carswell.  "If a union does not serve as the exclusive agent for the members of the bargaining unit with respect to a particular matter, there is no corresponding duty of fair representation." Freeman v. Local Union No. 135, Chauffeurs, Teamsters, Warehousemen & Helpers,  746 F.2d 1316, 1321 (7th Cir. 1984).  See also Sinyard v. Foote & Davies Div. of McCall Corp., 577 F.2d 943, 947 (5th Cir. 1978) ("The duty of fair representation arises  . . . out of the power to act as exclusive bargaining representative.").  Nor does the mere affiliation of ALPA with the AFL-CIO convert the AFL-CIO into Carswell's exclusive bargaining representative.  See id. (holding international union could not be liable for breach of duty of fair representation by local union where local union, and not international served as exclusive bargaining representative of the employees in question); Sine v. Local No. 992, Int'l. Bhd. of Teamsters, 730 F.2d 964, 966 (4th Cir. 1984) (international union could not be liable for breach of duty of fair representation where it was not a party to the plaintiff-employees' collective bargaining agreement).

As discussed infra, the AFL-CIO's relationship to ALPA and Carswell is even more attenuated than the relationship between an international union and one of its locals; consequently, there is no question that, as a matter of law, the AFL-CIO could not held directly

liable for the breach of a duty of fair representation to Carswell, or indirectly liable for the breach of the duty of fair representation by one of its affiliated unions such as ALPA.

2.     Nor, to the extent that the Complaint asserts such a theory, see supra at p. 3, could the AFL-CIO be held vicariously liable for any actions taken by ALPA under ordinary agency principles.  Carswell may have included the AFL-CIO as a defendant in this suit under the mistaken impression that the AFL-CIO's relationship with ALPA bears resemblance to a parent international union's relationship with its local unions.  If he is under that impression, he is mistaken as to the facts here in that there is no such resemblance; and he also is mistaken as to the law, in that he apparently believes that parent unions are vicariously liable for all actions taken by local unions with whom they are affiliated.

As to the factual point, as explained in detail above, see supra at pp. 3-4, the AFL-CIO's affiliated unions are each autonomous legal entities independent from the AFL-CIO.  Whereas an international union typically reserves the power, under its constitution, to involuntarily force a local union into trusteeship so that it can run its day-to-day affairs, the AFL-CIO is a voluntary federation.  It cannot take over its affiliates' operations, and its affiliated unions are free to disaffiliate from the AFL-CIO at any time.  In this regard, the AFL-CIO acts somewhat like a voluntarily trade association for its affiliated unions, and it provides services and functions to its affiliates different from what its affiliated international unions provide to their locals.  Furthermore, as we have explained, see supra at pp. 3-4, the AFL-CIO not only lacks the legal ability to control the activities of ALPA or ALPA's local unions, given the autonomous nature of its affiliates, it also lacks any practical means of control.

As to the legal point, entities that, unlike the AFL-CIO vis-à-vis ALPA, do have parent union/local union relationships, are not liable for their local unions' actions in circumstances of

the kind alleged in Carswell's complaint.  It is well established that an international union is a separate legal entity from its local unions.  Therefore, "[t]he acts of the local and its agents cannot automatically be imputed to the International."  <u>Shimman v. Frank</u>, 625 F.2d 80, 97 (6th Cir. 1980).  Instead, as the D.C. Circuit has held, "common-law agency principles . . . provide the appropriate analytical framework" for determining an international union's liability for a local's actions.  <u>Berger v. Iron Workers Reinforced Rodmen Local 201</u>, 843 F.2d 1395, 1427 (D.C. Cir. 1988).  Under this standard, courts will look not to an international union's "theoretical control" over its locals, but instead will analyze the "nature and extent of <u>actual</u> control" over the local in the relevant factual context.  <u>See id.</u> at 1431 (quoting <u>Shimman</u>, 625 F.2d at 98 n.36) (emphasis added).  <u>See generally</u> <u>Carbon Fuel Co. v. United Mine Workers of Am.</u>, 444 U.S. 212, 217-218 (1979).[1]

Here, the AFL-CIO does not even have <u>theoretical</u> control over its affiliates, such as the power to impose a trusteeship over them and take over the conduct of their affairs.  And the AFL-CIO certainly has no practical control over its affiliates either.  Nor would any expression of

---

[1] Carswell's counsel has previously asserted, in conversation with the AFL-CIO's counsel regarding the June 1, 2007 letter from the AFL-CIO's counsel, that the AFL-CIO may be liable to Carswell under the theories asserted in the Complaint because Carswell pays "dues" to the AFL-CIO.  But Carswell does not in fact pay dues to the AFL-CIO; that is the responsibility of ALPA, which remits a fee to the AFL-CIO that is calculated on a per-member or "per capita" basis. <u>See</u> AFL-CIO Const., Article XVI, Section 2 (Attachment 2).  Moreover, even if, contrary to fact, Carswell paid dues directly to the AFL-CIO or the payments ALPA makes were deemed to be remittances of each ALPA member's payments, that would not change the analysis above in text by one iota.  The payment of dues or service fees by one person or entity to another does not by any stretch make the recipient of the payment automatically liable for every action taken by the paying party.  If it did, the myriad cases holding that parent unions are not automatically liable to union members for breaches of the duty of fair representation engaged in by their affiliated locals unions would all be wrong, because international unions invariably receive remittances from local unions or their members; they do not provide services gratis.  <u>See</u>, <u>e.g.</u>, <u>Sine</u>, 730 F.2d at 966 (international could not be liable for potential breach of duty of fair representation where it was not a party to the collective bargaining agreement, despite having provided some legal assistance to local union).

support by the AFL-CIO for ALPA's performance as Carswell's bargaining representative subject the AFL-CIO to liability under agency principles.  It is settled law that, where one labor organization expresses solidarity with the actions of another, that expression does not convert the latter organization into an agent of the former, or vice versa.  See International Longshoremen's Ass'n v. NLRB, 56 F.3d 205 (D.C. Cir. 1995); BE&K Constr. Co. v. United Bhd. of Carpenters, 90 F.3d 1318, 1326 (8th Cir. 1996).

To illustrate how far-fetched it is to claim that the AFL-CIO is a proper defendant in this case, consider that even a parent corporation that wholly owns a particular subsidiary—and therefore does have certain practical means of controlling the subsidiary's activities—is not liable for the employment decisions made by the subsidiary.  See, e.g. United States v. Bestfoods, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries."). Here, the AFL-CIO has absolutely no control over ALPA.

Any minimal investigation into the relationship between the AFL-CIO, ALPA, and Carswell prior to filing suit would have demonstrated that the factual allegations and the legal theories of the Complaint were meritless; the AFL-CIO also promptly brought these facts to the attention of Carswell's counsel shortly after it was served with the Summons and Complaint. Carswell's choice, in the face of these facts, to maintain this "groundless" action against the AFL-CIO is therefore sanctionable conduct under Fed. R. Civ. P. 11.

   B.   Any Legal Argument that the AFL-CIO is Directly Liable for Alleged Political
        Advocacy Regarding the "Age 60 Rule" is Not Warranted by Existing Law or by
        a Nonfrivolous Argument for the Extension, Modification, or Reversal of Existing
        Law or the Establishment of New Law

       The foregoing discussion has assumed that Carswell is attempting to hold the AFL-CIO

indirectly liable for ALPA's conduct because of ALPA's affiliation with the AFL-CIO.  If,

instead, Carswell's theory is that the AFL-CIO may be directly liable for having allegedly

expressed public support for ALPA's apparent position that the Age 60 Rule should be kept in

place—see, e.g., Complaint ¶¶ 14 ("While the Defendants cannot independently change the

FAA's age limit, the Defendants can actively lobby for a change to the Age 60 Rule."); 27

("ALPA and the AFL-CIO . . . continue to support the Age 60 Rule and continue to breach their

duty of representation to their union members and, instead, lobby against the pilots they are

supposed to be representing; 36 ("ALPA and the AFL-CIO continue to aggressively lobby

against permitting US pilots to fly commercial aircraft in US airspace past the age of 60."); 64

("ALPA and AFL-CIO lobbied intensely to keep US Airways pilots from flying . . . beyond the

age of 60.")—his Complaint is legally frivolous for several reasons.

       As a preliminary matter, the AFL-CIO informed Carswell's counsel that it was unable to

unearth any evidence, within any conceivable limitations period, of lobbying activity on the "age

60" issue by anyone authorized to speak for the AFL-CIO.  Carswell's counsel still has produced

no evidence of this.

       More fundamentally, any construction of the ADEA that would allow for advocacy

before Congress or a federal agency to be made the basis of liability under the statute would put

the Act in square conflict with the First Amendment.  The "Noerr-Pennington doctrine,"

developed by the Supreme Court over four decades ago, see Eastern R.R. Presidents Conference

v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961) and United Mine Workers of Am. v.

11

Pennington, 381 U.S. 657 (1965), recognizes that it is inimical to the First Amendment to hold parties liable for their political efforts to influence public officials. The doctrine accordingly confers immunity from suits alleging statutory violations, where the conduct constituting the alleged violation involves an effort by the defendant to petition the government. See, e.g., Bayou Fleet, Inc. v. Alexander, 234 F.3d 852, 589 (5th Cir. 2000) ("Noerr-Pennington immunity applies to any concerted effort to sway public officials regardless of the private citizen's intent."). The Noerr-Pennington doctrine applies squarely to the allegations at issue here, for the conduct alleged to constitute the ADEA violation is nothing more than advocacy by the AFL-CIO to persuade the FAA to retain the age-60 rule. It is frivolous to suggest that the AFL-CIO could be liable for having chosen to advocate, in Carswell's view, the wrong side of a public policy debate.

## II.    Rule 11 Sanctions are Warranted

Rule 11(c) provides for sanctions jointly against a client and his counsel where a pleading does not meet the standard set forth in Rule 11(b), including an award of "some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed.R.Civ. P. 11(c).

Here, Carswell, through counsel, has refused to amend his pleadings to comport with the requirements of Rule 11(b). Carswell was clearly informed by the AFL-CIO of the factual and legal deficiencies in its Complaint and was invited to voluntarily dismiss the AFL-CIO from suit. Carswell, through counsel, ignored that invitation, forcing the AFL-CIO's counsel to go to the expense of drafting this Motion, and to begin the preparation of a motion to dismiss the frivolous Complaint. See Smith v. Blue Cross & Blue Shield United of Wisc., 959 F.2d 655, 660 (7th Cir. 1992) (approving imposition of Rule 11 sanctions, including attorneys' fees, where defense

counsel wrote to plaintiff counsel advising him of frivolity of the claims at issue prior to filing a motion to dismiss).

Given Carswell's disregard of his Rule 11 obligations, an award of attorneys' fees and expenses incurred in drafting and litigation this Motion, as well as any motion to dismiss regarding the claims against the AFL-CIO, assessed jointly against Carswell and his counsel, is appropriate.

## CONCLUSION

For the foregoing reasons, Defendant American Federation of Labor and Congress of Industrial Organizations' Motion for Sanctions should be granted and this Court should impose sanctions, including all attorneys' fees and costs incurred in drafting and litigating this Motion, upon Plaintiff Gene H. Carswell and his counsel.

Respectfully Submitted,

Dated: June 18, 2007

\_\_\_/s/Leon Dayan_____
Leon Dayan (D.C. Bar No. 444144)
Joshua B. Shiffrin (D.C. Bar No. 501008)*
BREDHOFF & KAISER P.L.L.C.
805 Fifteenth Street NW
Suite 1000
Washington, DC 20008
(202)842-2600

Counsel for Defendant AFL-CIO

*Admission to Bar of U.S. District Court for District of Columbia currently pending.

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of June 2007, I served by personal service the foregoing Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 upon:

Rosemary Dettling
FEDERAL EMPLOYEE LEGAL SERVICES
3120 Brandywine Street NW
Washington, DC  20008
Telephone: (202)390-4741
Facsimile: (888)241-6719
email: redettling@felsc.com

*Counsel for Plaintiff Gene H. Carswell*

David Michael Semanchik
Granville Clayton Warner
AIR LINE PILOTS ASSOCIATION INTERNATIONAL
535 Herndon Parkway
Herndon, VA  20170
Telephone: (703)689-4393
Facsimile: (703)481-2478
email: david.semanchik@alpa.org
        clay.warner@alpa.org

*Counsel for Defendant Air Line Pilots Association International*

Thomas Barton Almy
DOMBROFF & GILMORE, P.C.
1676 International Drive – PH
McLean, VA  22102
Telephone: (703)336-8723
Email: talmy@dglitigators.com

*Counsel for U.S. Airways Group, Inc.*

_/s/Leon Dayan_____
Leon Dayan

Attachment 1

Affidavit of Nancy Schiffer

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GENE H. CARSWELL, individually and
on behalf of all others similarly situated,

    Plaintiff,

    v.

AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL; US AIRWAYS
GROUP, INC.; and AMERICAN
FEDERATION OF LABOR AND
CONGRESS OF INDUSTRIAL
ORGANIZATIONS,

    Defendants.

Case No. 1:07-CV-00651 (RBW)

## AFFIDAVIT OF NANCY SCHIFFER

I, Nancy Schiffer, hereby state:

1. I am over twenty-one years of age and competent to make this affidavit.

2. Since 2000, I have served as Associate General Counsel of the American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO"), headquartered at 815 Sixteenth Street, N.W., Washington, D.C. 20006. In that capacity, I have personal knowledge of the facts contained in this affidavit.

3. The AFL-CIO is not a party to any collective bargaining agreement involving pilots of US Airways.

4. The AFL-CIO is not certified as the exclusive bargaining agent for any pilots of US Airways.

5. The AFL-CIO is a federation of 55 national and international unions, including the Air Line Pilots Association ("ALPA"). These 55 affiliated unions represent approximately 10,000,000 working men and women.

6. The AFL-CIO does not serve as a bargaining agent for union members who belong to the unions affiliated with the AFL-CIO. Rather, the affiliate (such as ALPA) represents those individuals. Except for a narrow class of workers who are not involved with or represented by ALPA, the AFL-CIO does not itself act as a labor union in the traditional sense.

7. The AFL-CIO's affiliated unions are separate, autonomous legal entities; the AFL-CIO Constitution states expressly that the affiliated unions are neither "subordinate to, [n]or subject to the general direction or control of" the Federation. See AFL-CIO Const., Article III, Section 1 (included in Attachment 2). The AFL-CIO is a voluntary association and affiliated unions are free to disaffiliate from the AFL-CIO.

8. The AFL-CIO Constitution contains no provisions granting authority to the AFL-CIO to supervise or direct the actions of affiliated unions and it does not do so. The AFL-CIO has no mechanism for or authority to supervise the actions of ALPA or to negotiate benefits for members of ALPA and does not do so.

9. The AFL-CIO also does not exercise any practical control over its affiliated unions, such as ALPA. The AFL-CIO has no ownership or financial control or responsibility over ALPA, and has no control over its operations, policies, or personnel. There is no interrelation of operations, no common management, no common ownership, and no shared accounts, employment benefits, payroll accounts or health and welfare plans. Each entity files its own separate income tax returns; they do not share services,

equipment, employees or office space. The AFL-CIO does not select or hire the officers or employees of ALPA, nor does the AFL-CIO participate in ALPA's employment activities. ALPA's employees are not employees of the AFL-CIO and the AFL-CIO does not engage in employment-related activities with respect to employees of its affiliate members or their local unions, including ALPA.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 18, 2007

Nancy Schiffer

District of Columbia : SS
Subscribed and Sworn to before me, in my presence,
this _18th_ day of _June_ , _2007_
_____ MELISSA GALDWIN
Notary Public, D.C.
My commission expires____9|14|2009____

Attachment 2

Excerpts from AFL-CIO Constitution

**AFL-CIO** ———————————————————   **Click to Print**

## Article III: Affiliates

Preamble I II III IV V VI VII VIII IX X XI XII XIII XIV XV XVI XVII XVIII-XIX XX XXI

### Section 1

The Federation shall be composed of: (1) national and international unions that are affiliated with, but are not subordinate to, or subject to the general direction and control of, the Federation; and (2) the following categories of organizations that are subordinate bodies of the AFL-CIO subject to the kind and degree of Federation direction and control provided for in this Constitution: (a) organizing committees; (b) directly affiliated local unions and national councils thereof; (c) state, area and local central bodies; and (d) trade and industrial departments.

### Section 2

Every affiliate that operated at the time of the merger between the AFL and the CIO with a charter or certificate of affiliation issued by either federation has, by virtue of the merger, retained and enjoyed the same organizing jurisdiction in this Federation that it had and enjoyed prior to the merger. In cases of conflicting and duplicating jurisdictions the President and the Executive Council shall seek to eliminate such conflicts through the process of voluntary agreement or voluntary merger between the affiliates involved.

### Section 3

Every affiliate that operated at the time of the merger between the AFL and the CIO with a charter or certificate of affiliation issued by either federation has, by virtue of the merger, been conferred with a charter or certificate of affiliation from the AFL-CIO and become subject to this Constitution and the AFL-CIO's rules and regulations.

### Section 4

**(a)** The Executive Council may issue additional charters or certificates of affiliation to other organizations desiring to affiliate with this Federation. This power may be delegated to the President. Charters or certificates of affiliation shall not be issued to national or international unions, organizing committees, or directly affiliated local unions in conflict with the jurisdiction of affiliated national or international unions, except with the written consent of such unions, and shall be based upon a strict recognition that both craft and industrial unions are equal and necessary as methods of trade union organization, and that each affiliated national and international union is entitled to have its autonomy, integrity and jurisdiction protected and preserved.

**(b)** Where the Executive Council determines that it would be necessary or appropriate to subject the approval of a charter to one or more future conditions, the Executive Council may issue a provisional charter. In such cases, the provisional status of the charter shall be removed following a specified period of time not to exceed three years, and the affiliation shall thereupon be deemed permanent, absent a vote of the Executive Council to revoke the charter.

### Section 5

**(a)** Except as otherwise provided in this Constitution, no national or international union chartered by or affiliated with this Federation may be suspended from the Federation except by a majority

roll call vote at the convention. A suspension imposed by a convention may be terminated in accordance with Article X, Section 14.

**(b)** Except as provided in Section 4.(b) of this Article, no national or international union shall have its charter or certificate of affiliation with the Federation revoked except by a two-thirds roll call vote at the convention. A revoked charter or certificate of affiliation may be restored by either a two-thirds roll call vote of the convention or a two-thirds vote of the Executive Council if it is determined that the organization is conducting its affairs in a manner consistent with the obligations of an AFL-CIO affiliate.

## Section 6
No organization that is unaffiliated with, or is suspended from, this Federation, and no affiliate or subordinate body of such an organization, shall, while unaffiliated or suspended, be allowed representation or recognition in the AFL-CIO, in any subordinate body of the AFL-CIO, or in any national or international union or organizing committee affiliated with the AFL-CIO. Any affiliate violating this section shall be subject to suspension from the AFL-CIO.

## Section 7
No organization officered, controlled or dominated by persons whose policies and activities are consistently directed toward the achievement of the program or purposes of authoritarianism, totalitarianism, terrorism and other forces that suppress individual liberties and freedom of association shall be permitted as an affiliate of the Federation or any of its state or local central bodies.

## Section 8
Affiliates of the Federation shall be encouraged to eliminate conflicts and duplications in organization and jurisdictions through the process of voluntary agreement or voluntary merger in consultation with the appropriate officials of the Federation. Accordingly the AFL-CIO shall implement a proactive, industry-based strategic merger policy as adopted by the AFL-CIO Convention delegates and is hereby authorized to take all necessary steps to effectuate its terms.

---

Copyright © 2007 AFL-CIO

# AFL-CIO

**Click to Print**

## Article XVI: Per Capita Taxes and Assessments

Preamble I II III IV V VI VII VIII IX X XI XII XIII XIV XV XVI XVII XVIII-XIX XX XXI

### Section 1
A per capita tax shall be paid upon the full paid-up membership of each affiliated national or international union, organizing committee and directly affiliated local union.

### Section 2
Beginning with per capita payments for the month of January 2001, each national or international union and organizing committee shall pay on or before the fifteenth day of each month, for the preceding month, a per capita tax of 53 cents per member per month. Beginning with per capita payments for the month of July 2005, each national or international union and organizing committee shall pay on or before the fifteenth day of each month, for the preceding month, a per capita tax of 65 cents per member per month.

### Section 3
The per capita payments with respect to categories of associate and retired membership a national or international union maintains for individuals who are not treated as regular members of the union with the full range of international union political rights accorded regular members, pay lesser dues than do individuals in the most comparable regular membership category, and receive less than the full range of the union's representation services shall be established by the Executive Council.

### Section 4
Directly affiliated local unions shall pay on or before the fifteenth day of each month, for the preceding month, a per capita tax established by the Executive Council of not less than $5.00 per member per month. Each directly affiliated local union shall also pay a portion, established by the Executive Council, of the initiation fee received by such union from its members, but such payment in no case shall be less than $5.00 per member.

### Section 5
Revenue may also be derived from assessments when and as ordered by a majority vote of a convention. The Executive Council may also declare an assessment not to exceed four cents per member per month on all affiliated unions for a period not to exceed six months in any one year when the interests of the Federation require and when funds available from per capita tax are insufficient to meet the needs of the Federation, except that by a two-thirds vote the Council, or by a two-thirds vote pursuant to Article XI, Section 4 the General Board upon request of the Executive Officers or the Executive Council, may declare an assessment that exceeds four cents per member per month on all affiliated unions for a period to expire no later than the next regular convention when extraordinary circumstances require and when funds available from per capita tax are insufficient to meet those circumstances. In addition, the General Board, by a two-thirds vote pursuant to Article XI, Section 4, may increase the per capita tax.

### Section 6

Any affiliated organization that does not pay its per capita tax on or before the fifteenth of the month, and assessments when due and payable, shall be notified in writing of that fact by the Secretary-Treasurer. Any affiliated organization that is three months in arrears in payment of per capita tax or assessments, and is so notified in writing, shall, unless it has returned to good standing within 20 days of such notification, be suspended automatically from the Federation and can be reinstated only after such arrearages are paid in full.

### Section 7
Each affiliate, upon the issuance of a certificate of affiliation, shall pay to the Federation the sum of $15.00.

### Section 8
The Executive Council may exonerate any national or international union, organizing committee and directly affiliated local union from the payment of per capita tax or assessments due for any month upon a proper showing that, in the opinion of the Executive Council, good cause exists. Exonerated affiliates shall be regarded, for the purposes of this Constitution, as paid-up affiliates for the period of exoneration.

Copyright © 2007 AFL-CIO

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of June 2007, I served by personal service the foregoing Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 upon:

Rosemary Dettling
FEDERAL EMPLOYEE LEGAL SERVICES
3120 Brandywine Street NW
Washington, DC 20008
Telephone: (202)390-4741
Facsimile: (888)241-6719
email: redettling@felsc.com

*Counsel for Plaintiff Gene H. Carswell*

David Michael Semanchik
Granville Clayton Warner
AIR LINE PILOTS ASSOCIATION INTERNATIONAL
535 Herndon Parkway
Herndon, VA 20170
Telephone: (703)689-4393
Facsimile: (703)481-2478
email: david.semanchik@alpa.org
          clay.warner@alpa.org

*Counsel for Defendant Air Line Pilots Association International*

Thomas Barton Almy
DOMBROFF & GILMORE, P.C.
1676 International Drive – PH
McLean, VA 22102
Telephone: (703)336-8723
Email: talmy@dglitigators.com

*Counsel for U.S. Airways Group, Inc.*

Leon Dayan

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GENE H. CARSWELL, individually and on
behalf of all others similarly situated,

     Plaintiff,

     v.

AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL; US AIRWAYS
GROUP, INC.; and AMERICAN
FEDERATION OF LABOR AND
CONGRESS OF INDUSTRIAL
ORGANIZATIONS,

     Defendants.

Case No. 1:07-CV-00651 (RBW)

## DEFENDANT AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, defendant American Federal of Labor and Congress of Industrial Organizations ("AFL-CIO") respectfully moves this Court for an order imposing sanctions against plaintiff Gene H. Carswell, as a result of Carswell's refusal to dismiss the AFL-CIO as a defendant from his Complaint, filed April 6, 2007. The AFL-CIO further requests that this Court award it the costs and reasonable attorney's fees it has incurred in defending this action. Sanctions are appropriate because:

1. The Complaint asserts claims against the AFL-CIO under the Age Discrimination in Employment Act ("ADEA") on the basis of allegations that the AFL-CIO is the plaintiff's exclusive bargaining representative and consequently owes a duty of fair representation to the plaintiff, or, alternatively, because the AFL-CIO has a "parent-

subsidiary" type relationship with Carswell's union, the Air Line Pilots Association ("ALPA");

2. Any reasonable, or even minimal, inquiry into these allegations would have demonstrated that these allegations lack any possible evidentiary support;

3. It is also well established, as a legal matter, that any political advocacy allegedly engaged in by AFL-CIO which forms the basis of Carswell's Complaint is not actionable under the First Amendment; and

4. Carswell's counsel has failed to voluntarily dismiss the Complaint against the AFL-CIO after being informed of its patent legal and factual defects.

The grounds for this motion are more fully set forth in the accompanying Memorandum of Law in Support of Motion for Sanctions. For the reasons stated therein, the AFL-CIO's Motion for Sanctions should be granted.

Dated: June 18, 2007

_Leon Dayan_

Leon Dayan (D.C. Bar No. 444144)
Joshua B. Shiffrin (D.C. Bar No. 501008)*
BREDHOFF & KAISER P.L.L.C.
805 Fifteenth Street NW
Suite 1000
Washington, DC 20008
(202)842-2600

Counsel for Defendant AFL-CIO

*Admission to Bar of U.S. District Court for District of Columbia currently pending.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GENE H. CARSWELL, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 1:07-CV-00651 (RBW) |
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL; US AIRWAYS GROUP, INC.; and AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, | |
| Defendants. | |

## MEMORANDUMUM IN SUPPORT OF DEFENDANT AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, defendant American Federal of Labor and Congress of Industrial Organizations ("AFL-CIO") respectfully submits this Memorandum of Law in support of its Motion for Sanctions against plaintiff Gene H. Carswell and/or his counsel pursuant to Fed. R. Civ. P. 11.   Sanctions should be imposed on Carswell and his counsel for asserting claims against the AFL-CIO that have no basis in fact or law; that were not based on even the barest investigation into the facts relevant to the AFL-CIO; and that have put the AFL-CIO to the unnecessary expense of litigating this motion and preparing a motion to dismiss.

## FACTUAL BACKGROUND

On April 6, 2007, Gene H. Carswell filed a Complaint asserting claims under the Age

Discrimination in Employment Act, 29 U.S.C. §§ 626 <u>et seq.</u> ("ADEA") against (1) his

employer, U.S. Airways Group, Inc. ("U.S. Airways"), (2) the union that represents him in

connection with his employment, the Air Line Pilots Association ("ALPA"), and (3) the AFL-

CIO, which neither employs him nor represents him. After the Complaint was filed as a <u>pro se</u>

action, but before the Complaint was served on the AFL-CIO, an attorney, Rosemary Dettling,

Esq., entered an appearance on behalf of Carswell.  The Complaint is in the form of a purported

class action, but no motion to certify any class has been filed.

The Complaint alleges that Carswell was employed by U.S. Airways until February 2007

as a pilot, and that he was forced to retire from service as a pilot due to U.S. Airways' and his

union's compliance with the Federal Aviation Administration's long-standing "Age 60 Rule"

that mandates that airline pilots may not fly past age 60.  <u>See</u> Complaint, ¶¶ 1, 2, 6, 15, 16;  <u>see</u>

<u>also</u> 14 C.F.R. § 121.383(c) ("the Age 60 Rule").  The crux of his complaint is that US Airways

discriminated against him based on age through its continued compliance with the Age 60 Rule,

and that his bargaining representative, rather than stopping this discrimination, has supported,

through political activity, his employer's efforts to maintain the rule.  <u>See</u> Complaint ¶¶ 1-17.

Carswell's theory of liability in his claims against the AFL-CIO is premised on the

assertion, repeated throughout the Complaint, that the AFL-CIO represents Mr. Carswell

regarding his employment rights and therefore owes a "duty of fair representation" to Mr.

Carswell.  <u>See, e.g., id.</u> at  ¶¶  1 ("The Plaintiff also brings this suit . . . against ALPA and the

AFL-CIO, his exclusive bargaining representatives, for breach of duty of fair representation"), 4

("The named Plaintiff further discovered that the AFL-CIO and ALPA breached their 'duty of

fair representation' to him and all other similarly situated employees."); 27 ("ALPA and the

AFL-CIO . . . continue to breach their duty of representation to their union members . . ."); 64

("ALPA and the AFL-CIO were responsible for acting on behalf of the Plaintiff and other pilots

at US Airways."). Carswell's complaint repeatedly lumps the AFL-CIO together with ALPA; it

alleges no specific conduct by the AFL-CIO performed independently from ALPA and therefore

appears to proceed on the premise that the AFL-CIO is vicariously liable for ALPA's

performance of its functions as the representative of US Airways pilots.

     However, as counsel for the AFL-CIO explained to counsel for Carswell in a detailed

letter dated June 1, 2007, the AFL-CIO is not AFL-CIO a party to any collective bargaining

agreement involving pilots at US Airways. <u>See</u> Affidavit of Nancy Schiffer, Associate General

Counsel for the AFL-CIO, ¶ 3 (attached herewith as Attachment 1). Nor is the AFL-CIO a

bargaining agent for Carswell or for any other group of pilots potentially included in Carswell's

class action allegations. <u>Id.</u> at ¶ 4. Instead, the AFL-CIO is a federation of 55 national and

international unions, including ALPA. <u>Id.</u> at ¶ 5. The 55 affiliated unions, in turn, represent

approximately 10,000,000 working men and women. <u>Id.</u> Those individuals (such as Carswell)

are not members of bargaining units represented by the AFL-CIO in connection with their

employment. <u>Id.</u> at ¶ 6. It is, rather, only the affiliate (here, ALPA) that represents those

individuals in that connection. <u>Id.</u>

     The AFL-CIO also lacks any legal or practical means to control the activities of ALPA or

ALPA's local unions. AFL-CIO's affiliated unions are autonomous legal entities, and the AFL-

CIO Constitution states expressly that the affiliated unions are neither subordinate to, nor subject

to the direction or control of, the Federation. <u>See</u> <u>Id.</u> at ¶¶ 7-9; AFL-CIO Const., Article III,

Section 1 (attached herewith as Attachment 2). The AFL-CIO has no ownership, or financial

control or responsibility over ALPA, nor does it have control over its operations, policies, or

personnel. Schiffer Aff. at ¶ 7-9. There is no interrelation of operations, no common

management, no common ownership, and no shared accounts, employment benefits, payroll

accounts or health and welfare plans. Id. at ¶ 9. Each entity files its own separate income tax

returns; they do not share services, equipment employees or office space. Id. The AFL-CIO

does not select or hire the officers or employees of ALPA, nor does the AFL-CIO participate in

ALPA's employment activities. Id. ALPA's employees are not employees of the AFL-CIO and

the AFL-CIO does not engage in employment-related activities with respect to employees of its

affiliate members or their local unions. Id.; see also ALPA's LCvR 7.1 Certificate (Docket Entry

No. 11) (stating ALPA has no parent company).

The June 1, 2007 letter referenced above informed Plaintiff's counsel of the foregoing

facts, as well as of the state of the law regarding a labor organization's general non-liability for

the acts of another organization, and advised her that any reasonable inquiry into the claims

made against the AFL-CIO in the Complaint would demonstrate that the claims were wholly

unwarranted and without basis in fact or law. The letter also invited Carswell's counsel to

voluntarily dismiss the AFL-CIO from the suit. Counsel for the AFL-CIO and Carswell

conferred by telephone subsequent to the transmission of the letter, and counsel for the AFL-CIO

advised Carswell's counsel of its intention to proceed under Rule 11 if Carswell would not agree

to dismiss the AFL-CIO from suit. To date, Carswell has not dismissed the AFL-CIO from this

action nor has he produced to the AFL-CIO any evidence contradicting the facts described

above.

4

## ARGUMENT

## I.  <u>The Complaint Does Not Meet the Standard of Fed. R. Civ. P. 11</u>

Federal Rule of Civil Procedure 11(b) provides that an attorney's or a party's signature on a pleading certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and] (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . . " Fed. R. Civ. P. 11(b).

Whether the signatory of a filing has violated Rule 11 is determined by a standard of objective reasonableness.  See <u>Lucas v. Spellings</u>, 408 F. Supp. 2d 8 (D.D.C. 2006).  The test is "'whether a reasonable inquiry would have revealed there was no basis in law or fact for the asserted claim.'"  <u>Reynolds v. United States Capitol Police Bd.</u>, 357 F. Supp. 2d 19, 23 (D.D.C. 2004) (quoting <u>Washington Bancorporation v. Said</u>, 812 F. Supp. 1256, 1275 (D.D.C. 1993); <u>see also</u> <u>Morley v. CIBA-Geigy Corp.</u>, 66 F.3d 21, 25 (2d Cir. 1995) ("An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.") (citation and quotation marks omitted). Sanctions may be appropriate where "a plaintiff makes a factual allegation without evidentiary support, and without the prospect of obtaining such support," <u>Independence Fed. Sav. Bank v. Bender</u>, 230 F.R.D. 11, 16 (D.D.C. 2005) (citing <u>Clinton v. Jones</u>, 520 U.S. 681, 709 n.42 (1997)), or where a plaintiff files a "groundless complaint[]," <u>Geller v. Randi</u>, 40 F.3d 1300,

1304 (D.C. Cir. 1994).  Moreover, "[w]hen it becomes apparent that a case lacks evidentiary

support, a client and his lawyer have a duty to withdraw their complaint." Byrnes v. Lockheed-

Martin, Inc., No. C-04-03941 (RMW), 2005 WL 3555701, at *9 (N.D. Cal. Dec 28, 2005).

While pro se litigants receive some latitude from courts with regard to lacking expertise in the

law, they do not receive a similar degree of latitude with respect to pleading facts under Rule 11.

See Ferluga v. Eickhoff, 408 F. Supp. 2d 1153, 1163 (D. Kan. 2006).  Moreover, Carswell's pro

se status here was fleeting, as his attorney entered her appearance shortly after the Complaint

was filed and before it was served; and the case law establishes that counsel is subject to sanction

under Rule 11 for filing a notice of appearance on behalf of a client on the basis of meritless

allegations previously made in a case.  See Turner v. Sunguard Bus. Sys., Inc., 91 F.3d 1418

(11th Cir. 1996)

     As we now show, Carswell's Complaint against the AFL-CIO fails to meet the standard

of Fed.R.Civ.P. 11(b).

     A.   The False Factual Allegations in the Complaint Regarding the AFL-CIO Have No
           Evidentiary Support and Were Asserted Without the Required Inquiry—an
           Inquiry that Would Have Revealed that the AFL-CIO is not Mr. Carswell's
           Bargaining Agent and is not the Signatory to the Collective Bargaining
           Agreement that Covers Him

     1.    As outlined above, see supra at pp. 2-3, Carswell's claims against the AFL-CIO

rest on the assertion that the AFL-CIO has breached a duty of fair representation it owes to

Carswell by virtue of acting as Carswell's exclusive bargaining agent regarding his employment

at US Airways.  A private sector union generally becomes the exclusive bargaining agent of a

group of employees when a majority of employees has chosen the union to act as their

bargaining representative pursuant to the procedures set out in either the National Labor

Relations Act (NLRA), which governs most private sector labor relations matters or the Railway

Labor Act (RLA), which governs labor relations in the rail and airline industries. See generally NLRA § 9(a), 29 U.S.C. § 159(a); RLA § 2, 45 U.S.C. § 152. However, as the facts clearly demonstrate, see supra at p. 3, the AFL-CIO has never been selected by a majority of pilots at US Airways to act as their exclusive bargaining representative. Nor, contrary to Carswell's allegations, is it a signatory to the collective bargaining agreement governing pilots at US Airways. See supra at p. 3.

As such, the law is well settled that the AFL-CIO owes no duty of fair representation to Carswell. "If a union does not serve as the exclusive agent for the members of the bargaining unit with respect to a particular matter, there is no corresponding duty of fair representation." Freeman v. Local Union No. 135, Chauffeurs, Teamsters, Warehousemen & Helpers, 746 F.2d 1316, 1321 (7th Cir. 1984). See also Sinyard v. Foote & Davies Div. of McCall Corp., 577 F.2d 943, 947 (5th Cir. 1978) ("The duty of fair representation arises . . . out of the power to act as exclusive bargaining representative."). Nor does the mere affiliation of ALPA with the AFL-CIO convert the AFL-CIO into Carswell's exclusive bargaining representative. See id. (holding international union could not be liable for breach of duty of fair representation by local union where local union, and not international served as exclusive bargaining representative of the employees in question); Sine v. Local No. 992, Int'l. Bhd. of Teamsters, 730 F.2d 964, 966 (4th Cir. 1984) (international union could not be liable for breach of duty of fair representation where it was not a party to the plaintiff-employees' collective bargaining agreement).

As discussed infra, the AFL-CIO's relationship to ALPA and Carswell is even more attenuated than the relationship between an international union and one of its locals; consequently, there is no question that, as a matter of law, the AFL-CIO could not held directly

liable for the breach of a duty of fair representation to Carswell, or indirectly liable for the breach of the duty of fair representation by one of its affiliated unions such as ALPA.

2.    Nor, to the extent that the Complaint asserts such a theory, see supra at p. 3, could the AFL-CIO be held vicariously liable for any actions taken by ALPA under ordinary agency principles.  Carswell may have included the AFL-CIO as a defendant in this suit under the mistaken impression that the AFL-CIO's relationship with ALPA bears resemblance to a parent international union's relationship with its local unions.  If he is under that impression, he is mistaken as to the facts here in that there is no such resemblance; and he also is mistaken as to the law, in that he apparently believes that parent unions are vicariously liable for all actions taken by local unions with whom they are affiliated.

As to the factual point, as explained in detail above, see supra at pp. 3-4, the AFL-CIO's affiliated unions are each autonomous legal entities independent from the AFL-CIO.  Whereas an international union typically reserves the power, under its constitution, to involuntarily force a local union into trusteeship so that it can run its day-to-day affairs, the AFL-CIO is a voluntary federation.  It cannot take over its affiliates' operations, and its affiliated unions are free to disaffiliate from the AFL-CIO at any time.  In this regard, the AFL-CIO acts somewhat like a voluntarily trade association for its affiliated unions, and it provides services and functions to its affiliates different from what its affiliated international unions provide to their locals.  Furthermore, as we have explained, see supra at pp. 3-4, the AFL-CIO not only lacks the legal ability to control the activities of ALPA or ALPA's local unions, given the autonomous nature of its affiliates, it also lacks any practical means of control.

As to the legal point, entities that, unlike the AFL-CIO vis-à-vis ALPA, do have parent union/local union relationships, are not liable for their local unions' actions in circumstances of

8

the kind alleged in Carswell's complaint. It is well established that an international union is a

separate legal entity from its local unions. Therefore, "[t]he acts of the local and its agents

cannot automatically be imputed to the International." Shimman v. Frank, 625 F.2d 80, 97 (6th

Cir. 1980). Instead, as the D.C. Circuit has held, "common-law agency principles . . . provide

the appropriate analytical framework" for determining an international union's liability for a

local's actions. Berger v. Iron Workers Reinforced Rodmen Local 201, 843 F.2d 1395, 1427

(D.C. Cir. 1988). Under this standard, courts will look not to an international union's

"theoretical control" over its locals, but instead will analyze the "nature and extent of actual

control" over the local in the relevant factual context. See id. at 1431 (quoting Shimman, 625

F.2d at 98 n.36) (emphasis added). See generally Carbon Fuel Co. v. United Mine Workers of

Am., 444 U.S. 212, 217-218 (1979).[1]

Here, the AFL-CIO does not even have theoretical control over its affiliates, such as the

power to impose a trusteeship over them and take over the conduct of their affairs. And the

AFL-CIO certainly has no practical control over its affiliates either. Nor would any expression of

---

[1] Carswell's counsel has previously asserted, in conversation with the AFL-CIO's
counsel regarding the June 1, 2007 letter from the AFL-CIO's counsel, that the AFL-CIO may be
liable to Carswell under the theories asserted in the Complaint because Carswell pays "dues" to
the AFL-CIO. But Carswell does not in fact pay dues to the AFL-CIO; that is the responsibility
of ALPA, which remits a fee to the AFL-CIO that is calculated on a per-member or "per capita"
basis. See AFL-CIO Const., Article XVI, Section 2 (Attachment 2). Moreover, even if, contrary
to fact, Carswell paid dues directly to the AFL-CIO or the payments ALPA makes were deemed
to be remittances of each ALPA member's payments, that would not change the analysis above
in text by one iota. The payment of dues or service fees by one person or entity to another does
not by any stretch make the recipient of the payment automatically liable for every action taken
by the paying party. If it did, the myriad cases holding that parent unions are not automatically
liable to union members for breaches of the duty of fair representation engaged in by their
affiliated locals unions would all be wrong, because international unions invariably receive
remittances from local unions or their members; they do not provide services gratis. See, e.g.,
Sine, 730 F.2d at 966 (international could not be liable for potential breach of duty of fair
representation where it was not a party to the collective bargaining agreement, despite having
provided some legal assistance to local union).

support by the AFL-CIO for ALPA's performance as Carswell's bargaining representative

subject the AFL-CIO to liability under agency principles.  It is settled law that, where one labor

organization expresses solidarity with the actions of another, that expression does not convert the

latter organization into an agent of the former, or vice versa.  See International Longshoremen's

Ass'n v. NLRB, 56 F.3d 205 (D.C. Cir. 1995); BE&K Constr. Co. v. United Bhd. of Carpenters,

90 F.3d 1318, 1326 (8th Cir. 1996).

To illustrate how far-fetched it is to claim that the AFL-CIO is a proper defendant in this

case, consider that even a parent corporation that wholly owns a particular subsidiary—and

therefore does have certain practical means of controlling the subsidiary's activities—is not

liable for the employment decisions made by the subsidiary.  See, e.g. United States v.

Bestfoods, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained

in our economic and legal systems' that a parent corporation (so-called because of control

through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.").

Here, the AFL-CIO has absolutely no control over ALPA.

Any minimal investigation into the relationship between the AFL-CIO, ALPA, and

Carswell prior to filing suit would have demonstrated that the factual allegations and the legal

theories of the Complaint were meritless; the AFL-CIO also promptly brought these facts to the

attention of Carswell's counsel shortly after it was served with the Summons and Complaint.

Carswell's choice, in the face of these facts, to maintain this "groundless" action against the

AFL-CIO is therefore sanctionable conduct under Fed. R. Civ. P. 11.

B. <u>Any Legal Argument that the AFL-CIO is Directly Liable for Alleged Political Advocacy Regarding the "Age 60 Rule" is Not Warranted by Existing Law or by a Nonfrivolous Argument for the Extension, Modification, or Reversal of Existing Law or the Establishment of New Law</u>

The foregoing discussion has assumed that Carswell is attempting to hold the AFL-CIO

indirectly liable for ALPA's conduct because of ALPA's affiliation with the AFL-CIO.  If,

instead, Carswell's theory is that the AFL-CIO may be <u>directly</u> liable for having allegedly

expressed public support for ALPA's apparent position that the Age 60 Rule should be kept in

place—<u>see</u>, <u>e.g.</u>, Complaint ¶¶ 14 ("While the Defendants cannot independently change the

FAA's age limit, the Defendants can actively lobby for a change to the Age 60 Rule."); 27

("ALPA and the AFL-CIO . . . continue to support the Age 60 Rule and continue to breach their

duty of representation to their union members and, instead, lobby against the pilots they are

supposed to be representing; 36 ("ALPA and the AFL-CIO continue to aggressively lobby

against permitting US pilots to fly commercial aircraft in US airspace past the age of 60."); 64

("ALPA and AFL-CIO lobbied intensely to keep US Airways pilots from flying . . . beyond the

age of 60.")—his Complaint is legally frivolous for several reasons.

As a preliminary matter, the AFL-CIO informed Carswell's counsel that it was unable to

unearth any evidence, within any conceivable limitations period, of lobbying activity on the "age

60" issue by anyone authorized to speak for the AFL-CIO.  Carswell's counsel still has produced

no evidence of this.

More fundamentally, any construction of the ADEA that would allow for advocacy

before Congress or a federal agency to be made the basis of liability under the statute would put

the Act in square conflict with the First Amendment.  The "<u>Noerr-Pennington</u> doctrine,"

developed by the Supreme Court over four decades ago, <u>see</u> <u>Eastern R.R. Presidents Conference</u>

<u>v. Noerr Motor Freight, Inc.</u>, 365 U.S. 127 (1961) and <u>United Mine Workers of Am. v.</u>

11

Pennington, 381 U.S. 657 (1965), recognizes that it is inimical to the First Amendment to hold

parties liable for their political efforts to influence public officials. The doctrine accordingly

confers immunity from suits alleging statutory violations, where the conduct constituting the

alleged violation involves an effort by the defendant to petition the government. See, e.g., Bayou

Fleet, Inc. v. Alexander, 234 F.3d 852, 589 (5th Cir. 2000) ("Noerr-Pennington immunity applies

to any concerted effort to sway public officials regardless of the private citizen's intent."). The

Noerr-Pennington doctrine applies squarely to the allegations at issue here, for the conduct

alleged to constitute the ADEA violation is nothing more than advocacy by the AFL-CIO to

persuade the FAA to retain the age-60 rule. It is frivolous to suggest that the AFL-CIO could be

liable for having chosen to advocate, in Carswell's view, the wrong side of a public policy

debate.

## II.    Rule 11 Sanctions are Warranted

Rule 11(c) provides for sanctions jointly against a client and his counsel where a pleading

does not meet the standard set forth in Rule 11(b), including an award of "some or all of the

reasonable attorneys' fees and other expenses incurred as a direct result of the violation."

Fed.R.Civ. P. 11(c).

Here, Carswell, through counsel, has refused to amend his pleadings to comport with the

requirements of Rule 11(b). Carswell was clearly informed by the AFL-CIO of the factual and

legal deficiencies in its Complaint and was invited to voluntarily dismiss the AFL-CIO from suit.

Carswell, through counsel, ignored that invitation, forcing the AFL-CIO's counsel to go to the

expense of drafting this Motion, and to begin the preparation of a motion to dismiss the frivolous

Complaint. See Smith v. Blue Cross & Blue Shield United of Wisc., 959 F.2d 655, 660 (7th Cir.

1992) (approving imposition of Rule 11 sanctions, including attorneys' fees, where defense

counsel wrote to plaintiff counsel advising him of frivolity of the claims at issue prior to filing a motion to dismiss).

Given Carswell's disregard of his Rule 11 obligations, an award of attorneys' fees and expenses incurred in drafting and litigation this Motion, as well as any motion to dismiss regarding the claims against the AFL-CIO, assessed jointly against Carswell and his counsel, is appropriate.

## CONCLUSION

For the foregoing reasons, Defendant American Federal of Labor and Congress of Industrial Organizations' Motion for Sanctions should be granted and this Court should impose sanctions, including all attorneys' fees and costs incurred in drafting and litigating this Motion, upon Plaintiff Gene H. Carswell and his counsel.

Respectfully Submitted,

Dated: June 18, 2007

Leon Dayan (D.C. Bar No. 444144)
Joshua B. Shiffrin (D.C. Bar No. 501008)*
BREDHOFF & KAISER P.L.L.C.
805 Fifteenth Street NW
Suite 1000
Washington, DC 20008
(202)842-2600

Counsel for Defendant AFL-CIO

*Admission to Bar of U.S. District Court for District of Columbia currently pending.

13

# Attachment 1

# Affidavit of Nancy Schiffer

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GENE H. CARSWELL, individually and
on behalf of all others similarly situated,

     Plaintiff,

     v.

AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL; US AIRWAYS
GROUP, INC.; and AMERICAN
FEDERATION OF LABOR AND
CONGRESS OF INDUSTRIAL
ORGANIZATIONS,

     Defendants.

Case No. 1:07-CV-00651 (RBW)

## AFFIDAVIT OF NANCY SCHIFFER

I, Nancy Schiffer, hereby state:

1. I am over twenty-one years of age and competent to make this affidavit.

2. Since 2000, I have served as Associate General Counsel of the American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO"), headquartered at 815 Sixteenth Street, N.W., Washington, D.C. 20006. In that capacity, I have personal knowledge of the facts contained in this affidavit.

3. The AFL-CIO is not a party to any collective bargaining agreement involving pilots of US Airways.

4. The AFL-CIO is not certified as the exclusive bargaining agent for any pilots of US Airways.

5.   The AFL-CIO is a federation of 55 national and international unions, including the Air Line Pilots Association ("ALPA"). These 55 affiliated unions represent approximately 10,000,000 working men and women.

6.   The AFL-CIO does not serve as a bargaining agent for union members who belong to the unions affiliated with the AFL-CIO. Rather, the affiliate (such as ALPA) represents those individuals. Except for a narrow class of workers who are not involved with or represented by ALPA, the AFL-CIO does not itself act as a labor union in the traditional sense.

7.   The AFL-CIO's affiliated unions are separate, autonomous legal entities; the AFL-CIO Constitution states expressly that the affiliated unions are neither "subordinate to, [n]or subject to the general direction or control of" the Federation. See AFL-CIO Const., Article III, Section 1 (included in Attachment 2). The AFL-CIO is a voluntary association and affiliated unions are free to disaffiliate from the AFL-CIO.

8.   The AFL-CIO Constitution contains no provisions granting authority to the AFL-CIO to supervise or direct the actions of affiliated unions and it does not do so. The AFL-CIO has no mechanism for or authority to supervise the actions of ALPA or to negotiate benefits for members of ALPA and does not do so.

9.   The AFL-CIO also does not exercise any practical control over its affiliated unions, such as ALPA. The AFL-CIO has no ownership or financial control or responsibility over ALPA, and has no control over its operations, policies, or personnel. There is no interrelation of operations, no common management, no common ownership, and no shared accounts, employment benefits, payroll accounts or health and welfare plans. Each entity files its own separate income tax returns; they do not share services,

equipment, employees or office space.  The AFL-CIO does not select or hire the officers or employees of ALPA, nor does the AFL-CIO participate in ALPA's employment activities.  ALPA's employees are not employees of the AFL-CIO and the AFL-CIO does not engage in employment-related activities with respect to employees of its affiliate members or their local unions, including ALPA.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 18, 2007

Nancy Schiffer

District of Columbia : SS
Subscribed and Sworn to before me, in my presence,
this _18th_ day of _June_ , _2007_

_____ MELISSA GALDWIN
Notary Public, D.C.
My commission expires ___9/14/2009___

Attachment 2

Excerpts from AFL-CIO Constitution

**AFL-CIO** ———————————————— **Click to Print**

## Article III: Affiliates

Preamble I II III IV V VI VII VIII IX X XI XII XIII XIV XV XVI XVII XVIII-XIX XX XXI

#### Section 1

The Federation shall be composed of: (1) national and international unions that are affiliated with, but are not subordinate to, or subject to the general direction and control of, the Federation; and (2) the following categories of organizations that are subordinate bodies of the AFL-CIO subject to the kind and degree of Federation direction and control provided for in this Constitution: (a) organizing committees; (b) directly affiliated local unions and national councils thereof; (c) state, area and local central bodies; and (d) trade and industrial departments.

#### Section 2

Every affiliate that operated at the time of the merger between the AFL and the CIO with a charter or certificate of affiliation issued by either federation has, by virtue of the merger, retained and enjoyed the same organizing jurisdiction in this Federation that it had and enjoyed prior to the merger. In cases of conflicting and duplicating jurisdictions the President and the Executive Council shall seek to eliminate such conflicts through the process of voluntary agreement or voluntary merger between the affiliates involved.

#### Section 3

Every affiliate that operated at the time of the merger between the AFL and the CIO with a charter or certificate of affiliation issued by either federation has, by virtue of the merger, been conferred with a charter or certificate of affiliation from the AFL-CIO and become subject to this Constitution and the AFL-CIO's rules and regulations.

#### Section 4

**(a)** The Executive Council may issue additional charters or certificates of affiliation to other organizations desiring to affiliate with this Federation. This power may be delegated to the President. Charters or certificates of affiliation shall not be issued to national or international unions, organizing committees, or directly affiliated local unions in conflict with the jurisdiction of affiliated national or international unions, except with the written consent of such unions, and shall be based upon a strict recognition that both craft and industrial unions are equal and necessary as methods of trade union organization, and that each affiliated national and international union is entitled to have its autonomy, integrity and jurisdiction protected and preserved.

**(b)** Where the Executive Council determines that it would be necessary or appropriate to subject the approval of a charter to one or more future conditions, the Executive Council may issue a provisional charter. In such cases, the provisional status of the charter shall be removed following a specified period of time not to exceed three years, and the affiliation shall thereupon be deemed permanent, absent a vote of the Executive Council to revoke the charter.

#### Section 5

**(a)** Except as otherwise provided in this Constitution, no national or international union chartered by or affiliated with this Federation may be suspended from the Federation except by a majority

roll call vote at the convention. A suspension imposed by a convention may be terminated in accordance with Article X, Section 14.

**(b)** Except as provided in Section 4.(b) of this Article, no national or international union shall have its charter or certificate of affiliation with the Federation revoked except by a two-thirds roll call vote at the convention. A revoked charter or certificate of affiliation may be restored by either a two-thirds roll call vote of the convention or a two-thirds vote of the Executive Council if it is determined that the organization is conducting its affairs in a manner consistent with the obligations of an AFL-CIO affiliate.

## Section 6
No organization that is unaffiliated with, or is suspended from, this Federation, and no affiliate or subordinate body of such an organization, shall, while unaffiliated or suspended, be allowed representation or recognition in the AFL-CIO, in any subordinate body of the AFL-CIO, or in any national or international union or organizing committee affiliated with the AFL-CIO. Any affiliate violating this section shall be subject to suspension from the AFL-CIO.

## Section 7
No organization officered, controlled or dominated by persons whose policies and activities are consistently directed toward the achievement of the program or purposes of authoritarianism, totalitarianism, terrorism and other forces that suppress individual liberties and freedom of association shall be permitted as an affiliate of the Federation or any of its state or local central bodies.

## Section 8
Affiliates of the Federation shall be encouraged to eliminate conflicts and duplications in organization and jurisdictions through the process of voluntary agreement or voluntary merger in consultation with the appropriate officials of the Federation. Accordingly the AFL-CIO shall implement a proactive, industry-based strategic merger policy as adopted by the AFL-CIO Convention delegates and is hereby authorized to take all necessary steps to effectuate its terms.

---

Copyright © 2007 AFL-CIO



## Article XVI: Per Capita Taxes and Assessments

Preamble I II III IV V VI VII VIII IX X XI XII XIII XIV XV XVI XVII XVIII-XIX XX XXI

### Section 1
A per capita tax shall be paid upon the full paid-up membership of each affiliated national or international union, organizing committee and directly affiliated local union.

### Section 2
Beginning with per capita payments for the month of January 2001, each national or international union and organizing committee shall pay on or before the fifteenth day of each month, for the preceding month, a per capita tax of 53 cents per member per month. Beginning with per capita payments for the month of July 2005, each national or international union and organizing committee shall pay on or before the fifteenth day of each month, for the preceding month, a per capita tax of 65 cents per member per month.

### Section 3
The per capita payments with respect to categories of associate and retired membership a national or international union maintains for individuals who are not treated as regular members of the union with the full range of international union political rights accorded regular members, pay lesser dues than do individuals in the most comparable regular membership category, and receive less than the full range of the union's representation services shall be established by the Executive Council.

### Section 4
Directly affiliated local unions shall pay on or before the fifteenth day of each month, for the preceding month, a per capita tax established by the Executive Council of not less than $5.00 per member per month. Each directly affiliated local union shall also pay a portion, established by the Executive Council, of the initiation fee received by such union from its members, but such payment in no case shall be less than $5.00 per member.

### Section 5
Revenue may also be derived from assessments when and as ordered by a majority vote of a convention. The Executive Council may also declare an assessment not to exceed four cents per member per month on all affiliated unions for a period not to exceed six months in any one year when the interests of the Federation require and when funds available from per capita tax are insufficient to meet the needs of the Federation, except that by a two-thirds vote the Council, or by a two-thirds vote pursuant to Article XI, Section 4 the General Board upon request of the Executive Officers or the Executive Council, may declare an assessment that exceeds four cents per member per month on all affiliated unions for a period to expire no later than the next regular convention when extraordinary circumstances require and when funds available from per capita tax are insufficient to meet those circumstances. In addition, the General Board, by a two-thirds vote pursuant to Article XI, Section 4, may increase the per capita tax.

### Section 6

Any affiliated organization that does not pay its per capita tax on or before the fifteenth of the month, and assessments when due and payable, shall be notified in writing of that fact by the Secretary-Treasurer. Any affiliated organization that is three months in arrears in payment of per capita tax or assessments, and is so notified in writing, shall, unless it has returned to good standing within 20 days of such notification, be suspended automatically from the Federation and can be reinstated only after such arrearages are paid in full.

### Section 7
Each affiliate, upon the issuance of a certificate of affiliation, shall pay to the Federation the sum of $15.00.

### Section 8
The Executive Council may exonerate any national or international union, organizing committee and directly affiliated local union from the payment of per capita tax or assessments due for any month upon a proper showing that, in the opinion of the Executive Council, good cause exists. Exonerated affiliates shall be regarded, for the purposes of this Constitution, as paid-up affiliates for the period of exoneration.

Copyright © 2007 AFL-CIO

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of June 2007, I served by personal service the foregoing Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 upon:

Rosemary Dettling
FEDERAL EMPLOYEE LEGAL SERVICES
3120 Brandywine Street NW
Washington, DC  20008
Telephone: (202)390-4741
Facsimile: (888)241-6719
email: redettling@felsc.com

*Counsel for Plaintiff Gene H. Carswell*

David Michael Semanchik
Granville Clayton Warner
AIR LINE PILOTS ASSOCIATION INTERNATIONAL
535 Herndon Parkway
Herndon, VA  20170
Telephone: (703)689-4393
Facsimile: (703)481-2478
email: david.semanchik@alpa.org
        clay.warner@alpa.org

*Counsel for Defendant Air Line Pilots Association International*

Thomas Barton Almy
DOMBROFF & GILMORE, P.C.
1676 International Drive – PH
McLean, VA  22102
Telephone: (703)336-8723
Email: talmy@dglitigators.com

*Counsel for U.S. Airways Group, Inc.*

Leon Dayan

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GENE H. CARSWELL, individually and on
behalf of all others similarly situated,

      Plaintiff,

      v.                                Case No. 1:07-CV-00651 (RBW)

AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL; US AIRWAYS
GROUP, INC.; and AMERICAN
FEDERATION OF LABOR AND
CONGRESS OF INDUSTRIAL
ORGANIZATIONS,

      Defendants.

## <u>ORDER</u>

Upon consideration of the motion for sanctions pursuant to Fed. R. Civ. P. 11 submitted

by Defendant American Federation of Labor and Congress of Industrial Organizations ("AFL-

CIO") against plaintiff Gene H. Carswell, its accompanying memoranda and exhibits thereto,

and any opposition and reply, it is hereby ORDERED:

        (1) That the AFL-CIO's motion is GRANTED;

        (2) That Carswell and his counsel are ordered to pay, jointly and severally, the

AFL-CIO's costs and reasonable attorney's fees it has incurred in defending this action.

      SO ORDERED this _____ day of _____, 2007.

                                _____
                                HON. REGGIE B. WALTON
                                UNITED STATES DISTRICT JUDGE