IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GENE H. CARSWELL, et al.                    :
 individually and on behalf of all others  :
 similarly situated,                        :
                                            :
        Plaintiff,                          : Civil Action No. 1:07-cv-00651
                                            :
AIR LINE PILOTS ASSOCIATION,               : Judge Reggie B. Walton
 INTERNATIONAL, et al.                      :
                                            :
        Defendants.                         :

PLAINTIFF'S OPPOSITION TO THE MOTION OF
US AIRWAYS GROUP, INC. TO DISMISS THE
FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)

COMES NOW PLAINTIFF, Gene H. Carswell, by and through undersigned

counsel, and respectfully opposes the motion of defendant, US Airways Group, Inc. ("US

Airways"), to dismiss the First Amended Complaint as to said defendant pursuant to

Federal Rule of Civil Procedure 12(b)(6), and as reasons therefore, states as follows:

DEFENDANT'S MOTION FAILS TO MEET THE
STANDARDS REQUIRED FOR FED.R.CIV.P. 12(b)(6)

Defendant moves to dismiss the Complaint for failure to state a claim upon which

relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion

may be granted only if, taking all of the allegations in the complaint as true, Cooper v.

Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964), "it appears beyond doubt that

the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957);

Bogosian v. Gulf Oil Corp., 561 F.2d 434, 444 (3d Cir.1977), cert. denied, 434 U.S.

1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978) (allegations of complaint must be viewed

"liberally giving plaintiffs the benefit of all inferences which may fairly be drawn

therefrom").  See also, <u>Murphy v. Pricewaterhousecoopers, LLP et al.</u>, 357 F.Supp.2d

230, 238 (D.DC 2004).

When deciding a 12(b)(6) motion, the court does not inquire as to whether the

plaintiff will ultimately prevail on its claims, only whether the plaintiff is entitled to

present evidence in support of its claims.  <u>Children's Seashore House v. Waldman</u>, 197

F.3d 654, 658 (3d Cir. 1999).  In the instant case, the plaintiff has pleaded sufficient facts,

which, if true, support each of his claims against this defendant and entitle him to relief.

As a result, this defendant's motion must fail.

<u>BACKGROUND</u>

The instant case involves the application of the "Age 60 Rule" which has barred

individuals who have reached their sixtieth birthday from serving as pilots or co-pilots in

flight operations governed by Part 121 of the rules of the Federal Aviation

Administration ("FAA").  The FAA regulations also provide that the FAA may grant a

waiver or exemption to individuals under the Age 60 Rule.

Nowhere in the FAA regulations are individuals over the age of 60 barred from

being actively employed by an airline in a capacity other than as a pilot or a co-pilot on a

Part 121 flight.

In October 2006, the FAA published a request in the Federal Register for

comments about whether the United States should revise the Age 60 Rule and adopt a

policy similar to that being instituted by the International Civil Aviation Organization

("ICAO") beginning in November 2006.  The FAA proposed a new upper age limit of

airline pilots to age 65, provided another crewmember pilot is under age 60.

In January 2007, the FAA publicly retracted its support for the Age 60 Rule as a bona fide occupational qualification ("BFOQ") defense and further announced its intention of seeking to change the Age 60 Rule.  The FAA's change of opinion is consistent with the view that has been held by the Equal Employment Opportunity Commission ("EEOC") that the Age 60 Rule violates the Age Discrimination in Employment Act ("ADEA"), 29 USC §626 et seq.  Indeed, in her speech on January 30, 2007, FAA Administrator Marion C. Blakely noted that this change had been in the making for almost forty-seven years.  (Administrator Blakely's speech is published on the FAA website, www.faa.gov.  A copy is attached hereto as Attachment 1 for the Court's convenience.)

Plaintiff, Mr. Carswell, turned 60 in January 2007 and was forced to retire from his job as a pilot for US Airways on February 1, 2007.  Although Mr. Carswell made numerous requests for this defendant not to terminate him and also petitioned the FAA for an exemption, US Airways nonetheless terminated his employment.  US Airways did not offer Mr. Carswell other employment. They simply terminated him.

Mr. Carswell claims that US Airways, co-defendants the Air Line Pilots Association International, ("ALPA") and the American Federation of Labor and Congress of Industrial Organization ("AFL-CIO"), have violated the ADEA and have colluded to discriminate against him because of his age.  Mr. Carswell brings this action on behalf of himself and all other similarly situated plaintiffs.

## US AIRWAYS VIOLATED THE ADEA WHEN
## <u>IT SUMMARILY TERMINATED MR. CARSWELL'S EMPLOYMENT</u>

There is no dispute that US Airways terminated Mr. Carswell's employment in February 2007 because of his age.  He was a Part 121 pilot who had reached his sixtieth birthday in January 2007.  US Airways thus asserts that it cannot be faulted for not continuing to employ Mr. Carswell, and cites to two cases in support of its proposition: <u>Equal Employment Opportunity Commission v. Sperry Corporation</u>, 852 F.2d 503 (10th Cir. 1988), and <u>Tice v. Lampert Yards, Inc.</u>, 761 F.2d 1210 (7th Cir. 1985).

Mr. Carswell submits that these two cases fail to support US Airways' summary dismissal of his employment.  In <u>Tice</u>, <u>supra</u>, the employee was terminated after the employer closed its mill operation where Tice had been employed.  The Seventh Circuit held that the employer was not obligated to find Tice employment where his job and the business no longer existed.  Similarly, in <u>Sperry</u>, <u>supra</u>, the Tenth Circuit found that an employee on a personal leave of absence[1] who had not expressed a definite desire to return to work was not entitled to be rehired when her job had been filled prior to her stating her intent to return.

Even assuming, <u>arguendo</u>, that US Airways was justified in terminating Mr. Carswell's employment as a pilot in February 2007, Mr. Carswell maintains that the defendant violated the ADEA and Mr. Carswell's rights by terminating his employment completely at that time.

The facts as alleged by Mr. Carswell state that "less than .1% of US Airways pilots are retained in employment after their 60[th] birthday."  (First Amended Complaint, ¶

---

[1] <u>Sperry</u> was decided prior to the passage of the Family and Medical Leave Act of 1993. However, the reason for the employee's leave of absence was "to consider a marriage proposal," <u>Id.</u> at 506, something not covered or contemplated by the FMLA.

3.)  Thus, US Airways has a policy were some pilots are retained and given on-going

employment while others, like Mr. Carswell, are terminated.  "Discriminatory or

disparate treatment in violation of the ADEA occurs when an employer treats some

people less favorably than others because of age."  Airline Pilots Association,

International v. Trans World Airlines, Inc., 713 F.2d 940 (2d Cir. 1983.)

      In Airline Pilots, supra, TWA had a policy of allowing pilots approaching age 60

to "downbid" to the position of a flight engineer under certain conditions.  Flight

engineers are not subject to the Age 60 Rule.  The Second Circuit held that, "[t]hat age

less than 60 is a BFOQ for the particular job of captain or first officer provides no license

for TWA to discriminate against those over 60 who wish to transfer to positions as flight

engineers, for which age 60 is not a BFOQ, by permitting other captains and first officers

to do so."  Id. At 954.  Mr. Carswell maintains that the fact that US Airways retains some

pilots as employees after they reach age of 60 does not mean that US Airways may

discriminate against him and other pilots over the age of 60.

      The Second Circuit also rejected the argument advanced by the Airline Pilots that

the ADEA does not require employers to provide special working conditions or jobs for

older workers.  "The terms of §623(f)(1) plainly reveal its purpose, which is to excuse

only those age-based actions against employees that are related to the 'particular job' (in

this case captain or first officer)."  Id. At 954.

      Mr. Carswell maintains that if US Airways continues to employ some pilots once

they reach age 60, then it has an obligation to offer employment to all pilots who reach

age 60 on the same basis as the pilots who continue their employment.  Mr. Carswell and

other pilots had met and/or exceeded their performance requirements.  (First Amended

Complaint, ¶¶40, 41.)  The only reason that US Airways terminated these pilots was because they had reached age 60, yet they failed to offer these pilots the opportunities afforded to other pilots.

The defendant also cites to Coupé v. Federal Express Corp., 121 F.3d 1022 (6th Cir. 1997), cert. denied, 523 U.S. 1020 (1998) in support of its position that it cannot be faulted for complying with federal law.  Although we have been unable to locate any case with this name or citation, there is a case entitled Coupi v. Fed Express Corp[2] from the Sixth Circuit that addresses issues similar to those before this court.  In Coupi, a professional pilot advised his employer, Federal Express, that he wished to continue to work as a pilot after he turned 60.  The employer denied his request, but told him he could continue to be employed as a flight engineer.  The pilot filed an age discrimination suit.

Coupi can be distinguished from the instant case for several reasons.[3]  First, Federal Express did not summarily terminate Coupi's employment. They offered him another job as a flight engineer.  The court also determined that Coupi had other remedies available to him; Coupi had petitioned for an exemption from the FAA which the FAA denied.  The court noted that Coupi had the right to seek judicial review of the FAA's denial, but that he failed to do so.

---

[2] Unfortunately, plaintiff has been unable to determine the proper citation for this case.  A copy of the FindLaw version is attached hereto as Attachment 2 for the court's convenience.

[3] Interestingly, with respect to the scientific evidence advanced by the FAA over the years to support the age 60 rule, the Sixth Circuit stated, "we do not hold that the conclusions the FAA has drawn from the scientific evidence are necessarily correct."  Id.

In the instant case, US Airways failed and refused to offer Mr. Carswell employment in any other capacity than as a pilot. It failed and refused to seek or support an exemption for Mr. Carswell. As discussed, below, US Airways colluded with the defendant unions to deprive Mr. Carswell and other pilots of their right to work.

For the purposes of the instant motion, Mr. Carswell is not required to prove his allegations. He must – and has – pleaded facts which, if true, show age discrimination against him and other similarly-situated former pilots.

THE FIRST AMENDED COMPLAINT STATES
CAUSES OF ACTION FOR DISCRIMINATION
AND COLLUSION BY US AIRWAYS, ALPA AND THE AFL-CIO

1.    Defendant US Airways had a fiduciary duty to advance the interests of Mr. Carswell and other pilots.

While in the normal course of an employment relationship an employer does not have a fiduciary duty to its employees, there are circumstances where such a fidiciuary relationship is created. See, e.g., Tiberi v. CIGNA Corp., 89 F.3d 1423 (10th Cir. 1996). Mr. Carswell maintains that in the instant action, US Airways did have a fiduciary duty to him and other pilots. Although many industries are regulated by the federal and/or state governments, commercial airlines such as US Airways have been subject to the age 60 rule as a "safety" measure.[4] Other "safety" measures have also been imposed on industries, for example, limiting the number of hours a pilot may fly, limiting the number of hours an interstate trucker may drive, and similar measures to promote safety.

---

[4] Many courts have questioned the age 60 rule as a safety measure. For example, in Baker v. Federal Aviation Administration, 917 F.2d 318 (7th Cir. 1990), and cited by defendant, the court affirmed the FAA's rule making actions regarding the age 60 rule, but cautioned, "The FAA should not take this as a signal that the age sixty rule is sacrosanct and untouchable. Obviously, there is a great body of opinion that the time has come to move on." Id. at 322. It should be noted this time "to move on" was in 1990, seventeen years ago.

However, the difference between these safety measures and the age 60 rule is that

the age 60 rule <u>prevents employment</u> due solely to the age of the pilot.  However, FAA

regulations permit <u>the employer</u>, here US Airways, to petition for an exemption for its

pilots approaching or past age 60.  (First Amended Complaint, ¶¶11, 12, 26.)  Mr.

Carswell maintains that this ability to seek an exemption for pilots places US Airways

into a fiduciary position to act on the behalf of its pilots.

> 2.    Even if US Airways does not have a fiduciary duty to Mr.
> Carswell, it may not collude or conspire with the unions to deprive
> him of his rights.

Even assuming, <u>arguendo</u>, that US Airways does not have a fiduciary duty to Mr.

Carswell, it is clear that the defendant unions representing Mr. Carswell and the other

pilots do have a fiduciary duty to these pilots.  They have a duty to represent the interests

of their union members.  However, it is also clear that ALPA has been engaged in a

protracted campaign to limit its members rights with respect to the age 60 rule for many

years.  This is made abundantly clear by its actions in <u>Airline Pilots</u>, <u>supra</u>, where the

court noted, "Here, however, ALPA is not suing 'to promote employment of older

persons,' which is the purpose of the [ADEA], 29 U.S.C. §621(b).  On the contrary, it

seeks to use the ADEA to cut off the rights of the older flight engineers.  This ALPA may

not do."  <u>Id.</u> At 950.

Despite the fact that the courts and the EEOC have shown disfavor for the age 60

rule over the years,[5] the airlines have continued to support it.  It is easy to understand

---

[5] In its motion, defendant cites to several cases to support their position regarding the
need for the age 60 rule.  However, the courts in these cases were not asked to confirm or
overrule the validity of the age 60 rule.  In <u>Professional Pilots Federation et al. v. Federal
Aviation Administration</u>, 118 F.3d 758 (D.DC 1997), the court was asked to rule on the
decision of the FAA not to institute rulemaking on the age 60 rule.  The court specifically

why: older pilots cost more in the way of salaries, medical care and other benefits than younger pilots. Terminating pilots at age 60 is a cost-saving measure sanctioned by the FAA.[6]

As demonstrated in Airline Pilots, supra, ALPA and/or the AFL-CIO have actively engaged in attempting to cut off the rights of older flight engineers, specifically pilots who have reached age 60 and have "downbid" to flight engineer status to maintain continued employment. Mr. Carswell maintains that the unions and US Airways have colluded to cut off the rights of older pilots and that the unions have agreed to support the age 60 rule on behalf of the airlines in exchange for concessions from the airlines during any collective bargaining activity.

Clearly, the defendant unions and US Airways are not going to announce their collusion and malfeasance to the public. Mr. Carswell submits that during the discovery phase of these proceedings, evidence will be discovered to support his claims of collusion by the unions and by US Airways. See, Children's Seashore House, surpra.

The FAA has clearly turned away from its previous position of mandating retirement of Part 121 pilots who have reached age 60 and is now promoting a new standard, i.e., allowing a pilot between the ages of 60 and 65 to continue to act as a pilot as long as there is another pilot under the age of 60 in the cockpit. There are clear and identifiable benefits to this policy, as discussed by Administrator Blakeley. Yet the

_____

noted that the FAA was not violating the ADEA because the FAA was acting as a regulator, not an employer. In Baker, supra, the issue before the court was whether the FAA's actions in denying exemptions were supportable by the agency. As noted above, the court cautioned the FAA that its actions with respect to the age 60 rule were not "sacrosanct and untouchable.) 917 F.2d at 322.

[6] In her dissent in Professional Pilots, supra, Judge Wald noted, "most importantly, the Age 60 Rule stands as an instance of government-mandated age discrimination for a particular group of employees." 118 F.3d at 775.

unions and US Airways continue to oppose this change and they fail and refuse to assist Mr. Carswell and other similarly-situated pilots.

<u>CONCLUSION</u>

In this 12(b)(6) motion, the burden is on the defendant, US Airways, to show that Mr. Carswell has utterly failed to set forth facts to support his claims for discrimination and collusion against this defendant. US Airways has failed to meet its burden. Mr. Carswell has alleged facts which, if true, support his claims for discrimination and collusion by US Airways. Based upon his own knowledge, the knowledge of other members of the class, and based upon the anticipated results of discovery conducted in this case, Mr. Carswell submits that he will be able to present evidence and ultimately prevail on his claims against this defendant and the defendant unions.

WHEREFORE, Mr. Carswell respectfully requests that this honorable Court deny the defendant's motion to dismiss.


Dated: July 16, 2007

                                       Respectfully submitted,

                                       <u>/s/ Rosemary Dettling</u>
                                       Rosemary Dettling (DC Bar 441483)
                                       3120 Brandywine Street, NW
                                       Washington, DC 20008
                                       (202) 362-1988 (Telephone)
                                       (888) 241-6719 (Facsimile)

                                       Joanne D. Donohue (DC Bar 370569)
                                       *Pro hoc vice*
                                       16848 Hamilton Station Road
                                       Hamilton, Virginia 20158
                                       (540) 338-4841 (tel. and fax)

                                       Counsel for Plaintiff, Gene H. Carswell

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th day of July, 2007, the foregoing Plaintiff's Opposition to the Motion of US Airways Group, Inc. to Dismiss the First Amended Complaint Pursuant to Rule 12(b)(6) and proposed Order were served by ECF upon:

David M. Semanchik
Granville C. Warner
Air Line Pilots Association International
535 Herndon Parkway
Herndon, Virginia 20170
Counsel for Defendant Air Line Pilots Association, International

Leon Dayan
Bredhoff & Kaiser, PLLC
805 Fifteenth Street, NW
Washington, DC 2005-2207
Counsel for AFL-CIO

Thomas B. Almay
Mark A. Dombroff
Mark E. McKinnon
Dombroff Gilmore Jacques & French, PC
1676 International Drive – PH
McLean, Virginia 22102
Counsel for US Airways Group, Inc.

and by First-Class Mail to

Erin Flaherty Lewin, Esquire
*Pro hoc vice*
US Airways Group, Inc.
111 W. Rio Salado Parkway
Tempe, Arizona 85281

<u>/s/ Rosemary Dettling</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GENE H. CARSWELL, et al.                      :
 individually and on behalf of all others     :
 similarly situated,                          :
                                              :
        Plaintiff,                            : Civil Action No. 1:07-cv-00651
                                              :
AIR LINE PILOTS ASSOCIATION,                  : Judge Reggie B. Walton
  INTERNATIONAL, et al.                       :
                                              :
        Defendants.                           :

ORDER DENYING MOTION OF US AIRWAYS GROUP, INC.
TO DISMISS THE FIRST AMENDED COMPLAINT

Upon consideration of the motion of Defendant US Airways, Group, Inc. to dismiss the first amended complaint pursuant to Fed.R.Civ.P. 12(b)(6), and upon consideration of the opposition filed thereto by Plaintiff, Gene H. Carswell, it is this _____ day of _____, 2007

ORDERED, that the motion to dismiss is DENIED, and it is further

ORDERED, that Defendant US Airways Group, Inc., will file its answer to the first amended complaint within ten (10) days of the date of this Order.

So Ordered.

_____
Reggie B. Walton
Judge, United States District Court
 for the District of Columbia

Copies to all counsel of record.

# ATTACHMENT 1

**Federal Aviation
Administration**

## Speech

"Experience Counts"
Marion C. Blakey, Washington, DC
January 30, 2007

## National Press Club

Good afternoon, and thank you for inviting me. And I bring greetings from Secretary Peters. We're delighted to have the National Press Club focus on transportation and aviation. You know, there's a Latin phrase, *carpe diem*, that tells us to seize the day. It's used a lot, and it's really an admonition to make the most of the moment, to make sure that opportunity is not lost. But sometimes, it's not all that easy.

First, a rough spot or two. When Alexander Graham Bell was trying to sell the telephone, the Postal Service and Western Union turned him down. The Swiss invented the digital watch, only to reject something that "didn't have gears." Texas Instruments and the Japanese, however, thought the digital watch just might catch on.

There are successes. On the low-tech end, a fellow by the name of Earle Dickson, a cotton buyer, had the idea to put little pieces of cotton on surgical tape. His employer, Johnson & Johnson, seized the day.

Aviation has had more than its share of those kind of moments. I'd have to say that the Wrights are at the top of that list. Going from bicycles to wings is a huge leap, and not just in technology. Certainly Burt Rutan would have to be considered someone who didn't let the moment pass. He believed the timing was right to show that the common man has a place in space. I was there in the Mojave when he did it with Space Ship One. At a significantly lower altitude, Vern Raburn and his Eclipse and Peter Maurer and his Diamond D believe it's time to change point-to-point travel.

Today is another one of those "seize the moment" days — for commercial aviation, the U.S. Department of Transportation and the FAA. It's time to close the book on Age 60. The retirement age for airline pilots needs to be raised. So, the FAA will propose a new rule to allow pilots to fly until they are 65.

This has been a long time in the making. About a couple of months shy of 47 years, in fact. But who's counting? Well, I can say with certainty that these days, *everyone's* counting. And each one of them has *my* email address.

More than most, though, this is an issue that requires context, so bear with me while I take you all back in history. Fact is that even in the 1950s, pilot retirement age was a bone of contention. When the airlines back in the day were forcing pilots to retire, the union took legal action. Arbitrators ruled for the pilots each time.

In what still is a matter of debate as to why the government made Age 60 the limit, American Airlines prevailed on the FAA for a rule. Perhaps it was the strike that occurred. Maybe it was just a move to get beyond the issue. The man in charge at American, C.R. Smith, wrote to Pete Quesada, the administrator at the time. He wrote, and I quote: "It appears obvious that there must be some suitable age for retirement."

That was February 1959. Less than four months later, June 27 to be exact, the Federal Aviation Agency drew a new line in the sand and issued a proposed rule titled "Maximum Age Limitations for Pilots." When

you're 60, your career as an airline pilot would be over.

In what today would be considered warp speed — less than nine months — it became the law of the land. The basis for the decision was safety — that the safety of air commerce was indeed in the public interest. That's hard to argue. The FAA said that using older pilots is a safety concern. As people age, their skills degrade.

That's the history. And that is why we're here today. It's now a different day and age. The issues of experience, harmonization, and let's face it — equity — all have to be addressed.

Since I've come to the agency, one of my big areas of emphasis has been global harmonization. It's a big sky, and unless it's a seamless sky, we all lose. If you have rules that directly controvert that principle, especially a rule that becomes increasingly more difficult to defend, it's time for a change.

Let me read a letter I received about two months ago from a pilot on the West Coast. I'm quoting here: "I assert that my skills and experience enhance aviation safety and thus serve the public interest. I have over 26,000 hours without violations and am an FAA-certified check airman on the Boeing 747-400. I hold an ATP, current gold seal flight instructor, flight engineer ... In addition, I have a first class medical certification with no limitations."

I've got to tell you, on its face, he's making the right point. This is a guy you want flying your plane. Yet, he's about to time out in our system.

There are another two stories worth repeating. One in particular, you all know. When John Glenn joined a space shuttle crew at age 77, he proved that there's a place in space for experience. And for those of you who remember the Sioux City crash in 1989, the United Captain, Alfred C. Haynes, saved 186 people that day. He flew a DC-10 that had lost hydraulics, using a throttle to make turns. Somewhat like taking the steering wheel off your car and trying to steer with the gas pedal. At the time, Captain Haynes was 59. I'm standing here today to tell you that it was a sad day when Captain Haynes turned 60. This rule drew a line in the sand and aviation lost heroes like Captain Haynes because of it.

So ICAO's move to allow a pilot under 65 to continue to fly was the right thing to do. The Joint Aviation Authorities in Europe already made the step, too. And in the interest of harmonization, it's time for us to do so as well. The rule we intend to propose will be parallel to the ICAO standard — either pilot or co-pilot may fly up to age 65 as long as the other crewmember is under 60. It is our intent that this new rule will apply to pilots who have not yet reached 60 by the time the rule goes into effect.

Why the change? First, medically speaking, there are no scientific studies to say, "Don't do this." In fact, as we'd all agree, medical science is in the place where we're all living longer and healthier. And that includes the cockpit.

Back in 1959, the average lifespan in the U.S. was 69 and a half. Today, it's more than 77. And if there's a group of employees in better shape than airline pilots, generally speaking, they're not coming to mind right now — well, maybe the Bears and the Colts.

Plus, there's the added protection of a medical exam every six months specifically tailored to aviation, conducted by a professional who's specifically trained to address the kind of medical conditions that'd affect the ability to fly.

For the doubters among us, there's also the check ride. Every six months, these folks are tested by a taskmaster who makes damn sure that the i's are dotted and the t's are crossed. Our check airmen are the cream of the crop in the pilot community and their job is to make sure that all pilots are up to the job. Given our safety record — we're in one of the safest periods in history — I'd have to say that the pilots and those who check their performance are getting it done.

2

There's a major equity angle to this issue as well. Under our current rules, we will have captains older than 60 carrying Americans on foreign carriers originating overseas, from countries such as Canada, Australia, Israel, Japan — about three dozen countries overall. They'll be coming here, picking up Americans, and then flying them elsewhere. So you have to ask: It's safe to fly with foreign pilots on our shores, but it's not safe with our own?

It's not as if we don't have some experience with this, because in fact, we do. Back in 1995, when the agency brought small commuter operators up to the same standards as the majors to form "one level of safety," we allowed about 200 pilots over the age of 60 to continue to fly, grandfathered in for about four years. There were no medical events, no safety events, nothing to show that group couldn't fly above age 60.

And now, I'd like to turn to the most compelling reason. Like the pilot on the West Coast who wrote me the letter, the fact of the matter is that there's a heckuva lot of experience behind those captain stripes, and we shouldn't have to lose it as early as we do. I want our older captains to be around longer to help the younger pilots rising up through the ranks.

A pilot can learn a lot just by seeing how the experienced vet handles a situation that they may only have seen in simulation. Simulators are great for training, but there's no substitute for real life, encountering all different weather systems, different mechanical or technical problems that bring their own unique challenges, sometimes in combination. All of that leads to what I call "airmanship," decision making, the pilot skills that make our system so good. When you think back over recent years, there have been very few accidents, but almost all of those that have occurred have turned on human decision-making.

So with all of this said, a procedural question arises, and I think it's a fair one: Why don't you just put the new retirement age in place today, right now? After all, there are pilots out there every month who turn 60 but want to keep flying. The answer is simple. We can't. And it wouldn't be the right thing to do.

Except in very limited circumstances, such as an urgent safety issue, the Administrative Procedure Act governs and it requires that a notice of proposed rulemaking be issued before any final action can be taken. The public, the industry, individual pilots need to have the opportunity to comment, and we have an obligation to listen and consider the data and opposing arguments before making a final decision.

This is how the rulemaking process works — deliberative, purposeful. And there are a lot more requirements to be met than in Pete Quesada's day, so it takes time. When it's something you want right away, it's a hurdle. But when it's something over which there's honest debate, it's one of the key ways the strength of our aviation system was built.

Now, there are some strong feelings out there about the retirement age, and it's going to take time, and I want to particularly thank a number of people who have already put a great deal of time into these deliberations. You see, for help with this, I established an aviation rulemaking committee — we call it an ARC — made up of representatives of the airlines, pilot unions, a group representing pilots over 60 and the aero-medical community. I asked them to review the situation and make recommendations. And even though they could not come to consensus, they produced a thoughtful report that I found very helpful. I want to particularly thank the co-chairs, Captain Duane Woerth of ALPA, the Airline Pilots Association and Jim May of the Air Transport Association for their yeoman's work.

And I must tell you, one reason for announcing our decision to move forward months in advance of the actual NPRM being published is I'm going to ask the ARC for a bit more help in collecting data so that we get the details of the proposed rule as close to right as possible. And in that regard, I'm grateful that the new head of ALPA, Captain John Prater, has agreed to step in as co-chair to finish the analysis. And shepherding this all along is Nick Sabatini, our Associate Administration for Aviation Safety, and an FAA staff, a number of whom are here today.

Now, finally, let me touch briefly on another matter of global harmonization. Recently, the European Union proposed legislation that would put international flights into a European emissions trading scheme without the consent of their governments. Many countries around the world, including the U.S., view this unilateral approach as unworkable and unsustainable under international law.

It is directly counter to everything ICAO stands for. It goes against the efforts of ICAO to develop agreed international guidance for use in emissions trading. Through the European SESAR plan and our NextGen efforts, we're seeking to dramatically improve the efficiency and environmental performance of our air traffic systems, taking advantage of proven technologies and practices such as RNP, ADS-B and RVSM. Unilateral moves weaken the foundation for collaboration, harmonization. Trying to impose a "one size fits all" solution on a complex issue in a global industry is a recipe for failure. Unilateral moves are a step back. Let me leave it at that.

In closing, with respect to Age 60, let me emphasize that the retirement issue strikes a real chord and elicits strong emotions on both sides. I read an article in the *San Francisco Chronicle* earlier this month that particularly struck me. I'm going to quote a pilot mentioned in the article:

"When I started," he says, "the World War II guys were still flying." He's talking about the senior pilots in the 1960s. "They were chain smokers, drank hard liquor, never exercised. Now, almost no one does those things. Plus, we get random alcohol tests. We have to pass rigorous physicals twice a year from doctors who specialize in aviation."

As I see it, he's precisely on point. We're moving forward because it's a change whose time has come. The objections of the past don't cut it anymore. This is the right thing to do. *Experience* counts, it's an added margin of safety, and at the end of the day, that *is* what counts. Isn't it?

### ###

# ATTACHMENT 2



**FindLaw**
For Legal Professionals

http://caselaw.findlaw.com

# U.S. 6th Circuit Court of Appeals

## COUPI v FED EXPRESS CORP
## No. 96–5978

Page 1
Coupi v. Federal Express Corp.
No. 96-5978

CORPORATION, Memphis, TN for Appellee.  ON BRIEF:  Nicholas H.
Cobbs, LAW OFFICES OF NICHOLAS H. COBBS, Washington, DC, for
Appellant.  James R. Mulroy, FEDERAL EXPRESS CORPORATION, Memphis,
TN for Appellee.

---

OPINION

---

DAVID A. NELSON, Circuit Judge.  Except where age is a bona
fide occupational qualification reasonably necessary to the normal
operation of an employer's business, the Age Discrimination in
Employment Act of 1967 ("ADEA"), 29 U.S.C. §§621 et seq., prohibits
the employer from discharging an individual because of his age.
See 29 U.S.C. §623(a)(1) and (f)(1).  Federal law also prohibits
any air cargo operator regulated by the Federal Aviation
Administration under Part 121 of the Code of Federal Regulations
from using the services of a pilot who has reached his 60th
birthday.  See 14 C.F.R. §121.383(c).

Where an employer is subject to the FAA rule, does the ADEA
prohibit the employer from discharging a pilot because he has
turned 60?  Concluding that as a matter of law the obligation to
comply with the FAA's age 60 rule gives rise to a bona fide
occupational qualification reasonably necessary to the normal
operation of such an employer's business, the district court
answered this question "no."  The court gave the correct answer, in
our view.

I

The defendant in this case, Federal Express Corporation,
operates aircraft used to carry cargo for hire.  The company's
operations are regulated by the FAA under 14 C.F.R. Part 121.

The plaintiff, Robert J. Coupi, was employed by Federal
Express as a professional pilot.  Six months before his 60th
birthday he told Federal Express that he wanted to continue working
in his current job (he was a captain at the time) after he turned
60.  Federal Express told him that he could not do so.  The company
gave him a choice between retiring at 60 or training for a lower-
paying position as a flight engineer.  (The FAA has not established
a mandatory retirement age for flight engineers.  See Western Air

Lines, Inc. v. Criswell, 472 U.S. 400, 401 (1985).)

Mr. Coupi promptly filed an age discrimination charge with the Equal Employment Opportunity Commission. The EEOC dismissed the charge a few weeks later, noting that Federal Express was acting "pursuant to Federal Air Regulations."

Two months before he turned 60 Mr. Coupi brought the present lawsuit against Federal Express in the United States District Court for the Western District of Tennessee. In addition to setting forth the facts outlined above, the complaint averred, among other things, that the FAA had promulgated the age 60 rule prior to enactment of the ADEA; that the EEOC has repeatedly taken the position that the rule violates the statutory prohibition against age discrimination; that the position from which the plaintiff was to be discharged "is not one for which age is a bona fide occupational qualification;" and that other than age, Federal Express had no reasonable basis for discharging the plaintiff.

Pursuant to Rule 12(b)(6), Fed. R. Civ. P., Federal Express moved to dismiss the complaint for failure to state a claim upon which relief could be granted. The district court granted the motion, and Mr. Coupi has perfected a timely appeal.

                              II

Mr. Coupi asks us to declare the age 60 rule an invalid exercise of agency rulemaking power. The FAA not being a party to this litigation, we are at a loss to understand how

we could do so. Federal Express, unlike the FAA, has no strong incentive to defend the rule; as its arguments to us attest, its interest lies in avoiding an injunction that compels it to violate a federal regulation. Mr. Coupi would have us strike down the age 60 rule without giving the agency that promulgated it a chance to defend the rule's legitimacy; this we decline to do.

                              III

Mr. Coupi also submits that he is entitled to an injunction requiring Federal Express to reinstate him as a pilot with no loss of rank or seniority. Because we agree with the district court that the age 60 rule provides Federal Express a good defense to the ADEA claim as a matter of law, we do not believe that Mr. Coupi has any right to such an injunction.

                              A

As we have indicated, it is not unlawful for an employer "to take any action otherwise prohibited [by the ADEA] . . .where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business. . . ." 29 U.S.C. §623(f)(1). The Equal Employment Opportunity Commission has elaborated on this statutory "BFOQ defense" as follows:

       "An employer asserting a BFOQ defense has the burden of
       proving that (1) the age limit is reasonably necessary to
       the essence of the business, and either (2) that all or
       substantially all individuals excluded from the job
       involved are in fact disqualified, or (3) that some of

the individuals so excluded possess a disqualifying trait that cannot be ascertained except by reference to age. If the employer's objective in asserting a BFOQ is the goal of public safety, the employer must prove that the challenged practice does indeed effectuate that goal and that there is no acceptable alternative which would better advance it or equally advance it with less discriminatory impact." 29 C.F.R. §1625.6(b).

In maintaining the age 60 rule subsequent to enactment of the ADEA, the FAA has never expressly purported to establish a bona fide occupational qualification for ADEA purposes. See Equal Employment Opportunity Comm'n v. Boeing Co., 843 F.2d 1213, 1220 (9th Cir.), cert. denied, 488 U.S. 889 (1988). That is not the FAA's function; "Congress has not provided for agency determination of whether a particular age is a BFOQ for a particular occupation." Hahn v. City of Buffalo, 770 F.2d 12, 15-16 (2d Cir. 1985). Nonetheless, as we shall explain, the FAA performed the same sort of analysis that a court would undertake in determining the legitimacy of a BFOQ defense under the framework established by the EEOC regulation.

As to the first element, the FAA determined — though not in so many words, of course — that its age 60 requirement "is reasonably necessary to the essence of the business. . . ." 29 C.F.R. §1625.6(b)(1). The business in this case is that of flying aircraft engaged in Part 121 operations. The rule was first promulgated in 1959 "because of concerns that a hazard to safety was presented by utilization of aging pilots in air carrier operations." See 60 Fed. Reg. 65977 (1995). The FAA has reaffirmed the rule several times, most recently in 1995, noting that "[c]learly. . .there is progressive anatomic, physiological, and cognitive decline associated with aging. . . ." Id. at 65981.

The FAA has thus decided that safety concerns made the age 60 rule "reasonably necessary" for pilots in Part 121 operations. Safety concerns may be factored into the BFOQ calculus if safety goes "to the core of the employee's job performance" — that is, when the safeguarding of human lives is an inherent part of the job. United Auto. Workers v. Johnson Controls, Inc., 499 U.S. 187, 203 (1991). Safety, in our view, goes "to the core" of an aircraft pilot's performance.[1]

As to the second element of the EEOC regulation, the employer has the burden of showing (a) that all or substantially all individuals excluded from the job involved are in fact disqualified, or (b) that some of the individuals so excluded possess a disqualifying trait that cannot be ascertained except by reference to age. The FAA's age 60 rule is premised on the impossibility or impracticality of determining, on an individualized basis, whether a particular pilot's age renders him unable to perform safely and effectively.

In 1959 the FAA justified the rule on the ground that pilot "incapacity . . . cannot be predicted accurately as to any specific individual on the basis of presently available scientific tests and criteria." See 60 Fed. Reg. 65977, 65978 (1995). While acknowledging advances in medical science, the FAA continues to believe that the risk of an aged pilot becoming incapacitated in

3

flight cannot be accurately assessed. "[A]t some age," the FAA
stated in 1995, "everyone reaches a level of infirmity or
unreliability that is unacceptable in a pilot in air
transportation. That age will vary from person to person but
cannot yet be predicted in a specific individual." Id. at 65983.
The

FAA rejected the notion that current medical technology can
distinguish between those pilots over 59 years old who present
safety risks and those who do not. Id. at 65985. The FAA thus
concluded, in effect, that "some of the individuals so excluded [by
the age limit] possess a disqualifying trait that cannot be
ascertained except by reference to age." See 29 C.F.R.
§1625.6(b)(3).

When a safety justification is offered by an employer, the
EEOC regulation also requires that there be "no acceptable
alternative [to an age limit] which would better advance [the
safety rationale] or equally advance it with less discriminatory
impact." 29 C.F.R. §1625.6(b). The FAA has considered alternatives
to the age 60 rule, such as performance testing and medical
certification, and has rejected each alternative as less safe than
the age 60 rule. In the agency's opinion, none of these options
can adequately detect certain risks associated with aging. 60 Fed.
Reg. 65977, 65983-84 (1995).

                                E

    The FAA adopted the age 60 rule for reasons that might well
support a BFOQ defense if the FAA were the employer. But the fact
that the FAA's rationale might support such a defense in that
situation does not mean that an age 60 rule would necessarily
establish a BFOQ defense if a private employer adopted such an age
limit voluntarily. The BFOQ defense requires a particularized,
factual showing that the employer's practice is reasonably
necessary for the particular job in question. See Johnson v. Mayor
and City Council of Baltimore, 472 U.S. 353, 362 (1985); 29 C.F.R.
§1625.6(a); Tuohy v. Ford Motor Co., 675 F.2d 842, 844 (6th Cir.
1982). The validity of a BFOQ defense turns upon factual findings.
See Criswell, 472 U.S. at 330; Boeing Co., 843 F.2d at 1218. Must
Federal Express therefore adduce evidence in support of the rule
and convince a judicial factfinder that an age limitation for its
pilots is a BFOQ on its own merits? We think not.

    The employer's burden to make a particularized factual showing
in support of its BFOQ defense is satisfied by demonstrating the
existence of an age-based federal agency rule by which the employer
is bound  at least where, as here, the rule has been adopted on
grounds that could support a BFOQ defense had the age limit been
adopted by the employer voluntarily. We do not hold that the
conclusions the FAA has drawn from the scientific evidence are
necessarily correct, although we have no reason to question their
correctness.2  We hold only that Federal Express need not
independently judge the soundness of the age 60 rule. Were it
otherwise, Federal Express would be required to second-guess the
very agency established by Congress to regulate it. We do not
believe that the ADEA mandates such a peculiar result, and we are
aware of no judicial decision holding that it does.

                               IV

Mr. Coupi was not without a remedy for the perceived discrimination. The FAA is authorized to grant exemptions from the safety regulations it has promulgated, see 49 U.S.C. §44701(e), and it has prescribed detailed procedures for handling requests for exemptions. See 14 C.F.R. §11.25. Mr. Coupi knew of the FAA's exemption procedure, as is evidenced by the fact that he requested such an exemption in 1994. See 59 Fed. Reg. 33035 (1994):

> "Docket No. 27751
>
> Petitioner: Robert J. Coupe
>
> Sections of the [federal air regulations] affected: 14 CFR 121.383(c)
>
> Description of Relief Sought: To permit Mr. Coupe to continue to exercise his airman's privileges as a DC-10 captain after age 60, and until such time as he can no longer pass the required physical, skill, and competency testing and training."

The FAA denied the exemption. See 61 Fed. Reg. 1984 (1996).3 Mr. Coupi could have obtained judicial review of the denial, see 49 U.S.C. §46110(a), but apparently he chose not to do so. Mr. Coupi not having challenged the FAA's action, neither the district court nor this court is empowered to grant an exemption in the first instance.

AFFIRMED.

---

FOOTNOTES

Robert J. Coupi,
      Plaintiff-Appellant,

                                    No. 96-5978

      v.

Federal Express Corporation,
        Defendant-Appellee.

  Appeal from the United States District Court
        for the Western District of Tennessee at Memphis.
No. 95-02851--Bernice B. Donald, District Judge.

          ARGUED:  June 12, 1997

      Decided and Filed:  August 4, 1997

      Before:  KRUPANSKY, NELSON, and BOGGS, Circuit Judges.

                    _____

                        COUNSEL

ARGUED:  Nicholas H. Cobbs, LAW OFFICES OF NICHOLAS H. COBBS, Washington, DC, for Appellant.  James R. Mulroy, FEDERAL EXPRESS

1    The Ninth Circuit has questioned whether the FAA's age 60
rule establishes a BFOQ defense even for those employers covered by
the rule.  Boeing Co., 843 F.2d at 1220.  The employer in Boeing
was not covered by the rule, however, so the court's observations
were dicta.  We know, moreover, that the "highest degree of safety
in the public interest" is "reasonably necessary" to Federal
Express's aircraft operations   for Congress has said so.  See 49
U.S.C. §44701(d)(1)(A) (when promulgating regulations, the FAA
Administrator must consider "the duty of an air carrier to provide
service with the highest possible degree of safety in the public
interest"; (emphasis added); see also Murnane v. American Airlines,
Inc., 667 F.2d 98, 101 (D.C. Cir. 1981) ("we find the maximization
of safety to be 'reasonably necessary to the normal operation' of
[the defendant airline]"), cert. denied, 456 U.S. 915 (1982).

2    After oral argument in this case, the United States Court
of Appeals for the District of Columbia Circuit upheld the FAA's
1995 decision to retain the age 60 rule.  Professional Pilots
Federation v. Federal Aviation Admin., __ F.3d __ (D.C. Cir. 1997).
The court concluded that the ADEA, which speaks only to employers,
"places no substantive limitation upon the agency's authority to
act as a regulator of the airline industry."  Id. at __.  The court
also concluded that the FAA did not act arbitrarily or capriciously
in retaining the rule.  Id. at __.

3    The request for and denial of an exemption are not part
of the record before this court, and the parties have not alluded
to the exemption proceedings in their briefs.  Because the
information is contained in the Federal Register, however, we can
and do take judicial notice of it.

Company | Privacy Policy | Disclaimer                    Copyright © 1994-2007 FindLaw