UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GENE H. CARSWELL, individually and on
behalf of all others similarly situated,

Plaintiff,

v.

Case: 1:07-CV-00651(RBW)

AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL; US AIRWAYS GROUP,
INC.; AMERICAN FEDERATION OF
LABOR AND CONGRESS OF INDUSTRIAL
ORGANIZATIONS,

Defendants.

## MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)
## OF DEFENDANT AIR LINE PILOTS ASSOCIATION, INT'L

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant Air Line

Pilots Association, International ("ALPA") moves for an order dismissing all claims made

against it.  In support of this motion, ALPA submits the accompanying memorandum of points

and authorities.

Respectfully submitted,

July 18, 2007

_____/s/ David M. Semanchik_____
Clay Warner (D.C. Bar No. 398346)
David M. Semanchik (D.C. Bar No. 502837)
AIR LINE PILOTS ASSOCIATION, INT'L
LEGAL DEPARTMENT
1625 Massachusetts Avenue, N.W.
Washington, D.C.  20036
Telephone:  (202) 797-4095
Facsimile: (202) 797-4014
e-mail:  Clay.Warner@alpa.org
e-mail:  David.Semanchik@alpa.org

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GENE H. CARSWELL, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case: 1:07-CV-00651(RBW) |
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL; US AIRWAYS GROUP, INC.; AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**
**OF DEFENDANT AIR LINE PILOTS ASSOCIATION, INT'L**

AIR LINE PILOTS ASSOCIATION, INT'L
LEGAL DEPARTMENT
Clay Warner (D.C. Bar No. 398346)
David M. Semanchik (D.C. Bar No. 502837)
1625 Massachusetts Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 797-4095
Facsimile: (202) 797-4014
e-mail: Clay.Warner@alpa.org
e-mail: David.Semanchik@alpa.org

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .............................................................................................................................. 2

    POINT I. ................................................................................................................................... 2

        ALPA Is Not Liable Under the ADEA for Permitting US Airways
        to Honor the Age 60 Rule. ................................................................................................ 2

    POINT II. .................................................................................................................................. 5

        ALPA Did Not Violate the Duty of Fair Representation. ........................................... 5

        A.   The Legal Standard ...................................................................................... 5

        B.   ALPA's Failure to Force US Airways to Violate the Age 60 Rule ............... 7

        C.   ALPA's Failure to Support a Grievance ...................................................... 7

        D.   ALPA's Failure to Seek FAA Approval for Changes to the Age 60 Rule ...... 8
            1.   The Duty of Fair Representation Does Not Apply . . . ...................... 8
            2.   . . . But the First Amendment Does ................................................ 9

        E.   ALPA's Failure to Pursue an Exemption from the Age 60 Rule on
            Capt. Carswell's Behalf ............................................................................ 10

    POINT III. ............................................................................................................................... 12

        Plaintiffs' Breach of Contract Claim Has No Merit, and Is Preempted by the Railway Labor
        Act's Mandatory Arbitration Process. ........................................................................ 12

Conclusion .............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**                                                              **Page**

Affordable Hous. Dev. Corp. v. City of Fresno,
    433 F.3d 1182 (9th Cir. 2006) ................................................... 10

*Air Line Pilots Ass'n, Int'l  v. Northwest Airlines, Inc.,
    627 F.2d 272 (D.C. Cir. 1980) ................................................... 13

Air Line Pilots Ass'n, Int'l v. O'Neill,
    499 U.S. 65, 111 S. Ct. 1127 (1991) ........................................... 6

Air Line Pilots Ass'n, Int'l v. Quesada,
    276 F.2d 892 (2d Cir. 1960) ..................................................... 2, 8

Amalgamated Ass'n of Motor Coach Employees of Am. v. Lockridge,
    403 U.S. 274, 91 S. Ct. 1909 (1971) ......................................... 6, 7

Andrews v. Louisville & Nashville R.R. Co.,
    406 U.S. 320, 92 S. Ct. 1562 (1972) .......................................... 13

Ash v. United Parcel Service, Inc.,
    800 F.2d 409 (4th Cir. 1986) ..................................................... 6

Baker v. FAA,
    917 F.2d 318 (7th Cir. 1990) ..................................................... 3

Bayou Fleet, Inc. v. Alexander,
    234 F.3d 852 (5th Cir. 2000). .................................................... 10

Brotherhood of Locomotive Eng'rs v. Louisville & N. R.R.,
    373 U.S. 33, 83 S. Ct. 1059 (1963) ............................................. 13

Brotherhood of Ry. Clerks v. Allen,
    373 U.S. 113, 83 S. Ct. 1158 (1963) ........................................... 9

Buchanan v. National Labor Relations Board,
    597 F.2d 388 (4th Cir. 1979) ..................................................... 6

California Motor Transp. Co. v. Trucking Unlimited,
    404 U.S. 508, 92 S. Ct. 609 (1972). ........................................... 10

---

*Authorities upon which we chiefly rely are marked with asterisks.

*Coupé v. Federal Express Corp.,
  121 F.3d 1022 (6th Cir. 1997) ........................................................................... 3-4

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,
  365 U.S. 127, 81 S. Ct. 523 (1961) .......................................................................... 10

EEOC v. Exxon Mobil Corp.,
  2007 WL 1556964 (N.D. Tex., May 30, 2007) ......................................................... 4

Ellis v. Brotherhood of Ry. Clerks,
  466 U.S. 435, 104 S. Ct. 1883 (1984) ....................................................................... 9

Everett v. US Air Group, Inc.,
  927 F. Supp. 478 (D.D.C. 1996), aff'd, 194 F.3d 173 (D.C. Cir. 1999)................... 13

Ford Motor Co. v. Huffman,
  345 U.S. 330, 73 S. Ct. 681 (1953) ............................................................................ 7

Gray v. FAA,
  594 F.2d 793 (10th Cir. 1979) ............................................................................... 2, 11

Hines v. Anchor Motor Freight, Inc.,
  424 U.S. 554, 96 S. Ct. 1048 (1976) .......................................................................... 8

Humphrey v. Moore,
  375 U.S. 335, 84 S. Ct. 363 (1964) ............................................................................ 7

International Ass'n of Machinists v. Central Airlines, Inc.,
  372 U.S. 682, 83 S. Ct. 956 (1963) ........................................................................... 13

Jeffreys v. Comm. Workers of America,
  354 F.3d 270 (4th Cir. 2003) ...................................................................................... 7

Keating v. FAA,
  610 F.2d 611 (9th Cir. 1979) ................................................................................. 2, 11

Marquez v. Screen Actors Guild, Inc.,
  525 U.S. 33, 119 S. Ct. 292 (1998).............................................................................. 6

Miller v. Air Line Pilots Ass'n, Int'l,
  108 F.3d 1415 (D.C. Cir. 1997), aff'd, 523 U.S. 866, 118 S. Ct. 1761 (1998) .......... 9

O'Donnell v. Shaffer,
  491 F.2d 59 (D.C. Cir. 1974) ................................................................................. 2, 8

iii

*Professional Pilots Federation v. FAA,
   118 F.3d 758 (D.C. Cir. 1997) ................................................................ 3

Rombough v. FAA,
   594 F.2d 893 (2d Cir. 1979)............................................................... 2, 11

Smith v. Local 7898, Steelworkers,
   834 F.2d 93 (4th Cir. 1987) ................................................................ 6

Starr v. FAA,
   589 F.2d 307 (7th Cir. 1978) ............................................................ 2, 11

*Steele v. Louisville & Nashville R. Co.,
   323 U.S. 192, 65 S. Ct. 226 (1944)................................................... 5, 6, 8

Tetlow v. Blakey,
   No. 1:07-CV-00602 (Bates, J.) (D.D.C. April 27, 2007).......................... 3

*United Mine Workers v. Pennington,
   381 U.S. 657, 85 S. Ct. 1585 (1965)..................................................... 10

United Steelworkers v. Rawson,
   495 U.S. 362, 110 S. Ct. 1904 (1990)..................................................... 6

*Vaca v. Sipes,
   386 U.S. 171, 87 S. Ct. 903 (1967)..................................................... 8

Video Int'l Prod., Inc. v. Warner-Amex Cable Comm., Inc.,
   858 F.2d 1075 (5th Cir. 1988), reh'g denied, 866 F.2d 1417 (5th Cir. 1989).......................... 10

Yetman v. Garvey,
   261 F.3d 664 (7th Cir. 2001) ............................................................ 3, 11

**Constitution, Statutes and Regulations**

U.S. Const. amend. I. .................................................................................................. 9

5 U.S.C. §553 .............................................................................................................. 4

14 C.F.R. §§11.61-.103 ............................................................................................. 10

*The Age 60 Rule, 14 C.F.R. §121.383(c). ................................................................ 1

58 Fed. Reg. 21,336 (April 20, 1993) ....................................................................... 3

60 Fed. Reg. 65,977 (December 20, 1995) ........................................................... 3, 11

Age Discrimination in Employment Act,
    29 U.S.C. § 621 *et seq.* ..................................................................................... 1, 4, 5

Railway Labor Act,
    45 U.S.C. §§ 151-188 ....................................................................................... 1, 9, 12

**Other Authorities**

In re Adams, et al., FAA Docket No. 2000-8016 (2000) ............................................. 3

In re Bennett and Baker, FAA Docket Nos. 25008 and 25524 (1989) ......................... 3

## PRELIMINARY STATEMENT

Since 1959, the Federal Aviation Administration has maintained a rule that prohibits pilots over 60 years old from operating all but the smallest commercial aircraft in airline service. The current version of this "Age 60 Rule" states:

> No certificate holder may use the services of any person as a pilot on an airplane engaged in operations under this part if that person has reached his 60th birthday. No person may serve as a pilot on an airplane engaged in operations under this part if that person has reached his 60th birthday.

14 C.F.R. §121.383(c). The Rule has been controversial since it was first introduced; there have been nearly constant court challenges (we list ten appellate cases in Point I), and several substantial agency reviews. But despite the controversy, the Rule has been uniformly upheld, and uniformly applied.

Plaintiff Gene H. Carswell was hired as a pilot for US Airways eighteen years after the Age 60 Rule was implemented (Am. Compl., ¶62) and, like thousands before him, the Age 60 Rule prevented him from continuing to work as an airline pilot when he reached his 60th birthday (Am. Compl., ¶¶64, 65). In early April 2007, Captain Carswell filed a *pro se* complaint against his employer, US Airways, his union, Air Line Pilots Association, Int'l ("ALPA"), and the AFL-CIO, alleging that each of the defendants violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") by following the Age 60 Rule. (Am. Compl., ¶¶78-94.) Counsel appeared on Capt. Carswell's behalf in May, and an amended complaint was filed on July 5, 2007. The amended complaint left the original *pro se* claims intact, and added two more claims against ALPA: (i) a claim that ALPA breached its collective bargaining agreement with US Airways by permitting US Airways to follow the Age 60 Rule, and (ii) a claim that ALPA violated the duty of fair representation created by the Railway Labor Act, 45 U.S.C. §§ 151-188 ("RLA") by allowing US Airways to observe the Rule, by lobbying

government officials in support of the Rule, and by failing to pursue an exemption from the Rule on Capt. Carswell's behalf.  (Am. Compl., ¶¶95-121.)

    We will briefly address each of Capt. Carswell's claims in a separate section below:  in Point I we will address his ADEA claim; in Point II we will address his duty of fair representation claim; and in Point III we will address his breach of contract claim.  The case references are different in each section, but the theme is the same:  a union cannot be liable, under federal law or contract, for honoring a decades-old – and unquestionably valid – federal regulation.

## ARGUMENT

### POINT I.

### ALPA Is Not Liable Under the ADEA
### for Permitting US Airways to Honor the Age 60 Rule.

    The ADEA claims are set forth in four separate counts in the Amended Complaint, but with respect to ALPA, those counts all restate the same claim:  that ALPA violated the ADEA by permitting US Airways to honor the Age 60 Rule.  (Am. Compl. ¶¶78-94.)  That claim has no merit whatsoever.

    The Age 60 Rule has been challenged on variety of grounds over the course of its nearly 50-year history, and it has been upheld in every case.  See, e.g., Air Line Pilots Ass'n, Int'l v. Quesada, 276 F.2d 892 (2d Cir. 1960)(claim that Age 60 Rule invalid because it takes property – pilot's license – without due process); O'Donnell v. Shaffer, 491 F.2d 59 (D.C. Cir. 1974)(claim that FAA failed to hold sufficient evidentiary hearings and lacked sufficient evidence for the Rule); Starr v. FAA, 589 F.2d 307 (7th Cir. 1978)(claim that FAA abused its discretion in failing to grant an individual exemption to the Age 60 Rule); Rombough v. FAA, 594 F.2d 893 (2d Cir. 1979)(same); Gray v. FAA, 594 F.2d 793 (10th Cir. 1979)(same); Keating v. FAA, 610 F.2d 611

(9th Cir. 1979)(same); <u>Baker v. FAA</u>, 917 F.2d 318 (7th Cir. 1990)(Administrative Procedure

Act challenge to FAA's blanket refusal to grant exemptions); <u>Yetman v. Garvey</u>, 261 F.3d 664

(7th Cir. 2001)(same).  In addition, the Rule has been the subject of regular and detailed agency

reviews, including lengthy consideration of petitions for exemption beginning in 1989 (<u>In re</u>

<u>Bennett and Baker</u>, FAA Docket Nos. 25008 and 25524) and 2000 (<u>In re Adams, et al.</u>, FAA

Docket No. 2000-8016), and a reconsideration of the Rule initiated by the agency itself in 1993

(58 Fed. Reg. 21,336 (April 20, 1993)); <u>see</u> <u>also</u> disposition of comments (60 Fed. Reg. 65,977

(Dec. 20, 1995)).[1]

Included in the history of failed assaults on the Age 60 Rule are two cases in which the

ADEA was the weapon of choice.  In one case, <u>Professional Pilots Federation v. FAA</u>, 118 F.3d

758 (D.C. Cir. 1997), the plaintiffs argued that the Rule itself violated the ADEA.  The D.C.

Circuit promptly dismissed that claim:  "We hold that the ADEA does not limit the authority of

the FAA to regulate air carriers in the interest of safety. . . . Nothing in the Act can plausibly be

read to restrict the FAA from making age a criterion for employment when it acts in its capacity

as the guarantor of public safety in the air."  <u>Id.</u> at 763.

In another, <u>Coupé v. Federal Express Corp.</u>, 121 F.3d 1022 (6th Cir. 1997), the plaintiff

argued that his employer violated the ADEA by following the Rule.  The district court dismissed

the complaint, and the Sixth Circuit affirmed:

> Where an employer is subject to the FAA rule, does the ADEA prohibit the
> employer from discharging a pilot because he has turned 60?  Concluding that as
> a matter of law the obligation to comply with the FAA's age 60 rule gives rise to
> a bona fide occupational qualification reasonably necessary to the normal

---

[1] These citations are only a sample, because challenges to the Rule occur in repetitive waves. For example, in March 2007 three US Airways pilots sued the FAA in this Court on the eve of their retirement and sought to enjoin the FAA from enforcing the Rule against them.  <u>Tetlow v. Blakey</u>, Case 1:07-CV-00602 (D.D.C.) (Bates, J.)  On April 27, 2007, Judge Bates denied the injunction on the grounds that the suit lacked a substantial likelihood of success on the merits.

> operation of such an employer's business, the district court answered this
> question "no."   The court gave the correct answer, in our view.

Id. at 1023.  The court observed further that the employer cannot be expected to question the

rules imposed by a federal agency; instead, the employer's obligation is to follow those rules:

> We hold only that Federal Express need not independently judge the soundness
> of the age 60 rule.  Were it otherwise, Federal Express would be required to
> second-guess the very agency established by Congress to regulate it.  *We do not
> believe that the ADEA mandates such a peculiar result, and we are aware of no
> judicial decision holding that it does.*

Id. at 1026 (emphasis added).

ALPA is not aware of any cases addressing whether a *union* violates the ADEA when an

*airline* observes a federal regulation, but that result follows necessarily from the logic of the

Coupé decision.  In other words, if US Airways does not violate the ADEA by following the Age

60 Rule (and nothing in the ADEA "mandates such a peculiar result"), then obviously ALPA

does not violate the ADEA by allowing US Airways to follow the Age 60 Rule.  Compare 29

U.S.C. 623(c)(3) ("It shall be unlawful for a labor organization . . . to cause or attempt to cause

an employer to discriminate against an individual in violation of this section.").

Capt. Carswell seeks to confuse the situation to a degree by asserting that the FAA has

announced plans to issue a Notice of Proposed Rulemaking ("NPRM") to change the Rule.  (Am.

Compl. ¶¶23-25.)  But nothing has been issued yet and, in any event, an NPRM would only be

the first step in the process of changing the Rule.  See 5 U.S.C. §553.  In the meantime, the Age

60 Rule is still the law – binding both US Airways and Capt. Carswell.  See EEOC v. Exxon

Mobil Corp., 2007 WL 1556964 (N.D. Tex., May 30, 2007) at *8 (notwithstanding FAA's

announced NPRM, "[a]ll commercial airlines are continuing to follow the Age 60 Rule until the

FAA or Congress formally changes that rule," so employer voluntarily following the Rule is also "entitled to rely on that rule until it is changed").[2]

## Point II.

## <u>ALPA Did Not Violate the Duty of Fair Representation.</u>

The duty of fair representation claims contained in Counts VI and VIII of the Amended Complaint do not specify which particular ALPA action is being targeted.  However, from a generous reading of the remainder of the Amended Complaint, it appears that Capt. Carswell may be basing his duty of fair representation claim on one or more of the following:  (1) ALPA's failure to force US Airways to violate the Age 60 Rule (Am. Compl. ¶¶4, 5); (2) ALPA's failure to support a grievance under the collective bargaining agreement challenging Capt. Carswell's retirement pursuant to the Age 60 Rule (Am. Compl. ¶33); (3) ALPA's "aggressive[] lobby[ing]" in support of the Age 60 Rule (Am. Compl. ¶36); and (4) ALPA's failure to pursue an exemption from the Age 60 Rule on Capt. Carswell's behalf (Am. Compl. ¶37).  None of these acts, if true, would state a claim under the duty of fair representation.

### A.    The Legal Standard

Although the RLA does not specifically state that a union possesses a "duty of fair representation" toward its members, that duty has been implied as a necessary corollary of each union's exclusive right to represent all employees within a bargaining unit.  <u>Steele v. Louisville</u>

---

[2] In Capt. Carswell's opposition to US Airways' Motion to Dismiss, he cites a case involving flight engineers (who were not covered by the Age 60 Rule) and argues that US Airways violated the ADEA by failing to offer him another position when he reached Age 60.  (Opp. Br. at 4-7.)  But he never alleges – either in the Complaint or his opposition brief – that he sought any other positions at US Airways, that he would have been qualified for any other positions, or that he was rejected for other positions because of his age.  <u>See</u> 29 U.S.C. §623(a).  In that regard, the reference to flight engineer positions is particularly misleading because – as Capt. Carswell clearly knows – US Airways has not operated aircraft requiring flight engineers for many years.

& Nashville R. Co., 323 U.S. 192, 198-201, 65 S. Ct. 226, 230-31 (1944). The statute exchanges the rights of individual employees to negotiate for terms and conditions of employment for the collective power of the union, and the duty of fair representation provides a means to check against abuse of that collective power. Id.

But this implied duty does not allow courts to second-guess the actions of unions engaged in collective bargaining functions. Since a union, as the exclusive representative of a defined group of employees, must balance the often-conflicting interests of the group's members, the Supreme Court has held that "the relationship between the courts and labor unions [i]s similar to that between the courts and the legislature," and that any review of the union's actions "must be highly deferential, recognizing the wide latitude" that unions need to perform their collective bargaining functions effectively. Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 78, 111 S. Ct. 1127, 1135 (1991); see also Steele, 323 U.S. at 198-99, 65 S. Ct. at 230-31.

Because of this deferential relationship, "'honest, mistaken conduct' does not violate the union's duty of fair representation." Smith v. Local 7898, Steelworkers, 834 F.2d 93, 96 (4th Cir. 1987) citing Amalgamated Ass'n of Motor Coach Employees v. Lockridge, 403 U.S. 274, 301, 91 S. Ct. 1909, 1925 (1971); Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 45-46, 119 S. Ct. 292, 300 (1998). Similarly, "[s]imple negligence, ineffectiveness, or poor judgment is insufficient to establish a breach of the union's duty [of fair representation]." Ash v. United Parcel Service, Inc., 800 F.2d 409, 411 (4th Cir. 1986); United Steelworkers v. Rawson, 495 U.S. 362, 372-73, 110 S. Ct. 1904, 1911-12 (1990); Buchanan v. National Labor Relations Board, 597 F.2d 388, 394 (4th Cir. 1979).

Instead, the plaintiffs must show that the union's actions are outside of the "wide latitude" granted to unions in performing their collective bargaining functions, O'Neill, 499 U.S.

at 78, 111 S. Ct. at 1135, either because those actions are "arbitrary," meaning that the actions

are "so far outside a 'wide range of reasonableness'" accorded to union decisions as to be

"wholly 'irrational,'" id. (quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S. Ct. 681,

686 (1953)); "discriminatory," meaning that union's conduct amounts to "invidious

discrimination," Jeffreys v. Comm. Workers of America, 354 F.3d 270, 276 (4th Cir. 2003), that

is "intentional, severe, and unrelated to legitimate union objectives," Lockridge, 403 U.S. at 301,

91 S. Ct. at 1925; or in "bad faith," which is demonstrated by "'substantial evidence of fraud,

deceitful action or dishonest conduct,'" id. at 403 U.S. at 299, 91 S. Ct. at 1924 (quoting

Humphrey v. Moore, 375 U.S. [335,] 348, 84 S. Ct. [363,] 371 [(1964)]).

**B.    ALPA's Failure to Force US Airways to Violate the Age 60 Rule**

It appears that Capt. Carswell's first duty of fair representation claim is that ALPA

violated the duty because the collective bargaining agreement between ALPA and US Airways

permits US Airways to follow the Age 60 Rule:  ALPA "contracted with the Defendant US

Airways to remove US Airways pilots from their corporate employment following the first day

of the following month of their 60th birthday, as described in Section 28 of the Collective

Bargaining Agreement."  (Am. Compl. ¶5.)

There is no basis whatsoever for that claim.  ALPA is not aware of any case in which a

union has been held to violate the duty of fair representation because it agreed to allow an

employer to take employment actions required by federal law.  It would be extraordinary, to say

the least, if the duty of fair representation required unions to force employers to violate the law.

**C.    ALPA's Failure to Support a Grievance**

Capt. Carswell next claims that ALPA violated the duty of fair representation by failing

to support a grievance concerning "his forced retirement."  (Am. Compl. ¶33.)

That claim also fails.  A union need not pursue a grievance that it determines (using the wide latitude granted by the duty of fair representation) lacks merit.  Vaca v. Sipes, 386 U.S. 171, 190-95, 87 S. Ct. 903, 916-19 (1967); Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 567, 570-71, 96 S. Ct. 1048, 1058-60 (1976).  Any grievance seeking to allow Capt. Carswell to fly after his 60th birthday would plainly lack merit, because it would seek to compel US Airways to violate federal law.

### D.    ALPA's Failure to Seek FAA Approval for Changes to the Age 60 Rule

#### 1.    The Duty of Fair Representation Does Not Apply . . .

Capt. Carswell also appears to claim that ALPA violated the duty of fair representation by "aggressively lobby[ing]" in support of the Age 60 Rule.  (Am. Compl., ¶36.) [3]

That claim fails because the duty of fair representation does not apply to "lobbying" with respect to laws or regulations.  As we noted above, a union's duty of fair representation arises because it has an exclusive right to represent all employees within a bargaining unit with respect to collective bargaining over terms and conditions of employment.  Steele, 323 U.S. at 198-202, 65 S. Ct. at 230-32.  (Or, as Capt. Carswell pleads, the union has a "monopoly" position with respect to negotiations with an employer.  (Am. Compl. ¶4.))  Within that exclusive realm, the courts have implied a duty of fair representation to protect the interests of individual employees.

But a union is not operating within the "monopoly" realm covered by the duty of fair representation when it takes a position with respect to a government regulation.  Anyone can take a position on such issues, and anyone can petition government representatives.  For that reason,

---

[3] It is ironic – but irrelevant for the purposes of the duty of fair representation – that ALPA's Executive Board recently voted to change the union's position on the Age 60 Rule.  ALPA opposed the Rule for the first twenty years after it was implemented, see Air Line Pilots Ass'n, Int'l v. Quesada, 276 F.2d 892 (2d Cir. 1960); O'Donnell v. Shaffer, 491 F.2d 59 (D.C. Cir. 1974), then shifted to support the Rule, and then in May 2007 shifted again to support a change to the Rule in certain circumstances.

the duty does not apply to such activities, and Capt. Carswell's claim that ALPA violated the duty of fair representation by "aggressively lobby[ing]" in support of the Age 60 Rule fails as a matter of law.

ALPA is sensitive to this point because, in another context, the D.C. Circuit ruled that the union's activities involving aviation safety were not within this "monopoly" realm to the extent those activities involved work with government agencies.  The RLA permits unions to enter into agreements requiring that all employees covered by a collective bargaining agreement pay union dues, or an equivalent amount in agency fees.  45 U.S.C. §152, Eleventh.  However, the statute has been interpreted to permit nonmembers who state an objection to pay only for those union activities that are "germane to collective bargaining."  Brotherhood of Ry. Clerks v. Allen, 373 U.S. 113, 121-22, 83 S. Ct. 1158, 1163-64 (1963); see also Ellis v. Brotherhood of Ry. Clerks, 466 U.S. 435, 445-56, 104 S. Ct. 1883, 1890-97 (1984).  In Miller v. Air Line Pilots Ass'n, 108 F.3d 1415, 1422-23 (D.C. Cir. 1997), aff'd, 523 U.S. 866, 118 S. Ct. 1761 (1998), the D.C. Circuit held that ALPA's activities involving aviation safety were not "germane" to its duties as a collective bargaining representative to the extent those activities involved contact with government agencies or Congress, and for that reason nonmembers are not required to pay their share of those costs.

### 2.    . . . But the First Amendment Does

In any event, if the duty of fair representation prohibited ALPA from petitioning Congress or a federal agency and advocating a position with respect to the Age 60 Rule, then the duty would directly conflict with the First Amendment, which states, in part:  "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the government for a redress of grievances."  U.S. Const. amend. I.  The "Noerr-Pennington doctrine," which was developed

by the Supreme Court over four decades ago, see Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S. Ct. 523 (1961) and United Mine Workers v. Pennington, 381 U.S. 657, 85 S. Ct. 1585 (1965), recognizes that it is contrary to the First Amendment to hold parties liable for their political efforts to influence public officials.  The doctrine accordingly confers immunity from suits alleging statutory violations where the conduct constituting the alleged violation involves an effort by the defendant to petition the government.

Although this doctrine was first established by the Supreme Court in the antitrust context, the lower courts uniformly have recognized its applicability to other statutes.  Thus, the doctrine has provided immunity for suits alleging claims under the federal Fair Housing Act and Americans with Disabilities Act, Affordable Hous. Dev. Corp. v. City of Fresno, 433 F.3d 1182, 1193 (9th Cir. 2006), as well as civil rights claims brought under 42 U.S.C. § 1983, Video Int'l Prod., Inc. v. Warner-Amex Cable Comm., Inc., 858 F.2d 1075, 1084 (5th Cir. 1988), reh'g denied, 866 F.2d 1417 (5th Cir. 1989).  The doctrine also protects efforts by citizens or groups to influence federal agencies, such as the FAA.  California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510, 92 S. Ct. 609, 611-12 (1972).  Furthermore, as the Fifth Circuit has explained, the "Noerr-Pennington immunity applies to any concerted effort to sway public officials regardless of the private citizen's intent."  Bayou Fleet, Inc. v. Alexander, 234 F.3d 852, 859 (5th Cir. 2000).

### E.     ALPA's Failure to Pursue an Exemption from the Age 60 Rule on Capt. Carswell's Behalf

Finally, Capt. Carswell appears to claim that ALPA violated the duty of fair representation by failing to seek an exemption from the Rule on his behalf.  (Am. Compl., ¶37.) That claim fails for the same reason that Capt. Carswell's lobbying claim fails:  the process for seeking an exemption from an FAA rule, which is set forth in 14 C.F.R. §§11.61-11.103, is not

in any way part of the "monopoly" realm of collective bargaining covered by the duty of fair representation. Capt. Carswell could have pursued an exemption on his own, as many pilots have done before him. See Yetman v. Garvey, 261 F.3d 664 (7th Cir. 2001)(addressing FAA handling of petitions for exemption to the Age 60 Rule filed by 69 pilots); Keating v. FAA, 610 F.2d 611 (9th Cir. 1979)(addressing FAA handling of a single exemption petition); Rombough v. FAA, 594 F.2d 893 (2d Cir. 1979)(same); Gray v. FAA, 594 F.2d 793 (10th Cir. 1979)(same); Starr v. FAA, 589 F.2d 307 (7th Cir. 1978)(same). Accordingly, the duty of fair representation does not apply to petitions for exemption from federal regulations, and Capt. Carswell's claim that ALPA violated the duty of fair representation by failing to seek an exemption on his behalf fails as a matter of law. At the same time, since a petition for exemption falls squarely within the First Amendment protection with respect to government petitions, the Noerr-Pennington immunity would also protect ALPA's actions.

It is also worth noting that a petition for exemption from the Age 60 Rule for Capt. Carswell would be a complete waste of time. The FAA has never granted an exemption from the Age 60 Rule, and in 1995, the agency "further hardened its stance, announcing that future petitions for exemption would be summarily denied unless the petitions contain a proposed technique, not previously discussed, to assess an individual pilot's abilities and risks of subtle and sudden incapacitation. 60 Fed. Reg. 65,980 (1995)." Yetman, 261 F.3d at 668. The plaintiffs in Yetman attempted to meet this requirement, but in a "fairly extensive opinion" the FAA denied their petitions, id., and the D.C. Circuit upheld the result. No one has seriously attempted to meet the FAA's requirement since that time, and obviously Capt. Carswell has not proposed any new "technique . . . to assess an individual pilot's abilities and risks of subtle and sudden incapacitation." So even if the duty of fair representation were applicable to petitions

11

for exemption with respect to the Age 60 Rule, ALPA would not be required to expend member resources in such a quixotic effort.[4]

### POINT III.

### Plaintiffs' Breach of Contract Claim Has No Merit, and Is Preempted by the Railway Labor Act's Mandatory Arbitration Process.

Counts V and VII claim that ALPA "breached the Collective Bargaining Agreement" when it (1) "promoted an illegal age discrimination policy under the pretense of it being a 'safety issue,'" and (2) "perpetuated a discriminatory retirement program for pilot members while spending Union resources to negotiate deals to allow foreign pilots to continue working past age 60." (Am. Compl. ¶¶99, 113.) The "illegal age discrimination policy" and the "discriminatory retirement program" apparently consist of following the Age 60 Rule, but it is not all clear how either of these actions could violate the collective bargaining agreement between US Airways and ALPA. That agreement – as one might reasonably assume – has to allow US Airways to follow the Age 60 Rule, so it is hard to imagine how following the Age 60 Rule could constitute a violation of the agreement.[5]

In any event, the Railway Labor Act mandates that all claims involving interpretation or application of collective bargaining agreements be submitted to a grievance adjustment process that culminates in arbitration. See 45 U.S.C. § 184. The process is not voluntary; instead, this

---

[4] In February 2007, the FAA announced another reason for denying all petitions for exemption: the issue "is more appropriately addressed via general rulemaking for a class of individuals than via an individual exemption." Age 60 Rule frequently asked questions, Feb. 2, 2007, available at http://www.faa.gov/news/updates/age_60_rule/age_60_rule_faq/.

[5] Capt. Carswell inserted a cryptic reference to foreign pilots working after Age 60 in paragraphs 99 and 113 of the Amended Complaint. That may be a reference to the fact that ALPA represents pilots employed by some Canadian airlines. Canada does not have a law or regulation establishing an upper age limit for pilots, so ALPA and Canadian air carriers are legally permitted to negotiate agreements allowing pilots to work past age 60.

"statutory grievance procedure is a *mandatory, exclusive, and comprehensive* system" for resolving all disputes involving the application or interpretation of an RLA collective bargaining agreement.  Brotherhood of Locomotive Eng'rs v. Louisville & N.R.R., 373 U.S. 33, 38, 83 S. Ct. 1059, 1062 (1963); see also Andrews v. Louisville & Nashville R.R. Co., 406 U.S. 320, 323-24, 92 S. Ct. 1562, 1564-65 (1972); International Ass'n of Machinists v. Central Airlines, Inc., 372 U.S. 682, 686, 83 S. Ct. 956, 959 (1963).  Accordingly, disputes over "the application or interpretation of bargaining agreements" must be submitted to arbitration if those disputes cannot be resolved informally, Air Line Pilots Ass'n, Int'l v. Northwest Airlines, Inc., 627 F.2d 272, 275 (D.C. Cir. 1980), and "[i]f a dispute is mandatorily arbitrable under the Railway Labor Act, [courts] lack[] jurisdiction to consider it," Everett v. US Air Group, Inc., 927 F. Supp. 478, 482 (D.D.C. 1996), aff'd, 194 F.3d 173 (D.C. Cir. 1999).

Counts V and VII are both captioned "breach of Collective Bargaining Contract," so both plainly involve interpretation or application of an RLA collective bargaining agreement.  Accordingly, the arbitration process established pursuant to the RLA is the "mandatory, exclusive and comprehensive" forum for the claims in those Counts, Brotherhood of Locomotive Eng'rs., 373 U.S. at 38, 83 S. Ct. at 1062, and those claims should be dismissed, because this Court lacks jurisdiction to consider them, Air Line Pilots Ass'n, Int'l v. Northwest, 627 F.2d at 275.

## Conclusion

For the foregoing reasons, Defendant Air Line Pilots Association, International ("ALPA"), moves pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiff's action.

[signatures on following page]

13

Respectfully submitted,


      /s/ David M. Semanchik
Clay Warner (D.C. Bar No. 398346)
David M. Semanchik (D.C. Bar No. 502837)
AIR LINE PILOTS ASSOCIATION, INT'L
LEGAL DEPARTMENT
1625 Massachusetts Avenue, N.W.
Washington, D.C.  20036
Telephone:  (202) 797-4095
Facsimile: (202) 797-4014
e-mail:  Clay.Warner@alpa.org
e-mail:  David.Semanchik@alpa.org

Dated: July 18, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GENE H. CARSWELL, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>            v.<br><br>AIR LINE PILOTS ASSOCIATION, INTERNATIONAL; US AIRWAYS GROUP, INC.; AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS,<br><br>              Defendants. | Case: 1:07-CV-00651(RBW) |

**PROPOSED ORDER**

Upon consideration of the motion to dismiss of defendant Air Line Pilots Association, International ("ALPA"), together with all memoranda supporting and opposing that motion, the Court determines that the complaint fails to state a claim against ALPA upon which relief can be granted.

Accordingly, it is hereby

ORDERED that the motion to dismiss filed by defendant Air Line Pilots Association be and hereby is GRANTED.  It is further

ORDERED that all claims against ALPA are dismissed with prejudice.

Entered the __ day of _____, 2007.

_____
REGGIE B. WALTON
United States District Judge

SERVICE LIST

Rosemary Dettling
FEDERAL EMPLOYEE LEGAL SERVICES
3120 Brandywine Street, NW
Washington, DC 20008
Telephone:  (202) 390-4741
Facsimile:  (888) 241-6719
e-mail:  rdettling@felsc.com

Joanne Dekker Donohue
16848 Hamilton Station Road
Hamilton, VA  20158
Telephone:  (540) 338-4841
E-mail:  esqjdjd@aol.com

Counsel for Plaintiff, Gene H. Carswell

Clay Warner (D.C. Bar No. 398346)
David M. Semanchik (D.C. Bar No. 502837)
AIR LINE PILOTS ASSOCIATION, INT'L
LEGAL DEPARTMENT
1625 Massachusetts Avenue, N.W.
Washington, D.C.  20036
Telephone:  (202) 797-4095
Facsimile: (202) 797-4014
e-mail:  Clay.Warner@alpa.org
e-mail:  David.Semanchik@alpa.org

Counsel for Defendant, Air Line Pilots Association, Int'l

Leon Dayan
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street, NW
Washington, DC 20005-2207
Telephone:  (202) 842-2600
Facsimile: (202) 842-1888
e-mail: ldayan@bredhoff.com

Counsel for Defendant,
   American Federation of Labor and Congress of Industrial Organizations

Thomas B. Almy (D.C. Bar No. 371235)
Mark Dombroff (D.C. Bar No. 23218)
DOMBROFF & GILMORE, P.C.
1676 International Drive - PH
McLean, VA 22102
Telephone:  (703) 336-8723
Facsimile:  (703) 336-8750
e-mail:  talmy@dglitigators.com

Erin Flaharty Lewin (admitted pro hac vice)
US AIRWAYS GROUP, INC.
111 W. Rio Salado Parkway
Tempe, AZ  85281
Telephone:  (480) 693-5805
e-mail:  erin.lewin@usairways.com

Counsel for US Airways Group, Inc

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on this 18th day of July 2007, a copy of the **MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) OF DEFENDANT AIR LINE PILOTS ASSOCIATION, INT'L, MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) OF DEFENDANT AIR LINE PILOTS ASSOCIATION, INT'L**, and a proposed **ORDER**, were served by the Court's Electronic Document Filing System, with a copy via first-class mail, postage prepaid, upon:


Rosemary Dettling       Joanne Dekker Donohue
Federal Employee Legal Services   16848 Hamilton Station Road
3120 Brandywine Street, NW    Hamilton, VA  20158
Washington, DC  20008     Email: esqjdjd@aol.com
Email: rdettling@felsc.com

      *Counsel for Plaintiff Gene H. Carswell*


Thomas B. Almy       Erin Flaharty Lewin (admitted pro hac vice)
Mark Dombroff        US AIRWAYS GROUP, INC.
DOMBROFF & GILMORE, P.C.   111 W. Rio Salado Parkway
1676 International Drive - PH    Tempe, AZ  85281
McLean, VA 22102      e-mail:  erin.lewin@usairways.com
e-mail:  talmy@dglitigators.com

      *Counsel for US Airways Group, Inc.*

Leon Dayan
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street, NW
Washington, DC 20005-2207
e-mail: ldayan@bredhoff.com

*Counsel for Defendant,*
 *American Federation of Labor and Congress of Industrial Organizations*


       _____/s/ David Semanchik_____