## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GENE H. CARSWELL, individually and on
behalf of all others similarly situated,

     Plaintiff,

     v.

AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL; US AIRWAYS
GROUP, INC.; and AMERICAN
FEDERATION OF LABOR AND
CONGRESS OF INDUSTRIAL
ORGANIZATIONS,

     Defendants.

Case No. 1:07-CV-00651 (RBW)

---

### DEFENDANT AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

     Defendant American Federation of Labor and Congress of Industrial Organizations

("AFL-CIO"), by counsel, hereby files this Motion to Dismiss Plaintiff's Amended Complaint

pursuant to Fed. R. Civ. P. 12(b)(6). The reasons supporting this Motion are set forth in the

accompanying Memorandum of Law.

     A proposed Order is attached.

Dated: July 23, 2007

                    __/s/Leon Dayan_____
                    Leon Dayan (D.C. Bar No. 444144)
                    Joshua B. Shiffrin (D.C. Bar No. 501008)*
                    BREDHOFF & KAISER P.L.L.C.
                    805 Fifteenth Street NW
                    Suite 1000
                    Washington, DC 20008
                    (202)842-2600

                    Counsel for Defendant AFL-CIO

*Admission to Bar of U.S. District Court for District of Columbia currently pending.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GENE H. CARSWELL, individually and on
behalf of all others similarly situated,

     Plaintiff,

     v.

AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL; US AIRWAYS
GROUP, INC.; and AMERICAN
FEDERATION OF LABOR AND
CONGRESS OF INDUSTRIAL
ORGANIZATIONS,

     Defendants.

Case No. 1:07-CV-00651 (RBW)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AMERICAN FEDERATION
OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS' MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant American Federation of Labor and Congress of Industrial Organizations

("AFL-CIO") respectfully submits this Memorandum of Law in support of its Motion to Dismiss

Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim

upon which relief can be granted.  The Amended Complaint should be dismissed because the

facts alleged therein, even if taken as true, fail to support any legally cognizable claims against

the AFL-CIO under the Age Discrimination in Employment Act, 29 U.S.C. §§ 626 et seq.

("ADEA"), or the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 et seq.

**ARGUMENT**

**1.**  Plaintiff Gene H. Carswell has brought this putative class action lawsuit against (1) his

former employer, US Airways Group, Inc. ("US Airways"), (2) the union that represents him in

connection with his employment, the Air Line Pilots Association ("ALPA"), and (3) the AFL-CIO, a federation of unions, which is neither his employer nor his union.  The gravamen of the Amended Complaint is that Carswell was employed by US Airways until February 2007 as a pilot; that he was forced to retire from service as a pilot due to US Airways' compliance with the Federal Aviation Administration's long-standing "Age 60 Rule," which mandates that airline pilots may not fly past age 60; and that his former employer US Airways, his union ALPA, and the AFL-CIO are responsible for the harm he has suffered by reason of being forced to retire at age 60 in accordance with the FAA's rule.  <u>See</u> Amend. Compl. ¶¶ 1-17;  <u>see also</u> 14 C.F.R. § 121.383(c) ("the Age 60 Rule").

With respect to defendants ALPA and the AFL-CIO, Plaintiff asserts the following theories in support of his claims:  (1) violation of the ADEA; (2) breach of the collective bargaining agreement ("CBA") between US Airways and ALPA; and (3) breach of the duty of fair representation.  Throughout his Amended Complaint, Plaintiff lumps the AFL-CIO together with ALPA; he articulates <u>no</u> theory according to which the AFL-CIO could be liable for any wrong independently of ALPA.  Thus, the claims against the AFL-CIO are entirely derivative of the claims against ALPA.

**2.**  As ALPA has convincingly demonstrated in its brief in support of its Motion to Dismiss, neither an airline nor, logically, a union representing an airline's employees, can be found liable under federal anti-discrimination laws—or under any of the other legal theories in the Amended Complaint—where the alleged discrimination is caused by the employer's mandated compliance with a valid federal safety regulation.  The AFL-CIO hereby joins in ALPA's brief and incorporates all of its arguments herein by reference.  Thus, if the Court grants

ALPA's motion to dismiss, it need not consider this separate memorandum, because, as noted, the claims against the AFL-CIO here are entirely derivative of the claims against ALPA.

**3.**  While the reasons set forth in ALPA's motion papers provide a sufficient basis for concluding that the claims against the AFL-CIO should be dismissed, there are additional reasons, unique to the AFL-CIO, requiring the dismissal of the ADEA and breach-of-collective bargaining agreement claims against AFL-CIO as a defendant.

The Supreme Court recently held that, to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v . Twombly, 127 S.Ct. 1955, 1965 (2007); a plaintiff must state enough facts "to state a claim to relief that is plausible on its face," id. at 1974.  Where the "allegations of a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  Id. at 1966 (quoting 5 Wright & Miller § 1216, at 233-234).  For the foregoing reasons, the facts alleged in Carswell's Amended Complaint do not support any plausible claim to relief against the AFL-CIO under either the ADEA or RLA.

**a.**     With respect to the breach-of-collective-bargaining agreement claim, the Court should dismiss the AFL-CIO for the simple reason that, in contrast to ALPA and US Airways, the AFL-CIO is not a signatory to the contract at issue.  Courts have held that, with regard to breach of contract claims brought by individual union members under Section 301 of the Labor Management Reporting Act, 29 U.S.C. § 185, actions for the breach of a collective bargaining agreement only lie against parties who are signatories to the CBA in question.  See Teamsters Local Union 30 v. Helms Express Inc., 591 F.2d 211, 216-17 (3rd Cir. 1979) (under Section 301, an individual union member "may only bring suit against the parties signatory to the

agreement . . . ."); <u>Sine v. Local No. 992, Int'l. Bhd. of Teamsters,</u> 730 F.2d 964, 966 (4th Cir.

1984) (citing <u>Helms Express</u>; international union could not be liable for breach of contract under

the NLRA where it was not a party to the plaintiff-employees' collective bargaining agreement).

This ordinary legal principle, i.e., that an entity who is not a party to a contract cannot be found

to breach it, is, by parity of reasoning, equally applicable to any breach of contract claims

regarding collective bargaining agreements governed by the Railway Labor Act—to the extent

such claims can be brought in federal court at all. [1]

Because Carswell invokes the ALPA-US Airways CBA in his Amended Complaint, and

claims the AFL-CIO "breached" it, see, e.g., Amended Complaint ¶ 99, that document is

properly treated as incorporated by reference into the Amended Complaint, and thus it may be

considered by the Court in deciding the instant motion to dismiss without converting the motion

into one for summary judgment. See <u>Vanover v. Hantman</u>, 77 F.Supp.2d 91, 98 (D.D.C. 1999),

<u>aff'd</u> 38 Fed. Appx. 4 (D.C. Cir. 2002) ("[W]here a document is referred to in the complaint and

is central to plaintiff's claim, such a document attached to the motion papers may be considered

without converting the motion to one for summary judgment.")  See also C. Wright & A. Miller,

Federal Civil Procedure § 1357, pp. 376-408 (collecting numerous cases to same effect).

---

[1] As ALPA demonstrates in its brief in support of its motion to dismiss, the courts, both federal and state, lack jurisdiction to adjudicate claims for breach of a collective bargaining agreement under the RLA, inasmuch as those disputes are reserved by the RLA to the exclusive jurisdiction of adjustment boards.  <u>See</u> Memorandum in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) of Defendant Air Line Pilots Association, Int'l ("ALPA Brief") at pp. 12-13.

As the CBA[2] itself clearly demonstrates, the only parties to the CBA are ALPA and US Airways. Carswell also appears to acknowledge this fact in his allegations, for he describes the CBA as "ALPA's collective bargaining agreement with US Airways," Amend. Compl. ¶ 52 (emphasis added), and not as the AFL-CIO's collective bargaining agreement with US Airways. See also id. at ¶¶ 51, 65. When the Amended Complaint and the CBA that the Amended Complaint incorporates are read together, the conclusion thus becomes inescapable that Carswell has "plead[ed] himself out of court" with respect to the breach-of-CBA claims against the AFL-CIO, because those documents render success on the merits in his favor impossible. Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1116 (D.C. Cir. 2000). In sum, because it is clear from the pleadings and the materials incorporated therein that the AFL-CIO is not a party to the CBA at issue, under no set of facts can it be found to have breached it.

      **b.**    With respect to the ADEA claims, Carswell has also failed to allege facts that support any plausible claim that the AFL-CIO discriminated against him because of his age, or caused any discrimination against him because of his age. Under the plain language of the ADEA, a union's mere failure to oppose an employer's unlawful discriminatory practice is not actionable at all—even when the practice is truly unlawful; it is only when unions "cause or attempt to cause an employer to discriminate against an individual in violation" of the ADEA that the union is a proper defendant. 29 U.S.C. § 623(c); see also Thorn v. Amalgamated Transit Union, 305 F.3d 826, 832-33 (8th Cir. 2002). Here, there can be no claim that the AFL-CIO, a

---

[2] An excerpt of the most recent ALPA-US Airways CBA is attached herewith as Exhibit 1. Due to the several-hundred page length of the document, we have excerpted only the cover page and signature page of the CBA for the Court's convenience. We have also included the October 22, 2004 "Letter of Agreement" between ALPA and US Airways which is the operative document currently governing the terms and conditions of pilots' employment at US Airways. The letter states in part that all terms and conditions of the 1998 ALPA-US Airways CBA, other than those specifically modified by agreement, remain in effect. Both the entire CBA and Transformation Plan document is available at the Court's request.

non-signatory to the contract, is the "cause" of US Airways' use of age to determine when pilots can no longer fly; it is plain for the reasons spelled out in Section I of ALPA's brief and Section III.A of US Airways' brief that the FAA is the cause of US Airways' use of that criterion.  See ALPA Brief at pp. 2-5; US Airways Group, Inc.'s Rule 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Points and Authorities in Support Thereof at pp. 7-10.

      **c.**      Nor, to the extent that Carswell's Amended Complaint raises such a theory, could the AFL-CIO be held vicariously liable for any contract breach or ADEA violation committed by ALPA even if, contrary to the law, there were a ground for holding ALPA liable for such wrongs.  As Carswell's Amended Complaint itself acknowledges, the AFL-CIO is simply a <u>federation</u> of national and international unions to which ALPA belongs.  <u>See</u> Amend. Compl.  at ¶ 68.  Regarding the relationship between ALPA and the AFL-CIO, Carswell alleges only that ALPA is a member of the AFL-CIO.  <u>Id.</u>  Under no cognizable legal theory can ALPA's <u>mere membership</u> in the AFL-CIO render the AFL-CIO vicariously liable for ALPA's conduct vis-à-vis the pilots ALPA represents.

      Under basic common law agency principles, an entity must exert "control" over another entity in order to be vicariously liable for that entity's wrongs.  <u>International Longshoremen's Ass'n v. NLRB</u>, 56 F.3d 205, 213 (D.C. Cir. 1995).  The AFL-CIO's relationship with its member unions is governed by the AFL-CIO Constitution, which under the principles for adjudicating Rule 12(b)(6) motions discussed above, see <u>supra</u> at 5, is incorporated by reference into Carswell's Amended Complaint by his allegations that "[i]n agreeing to be the exclusive bargaining representatives of the Class members, ALPA and the AFL-CIO agreed . . . to follow all Union promises and requirements outlined in the ALPA and AFL-CIO Constitution including the AFL-CIO preambles and ALPA Administration Manual Policies."  Amend. Compl. at ¶¶ 97,

111.  Of critical importance is Article III, Section 1 of the AFL-CIO Constitution, which

provides that its member unions are "not subordinate to, or subject to the general direction and

control of, the Federation."  See AFL-CIO Const., Article III, Section 1 (attached herewith as

Exhibit 2).   Member unions such as ALPA are, therefore, autonomous entities and are not within

the "control" of the AFL-CIO.  Consequently, as a matter of law, the AFL-CIO cannot be held

vicariously liable for the conduct of ALPA.

Notably, there is not a single reported decision holding the AFL-CIO liable for an alleged

wrong committed by and AFL-CIO member.  And there are numerous decisions holding that

even labor organizations that (unlike the AFL-CIO) do reserve a degree of control over their

affiliates—namely international labor organizations that have local union affiliates—are not

automatically liable for the actions of those local unions.  See generally Carbon Fuel Co. v.

United Mine Workers of Am., 444 U.S. 212, 217-218 (1979) (international union not

automatically liable for illegal strike carried out by one of its local unions); see also Shimman v.

Frank, 625 F.2d 80, 97 (6th Cir. 1980) ("[t]he acts of the local and its agents cannot

automatically be imputed to the International").

The courts so hold even though international unions typically reserve the right, under

certain conditions, to take over the affairs of their local unions by imposing a "trusteeship" over

the local unions—a right that the AFL-CIO does not reserve with respect to its member unions.

That theoretical right to impose a trusteeship, when not actually exercised, is not viewed as the

kind of "actual control" necessary under common law agency principles to trigger vicarious

liability.  See Int'l Longshoremen's Ass'n, 56 F.3d at 213; see also Berger v. Iron Workers

Reinforced Rodmen Local 201, 843 F.2d 1395, 1427 (D.C. Cir. 1988) ("common-law agency

principles . . . provide the appropriate analytical framework" for determining an international

union's liability for a local's actions). Thus, under the common-law standard, courts will look not to an international union's "theoretical control" over its locals, but instead will analyze the "nature and extent of <u>actual</u> control" over the local in the relevant factual context. <u>See</u> <u>Berger</u>, 843 F.2d at 1427 (quoting <u>Shimman</u>, 625 F.2d at 98 n.36) (emphasis added).

Here, as we have stated, the AFL-CIO does not, in its constitution, reserve even the <u>theoretical</u> control over ALPA that an international union typically has over its locals. Nor does Carswell even allege that the AFL-CIO has such control. Instead, Carswell has simply alleged that ALPA is a "member" of the AFL-CIO, unaccompanied by any allegation establishing the essential element of control. And, under no plausible legal theory can ALPA's mere membership in the AFL-CIO subject the AFL-CIO to liability for any conduct undertaken by ALPA regarding the representation of its members or the Age 60 Rule. Nor would any expression of "support" by the AFL-CIO for ALPA's performance as Carswell's bargaining representative, through political activity or otherwise, subject the AFL-CIO to liability under agency principles. It is settled law that, where one labor organization expresses solidarity with the actions of another, that expression does not convert the latter organization into an agent of the former, or vice versa. <u>See</u> <u>Int'l Longshoremen's Ass'n</u>, 56 F.3d at 213; <u>BE&K Constr. Co. v. United Bhd. of Carpenters</u>, 90 F.3d 1318, 1326 (8th Cir. 1996).

Carswell suggests elsewhere that the AFL-CIO is subject to liability for ALPA's conduct because, as he avers, the AFL-CIO receives a portion of the dues that pilots pay to ALPA for their representation. <u>See</u> Carswell's Memorandum in Support of Motion for Conditional Class Certification, Issuance of Notice, and an Order for Certain Discovery, p. 4. Even if Carswell paid dues directly to the AFL-CIO or the payments ALPA makes were deemed to be remittances of each ALPA member's payments, that would not change the analysis above in text by one iota.

The payment of dues or service fees by one person or entity to another does not by any stretch make the recipient of the payment automatically liable for every action taken by the paying party. If it did, the myriad cases holding that parent unions are not automatically liable to union members for breaches of the duty of fair representation engaged in by their affiliated locals unions would all be wrong, because international unions invariably receive remittances from local unions or their members; they do not provide services gratis. See, e.g., Sine, 730 F.2d at 966 (international could not be liable for potential breach of duty of fair representation where it was not a party to the collective bargaining agreement, despite having provided some legal assistance to local union).

Only through pure speculation divorced from his factual pleadings can Carswell argue that the AFL-CIO, which, as Carswell himself acknowledges, is not a party to the collective bargaining agreement covering pilots at US Airways, and which has no means or authority to control the activities of the entity that is, in fact, a signatory to the applicable collective bargaining agreement, can be held vicariously liable for any of the conduct that Carswell alleges on the part of ALPA. As a matter of law, ALPA's mere membership in the AFL-CIO provides no plausible basis for Carswell's claims.[3]

---

[3] As discussed in the AFL-CIO's Motion for Sanctions Pursuant to Rule 11, Carswell's assertion that the AFL-CIO is one of his "exclusive bargaining representatives," Amend. Compl. at ¶ 1, is completely unfounded as a matter of fact; ALPA and only ALPA is Carswell's exclusive representative. See Memorandum in Support of the AFL-CIO's Motion for Sanctions Pursuant to Rule 11 at pp. 3-7; see also id., Attachment 1 (affidavit of Nancy Schiffer attesting to the fact that the AFL-CIO has not served as Carswell's exclusive representative). However, due to the strictures imposed on Fed. R. Civ. P. 12(b)(6) motions, the AFL-CIO is required to treat that alleged fact as true, and is thus precluded from arguing that the duty-of-fair-representation claims asserted against the AFL-CIO must be dismissed on the ground that the AFL-CIO is not Carswell's exclusive representative and therefore simply does not owe him any duty of fair representation. The duty of fair representation claims, however, fail even on the assumption that the AFL-CIO is one of Carswell's "exclusive representatives," because those claims fail as against ALPA, Carswell's true exclusive representative. See ALPA Brief at pp. 5-12. As we have stressed, the claims against the AFL-CIO, being entirely derivative of the claims against ALPA, fail if the claims against ALPA fail.

## CONCLUSION

For the foregoing reasons, Defendant American Federation of Labor and Congress of Industrial Organizations' Motion to Dismiss should be granted.

Respectfully Submitted,

Dated: July 23, 2007

\_\_/s/ Leon Dayan_____
Leon Dayan (D.C. Bar No. 444144)
Joshua B. Shiffrin (D.C. Bar No. 501008)*
BREDHOFF & KAISER P.L.L.C.
805 Fifteenth Street NW
Suite 1000
Washington, DC 20008
(202)842-2600

Counsel for Defendant AFL-CIO

*Admission to Bar of U.S. District Court for District of Columbia currently pending.

Exhibit 1

Excerpt from
ALPA-US Airways
Collective Bargaining Agreement
and
ALPA-US Airways Letter of Agreement



# AGREEMENT

### BETWEEN



# US AIRWAYS, INC.

### AND THE
### AIRLINE PILOTS
#### IN THE SERVICE OF
### US AIRWAYS, INC.
#### AS REPRESENTED BY



# THE AIR LINE PILOTS ASSOCIATION, INT'L

### JANUARY 1, 1998
#### THROUGH
### JANUARY 2, 2003

2.     The parties have agreed that the Letter of Agreement regarding Empire Merger, dated February 12, 1986, will remain in full force and effect as if US Airways, Inc. had been a signatory thereto.

3.     The parties agree that the following Letters of Agreement and Letters remain in full force and effect:

a.     Letter of Agreement regarding PSA Transition, dated November 5, 1987.

b.     Letter of Agreement regarding PAI Transition, dated September 15, 1989.

c.     Letter from Dwain C. Andrews to Captain Richard Wareing, dated December 21, 1989, pertaining to pay for Drug Testing.

d.     Letter regarding Retirement Provisions Affecting Former PAI Pilots, dated February 9, 1990.

e.     Memorandum of Understanding regarding USAir-Trump Shuttle Management, dated February 13, 1992.

f.     Letter of Agreement regarding Trump Shuttle Aircraft, dated February 13, 1992.

4.     Any Letter of Agreement not listed in 1, 2 and 3 above will cease to be effective as of January 1, 1998.

(B)     Duration

This Agreement shall become effective January 1, 1998, unless otherwise specifically provided herein, and shall continue in full force and effect through January 2, 2003, and shall renew itself without change until each succeeding January thereafter unless written notice of intended change is served in accordance with Section 6, Title I of the Railway Labor Act, as amended, by either party hereto at least sixty (60) days prior to January 1 in any year.

1      IN WITNESS WHEREOF, the parties hereto have signed this Amendment to the
2  Agreement this 4th day of December, 1997.
3
4  FOR THE AIR LINE PILOTS                        US AIRWAYS, INC.
5  ASSOCIATION, INT'L
6
7
8
9  J. Randolph Babbitt                            John R. Long, III
10 President                                      Executive Vice President,
11 Air Line Pilots Association,                   Human Resources
12 International
13
14
15
16                                                Dwain C. Andrews
17                                                Vice President, Labor Relations
18
19
20 WITNESS:                                       WITNESS:
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

30(B)
Duration of Agreement

(B)    Duration

    This Agreement shall become effective January 1, 1998, unless otherwise specifically provided herein, and shall continue in full force and effect through January 2, 2003, and shall renew itself without change until each succeeding January thereafter unless written notice of intended change is served in accordance with Section 6, Title 1 of the Railway Labor Act, as amended, by either party hereto at least sixty (60) days prior to January 1 in any year.

    IN WITNESS WHEREOF, the parties hereto have signed this Amendment to the Agreement this 4th day of December, 1997.

FOR THE AIR LINE PILOTS
ASSOCIATION, INTL.

US AIRWAYS, INC.

/s/ J. R. Babbitt
J. Randolph Babbitt
President
Air Line Pilots Association,
International

/s/ John R. Long, III
John R. Long, III
Executive Vice President,
Human Resources

/s/ D. C. Andrews
Dwain C. Andrews
Vice President, Labor Relations

WITNESS:

WITNESS:

/s/ Jon L. Bryan

/s/ Art Lunney

/s/ Christopher T. Beebe

/s/ Norman Sanders

/s/ Eric Litt

/s/ L. V. McSween

/s/ Donn K. Butkovic

/s/ Anthony J. Bralich, Jr.

/s/ Gerry McGuckin

/s/ David Butenbaugh

/s/ Kelly Ison

/s/ John J. Basco

/s/ R. J. Obermeyer

# LETTER OF AGREEMENT

## Between

## US AIRWAYS, INC.

## and

## THE AIRLINE PILOTS

### in the service of

## US AIRWAYS, INC.

### as represented by

## THE AIR LINE PILOTS ASSOCIATION INTERNATIONAL

---

## TRANSFORMATION PLAN

---

THIS LETTER OF AGREEMENT is made and entered into in accordance with Title II of the Railway Labor Act, as amended, by and between US Airways, Inc. (hereinafter referred to as the "Company") and the Airline Pilots in the service of US Airways, Inc. as represented by the Air Line Pilots Association (hereinafter referred to as the "Association").

WHEREAS the Association and the Company have previously entered into a RESTRUCTURING AGREEMENT effective July 1, 2002, Letter of Agreement #84, SUPPLEMENTARY COST REDUCTIONS, effective January 1, 2003, Letter of Agreement #85, PILOTS' DEFINED CONTRIBUTION PLAN, effective April 1, 2003, Letter of Agreement #86, ADJUSTMENTS TO RESTRUCTURING AGREEMENTS, effective April 1, 2003 and Letter of Agreement #91, CONSOLIDATED SMALL JET AGREEMENT, effective June 11, 2004, and

WHEREAS the above named Agreements were negotiated to reduce the Company's costs to make US Airways more competitive and/or to increase competitive revenue opportunities, and

WHEREAS the Company has informed the Association that additional cost reductions and revenue opportunities are needed to again reduce the Company's costs so that US Airways can continue to be an effective competitor, and

WHEREAS the Company and Association have studied the current situation of US Airways and have concluded that additional cost reductions and revenue opportunities beyond those contained in the above named letters of agreement are necessary to sustain the airline, and return it to profitability,

NOW THEREFORE the parties mutually agree to amend the Contract, Restructuring Agreement, and the subsequent Letters of Agreement as stated in the Transformation Plan Term Sheet, below. Other than as specifically modified in these documents, all terms and conditions of the ALPA-US AIRWAYS Collective Bargaining Agreement effective January 1, 1998 as amended shall remain in full force and effect.

This Letter of Agreement shall become effective under the terms and conditions and on the date specified in the Transformation Plan Term Sheet.

IN WITNESS WHEREOF, the parties hereto have signed this Letter of

Agreement this _22nd_ day of _October_, 2004.

FOR THE AIR LINE PILOTS
ASSOCIATION, INTERNATIONAL

_Duane E. Woerth, President_

FOR US AIRWAYS GROUP, INC. &
US AIRWAYS, INC.

Bruce Ashby
Sr. Vice President – Alliances &
President of US Airways Express

WITNESS for the Air Line Pilots
Association

William D. Pollock
MEC Chairman

Douglas L. Mowery
Negotiating Committee Chairman

F. Theodore Schott
Negotiating Committee Vice Chairman

John A. Greenhall
Negotiating Committee

Don M. Hollerbach
Negotiating Committee

James A. Jewell
Negotiating Committee

WITNESS for US Airways, Inc.

Jerrold A. Glass
Sr. Vice President, Employee Relations

Edward W. Bular
Vice President – Flight Operations

Anthony J. Bralich, Jr.
Managing Director, Labor Relations-Flight

John H. McFall
Manager, Labor Relations-Flight

Todd Jewett
 Manager, Labor Relations - Flight

David Buterbaugh
Manager, Pilot Scheduling and
Contract Administration

**TRANSFORMATION PLAN**                                    **LETTER #93**

### Attachment A

October 21, 2004


Captain Duane E. Woerth
President
Air Line Pilots Association, International
1625 Massachusetts Avenue, N.W.
Washington, D.C. 20036

Captain William D. Pollock
MEC Chairman
Air Line Pilots Association
One Thorn Run Center, Suite 400
Coraopolis, PA 15108

> Re:  **ALPA/US Airways Transformation Agreement – Business Conditions
> and Section 1113 ALPA Forbearance**

**Dear Captains Woerth and Pollock:**

This Letter Agreement is in furtherance of the modifications (the "Modifications") to the 1998 Pilot Agreement as previously amended (the "Pilot Agreement") reached in connection with the 2004 Transformation Plan of US Airways Group, Inc., and US Airways, Inc. (together, the "Company"). The Modifications have been agreed to by the Air Line Pilots Association, International ("ALPA") and the Company in furtherance of the Company's effort to transform its operations and capital structure, and in consideration of the parties' agreements herein. The Modifications are embodied in the revised collective bargaining agreement between ALPA and US Airways, Inc. (the "ALPA/US Airways Transformation Agreement").

1.  This Letter Agreement becomes effective only if and when the ALPA/US Airways Transformation Agreement has been ratified by ALPA members and signed by the US Airways ALPA MEC Chairman and the ALPA International President, and each of its provisions shall remain in effect only to the extent provided for herein.

2.  The parties acknowledge that the ALPA/US Airways Transformation Agreement, in accordance with its terms, will become binding and effective only upon approval of the Bankruptcy Court.

3.  The Company will forbear from the exercise of certain of its rights under the Bankruptcy Code, to the extent and subject to the conditions set forth herein (the "Section 1113 ALPA Forbearance"):

1

**TRANSFORMATION PLAN**                                    **LETTER #93**

(i)  Except as otherwise set forth herein, neither the Company nor any affiliated debtor shall, on or before the earlier of (i) the effective date of a plan of reorganization supported by the Debtors and implementing its 2004 Transformation Plan, or (ii) March 31, 2005, file or otherwise support any motion pursuant to 11 U.S.C. §§ 1113, or 1113(e) (and the Company shall withdraw the existing Section 1113(e) motion), seeking rejection of or modification of or relief or interim relief from, the Pilot Agreement or the ALPA/US Airways Transformation Agreement (hereafter any such motion shall be referred to as an "ALPA 1113 Motion").

(ii)  The Company and its affiliate debtors will actively oppose any such ALPA 1113 Motion if filed by another party.

4.  The Section 1113 protections in this Letter Agreement will expire upon the earlier to occur of (i) November 30, 2004, if the condition in paragraph 2 has not then been met; (ii) the effective date of a plan of reorganization in the US Airways Chapter 11 case; or (iii) March 31, 2005. The Section 1113 protections in this Letter Agreement may be extended, however, upon the mutual agreement of the parties.

5.  US Airways may seek relief from the Section 1113 ALPA Forbearance prior to its expiration only if it can demonstrate that such relief is necessary, because US Airways is in grave and imminent danger that it will be forced to suspend, discontinue, or materially reduce, its mainline flight operations, as compared to the operations as of the date hereof.

6.  ALPA agrees that in the event the ALPA/US Airways Transformation Agreement becomes effective in accordance with paragraph 2 above, the bankruptcy court order authorizing such effectiveness shall provide that if thereafter, prior to the effective date of any Chapter 11 plan of reorganization for US Airways, the Company is in grave and imminent danger that it will be forced to suspend, discontinue, or materially reduce, its mainline flight operations, as compared to the operations as of the date hereof, it may seek authorization to reject such agreement and the Pilot Agreement, and upon such rejection, any claims arising from US Airways' inability or failure to perform under the terms of the ALPA/US Airways Transformation Plan and/or the Pilot Agreement shall be treated as a general unsecured claim and not as an administrative claim, except to the extent such claims are claims for compensation or benefits for services rendered during the pendency of the Chapter 11 case and prior to such rejection, in which case such claims shall be accorded administrative claim status to the full extent permitted by law. US Airways reserves the right to argue that no claim for damages arises as a result of rejection of a collectively-bargained agreement and ALPA reserves the right to argue that a claim for damages does arise as a result of such rejection.

2

**TRANSFORMATION PLAN**                                      **LETTER #93**

Please indicate your agreement to the foregoing by signing below.

Yours truly,

*Bruce R Lakefield*

Bruce R. Lakefield
President and Chief Executive Officer
US Airways Group, Inc.
US Airways, Inc.

AGREED THIS 22 DAY OF OCTOBER, 2004:

Captain Duane E. Woerth
President
Air Line Pilots Association, International

Captain William D. Pollock
Chairman
US Airways MEC
Air Line Pilots Association, International

3

# Exhibit 2

# Excerpt from AFL-CIO Constitution

# AFL-CIO

**Click to Print**

## Article III: Affiliates

Home > About Us > This Is the AFL-CIO > Constitution

Preamble I II III IV V VI VII VIII IX X XI XII XIII XIV XV XVI XVII XVIII-XIX XX XXI

### Section 1

The Federation shall be composed of: (1) national and international unions that are affiliated with, but are not subordinate to, or subject to the general direction and control of, the Federation; and (2) the following categories of organizations that are subordinate bodies of the AFL-CIO subject to the kind and degree of Federation direction and control provided for in this Constitution: (a) organizing committees; (b) directly affiliated local unions and national councils thereof; (c) state, area and local central bodies; and (d) trade and industrial departments.

### Section 2

Every affiliate that operated at the time of the merger between the AFL and the CIO with a charter or certificate of affiliation issued by either federation has, by virtue of the merger, retained and enjoyed the same organizing jurisdiction in this Federation that it had and enjoyed prior to the merger. In cases of conflicting and duplicating jurisdictions the President and the Executive Council shall seek to eliminate such conflicts through the process of voluntary agreement or voluntary merger between the affiliates involved.

### Section 3

Every affiliate that operated at the time of the merger between the AFL and the CIO with a charter or certificate of affiliation issued by either federation has, by virtue of the merger, been conferred with a charter or certificate of affiliation from the AFL-CIO and become subject to this Constitution and the AFL-CIO's rules and regulations.

### Section 4

(a) The Executive Council may issue additional charters or certificates of affiliation to other organizations desiring to affiliate with this Federation. This power may be delegated to the President. Charters or certificates of affiliation shall not be issued to national or international unions, organizing committees, or directly affiliated local unions in conflict with the jurisdiction of affiliated national or international unions, except with the written consent of such unions, and shall be based upon a strict recognition that both craft and industrial unions are equal and necessary as methods of trade union organization, and that each affiliated national and international union is entitled to have its autonomy, integrity and jurisdiction protected and preserved.

(b) Where the Executive Council determines that it would be necessary or appropriate to subject the approval of a charter to one or more future conditions, the Executive Council may issue a provisional charter. In such cases, the provisional status of the charter shall be removed following a specified period of time not to exceed three years, and the affiliation shall thereupon be deemed permanent, absent a vote of the Executive Council to revoke the charter.

### Section 5

(a) Except as otherwise provided in this Constitution, no national or international union chartered by or affiliated with this Federation may be suspended from the Federation except by a majority roll call vote at the convention. A suspension imposed by a convention may be terminated in accordance with Article X, Section 14.

(b) Except as provided in Section 4.(b) of this Article, no national or international union shall have its charter or certificate of affiliation with the Federation revoked except by a two-thirds roll call vote at the convention. A revoked charter or certificate of affiliation may be restored by either a two-thirds roll call vote of the convention or a two-thirds vote of the Executive Council if it is determined that the organization is conducting its affairs in a manner consistent with the obligations of an AFL-CIO affiliate.

### Section 6

No organization that is unaffiliated with, or is suspended from, this Federation, and no affiliate or subordinate body of such an organization, shall, while unaffiliated or suspended, be allowed representation or recognition in the AFL-CIO, in any subordinate body of the AFL-CIO, or in any national or international union or organizing committee affiliated with the AFL-CIO. Any affiliate violating this section shall be subject to suspension from the AFL-CIO.

### Section 7

No organization officered, controlled or dominated by persons whose policies and activities are consistently directed toward the achievement of the program or purposes of authoritarianism, totalitarianism, terrorism and other forces that suppress individual liberties and freedom of association shall be permitted as an affiliate of the Federation or any of its state or local central bodies.

### Section 8

Affiliates of the Federation shall be encouraged to eliminate conflicts and duplications in organization and jurisdictions through the process of voluntary agreement or voluntary merger in consultation with the appropriate officials of the Federation. Accordingly the AFL-CIO shall implement a proactive, industry-based strategic merger policy as adopted by the AFL-CIO Convention delegates and is hereby authorized to take all necessary steps to effectuate its terms.

    

Copyright © 2007 AFL-CIO | American Federation of Labor - Congress of Industrial Organizations

Contact Us | Union Jobs | Privacy Policy | Site Map

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| GENE H. CARSWELL, individually and on behalf of all others similarly situated, |

GENE H. CARSWELL, individually and on
behalf of all others similarly situated,

      Plaintiff,

      v.                                                                    Case No. 1:07-CV-00651 (RBW)

AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL; US AIRWAYS
GROUP, INC.; and AMERICAN
FEDERATION OF LABOR AND
CONGRESS OF INDUSTRIAL
ORGANIZATIONS,

      Defendants.

**ORDER**

      The matter came before the Court on Defendant American Federation of Labor and

Congress of Industrial Organizations ("AFL-CIO")' Motion to Dismiss pursuant to Fed. R. Civ.

P. 12(b)(6).

      For good cause shown,

      It is **ORDERED** that the AFL-CIO be **DISMISSED** from this case.

                                _____

                                Reggie B. Walton
                                United States District Judge