IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GENE H. CARSWELL, et al.                                  :
 individually and on behalf of all others         :
 similarly situated,                                          :
                                                                     :
          Plaintiff,                                           : Civil Action No. 1:07-cv-00651
                                                                     :
AIR LINE PILOTS ASSOCIATION,              : Judge Reggie B. Walton
  INTERNATIONAL, et al.                             :
                                                                     :
          Defendants.                                      :

**PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO THE MOTION TO DISMISS
FILED BY THE AIR LINE PILOTS ASSOCIATION, INTERNATIONAL**

Comes now Plaintiff, Gene H. Carswell, by and through undersigned counsel, and

respectfully submits his opposition to the motion to dismiss the first amended complaint

filed by defendant, Air Line Pilots Association, International, ("ALPA").[1]

**DEFENDANT'S MOTION FAILS TO MEET THE
STANDARDS REQUIRED FOR FED.R.CIV.P. 12(b)(6)**

At the outset, it must be noted that nowhere in its motion to dismiss does ALPA

discuss the relevant standards for deciding a motion to dismiss pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure.  Indeed, ALPA treats its motion to dismiss more

as a closing argument, i.e., that Mr. Carswell has failed to prove his case and it therefore

must be dismissed.

---

[1] Mr. Carswell has previously filed his opposition to the motion to dismiss submitted by
Defendant US Airways, Group, Inc. and incorporates by reference that opposition.  Mr.
Carswell also incorporates by reference his opposition to the motion to dismiss filed by
Defendant, American Federation of Labor and Congress of Industrial Organizations,
("AFL-CIO") and his opposition to the motions for sanctions also filed by the AFL-CIO.

ALPA has ignored the basic premise of a motion to dismiss pursuant to Rule 12(b)(6): this motion may be granted only if, taking all of the allegations in the complaint as true, Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964), "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Bogosian v. Gulf Oil Corp., 561 F.2d 434, 444 (3d Cir.1977), cert. denied, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978) (allegations of complaint must be viewed "liberally giving plaintiffs the benefit of all inferences which may fairly be drawn therefrom").  See, also, Murphy v. Pricewaterhousecoopers, LLP et al., 357 F.Supp.2d 230, 238 (D.DC 2004).

When deciding a 12(b)(6) motion, the court does not inquire as to whether the plaintiff will ultimately prevail on its claims, only whether the plaintiff is entitled to present evidence in support of its claims.  Children's Seashore House v. Waldman, 197 F.3d 654, 658 (3d Cir. 1999).   Rather, Mr. Carswell should be permitted to conduct discovery as to his well-pled claims.

Mr. Carswell submits that in the instant case he has pleaded sufficient facts, which, if true, support each of his claims against ALPA and entitle him to relief.  As a result, ALPA's motion must fail.

### ALPA OWES A DUTY OF FAIR REPRESENTATION TO MR. CARSWELL AND OTHER MEMBERS OF THE CLASS

There can be no dispute that ALPA has been recognized as the exclusive bargaining representative for its members, including Mr. Carswell.  Thus, there can be no dispute that ALPA owes a duty of fair representation to all of its members, including Mr. Carswell and other pilots approaching or past the age of 60.  Steele v. Louisville & Nash-

ville R. Co., 323 U.S. 192, 65 S.Ct. 226 (1944), Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

Mr. Carswell has alleged that ALPA breached its duty of fair representation to him and other pilots with respect to ALPA's actions as they relate to the Age 60 Rule. For the purposes of this motion, Mr. Carswell's allegations must be taken as true.  If, in fact, ALPA has breached its duty to Mr. Carswell and others, then certain rights, remedies and consequences naturally follow from that breach.  In Bensel v. Allied Pilots Association, 387 F.3d 298 (3d Cir. 2004), the court stated, "If Appellants prove their allegations that ALPA failed to take specific actions on behalf of its members for an improper purpose or in bad faith, they may obtain relief for ALPA's breach of its fair representation duty." Id. at 311.  The court further stated,

> It is our belief that at this stage of the proceedings Plaintiffs should be given a fuller opportunity for discovery relating to Count I and permitted to ascertain if there is any factual support for their claims.  At this point we ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." [Citations omitted.]

Id. at 312.

It will ultimately be up to the trier of fact to determine if ALPA has breached its duty of fair representation to Mr. Carswell and other pilots.  It will be up to the trier of fact to determine if ALPA's conduct towards Mr. Carswell and other class members rises to the level of being arbitrary, wholly irrational or discriminatory.  "[The jury] can find a violation of the union's duty of fair representation only if it finds that the union acted without the requisite honesty and good faith."  Smith v. Local 7898, United Steel Workers of America et al., 834 F.2d 93, 97 (4th Cir. 1987).

3

However, at this juncture, Mr. Carswell is not required to prove that ALPA's conduct violated its duty of fair representation. It is sufficient that Mr. Carswell has alleged facts sufficient to hold ALPA liable for its breach. (See, e.g., First Amended Complaint, ¶¶103-107, 120-121.)

## THE NOERR-PENNINGTON DOCTRINE DOES NOT APPLY TO ALPA IN THIS SITUATION

1.    Noerr-Pennington Immunity is Not Automatic.

ALPA opines that it is immune from liability because the Noerr-Pennington doctrine insulates it from suit for any lobbying activity it undertakes before Congress or the FAA. Thus, according to ALPA, by lobbying for the Age 60 Rule and therefore, against the interests of Mr. Carswell and other older pilots, it is not liable for the discrimination suffered by these pilots, or their loss of employment, income and benefits.

The purpose of the immunity accorded Noerr-Pennington defendants is to protect the rights of petitioners from actions taken to properly and legitimately influence governmental agencies even though those actions may adversely impact others. Tarpley v. Keistler, 188 F.3d 788, 794 (7th Cir. 1999). However, that immunity is not without its limits and not all activity is protected. Id. Mr. Carswell maintains that in the case at bar, ALPA does not enjoy the immunity it seeks to cloak itself in, thus requiring its motion to be denied.

In Westborough Mall, Inc. v. City of Cape Girardeau, 693 F.2d 733 (8th Cir. 1982), the plaintiffs alleged that developers conspired with the City of Cape Girardeau to deprive plaintiffs of their constitutional rights under 42 U.S.C. §1983 as well as conspiring to injure plaintiffs in violation of the Sherman Antitrust Act, 15 U.S.C. §§1, 2. In their motion for summary judgment, the defendants asserted that the Noerr-Pennington

doctrine was a defense to both the §1983 and Sherman Act claims. The Eighth Circuit disagreed.

> Rather, we find that the defendants may not be protected by Noerr because their legitimate lobbying efforts may have been accompanied by illegal or fraudulent actions. [Citations omitted.] . . . The Noerr-Pennington doctrine was not "intended to protect those who employ illegal means to influence their representatives in government." Sacramento Coca-Cola Bottling Co. v. Chauffeurs, Teamsters & Helpers Local 150, [440 F.2d 1096, 1099 (9th Cir. 1971)].

Westborough Mall, supra, at 746.

In Allied Tube & Conduit Corporation v. Indian Head, Inc., 486 U.S. 492, 108 S.Ct. 1931, 100 L.Ed.2d 497 (1988), the Supreme Court once again examined the Noerr-Pennington doctrine in an antitrust context.

The issue in Allied Tube was whether a private manufacturer would be accorded Noerr-Pennington immunity for its efforts to influence the National Fire Protection Association, (the "Association"), a private organization, that published the National Electric Code ("Code"). The Code establishes standards for the design and installation of electrical wiring systems and was adopted by and used by many governmental agencies in order to establish the standards for electrical work. Allied Tube, a manufacturer of steel conduit, undertook a major effort to prevent polyvinyl chloride tubing (PVC) from being included in the Association's Code. Allied Tube's efforts were successful and the PVC manufacturer brought suit under the Sherman Act.

The Court looked at conduct that was "political" and therefore immune, and conduct that was commercial and may have had a political impact.

> It is admittedly difficult to draw the precise lines separating the anticompetitive political activity that is immunized despite its commercial impact from anticompetitive commercial activity that is unprotected despite its commercial impact, and this is itself a case close to the line. For that rea-

5

son, we caution that our decision today <u>depends on the context and nature of the activity.</u>

<u>Id.</u> at 507, footnote 10.  (Emphasis added.)

The Court also stated, "The scope of [the <u>Noerr-Pennington</u>] protection depends, however, on the source, context, and nature of the anticompetitive restraint at issue."  <u>Id.</u> at 499.

It is thus clear that ALPA is not automatically shielded from liability for its actions with respect to the Age 60 Rule and further inquiry must be made into ALPA's conduct.

2.    Mr. Carswell's Allegations of ALPA's Breach of Its Duty of Fair Representation and Collusion with the AFL-CIO and US Airways Are Sufficient to Deprive ALPA of Immunity Under the Noerr-Pennington Doctrine.

This is a motion to dismiss the first amended complaint under Fed.R.Civ.P. 12(b)(6).  Thus, Mr. Carswell is not required to prove his allegations of ALPA's breach of its duty of fair representation and the collusion between the co-defendants at this time. <u>Bensel</u>, <u>supra</u>.  Mr. Carswell maintains that taken as true for the purpose of this motion, he has alleged facts that would deprive ALPA of any immunity it might be accorded under the <u>Noerr-Pennington</u> doctrine.

As discussed, above, the <u>Noerr-Pennington</u> doctrine is applied most often in the antitrust context.  Thus, a party that legitimately petitions the government for legislation or other action that may adversely impact a competitor will not be held liable to that competitor for the adverse consequences.

However, the case at bar is not about an adverse impact on ALPA's competitors. ALPA has not petitioned the government with respect to other unions that may represent

pilots.  It has not petitioned the government with respect to other airlines.  Instead, this is about ALPA's breach of its fundamental duty to Mr. Carswell and other pilots.

As the exclusive bargaining representative, ALPA bears a duty of fair representation towards Mr. Carswell and all of the members of the union.  ALPA is obligated by law to fairly represent and advance the interests of all union members, not just those of pilots under the age of 60.

Mr. Carswell submits that ALPA may therefore not actively work against the interests of some members of the group, i.e., pilots over the age of 60.  Union members like Mr. Carswell have placed their trust in ALPA that ALPA will work to their benefit and advantage, only to find that ALPA has strongly and continually lobbied against their interests.  Mr. Carswell maintains that this is not a situation where the union is weighing the interests of all members of the bargaining unit and deciding on which avenue to pursue at the bargaining table.  The interest at issue here is not merely wages or working conditions, it is about whether some people may be employed at all.

Mr. Carswell submits that once ALPA accepted the responsibility of acting as the exclusive bargaining representative of all pilots, it also accepted that it could not actively work against the interests of any subgroup of pilots.  Simply put, ALPA cannot on the one hand accept the responsibility for the union members and then turn around and work against their interests, particularly here, where the pretext for working against older pilots is nothing more than a sham.

Yet, as alleged by Mr. Carswell, this is exactly what ALPA has done.  It has petitioned the government to deprive older pilots of their livelihood and to prevent them from

working in their chosen field because of their age.[2]  ALPA does not deny this.  Indeed, it affirms its right to actively breach its duty of fair representation under the shield of the Noerr-Pennington doctrine.

Interestingly, in Allied Tube, supra, the Court held that where, as in the standard-setting context of that case, "an economically interested party exercises decisionmaking authority in formulating a product standard for a private association that comprises market participants, that party enjoys no Noerr immunity from any antitrust liability flowing from the effect the standard has of its own force in the marketplace."  Id. at 510.  Mr. Carswell submits that this logic should extend to the instant case: ALPA is an economically-interested party as it collects dues.  As the recognized and exclusive bargaining representative for Mr. Carswell and the other pilots employed by US Airways, it "exercises

---

[2] An examination of ALPA's website (www.alpa.org) make is abundantly clear that what is of greatest concern to ALPA is not safety, but money.  ALPA's website includes a "News Media Center" which provides news information to anyone visiting the site.  In September, 2006, ALPA announced that its president, Captain Duane Woerth, was asked to serve on an Aviation Rulemaking committee by the FAA.  Woerth is quoted as saying, "I am honored that the FAA continues to respect the role that ALPA plays as an airline safety advocate."  (Exhibit A, hereto is a copy of the statement as released on ALPA's website.)

On January 30, 2007, ALPA announced the formation of a Blue Ribbon Panel on Pilot Retirement.  (A copy of the news release is attached hereto as Exhibit B.)  Here, ALPA's position is clear: "'ALPA's policy is to support the rule as it is,' Prater said, adding that since 1980 the union has opposed and continues to oppose legislation that would overturn the rule."

ALPA's Blue Ribbon Panel later concluded that the current legislation in Congress did not sufficiently address ALPA's issues.  These seven issues are noted in another ALPA news release (a copy of which is attached hereto as Exhibit C).  It should be noted with interest that only one of these issues comes even close to being a "safety" issue, i.e., that ALPA would support a recommendation for a first class medical certification every six months for pilots over age 60.  The remaining six issues have nothing to do with safety.

Instead, they are mostly concerned with money and ALPA's alleged concern for public safety is non-existent.

decisionmaking authority" for all the union members. It should therefore enjoy no <u>Noerr-Pennington</u> immunity.

Moreover, Mr. Carswell has alleged that ALPA, in concert with defendants US Airways and the AFL-CIO, has colluded and conspired to discriminate against him based on his age. The <u>Noerr-Pennington</u> doctrine does not protect against this type of activity. See, <u>Tarpley v. Keistler</u>, <u>supra</u>, at 794.

3.    Mr. Carswell is Entitled to Conduct Discovery to Prove His Well-Pled Allegations.

Mr. Carswell has pleaded facts, which if true, entitle him to relief against ALPA. He is not required to prove his case at this preliminary stage in the proceedings. As noted in <u>Bensel</u>, <u>supra</u>, he is entitled to conduct discovery to uncover the evidence to prove all of his claims. ALPA's assertions of immunity under <u>Noerr-Pennington</u> do not require Mr. Carswell's claims to be dismissed at this juncture.

> The County's <u>Noerr-Pennington</u> defense, like any defense raised in a pre-trial pleading, may ultimately prove successful. However, at this point, material disputes of fact which prevent the doctrine from shielding Defendants from liability. Two things remain to be established at trial: the precise nature and scope of the Defendants activity, and the mindset under which they operated. Only if the trier of fact determines that the County and its agents were acting in a good faith effort to secure a valid legislative outcome can the County avail itself of <u>Noerr-Pennington</u>.

<u>Randy's Sanitation, Inc. v. Wright County, Minnesota</u>, 65 F.Supp. 1017, 1031 (D.Minn. 1999).

In <u>Westborough Mall</u>, <u>supra</u>, the Eighth Circuit overturned the district court's order of summary judgment on a <u>Noerr-Pennington</u> defense because the district court failed to view the evidence presented in the light most favorable to the non-moving party. The court held, "we find that the defendants may not be protected by <u>Noerr</u> because their le-

gitimate lobbying efforts may have been accompanied by illegal or fraudulent actions." 693 F.2d at 746.

It is clear that Mr. Carswell has alleged facts, which if true, would entitle him to judgment against ALPA. He is entitled to conduct his discovery to find those facts to support his theories of liability.

### MR. CARSWELL'S CLAIMS FOR ALPA'S BREACH OF THE COLLECTIVE BARGAINING AGREEMENT ARE NOT SUBJECT TO MANDATORY ARBITRATION

ALPA further posits that Counts V and VII for its breaches of the collective bargaining agreement must be dismissed because these claims are subject to the mandatory arbitration provisions for the Railway Labor Act, 45 U.S.C. §184. To that end, ALPA cites Brotherhood of Locomotive Engineers v. Louisville and Nashville Railroad Company, 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963).

However, the Court made it clear in Brotherhood of Locomotive Engineers that only minor disputes must be referred to arbitration under the Railway Labor Act: "Subsection (i) provides that it shall be the duty of both the carrier and the union to negotiate on the property concerning all minor disputes which arise." 373 U.S. at 37, emphasis added. (See also, 373 U.S. at 39.)

In Air Line Pilots Association v. Shuttle, Inc., 55 F.Supp.2d 47 (D.DC 1999), this court examined the issue of what is considered a minor dispute referable to arbitration versus what is considered a major dispute giving this court jurisdiction over the proceedings[3]. "A minor dispute is one relating to the meaning or application of a particular pro-

---

[3] Interestingly, in ALPA v. Shuttle, Inc., supra, ALPA sought to invoke the jurisdiction of this court to resolve the parties' dispute. It apparently did not consider, as it does now, that all disputes must be referred to arbitration under the RLA or the collective bargaining

vision of a collective bargaining agreement." <u>Id.</u> at 51.  The court further held, "Arbitration under the RLA is only intended to resolve the dueling interpretations of the parties about the meaning of a provision of a collective bargaining agreement; it does not encompass the equitable reformation of an agreement.  Equitable reformation is a remedy that is more appropriately granted by a court." <u>Id.</u> at 52.

In the case at bar, Mr. Carswell has alleged that ALPA <u>materially breached</u> the terms of the collective bargaining agreement.  This is not a minor dispute involving a "dueling interpretation" of the collective bargaining agreement.  Mr. Carswell submits that ALPA's breach goes to the very heart of the contract between the parties.  As a result, this court retains jurisdiction over Mr. Carswell's claims under Counts V and VII.

<u>**CONCLUSION**</u>

Although not addressed by ALPA, the standards for granting a motion filed under Fed.R.Civ.P. 12(b)(6) do not require Mr. Carswell to prove his case at this juncture; they merely require him to allege facts, which if true, entitle him to relief.  Mr. Carswell has done this for each of his counts against ALPA.

There is no dispute that ALPA owed Mr. Carswell and the other pilots a duty of fair representation.  Mr. Carswell maintains that the <u>Noerr-Pennington</u> doctrine does not automatically shield it from liability for breaching that fundamental duty.  Discovery on these issues is required.

Mr. Carswell has stated a claim for relief for ALPA's material breach of the collective bargaining agreement.  The Railroad Labor Act does not mandate that a major

---

agreement.  ALPA has also sought judicial relief rather than arbitration on other occasions as well. See, for example, <u>Air Line Pilots Association, International v. Northwest Airlines, Inc.</u> 627 F.2d 272 (DC Cir. 1980), a case cited by ALPA in the instant case in support of its argument that all matters must be submitted to arbitration.

dispute of this type be referred to arbitration. The court therefore has jurisdiction to determine the merits of Mr. Carswell's claims.

WHEREFORE, Mr. Carswell respectfully requests that ALPA's motion to dismiss be denied and that this matter proceed before this court accordingly.

Dated: August 30, 2007

Respectfully submitted,

_____/s/ Rosemary Dettling_____
Rosemary Dettling (DC Bar 441483)
3120 Brandywine Street, NW
Washington, DC 20008
(202) 362-1988 (Telephone)
(888) 241-6719 (Facsimile)

_____/s/ Joanne D. Donhue_____
Joanne D. Donohue (DC Bar 370569)
*Pro hoc vice*
16848 Hamilton Station Road
Hamilton, Virginia 20158
(540) 338-4841 (tel. and fax)

Counsel for Plaintiff, Gene H. Carswell

CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of August, 2007, the foregoing Opposition and proposed Order were served by ECF upon

David M. Semanchik
Granville C. Warner
Air Line Pilots Association International
535 Herndon Parkway
Herndon, Virginia 20170
Counsel for Defendant Air Line Pilots Association, International

Leon Dayan
Bredhoff & Kaiser, PLLC
805 Fifteenth Street, NW
Washington, DC 2005-2207
Counsel for AFL-CIO

Thomas B. Almay
Mark A. Dombroff
Mark E. McKinnon
Dombroff Gilmore Jacques & French, PC
1676 International Drive – PH
McLean, Virginia 22102
Counsel for US Airways Group, Inc.

and by First-Class Mail to

Erin Flaherty Lewin, Esquire
*Pro hoc vice*
US Airways Group, Inc.
111 W. Rio Salado Parkway
Tempe, Arizona 85281

/s/ Joanne D. Donohue

**Woerth to Serve as Co-Chairman of FAA Aviation Rulemaking Committee on Age 60**

The Federal Aviation Administration announced today that it has formed an Aviation Rulemaking Committee (ARC) to examine its rule that restricts pilots from flying airliners as captains or first officers past age 60. The administration asked Capt. Duane Woerth, president of the Air Line Pilots Association, Int'l (ALPA), to serve as Co-Chairman of the committee.

"The FAA rule is a safety regulation first and foremost," said Woerth. "I am honored that the FAA continues to respect the role that ALPA plays as an airline safety advocate. In that role, we will work hard to make sure that the Age 60 regulation is considered on the basis of sound science and safety risk. ALPA representatives will also be guided by our official policy in support of the current regulation."

Despite its name, this ARC is strictly an advisory body. The FAA's tasking asks the ARC to recommend whether the FAA should adopt an ICAO standard that allows airline pilots to fly to 65. The ARC is also tasked to make recommendations for implementing any resulting rule change. The FAA will ultimately decide what, if any, changes to the regulations will be made. Air Transport Association President James May was also appointed as Committee Co-Chairman. Three other ALPA representatives will serve on the committee.

The FAA's action is a response to an amendment by the International Civil Aviation Organization (ICAO) that will be implemented in November 2006, to increase the "upper age limit" for airline pilots to age 65. The new ICAO standard also specifies that only one pilot in any crew may be over age 60. While the ICAO standard is non-binding and individual countries set their own regulations regarding the operational age limit, certain members of Congress have set the stage for action this year to direct the FAA to quickly adopt the ICAO standard.

"It is inappropriate for Congress to dictate safety standards to the FAA," continued Woerth. "ALPA representatives on the ARC will take all steps necessary to ensure that pilot perspectives and safety considerations are included in any possible rule change implementation."

Carswell v. ALPA et al.
CA No. 1:07-cv-00651
Plaintiff's Opp. to ALPA Motion to
Dismiss
**Exhibit A**



AIR LINE PILOTS ASSOCIATION, INTERNATIONAL
1625 MASSACHUSETTS AVENUE, N.W.
WASHINGTON, D.C. 20036

703-481-4440
MEDIA@ALPA.ORG
WWW.ALPA.ORG

Release #07.004
January 30, 2007

**ALPA Responds to Age 60 NPRM Announcement**
*Blue Ribbon Panel will study issue of pilot retirement*

The president of the Air Line Pilots Association, International (ALPA) is forming an internal work group to develop a response to the FAA administrator's announcement to conduct rulemaking on the mandatory airline pilot retirement age.

"The fact that the FAA is set to put the Age 60 regulation into the rulemaking process is very significant," explained ALPA president, Capt. John Prater, after Administrator Marion Blakey's announcement at a National Press Club luncheon today. "The FAA is careful to propose rulemaking only when it is convinced that a rule will need to change."

"ALPA policy is to support the rule as it is," Prater said, adding that since 1980 the union has opposed and continues to oppose legislation that would overturn the rule. "However, despite that policy, we cannot afford to ignore the significance of the FAA's announcement. That is why I have decided to form an ALPA Blue Ribbon Panel on Pilot Retirement, composed of representatives from the four of the association's standing committees most logically connected with the Age 60 Issue: Air Safety, Retirement and Insurance, Collective Bargaining, and Aeromedical."

The mission of the panel will be to study the effects of potential changes to the FAA Age 60 Rule and to develop recommendations on how ALPA can address the issue of pilot retirement with the goal of having a positive effect for ALPA members. The committee will uphold ALPA's 75 year-long commitment to ensuring the highest level of aviation safety. The FAA announcement and the formation of the ALPA Blue Ribbon Panel come in the wake of five years of tumult for the airline pilot profession. Furloughs, pay and benefit cuts, and a lack of job growth have put severe economic pressure on airline pilots of all ages and experience levels. The panel will present its recommendations to the ALPA Executive Board, composed of the leaders of ALPA's 40 pilot groups, at its May 2007 meeting.

"While it is impossible to predict what the final FAA rule will look like," Prater said, "ALPA will use its credibility and influence to protect pilot interests throughout the process."

The Air Line Pilots Association, International, is the largest airline pilot union in the world and represents 60,000 pilots who fly for 40 U.S. and Canadian airlines. Visit ALPA on the web at www.alpa.org.

Please click here to read the FAA's news release and FAA Administrator Blakey's speech, "Experience Counts."

# # #

ALPA CONTACT: Pete Janhunen, Linda Shotwell: (703) 481-4440.

Carswell v. ALPA et al.
CA No. 1:07-cv-00651
Plaintiff's Opp. to ALPA Motion to
Dismiss
**Exhibit B**

## ALPA's Governing Bodies Grapple with Age 60 Issue

At its May meeting, ALPA's Executive Board will consider a resolution from the Executive Council to modify the union's Age 60 policy if it decides that such efforts are in the best interest of ALPA pilots.



The resolution comes on the heels of the FAA's announcement that it will propose a new rule to allow pilots to fly until they are 65. The proposed rule would parallel the ICAO standard—either pilot or copilot may fly up to age 65 as long as the other crew member is under age 60.

Since the announcement, ALPA's president, Capt. John Prater, established the ALPA Age 60 Blue Ribbon Panel to study the long-range effects of potential changes to the FAA Age 60 Rule and to identify issues connected to possible changes to pilot mandatory retirement age.

The Panel presented its preliminary report to the Council on April 24 which included issues that need to be addressed in legislation to change the Age 60 Rule. Currently, Congress is considering legislation—S. 65 and H.R. 1125—that would raise the upper age limit to 65 in multi-crew operations as long as the other required pilot is under 60; sunset the current FAA Age 60 Rule 30 days after the effective date which is the date of enactment; require the Secretary of Transportation within 30 days after the effective date to modify the regulation making it consistent with the statutory change; and establish that it would not be a basis for a claim of re-employment or seniority under any labor agreement.

ALPA expects that attempts will be made to attach or include S. 65 and H.R. 1125 in each chamber's version of the 2007 FAA reauthorization bills which the committees of jurisdiction are scheduling to debate and vote on in May or June.

The Blue Ribbon Panel concluded that provisions in both bills do not sufficiently address ALPA's issues. Those issues include:

- appropriate language to prevent retroactive application of a change to the rule,
- appropriate language to ensure stronger liability protection for airlines and pilot unions in implementing a change to the rule,
- assurances that FAA normal retirement age language in certain defined benefit plans would not cause a cutback in accrued benefits
- opposition to any additional age-related diagnostic medical testing,
- any attempt by the FAA to obtain greater access to medical pilot records, and
- support of FAA Air Surgeon Fred Tilton's recommendation to require a first class medical certification every six months for pilots over age 60, and
- appropriate language , modeled on Akaka bill, which requires the PBGC to calculate pilot pension benefits as though they worked to the more traditional retirement age of 65.

ALPA continues to collect information on this critical topic. **For your opinion to be heard, eligible members MUST take the ALPA Age 60 Blue Ribbon Panel Survey.** Although the survey results will not be the only factor the Board considers, it is an important aspect of the Board's deliberation regarding the FAA Age 60 pilot retirement regulation.

More than 14,500 ALPA pilots have registered their opinions on the FAA Age 60 pilot retirement regulation via ALPA's online survey. As of April 30, the top-10 pilot groups with the highest percentage of submissions are America West, FedEx, Northwest, ASTAR, Continental, Delta, United, Alaska, Hawaiian, and Atlas Air. The web-based survey began earlier this month and will remain open until May 10. Please log onto Crewroom.alpa.org to access the survey.

Carswell v. ALPA et al.
CA No. 1:07-cv-00651
Plaintiff's Opp. to ALPA Motion to
Dismiss
Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GENE H. CARSWELL, et al. | : |
| individually and on behalf of all others | : |
| similarly situated, | : |
| | : |
|      Plaintiff, | : Civil Action No. 1:07-cv-00651 |
| | : |
| AIR LINE PILOTS ASSOCIATION, | : Judge Reggie B. Walton |
|   INTERNATIONAL, et al. | : |
| | : |
|      Defendants. | : |

ORDER DENYING THE MOTION TO DISMISS
FILED BY DEFENDANT AIR LINE PILOTS ASSOCIATION, INTERNATIONAL

This matter has come before the Court on the motion of the Defendant, Air Line

Pilots Association, International, ("ALPA"), to dismiss the first amended complaint of

Plaintiff, Gene H. Carswell, and upon consideration of ALPA's motion and Plaintiff's

opposition thereto, it is this _____ day of _____, 2007,

ORDERED, that ALPA's motion is DENIED.

It is further ORDERED, that ALPA shall file its answer to the first amended

complaint within ten (10) days of the date of this Order.

So Ordered.

_____
Reggie B. Walton, Judge
United States District Court for the
 District of Columbia

Copies to all counsel.