# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GENE H. CARSWELL et al<br>individually and on behalf of<br>all others similarly situated,<br><br>Plaintiff,<br><br><br>v.<br><br><br>AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,<br>US AIRWAYS GROUP, INC., and AMERICAN<br>FEDERATION OF LABOR AND<br>CONGRESS OF INDUSTRIAL ORGANIZATIONS.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.
1:07-cv-00651

Judge Reggie B. Walton

## PLAINTIFFS' MEMORNADUM IN OPPOSITION TO THE MOTION TO DISMISS FILED BY THE AMERICAN FEDERATION OF LABOR AND INDUSTRIAL ORGANIZATIONS

## I.    INTRODUCTION

In this action, plaintiff seeks relief for himself and thousands of similarly situated commercial airline pilots from unlawful actions taken by the defendant, the American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO").  The plaintiff alleges that the defendant engaged in actions in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 626 *et seq* ("ADEA") and Railway Labor Act, 45 U.S.C. §§ 151 *et seq*.  Plaintiff brings this action against the AFL-CIO to remedy age discrimination, breach of duty of fair representation, and breach of contract.

Based on the actions of the AFL-CIO, thousand of commercial airline pilots have been terminated from their jobs. The AFL-CIO conspired with US Airways and the Air Line Pilots Association, International ("ALPA") to perpetuate a discriminatory pilot retirement policy. The defendant not only actively worked with ALPA to ensure that the discriminatory retirement policy continued, but it also petitioned the government to deprive older pilots of their livelihood and prevented them from working in their chosen field because of their age. Because the AFL-CIO became involved in the policy aspect of the pilots' retirement, it had a duty to further the pilots' interests – not work against the pilots' interests. Facts will show that long after the Federal Aviation Administration ("FAA") stated it would eliminate the age 60 rule, the AFL-CIO continued to lobby for the continuation of the age 60 rule. Each time the defendants did so, more pilots lost their jobs.

The AFL-CIO had two equally unlawful motivations for encouraging ALPA and US Airways to terminate employees upon their 60th birthday and trying to halt or delay a change to the age 60 rule. First, it wished to rob these employees of the benefits to which they were or might in the future become entitled to. Second, it sought to replace the pilots, 99% of whom were not entitled to stay on in other positions, with younger hires that the AFL-CIO perceived as being less expensive to the airlines and unions. These allegations are critical to plaintiff's claims under the Railway Labor Act and the ADEA.

The complaint that the AFL-CIO moves to dismiss, however, bears scant resemblance to Plaintiffs' First Amended Complaint ("Complaint"). Most of the central allegations of the pleading are never even mentioned in the AFL-CIO's memorandum. Instead, the AFL-CIO asks the Court to dismiss the entire Complaint based on factual allegations that do not appear anywhere in it, and indeed are contrary to the plaintiffs' allegations. The AFL-CIO does not once mention the allegations concerning its motivations for lobbying against the pilots interests. Instead, it ignores the plaintiff's allegations and merely states that it is not liable for any wrongdoing because it was not a party to the

2

collective bargaining agreement.

The parties are in agreement that the FAA has an age 60 rule.  The parties are also in agreement that the airlines and unions must abide by the rule.  That is not at issue in this case.  What is at issue in this case is: 1) whether the AFL-CIO owed a duty to pilot union members, and 2) whether it breached its duty toward pilot members when it lobbied against elimination of the age 60 rule.

In failing to answer the allegations, the AFL-CIO thus runs rough-shod over the legal standards applicable to motions to dismiss, namely that the Court must take all well-pleaded allegations as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the Complaint, the plaintiff may be entitled to relief.  Here, the defendant has not shown that the plaintiff failed to state a claim on which relief may be granted.[1]

## II.    FACTUAL ALLEGATIONS

As noted in the Complaint, the AFL-CIO is a federation of unions, made up of 54 national and international unions, together representing more than 9 million workers.  *See* www.aflcio.org. Defendant ALPA is a member union.  *Id.*  During the relevant time period in this Complaint, the plaintiff alleges that ALPA and the AFL-CIO worked together, against the plaintiff's interests, to enforce and perpetuate a discriminatory termination policy.  Perpetuation of the policy was a joint effort between the unions, with the unions acting in concert to enforce the policy.  Once the policy was developed and refined, ALPA implemented the policy through its collective bargaining agreement with US Airways.

Although ALPA was responsible for negotiating employment terms and conditions with US Airways on behalf of its member pilots, the AFL-CIO was responsible for masterminding the

---

[1]    This brief incorporates and includes herein by reference all of the plaintiff's arguments made in Plaintiff's Opposition to ALPA's Motion to Dismiss, filed on August 30, 2007.

continuation of the age 60 policy (even after the FAA backed off it).  The AFL-CIO was also responsible for bankrolling the AFL-CIO's and ALPA's lobbying efforts against the pilot members. Instead of aiding US Airways' pilots, ALPA and the AFL-CIO contracted away the pilots' rights under the ADEA, and lobbied intensely to keep US Airways pilots from flying (and hence working) beyond the age of 60.

The evidence will show that the AFL-CIO owed a duty to U.S. pilots to represent their interests.  The AFL-CIO's Constitution discusses various rights of the members.  The term "members" is defined by the AFL-CIO as member unions <u>and</u> member pilots.  *See* http://www.aflcio.org/aboutus/faq/, Exhibit A.  The AFL-CIO's Constitution states that the AFL-CIO will protect members from discrimination.  *See* Exhibit B.  In return for this guarantee, pilot members pay dues to ALPA with the knowledge that part of their dues go to the AFL-CIO.

The evidence will also show that the AFL-CIO has maintained an agent-principal relationship with ALPA.  The following examples show that the AFL-CIO and ALPA work under agency principles:

1.      On ALPA's web site, www.alpa.org, ALPA has a direct link to the AFL-CIO web site. *See* Exhibit C.

2.      ALPA's President, John Prater, is the Vice President of the AFL-CIO's "Transportation Trades Department."  In October 2006, John Prater was elected president of ALPA. *See* Exhibit D.

3.      The Transportation Trades Department ("TTD") of the AFL-CIO, which is the department within the AFL-CIO that determines union policy, includes ALPA as an "affiliate union." Attached hereto as Exhibit E is a page from the TTD web site (www.ttd.org) which states that the AFL-CIO's TTD represents the interests of several million aviation, rail, transit, trucking, highway and longshore workers before Congress, the Executive Branch and independent agencies."  Clicking

on the link to "32 member unions" takes the reader to the list of member unions.  ALPA is the first listed member union.

4.      Through the TTD, the AFL-CIO has actively lobbied on behalf of ALPA to assure that ALPA prevailed in undermining any challenges to proposed changes to the age 60 rule.  In June 2001, ALPA and the AFL-CIO/TTD submitted joint comments to the United States Department of Transportation ("DOT"), as part of a Notice of Proposed Rulemaking.  A copy of the first and last page of the joint comments is attached hereto as Exhibit F.  The joint comments of ALPA and the AFL-CIO/TTD were signed by Duane E. Woerth, the former president of ALPA.  Mr. Woerth represented both the AFL-CIO and ALPA.

5.      ALPA and the AFL-CIO/TTD have jointly filed other documents with public agencies.  On December 9, 2004, ALPA and the AFL-CIO/TTD electronically submitted comments to DOT on Docket No. OST-2003-15245.  A copy of this submission is attached hereto as Exhibit G.  This joint submission by ALPA and the AFL-CIO/TTD was made on ALPA letterhead and jointly signed by Mr. Woerth, President of ALPA, and Edward Wytkind, President of the AFL-CIO/TTD.

6.      On March 6, 2007, ALPA announced that Mr. Prater was elected to the AFL-CIO Executive Council and was to serve as an AFL-CIO Vice President.  Attached hereto as Exhibit H is a copy of the press release from the ALPA web site.

7.      In March 2007, Mr. Woerth was recognized by the AFL-CIO for his leadership within ALPA and within the AFL-CIO as an AFL-CIO Vice-President and member of the AFL-CIO's Executive Council.  Attached hereto as Exhibit I is a page from the AFL-CIO's web site lauding Mr. Woerth's accomplishments on behalf of ALPA and the AFL-CIO.

It is the plaintiff's goal to further document for the Court the defendant's direct involvement with ALPA on the age 60 retirement policy by gathering the AFL-CIO's own records through discovery.  The AFL-CIO's records will substantiate plaintiff's claims.  In particular, the records will

verify that: 1) pilot dues were used by the AFL-CIO to work against pilot interests, 2) the AFL-CIO did not allow ALPA to be autonomous; 3) the AFL-CIO had a fiduciary duty to the plaintiff; and 4) the AFL-CIO breached that duty.

## III.    ARGUMENT

All that the Federal Rules of Civil Procedure require of a complaint is that it contain " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 127 S.Ct 1955 (2007) (*quoting* Conley v. Gibson, 78 S.Ct. 99 (1957)); *accord* Erickson v. Pardus, 127 S.Ct. 2197 (2007) (*per curiam*).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atl. Corp., 127 S.Ct. at 1964-65; *see ibid* Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986).  Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp., 127 S.Ct. at 1965 (citations omitted).

When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor.  Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C.Cir.1979); *see ibid* Erickson, 127 S.Ct. at 2200 (citing Bell Atl. Corp., 127 S.Ct. at 1965). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact.  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C.Cir.2000).

As the plaintiff is not expected to prove his case at the pleadings stage, the proper inquiry is not whether he ultimately will prevail, but rather, whether he should be permitted to conduct discovery as to his claims.  *See* Children's Seashore House v. Waldman, 197 F.3d 654, 658 (3d Cir.

1999).  Thus, only in the "rare" case where the complaint on its face reveals some insuperable bar to

relief is a dismissal warranted.  *See* United States v. Union Corp., 194 F.R.D. 223, 237 (E.D. Pa.

2000).

As shown below, the AFL-CIO has ignored these fundamental standards governing 12(b)(6)

motions. When all of the allegations of the Complaint, not just the handful that the AFL-CIO wishes

to discuss, are considered, it is clear that each of the counts of the Complaint states a claim on which

relief may be granted.  The motion to dismiss thus should be denied in its entirety.

### A. PLAINTIFF STATES A CLAIM FOR INTENTIONAL AGE DISCRIMINATION IN VIOLATION OF THE ADEA

The plaintiff alleges that the AFL-CIO violated the ADEA by discriminating against him on

the basis of age knowingly and with reckless disregard of the law.  To state a claim for intentional age

discrimination under the ADEA, the plaintiff must allege only that his age was a determinative or

substantial factor, not that it was the sole factor.[2] Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994);

E.E.O.C. v. Westinghouse, 869 F.2d 696, 706 n.17 (3d Cir. 1989).  The plaintiff claims that his

termination and the AFL-CIO's lobbying efforts violated the ADEA provisions designed to bar union

actions based on ageist stereotypes that harm older workers.

_____

[2] In the absence of direct proof of discrimination, indirect evidence will support a *prima facie* case of discrimination.  The plaintiff must prove that he "was replaced . . . by someone younger, or . . . show otherwise that his discharge was because of his age." Dreyer v. Arco Chem. Co., 801 F.2d 651, 654 (3d Cir. 1986), cert. denied, 480 U.S. 906 (1987).  At this preliminary stage, it does not take much for allegations to "give rise to an inference of unlawful discrimination." Indeed, even at trial, the prima facie burden is "not onerous."  Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Two circumstances are more than sufficient to meet the burden in this case.  First, as discussed above, 100% of the terminated employees were forty or older.  Second, the defendants refused to consider the terminated employees for other positions for which they were qualified.  *See* Dreyer, 801 F.2d at 655 (employer's failure to offer plaintiff available positions for which she was qualified is probative evidence of discrimination even though the positions were not the same as the one from which she was terminated); Davis v. Tammac Corp., 127 F. Supp. 2d 625, 634 (M.D. Pa. 2000) (subsequent placement of younger employees into alternate positions for which plaintiff was qualified supports inference of discrimination).

The facts show the AFL-CIO engaged in an unlawful pattern and practice of age discrimination that adversely affected the plaintiff and other similarly situated former pilots in violation of 29 U.S.C. § 621 *et seq*.  The plaintiff's allegations thus state a claim that goes directly to Congress' concern when enacting the ADEA "that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes."  Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).

A primary purpose of the ADEA is to prohibit arbitrary age discrimination in employment. 29 U.S.C. § 621(b).  To accomplish this purpose, the ADEA prohibits certain practices by employers, employment agencies, and labor organizations.  29 U.S.C. § 623(a)-(c).  It is unlawful for a labor organization (1) to exclude or expel from its membership, or otherwise to discriminate against, any individual because of his age; (2) to limit, segregate, or classify its membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's age; (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.  29 U.S.C. § 623(c).  Although the prohibitions of the ADEA are broad in scope, the reach of the ADEA is limited by the statute's own definitions of "employer," "employment agency," and "labor organization."  *See* 29 U.S.C. § 630.

The AFL-CIO is a "labor organization" under the ADEA because it exists for the "purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment ..."  29 U.S.C. § 630(d); www.aflcio.org.  The AFL-CIO does not point to any statutory language that would legalize its attempts to keep older pilots from working.  Instead, it seeks to distract the Court from the ADEA's plain language and its purpose of preventing adverse employment actions based on invidious stereotypes through its arguments.

None has merit. Indeed, to make its arguments, the AFL-CIO ignores the plaintiff's allegations and controlling Court precedent. Instead of rebutting the plaintiff's *prima facie* case of age discrimination, the AFL-CIO has asked the Court to dismiss the plaintiff's Complaint on the premise that it cannot possibly be liable under the ADEA because it was not the "cause" of US Airway's termination policy.

Although the AFL-CIO contented that it had no control over the discrimination at issue in this case, the facts show that the AFL-CIO had an affirmative responsibility toward the plaintiff to provide a discrimination-free workplace. At the very least, the AFL-CIO had a duty to intervene once the pilots alerted it of discriminatory treatment. The AFL-CIO was aware and on notice that charges of discrimination were filed by the pilots.[3] The plaintiff and the EEOC informed the AFL-CIO of such developments. Thus the union cannot feign ignorance, and cannot be excused for breaching its duty to end the pilots' discrimination. *See* Berger, 843 F.2d at 1428 ("Having ... approved a practice of the local that was later found to be discriminatory in effect, the international would surely have been held accountable for the local's conduct under the agency standard of the common law ...."); *see ibid* Sagers v. Yellow Freight System, Inc., 529 F.2d 721, 736, n. 32 (5th Cir.1976) (stating that international unions who are parties to national agreements have a duty to inquire into the effect of contract provisions when it is reasonable to assume that such provisions might lead to discrimination, and that international unions have an affirmative obligation to protect members from agreements they help negotiate when such agreements "lock in" past discrimination). The AFL-CIO, however, breached its affirmative duty to oppose discriminatory practices by neglecting to remedy the alleged discrimination when it learned of the plaintiff's claims.

Common law agency theories of vicarious liability govern the liability of labor organizations

---

[3] Hundreds of pilots complained to the AFL-CIO about the discriminatory practice, and many of them (like the plaintiff) named the AFL-CIO as a discriminating party on their EEOC charge forms.

for the acts of their local unions that violate employment discrimination laws.  Berger v. Iron

Workers Reinforced Rodmen Local 201, 843 F.2d 1395, 1427 (D.C. Cir. 1988).  At common law, a

principal may be held liable for the intentional torts of its agent if the agent's conduct is within the

scope of his agency and if, with the knowledge of the conditions, the principal intends the conduct or

its consequences.  Id. at 1430.  In a case such as this, a plaintiff must adduce specific evidence that

the union instigated, supported, ratified, or encouraged those actions, or that what was done was done

by their agents in accordance with their fundamental agreement of association.  Id. at 1427 (quoting

Carbon Fuel v. United Mine Workers, 444 U.S. 212, 217-18, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979)).

Furthermore, where an agency relationship exists, unions are not only vicariously liable, they have an

affirmative duty to oppose the local union's discriminatory conduct.  See Sinyard v. Foote & Davies

Div. of McCall Corp., 577 F.2d 943, 945 (5th Cir.1978).[4]

As noted above, there is no doubt that the AFL-CIO knew about the discriminatory practices

and failed to do anything about it.  Instead, the AFL-CIO lobbied for continuation of the

discriminatory practices.  The AFL-CIO does not even bother to address this point.  Although the

AFL-CIO argued that it had no control over ALPA, the facts show otherwise.  The AFL-CIO

instigated, supported, ratified, and encouraged the age 60 policy – and they did so through ALPA.[5]  In

---

[4] The Fifth Circuit has held that an international union is liable for a local's discrimination
where a "sufficient connection" existed between the international and the local.  See Myers v. Gilman
Paper Corp., 544 F.2d 837, 851 (5th Cir.1977).  The D.C. Circuit determined that the Myers
"sufficient connection" test was not meaningfully different from common-law agency principles.  See
Berger, 843 F.2d at 1428.

[5] Although the DOT (i.e., FAA) has proposed rulemaking to increase the mandatory
retirement age for pilots, the AFL-CIO and ALPA have secretly convened to discuss how they can
keep the status quo (i.e., keep the age 60 rule in place).  They know that doing so results on loss of
employment to thousands of pilots.  The AFL-CIO's motivation in doing so is pecuniary.  By keeping
the age 60 rule in place, the unions spend less money on its union members and get more money
from the airlines.  Publicly, the AFL-CIO has maintained that the "age 60" rule is a "safety" issue.  They
have even gone so far as to state that they oppose change to the age 60 rule because of safety
concerns.  This is obviously pretextual, as they continue to support older pilots at foreign

10

the Complaint, plaintiff alleges that all three defendants were closely related for the purpose of

administering and developing the pilots' retirement policy. The plaintiff asserts that all defendants

participated in the formulation of labor and personnel policies for the pilots. The plaintiff also asserts

that ALPA and the AFL-CIO worked closely together to formulate and perpetuate the age 60 policy.

These allegations are sufficient to justify further factual inquiry as to whether the AFL-CIO is

sufficiently related to ALPA to satisfy the ADEA's administrative filing requirements.

Courts have found that dismissing a union as a defendant is inappropriate at such an early

stage before discovery has determined a "cause" of the discrimination. *See* Streeter v. Joint Indus.

Bd. of Elec. Indus., 767 F.Supp. 520, 527 (S.D.N.Y.1991). The plaintiffs in Streeter alleged that the

defendants constituted an integrated enterprise for the purpose of controlling, administering, and

perpetuation a discriminatory termination policy. *Id.* at 525. The Court in Streeter held that the

participants sufficiently alleged that all defendants were closely related for purpose of administering a

discriminatory program so as to avoid dismissal, and held that, where several parties have integrated

economic relationship and exercise common control over employment practices, they may be liable

for each other's discriminatory acts or policies as an integrated enterprise. *Id.* at 527, *quoting*

Armbruster v. Quinn, 711 F.2d 1332, 1337 (6th Cir.1983); Trevino v. Celanese Corp., 701 F.2d 397,

404 (5th Cir.1983); Marshall v. Arlene Knitwear Inc., 454 F.Supp. 715 (E.D.N.Y.1978), aff'd in part,

rev'd in part, 608 F.2d 1369 (2d Cir.1979). As the Streeter Court determined, deferral of the question

bearing on the Court's subject matter jurisdiction is especially appropriate here, where the question of

the relationship among defendants is deeply intertwined with a basic issue going to the merits of this

case -- whether these defendants can be liable as an "integrated enterprise" for alleged discrimination.

---

carriers flying into and out of the US carrying American passengers. If their concerns were really
about safety, the AFL-CIO would certainly oppose all pilots, including foreign pilots, from flying
over the age of 60. They have not done so.

*See* Timberlane Lumber Co. v. Bank of America, 749 F.2d 1378, 1382 (9th Cir.1984) (motion

pursuant to Fed.R.Civ.P. 12(b)(1) must be deferred until summary judgment stage where

jurisdictional issue is "intermeshed" with substantive issues); Wright & Miller, Federal Practice and

Procedure: Civil § 1350 (1969 & Supp.1990).

A Court must examine four factors in determining whether an integrated enterprise exists:

(1) Interrelationship of operations. i.e. common offices, common record keeping, shared bank

accounts and equipment.

(2) Common management, common directors and boards.

(3) Centralized control of labor relations and personnel.

(4) Common ownership and financial control.

York v. Tennessee Crushed Stone Ass'n., 684 F.2d 360, 362 (6th Cir.1982).  No single factor is

conclusive, and all four criteria need not be present in a given case.  *Id.*

Here, the defendants adamantly contend that they did not constitute an integrated enterprise in

administering, controlling, and perpetuating the age 60 retirement policy.  In essence, the AFL-CIO

argued that they have no role in determining an employer's termination policy.  Like the defendants

in Streeter, the AFL-CIO argued that dismissal is appropriate because they are not responsible for the

alleged discriminatory acts of US Airways.  These arguments are misplaced at the pleading stage.

Whether, considering the factors noted above, defendants constituted an integrated enterprise for the

purpose of administering, controlling and perpetuating the unions' age 60 policy is a fact-based

question that cannot be answered before plaintiff has had discovery.  Whether and to what extent all

defendants participated in formulating and perpetuating the alleged discriminatory practice and to

what extent defendants influenced the actions of the individual employers at the job sites cannot be

determined solely as a matter of law.  *See* United States v. Local 638, Enterprise Ass'n of Steam, 360

F.Supp. 979 (S.D.N.Y.1979) (defendant employer association had sufficient *de facto* influence over

and responsibility for industry employment practices to be liable pursuant to Title VII as an agent of member contractors). For the above reasons, plaintiff's ADEA claims against the AFL-CIO should not be dismissed.

**B.    PLAINTIFF STATES A CLAIM FOR BREACH OF CONTRACT**

In agreeing to be the exclusive bargaining representative of the plaintiff, ALPA and the AFL-CIO agreed not to violate the Railway Labor Act or the ADEA. They also agreed: to not allow or support any age discrimination; to process all grievances in an unbiased manner; to not allow discriminatory policies in their governing documents; and to follow all union promises and requirements outlined in the ALPA and AFL-CIO Constitution including the AFL-CIO preambles and ALPA Administration Manual Policies. ALPA agreed to represent all members fairly without showing bias to any group. *See* www.aflcio.org.

The plaintiff alleges that the AFL-CIO breached the terms of the collective bargaining agreement by publicly lobbying to restrict his employment to age 60. The AFL-CIO argues that these claims should be dismissed because it is not a proper defendant in a breach of contract and breach of fiduciary duty case. While courts have traditionally held that only the collective bargaining representative is a proper defendant in a fair representation proceeding, courts have held that international or regional unions can be liable for the actions of the local union if the local union was acting at its direction. *See* Chavez v. Food & Commercial Workers, 779 F.2d 1353, 121 LRRM 2054 (8th Cir. 1985); Sine v. Teamsters Local 992, 730 F.2d 964, 115 LRRM 3347 (4th Cir. 1984) *cert. denied*, 454 U.S. 965, 108 LRRM 2923 (1981). The DC Court has held that an international Union may owe a duty of fair representation to its member Locals. *See* Hospital & Health Care Employees Local 1199 DC v. Hospital & Health Care Employees, 533 F.2d 1205, 91 LRRM 2817 (D.C. Cir. 1976).

Here, the evidence produced by the plaintiff shows that ALPA was acting at the direction of the AFL-CIO, and shows that both unions acted in concert when they jointly decided to oppose change to the age 60 rule. A review of the exhibits attached to this opposition show that ALPA and the AFL-CIO were very forthright about presenting a "unified" front on policy issues. This is indisputable. The current and past presidents of ALPA have routinely made appearances on behalf of ALPA and the AFL-CIO. ALPA President John Prater and former ALPA President Duane E. Woerth made public appearances and issued "joint" public statements as representatives on behalf of ALPA and the AFL-CIO. For example, they issued a joint statement to the DOT opposing a change to the age 60 rule. Given the plethora of evidence showing a connection between the AFL-CIO and ALPA on the issues, it would be unreasonably to conclude, at this early stage, prior to discovery, that the AFL-CIO is not a proper party to this litigation.

### B.     PLAINTIFF STATES A CLAIM FOR BREACH OF FIDUCIARY DUTY

Plaintiff also alleges that the AFL-CIO violated fiduciary duties owed him as a result of the vulnerable position in which the organization had placed him. The AFL-CIO asks the Court to dismiss the claim as a matter of law, arguing that only ALPA had a statutory duty to fairly to represent all pilots, both in its collective bargaining and in its enforcement of the resulting collective bargaining agreement. In Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 909-10 (1967), the Supreme Court stated that, "the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, and to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id*. This duty of fair representation is of major importance, but a breach occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id*.

In the case at bar, the plaintiff alleges that the AFL-CIO <u>materially breached</u> its fiduciary duty to him. This is not a minor dispute involving a "dueling interpretation" of the collective bargaining agreement. The AFL-CIO's breach goes to the very heart of fiduciary responsibility. As a result, this Court retains jurisdiction over the plaintiff's claims.

The plaintiff agrees that a "parent" union does not owe fiduciary duties to employees as a general rule. However, as the plaintiff's allegations – which the AFL-CIO completely ignores – make clear, the AFL-CIO established a very atypical set of relationships with the pilots, ALPA, and the airlines. It is these that give rise to the AFL-CIO's fiduciary duties. The fact that a fiduciary relationship does not generally arise between a parent union and an employee does not preclude one arising in unusual circumstances.

A fiduciary relationship may come into existence when a parent union has the power and opportunity to take advantage of the employee. This kind of relationship often arises when one party's "property, or pecuniary interest, in the whole or in a part . . . is placed in the charge of another." <u>Harrisburg v. Bradford Trust Co.</u>, 621 F. Supp. 463, 473 (M.D. Pa. 1985) (quotations and citation omitted).

Here, two main factors give rise to the fiduciary relationship between the AFL-CIO and the plaintiff. These factors together made the relationship between the AFL-CIO and its agents *sui generis*:

  • The plaintiff was "captive" and prohibited from working with other unions.

  • The AFL-CIO exercised pervasive control over the perpetuation of the pilots' retirement policy.

The plaintiff alleges that these factors together put the AFL-CIO in a position of total "domination and influence" over the pilots. In its motion to dismiss, the AFL-CIO failed to articulate a response to the plaintiff's claim that it worked in concert with ALPA. It also failed to articulate a

reason explaining why it worked against the interests of the pilots.  Rather, it merely stated that it was not involved in the collective bargaining agreement and was not a party to this case.  Several Circuits have found union liability when the union was unable to articulate a rational explanation for its conduct.  *See, e.g.*, NLRB v. Teamsters, Local 282, 740 F.2d 141, 116 LRRM 3292 (2d Cir. 1984); White v. Arco/Polymers, Inc., 720 F.2d 1391, 115 LRRM 2332 (5th Cir. 1983); Ruzicka v. General Motors Corp., 649 F.2d 1207, 107 LRRM 2726 (6th Cir. 1981); NLRB v. Postal Workers, 618 F.2d 1249;103 LRRM 3045 (8th Cir. 1980); Segarra v. Sea-Land Service, Inc., 581 F.2d 291, 99 LRRM 2198 (1st Cir. 1978); Foust v. Electrical Workers, IBEW, 572 F.2d 710, 97 LRRM 3040 (10th Cir. 1978), *rev'd on other grounds*, 442 U.S. 42, 101 LRRM 2365 (1979).

Although the AFL-CIO did not sign the collective bargaining agreement at issue in this case, the evidence demonstrates that the AFL-CIO purposefully became involved in the pilots' retirement when it lobbied against the plaintiff's interests and did so "jointly" with ALPA.  The AFL-CIO became involved in employment issues it need not have become involved in.  Although at one time it may have appeared most unlikely that unions would be called upon to assume such duties, *see* Humphrey v. Moore, 375 U.S. 335, 356-357, 84 S.Ct. 363, 375-376, 11 L.Ed.2d 370 (1964) (Goldberg, J., concurring in result), nonetheless "it is of the utmost importance that the law reflect the realities of industrial life and the nature of the collective bargaining process," and it may well be that if unions begin to assume duties traditionally viewed as the prerogatives of management, employees will begin to demand that unions be held more strictly to account in their carrying out of those duties. *Id.* at 358.

## IV.    **CONCLUSION**

Although not addressed by the AFL-CIO, the standards for granting a motion filed under Fed.R.Civ.P. 12(b)(6) do not require the plaintiff to prove his case at this juncture; they merely require him to allege facts, which if true, entitle him to relief.  The plaintiff has done this for each of

his counts against the AFL-CIO.  The Railroad Labor Act does not mandate that a major dispute of

this type be referred to arbitration.  Thus, this Court has jurisdiction to determine the merits of the

plaintiff's claims.

WHEREFORE, the plaintiff respectfully requests that the AFL-CIO's motion to dismiss be

denied and that this matter proceed before this Court accordingly.

Dated:  August 31, 2007

Respectfully submitted,

/s/ Rosemary Dettling
Rosemary Dettling (DC Bar 441483)
3120 Brandywine Street, NW
Washington, DC 20008
(202) 362-1988 (Telephone)
(888) 241-6719 (Facsimile)

Counsel for Plaintiff, Gene H. Carswell

17

<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that on the 31st day of August, 2007, the foregoing Motion and proposed Order were served by ECF upon:

David M. Semanchik
Granville C. Warner
Air Line Pilots Association International
535 Herndon Parkway
Herndon, Virginia 20170
Counsel for Defendant Air Line Pilots Association, International

Leon Dayan
Joshua Shiffrin
Bredhoff & Kaiser, PLLC
805 Fifteenth Street, NW
Washington, DC 2005-2207
Counsel for AFL-CIO

Thomas B. Almay
Mark A. Dombroff
Mark E. McKinnon
Dombroff Gilmore Jacques & French, PC
1676 International Drive – PH
McLean, Virginia 22102
Counsel for US Airways Group, Inc.

and by First-Class Mail to

Erin Flaherty Lewin
*Pro hac vice*
US Airways Group, Inc.
111 W. Rio Salado Parkway
Tempe, Arizona 85281

                           <u>/s/ Rosemary Dettling</u>

# EXHIBIT A



**AFL-CIO**
*America's Union Movement*

SEARCH                          All of AFL-CIO ⬍  GO


heart of the MOVEMENT
Terry Walls
Unions are the best thing to come along since sliced bread

**En Español**

**E-MAIL ALERTS**

Sign up for action alerts & news.

Enter e-mail        GO
Update your e-mail.

**IN THIS SECTION**

This Is the AFL-CIO
Union Facts
Unions of the AFL-CIO
State & Local Union Movements
Membership Benefits
Global Unions
Union Summer
Organizing Institute
Allied Organizations
Culture & History
Labor Day
Heart of the Movement
Join the AFL-CIO
En Español
News Archive

**GET INFORMED**

Jobs, Wages, Global Economy
Reasons to Join a Union
Your Rights@Work
Working Families Vote 2008
Health Care
Retirement Security
Safety & Health at Work
Balancing Work & Family
Education
Civil, Human & Women's Rights
Immigration

**WORKING AMERICA**

Not a union member?
You can still join us.

**ALL ABOUT UNIONS**

What's the Union Difference?
How to Join a Union
Find Your Union
State and Local Labor Councils
Community Partners
New Ways to Join the AFL-CIO
Solidarity Charters
Membership Benefits
Organizing Institute
National Labor College

# Union Facts

**Home > About Us > Union Facts**



UNIONS 101      GO ▶
What's a union and what does it mean to me?

**What is the AFL-CIO? Get the union facts**

The American Federation of Labor-Congress of Industrial Organizations (AFL-CIO) is the voluntary federation of America's unions, representing 10 million working women and men nationwide and another 1 million nonunion workers of Working America.

The AFL-CIO was formed in 1955 by the merger of the American Federation of Labor and the Congress of Industrial Organizations. Get the union facts.

**What is a union?**

Labor unions are made up of working people working together to solve problems, build stronger workplaces and give working families a real voice. Unions give workers a voice on the job about safety, security, pay, benefits —and about the best ways to get the work done. Union workers earn 30 percent more each week than nonunion workers and are much more likely to have health and pension benefits. Unions give working people a voice in government. They represent working families before lawmakers, and make sure politicians never forget that working families voted them into office.

**What unions are part of the AFL-CIO?**

Fifty-five unions make up the membership of the AFL-CIO. Click here for the list of unions with links to those that have websites. Individual union sites include union facts, news for members and information on joining a union.

**What is the mission of the AFL-CIO?**

The AFL-CIO's mission is to bring social and economic justice to our nation by enabling working people to have a voice on the job, in government, in a changing global economy and in their communities.

**Who runs the AFL-CIO?**

The AFL-CIO is governed by a quadrennial convention at which all federation members are represented by delegates elected by their fellow union members. These delegates set broad policies and goals for the union movement and every four years elect officers, who govern the day-to-day work of the AFL-CIO.

The AFL-CIO's president is John J. Sweeney. Richard Trumka is the secretary-treasurer and Linda Chavez-Thompson is the executive vice president. These officers, along with 44 vice presidents, make up the AFL-CIO Executive Council.

At the state level, 51 AFL-CIO-chartered state federations (including Puerto Rico) are led by officers and boards elected by local union delegates. More than 500 central labor councils, also chartered by the AFL-CIO, give working people a strong voice in their communities.

**Print This     E-Mail This**

takeACTION  

**Sign the Petition for Quality, Affordable Health Care**
⋅ Take Action ⋅ Learn More

**What should the next president do to improve workplace safety and health?**
⋅ Working Families Vote 2008 Forum

**EXECUTIVE PAYWATCH SEARCH**  +

**LEGISLATIVE ACTION CENTER**

Congressional voting records, AFL-CIO correspondence to leaders on Capitol Hill and more.

**OUT FRONT WITH JOHN SWEENEY**  

What's Wrong with America?

**AUDIO/VIDEO CLIPS**
⋅ New! Your stories on the health care crunch.
⋅ Workers Independent News (LIVE).

**PRESS CENTER**

**BUSHWATCH**

Find out Bush's record on working family issues.

**THE UNION SHOP ONLINE™**

⋅ AFL-CIO pen, $1.25.  

⋅ Women's denim shirt, $42.  

# EXHIBIT B



**AFL-CIO**
*America's Union Movement*

SEARCH _____ [ All of AFL-CIO ▾ ] GO

heart of the
MOVEMENT
Danny Feeney
'Get involved or
don't complain'

En Español

E-MAIL ALERTS
Sign up for action alerts &
news.

Enter e-mail [GO]
Update your e-mail.

IN THIS SECTION
Mission Statement
Constitution
Officers & Executive
Council
Out Front with John
Sweeney
Executive Council
Conventions
Publications

GET INFORMED
Jobs, Wages, Global
Economy
Reasons to Join a Union
Your Rights@Work
Working Families Vote 2008
Health Care
Retirement Security
Safety & Health at Work
Balancing Work & Family
Education
Civil, Human & Women's
Rights
Immigration

WORKING AMERICA
Not a union member?
You can still join us.

ALL ABOUT UNIONS
What's the Union Difference?
How to Join a Union
Find Your Union
State and Local Labor
Community Partners
New Ways to Join the AFL-
CIO
Solidarity Charters
Membership Benefits
Organizing Institute
National Labor College

facts STATS

15.8 percent of people
in the United States
don't have health
insurance.

Find the most up-to-date

## Objects and Principles

Home > About Us > This is the AFL-CIO > Constitution

Preamble I II III IV V VI VII VIII IX X XI XII XIII XIV XV XVI XVII
XVIII-XIX XX XXI

The objects and principles of this Federation are:

1. To aid workers in securing improved wages, hours and working
conditions with due regard for the autonomy, integrity and jurisdiction of
affiliated unions.

2. To aid and assist affiliated unions in extending the benefits of mutual
assistance and collective bargaining to workers and to promote the
organization of the unorganized into unions of their own choosing for their
mutual aid, protection and advancement, giving recognition to the principle
that both craft and industrial unions are appropriate, equal and necessary
as methods of union organization.

3. To affiliate national and international unions with this Federation and to
establish such unions; to form organizing committees and directly affiliated
local unions and to secure their affiliation to appropriate national and
international unions affiliated with or chartered by the Federation; to
establish, assist and promote state, area and local central bodies composed
of local unions of all affiliated organizations and directly affiliated local
unions; and to establish and assist trade departments composed of affiliated
national and international unions and organizing committees.

4. To encourage all workers without regard to race, creed, color, sex,
national origin, religion, age, disability or sexual orientation to share equally
in the full benefits of union organization.

5. To secure legislation that will safeguard and promote the principle of free
collective bargaining, the rights of workers, farmers and consumers, and the
security and welfare of all the people and to oppose legislation inimical to
these objectives.

6. To protect and strengthen our democratic institutions, to secure full
recognition and enjoyment of the rights and liberties to which we are justly
entitled, and to preserve and perpetuate the cherished traditions of our
democracy.

7. To give constructive aid in promoting the cause of peace and freedom in
the world and to aid, assist and cooperate with free and democratic labor
movements throughout the world.

8. To preserve and maintain the integrity of each affiliated union by fostering
respect for the established bargaining and work relationships of every other
affiliate and providing that each affiliate shall refrain from raiding the
established bargaining relationship of any other affiliate.

9. To encourage the elimination of conflicting and duplicating organizations
and jurisdictions through the process of voluntary agreement or voluntary
merger in consultation with the appropriate officials of the Federation, to preserve, subject to the foregoing, the

Print This     E-Mail This

take ACTION

Sign the Petition for Quality,
Affordable Health Care
· Take Action · Learn More

What should the next
president do to improve
workplace safety and health?
· Working Families Vote 2008
Forum

EXECUTIVE
PAYWATCH
SEARCH +



LEGISLATIVE ACTION
CENTER
Congressional voting records,
AFL-CIO correspondence to
leaders on Capitol Hill and more.

OUT FRONT WITH
JOHN SWEENEY

What's Wrong with
America?



AUDIO/VIDEO CLIPS
· New! Your stories on the
health care crunch.
· Workers Independent News
(LIVE).

PRESS CENTER

BUSHWATCH
Find out Bush's record on
working family issues.

THE UNION SHOP ONLINE™

· AFL-CIO
pen, $1.25.



· Women's
denim
shirt, $42.



Objects and Principl

data available on working family issues.

organizing jurisdiction of each affiliate.

**Search by:**

Category

State

**SEARCH**

10. To aid and encourage the sale and use of union-made products and union-supplied services through the union label and other symbols and by other means.

11. To promote labor's print and broadcast media and other means of communications in order to foster worker education and public awareness and support of the labor movement.

12. To protect the labor movement from any and all corrupt influences and from the undermining efforts of authoritarianism, totalitarianism, terrorism and all other forces that suppress individual liberties and freedom of association and oppose the basic principles of our democracy and of free and democratic unionism.

13. To safeguard the democratic character of the labor movement and to protect the autonomy of each affiliated national and international union.

14. While preserving the independence of the labor movement from political control, to encourage workers to register and vote, to exercise their full rights and responsibilities of citizenship, and to perform their rightful part in the political life of the local, state and national communities.

   

Copyright © 2007 AFL-CIO | American Federation of Labor - Congress of Industrial Organizations

Contact Us | Union Jobs | Privacy Policy | Site Map

# EXHIBIT C



The Voice of the Professional Air Line Pilot

Home  News Media Center  President's Corner  Future Pilots  Credit Union  Links  Search  Members Only

 **Who We Are**
Mission, Pilot Groups, Officers, Code of Ethics

 **In the Cockpit**
ALPA on the Issues

 **Our History**



 **Advantages of an International Union**

 **Careers at ALPA**

 **ALPA Offices**
Addresses and Phone Numbers

 *Air Line Pilot* **Magazine**

 **Int'l Federation of Air Line Pilots' Associations**

**AFL-CIO**

## NEWS FROM PILOT

**ALPA Pilot Leaders Unite in Advance of Negotiations**
August 23 - The leaders of five ALPA pilot groups met in Cincinnati last week to develop a common strategy in dealing with current and upcoming contract negotiations with their respective managements. Capt. J.C. Lawson, Capt. Michael Jayson, Capt. Bill Dressler, Capt. Tom Wychor, and Capt. Dave Nieuwenhuis—the Master Executive Council (MEC) chairmen of the pilot groups at Comair, Mesa Air Group, ExpressJet, Mesaba, and Atlantic Southeast Airlines—issued statements expressing the unity of their pilot groups. **Read more ...**

**From the President**
**Pilot Standards:** "ALPA was founded 76 years ago as part of a fight for a safer system."

**Spotlight**



**Pilot Groups**  Advocacy  Safety/Security  Events

**Delta Connection Pilots Launch Caravan in Towns That Rely Heavily on Service**
*ASA Pilot Shortage Results from Frustration with Five-Year Contract Delay*
August 27 - Delta Connection Atlantic Southeast Airlines (ASA) pilots, represented by ALPA, are taking their message to the public on **August 28 and 29**, by picketing in the small communities they serve.

**Delta Air Line Pilots Union Responds to CEO appointment**
August 21 - Delta Air Line pilots, represented by ALPA, responded to the appointment of Mr. Richard Anderson as the new CEO and Mr. Ed Bastian as president of the company.

**Trans States Pilots Rally Against the Rat**



Crewroom Login • Privacy & Terms • Contact Us • Downloads • Logon FAQs
Air Line Pilots Association, Int'l, 1625 Massachusetts Ave NW, Washington, DC 20036 (703) 689-2270

http://www.alpa.org/     Page 1 of 1

# EXHIBIT D



AIR LINE PILOTS ASSOCIATION, INTERNATIONAL
1625 MASSACHUSETTS AVENUE, N.W.
WASHINGTON, D.C. 30036

703-481-4440
MEDIA@ALPA.ORG
WWW.ALPA.ORG

Release #07.016
March 6, 2007

**ALPA President Elected to AFL-CIO Executive Council**

WASHINGTON, D.C.—The AFL-CIO Executive Council unanimously elected Air Line Pilots Association, International (ALPA) President, Capt. John Prater, on Tuesday to serve as an AFL-CIO Vice President.

"I am honored to serve the AFL-CIO in this role," Prater said. "The leadership and strength that ALPA brings to the labor movement allows us to leverage our combined resources to better pilots' wages, benefits, and working conditions."

The AFL-CIO Executive Council guides the daily work of the federation and meets at least twice a year to consider important union movement business and policies. Meeting this week in Las Vegas, the group is currently considering important pilot issues, including the U.S./EU Open Skies agreement.

AFL-CIO President John Sweeney made Prater's nomination the first order of business. Former ALPA President, Capt. Duane Woerth, nominated Prater.

The council regularly issues statements on legislative measures affecting the interests of working families, ongoing struggles for justice for workers, and more. For more information, please visit www.afl-cio.org.

### # # #

Founded in 1931, ALPA is the largest pilot union, representing 60,000 cockpit crewmembers at 40 airlines in the U.S. and Canada. Visit the ALPA Website at http://www.alpa.org.

ALPA CONTACT: Pete Janhunen, Linda Shotwell: (703) 481-4440

## President John Prater

Air Line Pilots Association, International

Capt. John Prater is the eighth president of the Air Line Pilots Association, International (ALPA). He was elected by the union's Board of Directors on Oct. 18, 2006, and began his four-year term on Jan. 1, 2007.



His election signaled a change in direction for the largest airline pilot union in the world, representing 61,000 pilots who fly for 41 U.S. and Canadian airlines. Under Prater's leadership, ALPA has taken an aggressive stance aimed at restoring strength within the union, defending the professional standards and interests of airline pilots, and reclaiming losses suffered when pilots helped to save the industry after the events of 9/11.

As ALPA's chief executive and administrative officer, Prater oversees daily operations of the Association and presides over the meetings of ALPA's governing bodies, which set policy for the organization. He is also chief spokesman for the union, advancing pilots' views before Congress, Parliament, government agencies, and the news media.

Prater's labor affiliations include membership on the Executive Council of the AFL-CIO and the Executive Committee of the Transportation Trades Department of the AFL-CIO.

He also is a member of the Air Traffic Management Advisory Committee, Air Traffic Management Steering Committee, the NGATS Institute Management Council (IMC), and the NGATS Institute Executive Committee, and is a member and co-chairman of the FAA Age 60 Aviation Rulemaking Committee (ARC).

Prater, who comes from a family background of strong union supporters, is a 29-year veteran of ALPA. He served in positions ranging from strike committee chairman to chairman of the Continental pilots' Master Executive Council (MEC), as well as vice chairman of the international Wings Alliance (now part of the Skyteam Alliance). He helped to lead union fights against such notorious airline management figures as Frank Lorenzo, Carl Icahn, and Dick Ferris.

Currently a B-767 captain, Prater has flown the B-727, DC-8, A300, B-757, and B-777, for passenger and cargo airlines during a piloting career that spans nearly three and a half decades. Before joining Continental, he flew for a number of companies, including Buckeye, Skyway, the *Wall Street Journal*, United (as an instructor), and contract freight for UPS/Airborne. His experience spans several eras: He flew as a single pilot on night freight runs in WWII-era propeller airplanes and, more recently, was a member of ALPA's working group addressing the development of the B-787.

A graduate of Parks College of St. Louis University with a bachelor's degree in meteorology, Prater is a resident of Edwardsville, Ill., with his wife, Michele, and daughter, Alexandra.

# EXHIBIT E





NEWSLETTER
SIGN UP
TELL IT TO
WASHINGTON
PRESS RELEASES
RESOURCE
CENTER



ABOUT TTD
LINKS
CONTACT
HOME

## About TTD

Welcome to the web site of the Transportation Trades Department (TTD), <u>AFL-CIO</u>.

TTD, founded in April 1990, is an umbrella organization of the American Federation of Labor and Congress of Industrial Organizations <u>(AFL-CIO)</u>. TTD represents the interests of several million aviation, rail, transit, trucking, highway and longshore workers before Congress, the Executive Branch and independent government agencies. Through TTD, the working men and women who are represented by the Department's <u>32 member unions</u> have a strong, united voice in Washington, D.C.

Please explore further to learn how we are working to secure high-skill, high-paying jobs, protect workers' rights, improve transportation safety and ensure adequate funding for our nation's transportation infrastructure.

### President

### Secretary-Treasurer

EXHIBIT F

# ORIGINAL

DEPT. OF TRANSPORTATION
DOCKETS

**BEFORE THE**
**DEPARTMENT OF TRANSPORTATION** 07 JUN 14 PM 5:01

132569

---

| | |
|---|---|
| Federal Aviation Administration          ) | |
|                           ) | |
| In the Matter of:               ) | |
|                           ) | Docket No. FAA-2000-8431– 4 |
| Antidrug And Alcohol Misuse Prevention   ) | |
| Programs For Personnel Engaged In        ) | |
| Specified Aviation Activities           ) | |
| Notice No. 00-14                ) | |

---

| | |
|---|---|
| Coast Guard                  ) | |
|                           ) | |
| In the Matter of:               ) | Docket No. USCG-2000-7759 -- 5 |
|                           ) | |
| Chemical Testing               ) | |

---

| | |
|---|---|
| Research and Special Programs      ) | |
| Administration              ) | |
|                           ) | |
| In the Matter of:               ) | Docket No. RSPA-00-8417 – 4 |
|                           ) | |
| Drug And Alcohol Testing For Pipeline   ) | |
| Facility Employees             ) | |
| Notice No. 1                  ) | |

---

| | |
|---|---|
| Federal Railroad Administration     ) | |
|                           ) | |
| In the Matter of:               ) | |
|                           ) | Docket No. FRA- 00 - 8583- 2 |
| Control Of Alcohol And Drug Use:     ) | |
| Proposed Changes To Conform With New  ) | |
| DOT Transportation Workplace Testing   ) | |
| Procedures                  ) | |
| Notice No. 48                ) | |

Federal Motor Carrier Safety Administration )
    Case 1:07-cv-00651-RBW     Document 41-4     Filed 08/30/2007     Page

In the Matter of:             )

                    )    Docket No. FMCSA-2000-8456 — 12

Controlled Substances And Alcohol Use  )

And Testing           )

                    )

Federal Transit Administration    )

                    )

In the Matter of:             )

                    )    Docket No. FTA-2000-8513 — 37

Prevention Of Alcohol Misuse and    )

Prohibited Drug Use in Transit Operations  )

                    )

## COMMENTS OF
## THE AIR LINE PILOTS ASSOCIATION
## AND
## TRANSPORTATION TRADES DEPARTMENT, AFL-CIO

**CAPTAIN DUANE E. WOERTH, President**
**JONATHAN A. COHEN, Director, Legal Dept.**
**SUZANNE L. KALFUS, Senior Attorney, Legal Dept.**
**AIR LINE PILOTS ASSOCIATION**
**1625 Massachusetts Avenue, NW**
**Washington, DC  20036**
**Telephone:  (202) 797-4095**

**EDWARD WYTKIND, Executive Director**
**TRANSPORTATION TRADES DEPARTMENT, AFL-CIO**
**888 16th Street, N.W., Suite 650**
**Washington, D.C. 20006**
**Telephone:  (202) 628-9262**

## COMMENTS OF
## THE AIR LINE PILOTS ASSOCIATION AND
## THE TRANSPORTATION TRADES DEPARTMENT
## OF THE AFL-CIO

### Introduction and Summary

The Air Line Pilots Association ("ALPA") is the principal labor union representing the nation's commercial pilots. It represents more than 66,000 pilots at 47 airlines in the United States and Canada. The Transportation Trades Department of the AFL-CIO ("TTD") is an organization of the AFL-CIO comprised of 33 unions that represent employees in the transportation industries.[1] ALPA submits these comments on its own behalf and on behalf of TTD in response to the above-captioned Notice of Proposed Rulemaking ("NPRM").

ALPA and TTD maintain their opposition to mandatory "validity" testing in the manner in which DOT is seeking to implement it. We remain concerned that validity testing lacks fundamental safeguards, fails to meet acceptable scientific standards and continues to present an unacceptable risk to innocent employees.

Recent history has shown that innocent workers have been falsely reported to have adulterated or substituted their urine samples, and have been terminated from their jobs as a result. The severe consequences to an individual accused of tampering with his or her specimen demands that any such testing be in accordance with the highest standards of forensic science and due process.

---

[1] The unions represented by TTD are listed in the attachment to these Comments.

information by requesting or attempting to insist on confidentiality agreements or protective orders. As a matter of public policy, such information should be publicly accessible to aid employees in identifying faulty testing procedures that may have caused the reporting of erroneous test results. DOT's greater interest should be in safeguarding the integrity of the testing program – not in protecting pecuniary interests of certain laboratories. The regulations should state that access to such information is required and that any attempts to shield such disclosure is not permissible.

CAPT. DUANE E. WOERTH, President
JONATHAN A. COHEN, Director, Legal Dept.
SUZANNE L. KALFUS, Senior Attorney, Legal Dept.

AIR LINE PILOTS ASSOCIATION
1625 Massachusetts Avenue, NW
Washington, DC 20036
Telephone: (202) 797-4095

EDWARD WYTKIND, Executive Director

TRANSPORTATION TRADES DEPARTMENT, AFL-CIO
888 16th Street, N.W., Suite 650
Washington, D.C. 20006
Telephone: (202) 628-9262

Dated: June 14, 2001

# EXHIBIT G

**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL**

535 HERNDON PARKWAY □ P.O. BOX 1169 □ HERNDON, VIRGINIA 20172-1169 □ 703-689-4226
888-FLY-ALPA (888-359-2572) □ FAX 703-481-2478

December 9, 2004

<u>VIA ELECTRONIC TRANSMISSION</u>

Docket Management System (SVC-124)
U.S. Department of Transportation
Room PL-401, 400 Seventh Street, S.W.
Washington, D.C. 20590-0001

Re:     Docket No. OST-2003-15245

Dear Sir or Madam:

The Air Line Pilots Association ("ALPA") is the principal labor union representing the nation's commercial pilots. It represents more than 64,000 pilots at 42 airlines in the United States and Canada. The Transportation Trades Department, AFL-CIO ("TTD") is comprised of 35 unions that represent millions of employees in transportation industries. The unions affiliated with TTD are listed in Attachment A to these Comments.

ALPA submits these comments on its own behalf and on behalf of TTD in response to the above-referenced docket pertaining to the Interim Final Rule governing Procedures for Transportation Workplace Drug and Alcohol Testing Programs, 69 Fed. Reg. 64865 (November 9, 2004). While ALPA and TTD maintain their objections to mandatory validity testing as stated in our prior comments, we believe that if validity testing is permitted any such testing should be required, at a minimum, to comply with the scientific standards and procedural safeguards set forth in the Department of Health and Human Service's Mandatory Scientific Guidelines.

We are particularly glad to see that HHS and DOT are now recognizing that individuals producing ultra-dilute urine whose creatinine levels fall between 2.0 and 5.0 mg/dL will not be treated as rule violators and will not be reported as having "substituted" their samples. This recognition is long overdue, and unfortunately has come only after innocent employees have been wrongly identified as rule violators. Some of these employees have been able to regain jobs only after substantial expenditures of time and money, while others' careers remain terminated. We once again strongly urge DOT to make this regulatory change retroactive, and deem any such prior reported results null and void and without any adverse effect.

Docket Management System
U.S. Department of Transportation
December 9, 2004
Page 3


In the face of the actual data demonstrating that unsuspecting individuals have creatinine as low as 1.9 mg/dL, the absence of any scientific support for an absolute cutoff, and in light of the grave harm suffered by real individuals who produce urine below the agency cutoff, we strongly urge that the approach of branding individuals whose creatinine is below 2.0 mg/dL also be reconsidered by DOT in its upcoming rulemaking.

Respectfully submitted,

CAPT. DUANE E. WOERTH, President
JONATHAN A. COHEN, Director, Legal Dept.
SUZANNE L. KALFUS, Sr. Attorney, Legal Dept.
AIR LINE PILOTS ASSOCIATION, INT'L
535 Herndon Parkway
Herndon, VA 20170
Phone: 703-689-4324




EDWARD WYTKIND, PRESIDENT
LARRY WILLIS, GENERAL COUNSEL
TRANSPORTATION TRADES
      DEPARTMENT, AFL-CIO
888 16th Street, N.W., Suite 650
Washington, DC 20006
Phone: 202-628-9262

EXHIBIT H

ALPA ⊙ NEWS

AIR LINE PILOTS ASSOCIATION, INTERNATIONAL
1625 MASSACHUSETTS AVENUE, N.W.
WASHINGTON, DC 20036

MEDIA CONTACT:
MEDIA@ALPA.ORG
202667470

Release #07.016
March 6, 2007

ALPA President Elected to AFL-CIO Executive Council

WASHINGTON, D.C.—The AFL-CIO Executive Council unanimously elected Air Line Pilots Association, International (ALPA) President, Capt. John Prater, on Tuesday to serve as an AFL-CIO Vice President.

"I am honored to serve the AFL-CIO in this role," Prater said. "The leadership and strength that ALPA brings to the labor movement allows us to leverage our combined resources to better pilots' wages, benefits, and working conditions."

The AFL-CIO Executive Council guides the daily work of the federation and meets at least twice a year to consider important union movement business and policies. Meeting this week in Las Vegas, the group is currently considering important pilot issues, including the U.S./EU Open Skies agreement.

AFL-CIO President John Sweeney made Prater's nomination the first order of business. Former ALPA President, Capt. Duane Woerth, nominated Prater.

The council regularly issues statements on legislative measures affecting the interests of working families, ongoing struggles for justice for workers, and more. For more information, please visit www.aflcio.org.

# # #

Founded in 1931, ALPA is the largest pilot union, representing 60,000 cockpit crewmembers at 40 airlines in the U.S. and Canada. Visit the ALPA Website at http://www.alpa.org.

ALPA CONTACT: Pete Janhunen, Linda Shotwell: (703) 481-4440

Carswell v. ALPA et al
CA No. 1:07-cv-00651
Carswell Affidavit to Opp. to AFL-CIO Motion to Dismiss
**Exhibit H**

# EXHIBIT I

  

SEARCH  [All of AFL-CIO ▼] [GO]

Print This   E-Mail This

En Español

**E-MAIL ALERTS**
Sign up for action alerts & news

Enter e-mail [    ] **GO**
Update your e-mail.

**IN THIS SECTION**
Mission Statement
Constitution
Officers & Executive Council
Out Front with John Sweeney
Executive Council
Conventions
Publications

**GET INFORMED**
Jobs, Wages, Global Economy
Freedom to Join a Union
Your Rights @ Work
Working Families Vote 2006
Health Care
Retirement Security
Safety & Health at Work
Balancing Work & Family
Education
Civil, Human & Women's Rights
Immigration

**WORKING AMERICA**
Not a union member?
You can still join us.

**ALL ABOUT UNIONS**
What's the Union Difference?
How to Join a Union
Find Your Union
State and Local Labor Contacts
Community Partners
New Ways to Join the AFL-CIO
Solidarity Charters
Membership Benefits
Organizing Institute
National Labor College



15.3 percent of people in the United States don't have health insurance.

Find the most up-to-date data available on working family issues.

Search by:
[Category ▼]
[State ▼]
**SEARCH**

# AFL-CIO Vice President Duane Woerth

Home > About Us > This is the AFL-CIO > Executive Council

AFL-CIO Vice President Duane Woerth
March 08, 2007
Las Vegas
AFL-CIO Executive Council statement

For three decades, AFL-CIO Vice President Duane Woerth has devoted his career to improving the lives of the members of his union, the Air Line Pilots Association (ALPA), the largest pilots' union in the world. Indeed, he has a long and distinguished career both as a pilot and a union activist. He started out in the U.S. Air Force and retired with the rank of Lieutenant Colonel from the Air National Guard. Currently a B-747 Captain, he has flown at Northwest Airlines for 23 years and before that at Braniff Airlines for five years. In both airlines, he has been an ALPA activist and leader. Capt. Woerth served as the Chairman of the Northwest Master Executive Council, the highest union governing body for the Northwest pilot group. His ALPA sisters and brothers, recognizing his dedication and effectiveness, elected him to be their First Vice President, then Executive Vice President and later President.

His achievements as President of ALPA have been impressive. He organized and merged six pilot groups with a total membership of nearly 12,000, which represented the period of greatest growth in the union's history. Even when ALPA was experiencing a large decline in its dues revenue, he significantly improved the union's financial strength. Under his leadership, ALPA has increased dramatically the political awareness and grassroots involvement of its members. In fact, the participation rate and total contributions to ALPA-PAC, the union's political arm, have doubled. And despite an often powerful right-wing opposition, ALPA's influence as the voice of pilots has steadily grown in Washington, D.C.

As a Vice President of the AFL-CIO and member of its Executive Council, Capt. Woerth has won respect throughout the union movement as a member of the Federation's Executive Committee, Vice Chair of the Strategic Approaches Committee and Chair of the Subcommittee on Independent Union Raids. He has been an extraordinary voice on behalf of reform of corporate bankruptcy laws, national security and transportation issues.

On behalf of the women and men of the unions of the AFL-CIO, the Executive Council expresses its gratitude and appreciation to Capt. Duane Woerth for his service and devotion to the members of ALPA and to the union movement.



**Search**

Text search within the Executive Council
[Keyword ▼] GO.

**Read Past Statements**

Year [2007 ▼] GO!

    

Copyright © 2007 AFL-CIO | American Federation of Labor - Congress of Industrial Organizations

Contact Us | Union Jobs | Privacy Policy | Site Map

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GENE H. CARSWELL et al<br>individually and on behalf of<br>all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br><br>AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,<br>US AIRWAYS GROUP, INC., and AMERICAN<br>FEDERATION OF LABOR AND<br>CONGRESS OF INDUSTRIAL ORGANIZATION.<br><br>Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br>1:07-cv-00651 |

**ORDER DENYING THE MOTION TO DISMISS FILED BY DEFENDANT AMERICAN
FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZTION**

This matter having come before the Court upon the Motion of the Defendant, the American

Federation of Labor and Congress of Industrial Organization ("AFL-CIO"), to dismiss the first amended

complaint of the Plaintiff, Gene H. Carswell, and upon consideration of the AFL-CIO's motion and

Plaintiff's opposition thereto,  it is this _____day of _____, 2007,

ORDERED, that the AFL-CIO's motion is DENIED.

It is further ORDERED that the AFL-CIO shall file its answer to the first amended complaint within

ten (10) days of the date of this ORDER.

So Ordered.

Dated: _____        _____
                                                                                   Judge Reggie B. Walton
                                                                                   United States District Judge

Copies to all counsel