IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GENE H. CARSWELL, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>AIR LINE PILOTS ASSOCIATION, INTERNATIONAL; US AIRWAYS GROUP, INC.; and AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS,<br><br>    Defendants. | Case No. 1:07-CV-00651 (RBW) |

**DEFENDANT AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") respectfully submits this Reply Memorandum in support of its Motion to Dismiss the Amended Complaint of Plaintiff Gene H. Carswell pursuant to Fed. R. Civ. P. 12(b)(6).

**INTRODUCTION**

Presently before the court, in addition to the instant Motion to Dismiss, are the motions to dismiss filed by the Air Line Pilots Association, International ("ALPA") and U.S. Airways, as well as the AFL-CIO's Motions for Sanctions. As the AFL-CIO pointed out in its opening brief, Carswell's claims against the AFL-CIO are entirely derivative of his claims against ALPA, so that if those claims fail, the claims against the AFL-CIO necessarily fail as well. See AFL-CIO's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Amended Complaint (hereinafter "Opening Brief"), pp. 3-4. In response, Carswell does not dispute that his claims

1

against the AFL-CIO are entirely derivative of the claims against ALPA. To the contrary, he confirms this by stating that, in perpetrating the alleged wrongs against him, the AFL-CIO "did so through ALPA." See Plaintiff's Memorandum in Opposition to the Motion to Dismiss Filed by the AFL-CIO (hereinafter "Motion to Dismiss Response"), p. 10. We could therefore rest on our joinder in ALPA's motion to dismiss and its persuasive moving papers in support thereof. Because, however, there are additional grounds for dismissing the AFL-CIO, we write separately as to those grounds.[1]

## ARGUMENT

As Carswell acknowledges, to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v . Twombly, 127 S. Ct. 1955, 1965 (2007). A plaintiff must state enough facts "to state a claim to relief that is plausible on its face." Id. at 1974. And even under the permissive pleading standard of Fed. R. Civ. P. 8, a plaintiff may nonetheless "plead himself out of court" by pleading facts that render success on the merits in his favor impossible. Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1116 (D.C. Cir. 2000).

As Carswell himself states, the theory of the case against the AFL-CIO is that the AFL-CIO breached a legal duty to Carswell because one of its member unions—ALPA— allegedly lobbied a federal agency against his interests with respect to the Age-60 Rule. See Motion to Dismiss Response, p. 2. To prevail on this theory, Carswell must establish two propositions.

---

[1] The AFL-CIO has also filed today its Reply Memorandum in Support of Its Motions for Sanctions Pursuant to Fed. R. Civ. P. 11. Because that memorandum incorporates and relies upon the analysis set forth here, we discuss the arguments and factual assertions that Carswell makes in his responsive memoranda at length to demonstrate not only that his Amended Complaint is lacking in legal merit under Fed. R. Civ. P. 12(b)(6) but also that it fails to meet the threshold requirements for the certification of pleadings of Fed. R. Civ. P. 11.

First, Carswell must establish that an agency relationship existed between ALPA and the AFL-CIO with respect to the Age-60 Rule. See Motion to Dismiss Response, pp. 9-10, 13. The reason he must establish such an agency relationship is straightforward: Carswell has conceded that the AFL-CIO owes him no direct legal duty under the RLA by declaring that ALPA is the exclusive bargaining representative for pilots at U.S. Airways. See Affidavit of Gene H. Carswell in Support of His Opposition to the Motions for Sanctions, ¶ 4. And Carswell also admits that the AFL-CIO is not itself a party to the collective bargaining agreement at issue in this case. See Motion to Dismiss Response, p. 16. Carswell therefore must, to state a claim against the AFL-CIO, allege facts that could plausibly support the conclusion that an agency relationship exists between the AFL-CIO and ALPA which would render the AFL-CIO liable under the RLA and ADEA for ALPA's conduct. Berger v. Iron Workers Reinforced Rodmen Local 201 ("Berger I"), 843 F.2d 1395, 1429 (D.C. Cir. 1988) ("[C]ommon-law agency principles apply equally to determine an international union's liability [for conduct of its affiliates] under the civil rights laws as they do in other contexts . . . ."); see also Carbon Fuel Co. v. United Mine Workers of Am., 444 U.S. 212, 217-218 (1979) (international union not automatically liable for illegal strike carried out by one of its local unions).

Second, Carswell must establish that, even if such an agency relationship existed, the alleged conduct by ALPA that he seeks to impute to the AFL-CIO—lobbying Congress or federal agencies in favor of the Age-60 Rule—is an actionable wrong under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 626 et seq., or the Railway Labor Act ("RLA") 45 U.S.C. §§ 151 et seq..

As we show, he cannot establish either of these two propositions.

3

**I.     Carswell Has Failed to Allege or Identify Any Facts Demonstrating that an Agency Relationship Exists Between the AFL-CIO and ALPA**

Under the applicable common law principles of agency, a plaintiff attempting to hold a union liable for the actions of another union must demonstrate that the former had the right to control and direct the activities of the latter: "[i]t is a fundamental principle of hornbook agency law that an agency relationship arises only where the principal 'has the right to control the conduct of the agent with respect to the matters entrusted to him.'"  International Longshoremen's Ass'n v. NLRB, 56 F.3d 205, 213 (D.C. Cir. 1995) (describing the principles of intra-union liability; quoting Restatement (Second) of Agency § 14 (1958)).  Moreover, it is insufficient for a plaintiff to allege that a union has <u>theoretical</u> control over another: courts will look not to, say, an international union's "theoretical control" over its locals, but instead will analyze the "nature and extent of <u>actual</u> control" over the local in the relevant factual context.  See Berger I, 843 F.2d at 1431 (quoting Shimman v. Frank, 625 F.2d 80, 98 n.36) (6th Cir. 1980) (emphasis added). Finally, a plaintiff must demonstrate that the actual control of the principal union pertains to the specific conduct of the agent union at issue.  See Berger I, 843 F.2d at 1430-33.

This is a difficult standard to satisfy, as courts, recognizing that unions, including parent unions vis-à-vis their locals, often work closely together in "solidarity" relationships, have held that such cooperative, solidarity-based working relationships do <u>not</u> give rise to vicarious liability.  In BE & K Construction Co. v. United Brotherhood of Carpenters & Joiners of America, 90 F.3d 1318 (8th Cir. 1996), for example, the Paperworkers union and Carpenters union had engaged in several ongoing joint activities regarding a certain employer: among other things, the two unions had formed a "national solidarity committee" of five or six representatives from the two unions to coordinate their activities and they had "jointly published" publications

4

related to the employer.  Id. at 1326.  Despite the close working relationship between the two unions, the Eight Circuit found that the Carpenters union could not be held liable for unlawful actions of the Paperworkers because "the sort of cooperation in the spirit of labor solidarity undertaken in the campaign does not transform one union into the agent of another."  Id. Similarly, in International Longshoremen, the D.C. Circuit found that the Longshoremen's union was not vicariously liable for the actions of several Japanese unions that had given the Longshoremen's union support in a campaign against two stevedoring companies.  56 F.3d at 249.  So held the court: "[w]e discern nothing in the law of agency to support a theory transforming one union into the agent of another based upon the spirit of labor solidarity alone." Id.  See also Overnite Transportation Co. v. NLRB, 140 F.3d 259 (D.C. Cir. 1998) (applying International Longshoremen common law agency standard, finding that union was not liable for impermissible actions of union supporters in the course of an organizing campaign even though a key union supporter was a member of the Union Organizing Committee, had campaigned aggressively for the union, and some of his allegedly impermissible conduct took place in the presence of union officials); Sinyard v. Foote & Davies Div. of McCall Corp., 577 F.2d 943, 946 (5th Cir. 1978) (rejecting argument that international union could be liable for discriminatory actions of its local union due to its receipt of funds from the local union and reservation of power in its constitution to regulate its locals).

   Notwithstanding the unsupported assertions in his brief to the contrary, see, e.g., Motion to Dismiss Response, pp. 10 and 14, Carswell has failed to plead any facts demonstrating the existence of an actual control relationship between the AFL-CIO and ALPA.  The only specific allegation in his Amended Complaint that bears on the nature of the relationship between the AFL-CIO and ALPA is that ALPA is a "member" of the AFL-CIO.  Am. Comp., ¶ 68.  Since

5

even an international union which reserves the right to regulate the actions of its locals is not automatically liable for the actions of its member locals, see Sinyard, 577 F.2d at 946—a right that the AFL-CIO does not have vis-à-vis ALPA, see Opening Brief, p. 8—the mere fact of ALPA's membership in the AFL-CIO does not plausibly support the inference that an actual agency relationship exists here.[2]

Carswell has attempted to remedy his deficient pleadings by resorting to factual evidence appended to his Motion to Dismiss Response that is not included in the allegations of his Amended Complaint. This effort is procedurally improper. But more fundamentally, these materials do not plausibly demonstrate any basis for concluding that a relationship of actual control exists between the AFL-CIO and ALPA, let alone that the AFL-CIO exercised control over ALPA with regard to lobbying or any other activities relating to the Age-60 Rule.

For example, Carswell attaches exhibits showing that ALPA officials John Prater and Duane Woerth have held, or currently hold, positions in either the Transportation Trades Department ("TTD") of the AFL-CIO or the AFL-CIO Executive Council. See Motion to Dismiss Response, pp. 4-5, Exs. D-I. However, nothing about the presence of ALPA officials on the leadership committees of the AFL-CIO implies that AFL-CIO has or had the power to direct ALPA, let alone automatically convert the actions of ALPA into the actions of the AFL-CIO. To suggest otherwise is akin to suggesting that the United Nations Security Council is vicariously

---

[2] Carswell asserts that the AFL-CIO has failed to acknowledge other allegations, including specific allegations regarding the AFL-CIO's "unlawful motivations" in the Amended Complaint, that bear on this question. Response to Motion to Dismiss, p.2. However, there are no other allegations in the Amended Complaint that describe the AFL-CIO's relationship with ALPA; furthermore, nowhere in his Response to the Motion to Dismiss, does Carswell identify any specific allegations in his Amended Complaint that purportedly establish the existence of an agency relationship between ALPA and the AFL-CIO. Of course, the purported motivations that Carswell attributes, id. at p. 2 and 10 n.5, to the AFL-CIO are not in the least bit probative of the existence of an agency relationship between the AFL-CIO and ALPA, and are, in any event, nonsensical: the AFL-CIO's revenues are in no way dependent on whether ALPA's membership consists of older or younger pilots.

responsible as a principal for all actions of the United States due to the United States' membership in that body. (Notably, as Carswell acknowledges, ALPA is only one of 32 affiliated unions in the TTD.) See Berger v. Iron Workers Reinforced Rodmen Local 201 ("Berger II"), 852 F.2d 619, 621 (D.C. Cir. 1988) (rejecting argument that joint management-labor committees were acting as agent of union which was found liable of discriminatory practices merely because union officials served on and participated in the joint committees.) Such a suggestion is preposterous, and, unsurprisingly, Carswell has cited no caselaw supporting a finding of an agency relationship in any context on these facts.[3]

Carswell next makes the assertion—also outside the four corners of the Amended Complaint—that "pilot members [of ALPA] pay dues to ALPA with the knowledge that part of their dues go to the AFL-CIO." Motion to Dismiss Response, p. 4. But the fact that pilots pay dues to ALPA, and that ALPA pays dues to the AFL-CIO, does not in any way suggest that the AFL-CIO has the power to direct or control the actions of ALPA. See Sinyard, 577 F.2d at 946 (receipt of dues from local union did not render international union vicariously liable for actions of local).

Carswell also claims that the AFL-CIO has "defined" all union members such as Carswell as members of the AFL-CIO and has promised to protect them from discrimination. Motion to Dismiss Response, p. 4. As the outset, it must be noted that nowhere in the materials cited by Carswell does the AFL-CIO define "members" of the AFL-CIO to mean both its affiliated unions and the employees represented by those unions, see id. at p. 4, Ex. A, or make any affirmative pledge in its Constitution to "protect" individual members of its affiliated unions

---

[3] It hardly bears mentioning that the inclusion of a link to the AFL-CIO on ALPA's webpage does not in any way establish that the AFL-CIO has the right to direct and control ALPA's activities. See Motion to Dismiss Response, p. 5, Exhibit C. Indeed, the fact that Carswell trumpets the importance of that link serves only to call attention to the frivolity of his agency arguments.

from discrimination, see id., pg. 4, Ex. B.  To the contrary, both the materials cited by Carswell and the AFL-CIO Constitution state that the AFL-CIO is a voluntary federation of autonomous unions, not individuals.  See id., Ex. A, B; Opening Br., Ex. 2.  Beyond this, even viewing Carswell as a direct "member" of the AFL-CIO, that "membership" would not give rise to a duty on the part of the AFL-CIO to assist or represent Carswell in his relationship with his employer, because, as Carswell admits (see supra at p. 3), the AFL-CIO has never been Carswell's "exclusive representative," and only an exclusive representative has that duty.

Not only do the materials Carswell appends to his brief fail to support his agency theory, some of those materials actually defeat that theory, as they affirmatively demonstrate that the AFL-CIO and ALPA have exactly the type of non-agency, "solidarity" relationship between autonomous entities that the unions in BE & K Construction and International Longshoremen enjoyed.  For example, Carswell has identified rulemaking comments that the AFL-CIO and ALPA have jointly submitted to the Department of Transportation ("DOT") on a public policy matter unrelated to age requirements.  See Motion to Dismiss Response, pp. 5, 14, Exs. F and G.  As the court held in BE & K Construction, 90 F.3d at 1326, the fact that the AFL-CIO and ALPA have acted jointly together regarding certain policy issues does not demonstrate the existence of an agency relationship among them.  In fact, the exhibits identified by Carswell demonstrate the lack of an agency relationship between the two entities: ostensibly, if ALPA was a mere agent of the AFL-CIO as Carswell asserts, it would be superfluous for ALPA and the AFL-CIO to sign separately the joint rulemaking comments included in Exhibits F and G to Carswell's Motion to Dismiss Response.

Furthermore, Carswell's reference to those DOT comments—along with sundry assertions that ALPA and the AFL-CIO "worked together," "participated," and "acted in concert" in the

formulation of various public policy proposals, Motion to Dismiss Response, pp. 3, 11, 14—reflects a profound failure to grasp a concept in agency law that is distinct from the central "control" concept on which we have primarily focused. That concept requires a plaintiff to demonstrate that the principal's exercise of control over the putative agent extended to the <u>specific conduct</u> of the agent that the plaintiff seeks to impute to the individual. <u>See</u>, <u>e.g.</u>, <u>Berger I</u>, 843 F.2d at 1430-33. Here, the alleged conduct in question is ALPA's activity in support of the Age-60 Rule. Yet none of the materials cited by Carswell show even any cooperation between the AFL-CIO and ALPA over <u>that</u> matter—let alone that the AFL-CIO exercised any control over ALPA in connection with its Age-60 Rule related activities.[4]

Finally, Carswell also suggests that the AFL-CIO owes a special, previously unrecognized-in-law duty of fair representation to Carswell (which he discusses in terms of a "fiduciary duty" to Carswell), because the AFL-CIO had an "atypical" relationship with ALPA and US Airways due to its alleged joint activities with ALPA, and because it "purposefully became involved" in issues involving pilots' retirement.[5] <u>Id.</u> at pp. 15-16. This suggestion is frivolous. The case law

---

[4] The fact that Carswell has apparently scoured the public record and found cooperation between the AFL-CIO on other matters, but no evidence of the AFL-CIO's involvement regarding the Age-60 Rule (contrary to Carswell's wholly unsubstantiated assertion that the AFL-CIO and ALPA have issued a "joint statement to the DOT opposing a change to the age 60 rule," <u>see</u> Motion to Dismiss Response, p. 14) underscores why sanctions are appropriate. Carswell claims that he should be entitled to persist in his lawsuit against the AFL-CIO and take discovery from the AFL-CIO—as well as avoid sanctions under Rule 11—on the basis of his assertion that the AFL-CIO has lobbied in favor of the Age-60 Rule, even though he is apparently unable to provide the court with a single piece of evidence substantiating these public activities.

[5] There is a single, unexplained mention of a fiduciary duty claim in the first paragraph of Carswell's Amended Complaint, and nowhere else in the Amended Complaint does Carswell set forth any factual allegations or source of law purportedly giving rise to a fiduciary duty claim separate from his claims under the RLA. <u>See</u> Am. Compl. ¶ 1. Carswell's discussion of his fiduciary duty claim in the Motion to Dismiss Response makes clear that, in discussing his purported fiduciary duty claim, he is actually referring to the breach of the duty of fair representation claim set out in his Amended Complaint. <u>See</u> <u>id.</u> at p. 14 ("Plaintiff also alleges that the AFL-CIO violated fiduciary duties owed him as a result of the vulnerable position in which the organization has placed him . . . . This duty of fair representation is of major importance, but a breach occurs 'only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.'"). In any event, the Supreme Court has made

9

is clear in this regard: nothing less than an actual control relationship of one union over another provides a basis for vicarious, intra-union liability. See NLRB v. Sheet Metal Workers' Int'l Ass'n Local Union No. 19, 154 F.3d 137, 143 (3d Cir. 1998) (rejecting argument that unions could be held liable for each other's actions under a joint venture theory of agency liability under the National Labor Relations Act).

None of the cases cited by Carswell throughout his Motion to Dismiss Response hold otherwise. In both Sinyard, 577 F.2d at 946-47, and Sine v. Teamsters Local 992, 730 F.2d 964 (4th Cir. 1984), Courts of Appeals held that international union defendants were not liable for the actions of the local unions at issue in those cases, despite the fact that, in Sinyard, the international union had, in its constitution, reserved the authority to take over the affairs of its local unions and had received financial payments from local union members, see 577 F.2d at 946-47, and the fact that, in Sine, the international union gave legal assistance to its local union, see 730 F.2d at 966. Likewise, in Chavez v. United Food & Commercial Workers International Union, 779 F.2d 1353 (8th Cir. 1985), the court affirmed the dismissal of an international union defendant analogous to AFL-CIO here, in that the international was not the exclusive bargaining agent of the plaintiff-employees, and did not hold itself out as such. Id. at 1359. Finally, the D.C. Circuit in Berger I found that the international union was liable for a local union's discriminatory membership policy where the international union "actively participated in and approved of" the adoption of such membership policies and where some of membership policies had been implemented by the local on the "express instructions" of the international. 843 F.2d at 1432. There is no similar allegation in Carswell's Amended Complaint that the AFL-CIO exercised the quality and degree of control over ALPA's activities with regard to the Age-60

---

clear that the duty of fair representation constitutes the fiduciary duty owed by a union to its members. Air Line Pilots Ass'n v. O'Neill, 499 U.S. 65, 74 (1991).

10

Rule that the international union enjoyed in Berger I. Indeed, Berger I underscores precisely what is missing from Carswell's case against the AFL-CIO here.

In sum, because no agency relationship exists between the AFL-CIO and ALPA, the AFL-CIO cannot be vicariously liable for the alleged conduct of ALPA vis-à-vis the Age-60 Rule, and the AFL-CIO is not a proper party to this action.

## II. Even if an Agency Relationship Existed Between the AFL-CIO and ALPA, Carswell's Claims Against the AFL-CIO under the ADEA and the RLA Must Fail Because the ADEA Cannot Be Construed to Proscribe Ordinary Political Activity by a Union

Even if Carswell's Amended Complaint were construed (contrary to accepted Rule 8 principles) to state the existence of an actual control relationship between the AFL-CIO and ALPA, Carswell's claims under the ADEA and the RLA against the AFL-CIO would fail on their own merits as a matter of law.

### A. The ADEA and RLA Should Not Be Construed to Proscribe Political Activity Regarding the Age-60 Rule by the ALPA or the AFL-CIO

At the heart of Carswell's Amended Complaint is the allegation that the AFL-CIO and ALPA engaged in political lobbying in support of the Age-60 Rule. Indeed, this is the only specific affirmative conduct (aside from his allegations of collusion) that Carswell identifies in his Amended Complaint or his responsive memoranda as violative of the ADEA. See, e.g., Motion to Dismiss Response, p. 10-11. As fully discussed by ALPA in its briefs, the lobbying activity alleged by Carswell is First Amendment "petitioning" activity rendered non-actionable by the Noerr-Pennington doctrine. See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961) and United Mine Workers of Am. v. Pennington, 381 U.S. 657 (1965); Bayou Fleet, Inc. v. Alexander, 234 F.3d 852, 859 (5th Cir. 2000) ("Noerr-Pennington

11

immunity applies to any concerted effort to sway public officials regardless of the private citizen's intent.").

Carswell has failed to demonstrate that Noerr-Pennington immunity does not apply to the allegations of petitioning activity at issue in this case. Instead, in response, Carswell has only cited cases in support of his assertion that the applicability of the doctrine should not be determined at this stage of the litigation. See Plaintiff's Memorandum in Opposition to the Motion to Dismiss Filed by ALPA, pp. 4-6. As discussed by ALPA, the cases cited by Carswell in support of his argument have no relevance in this case: there is no allegation in the Amended Complaint that the AFL-CIO or ALPA has engaged in any illegal or corrupt conduct in its furtherance of its alleged lobbying activities in favor of the Age-60 Rule, as was at issue in Westborough Mall, Inc. v. City of Cape Girardeau, 693 F.2d 733 , 737-740 (8th Cir. 1982), and Carswell alleges that the AFL-CIO and ALPA's lobbying activities were directed at the federal government, unlike in Allied Tube & Conduit Corp. v. Indian Head, Inc., 486 U.S. 492 (1988), which concerned lobbying activities directed at a private association. See Reply Memorandum in Further Support of the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) of Defendant ALPA, p. 5.

Furthermore, the question of which litigation stage a First Amendment defense to a claim under the ADEA or RLA should be raised is immaterial if the substantive reach of those statutes does not extend to regulate lobbying or other political activity by unions. And, because adopting a construction of either of those statutes that would have them regulate political activity of the kind alleged here would not only strain the statutes' language but also raise serious issues as to their constitutionality, such a construction should be rejected. The D.C. Circuit has held that, unless Congress makes "reasonably clear" its intent to favor a statutory interpretation that raises

constitutional problems, a court "must decline" to adopt that interpretation. FEC v. Machinists Non-Partisan Political League, 655 F.2d 380, 384 (D.C. Cir. 1981); see also Zadvydas v. Davis, 533 U.S. 678, 689 (2001) ("'[I]t is a cardinal principle' of statutory interpretation . . . that when an Act of Congress raises 'a serious doubt' as to its constitutionality, '[a court] will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'"). Carswell has not identified a single case or authority even suggesting that Congress intended the ADEA or the RLA to proscribe the type of political activity by unions that he alleges on the part of the AFL-CIO and ALPA.

      B. <u>Under No Set of Facts Can the AFL-CIO be Deemed a "Cause" of Any Adverse Employment Action Taken Against Carswell Because of His Age</u>

The AFL-CIO's argument regarding the significance of causation under the ADEA is simple, although apparently misunderstood by Carswell: a union can only violate the ADEA by either discriminating against represented employees in its own dealings with them, or by "caus[ing] or attempt[ing] to cause an employer to discriminate against an individual in violation" of the ADEA. 29 U.S.C. § 623(c)(3). Here, Carswell's employer was U.S. Airways, which was mandated by the FAA to terminate his employment as a pilot upon his 60th birthday. Because of the intervening action of the Age-60 Rule, which was promulgated by the FAA through an undeniably lawful rulemaking process that heard from all interested parties, under no factual circumstances could the AFL-CIO be deemed the proximate cause of any adverse employment action based on age suffered by Carswell.[6] And that would be true even if (contrary

---

[6] Carswell does not dispute that the Age-60 Rule is mandatory and that "airlines and unions must abide by the rule." Motion to Dismiss Response, p. 3. And, while Carswell states that the validity of the Age-60 Rule is not at issue in this case, id., he nevertheless engages in a discussion of the pleading standards applicable to run-of-the-mill employment discrimination case where the employer gives a non-discriminatory reason for a discharge—cases bearing no resemblance to this one, where U.S. Airways admits discrimination but defends on the basis that discrimination is compelled by the Age-60 Rule. As discussed at length elsewhere by the defendants, see U.S. Airways Group, Inc.'s Rule 12(b)(6) Motion to

to fact) the AFL-CIO had been among the organizations urging the adoption of the initial Age-60 Rule or advocating against its repeal. Only if the FAA itself were deemed a puppet of the AFL-CIO could the AFL-CIO be considered a proximate cause of the Age-60 Rule, and, needless to say, the Amended Complaint alleges no facts supporting that proposition.

In his response to our causation argument, Carswell has only attempted to delay resolution of the causation issue by asserting that the AFL-CIO, ALPA, and U.S. Airways may constitute an "integrated enterprise" as discussed by the district court in Streeter v. Joint Industry Board of the Electrical Industry, 767 F. Supp. 520 (S.D.N.Y. 1991)—an allegation totally absent from Amended Complaint. The discussion of integrated enterprises in Streeter has no relevance here, as well as no bearing on the instant circumstances of causation that are fatal to Carwell's claims against the AFL-CIO. In Streeter, the court considered whether a union and association of employers that was jointly responsible for administering an apprenticeship program could be liable for discriminatory actions taken by employers associated with the apprenticeship program. Id. at 522-23. There is nothing remotely akin to the jointly-run apprenticeship program at issue here. Moreover, it is an absurd suggestion—and one wholly unsupported by the allegations of Carswell's Amended Complaint—that U.S. Airways, ALPA (i.e., the union that represents pilots interests against U.S. Airways), and the AFL-CIO have any degree of interrelated operations, common management, centralized control of labor relations and personnel, and common ownership and financial control that would support the conclusion that an integrated enterprise

---

Dismiss Plaintiff's Complaint and Memorandum of Points and Authorities in Support Thereof, pp. 3-6, federal courts have found that this use of an age-based criterion by the FAA is lawful and that employers' compliance with it is likewise lawful. See, e.g., Coupé v. Federal Express Corp., 121 F.3d 1022, 1023 (6th Cir. 1997). For this reason, Carswell's discussion in his Motion to Dismiss Response of the pleading standard for employment discrimination claims set out in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) and its progeny is misplaced. This is not a case in which indirect evidence must be adduced and considered to determine whether age was the true reason for a facially-neutral adverse employment action; it is a case where a facially discriminatory rule is being applied by compulsion of a valid regulation. See Motion to Dismiss Response, p.7

exists among them for purposes of determining U.S. Airways' retirement policies. But no matter. Even if this absurdity was fact, and the AFL-CIO were an alter ego of U.S. Airways, Carswell's claim must nonetheless fail: given the mandate of the Age-60 Rule, and the independent nature of the FAA's rulemaking process, under no circumstances can any alleged support for the Age-60 Rule by the AFL-CIO be deemed to have "caused" any adverse employment action against Carswell.[7] Accordingly, Carswell's claims against the AFL-CIO under the ADEA fail as a matter of law.

      C. The AFL-CIO Owed No Legal Duty to Carswell under the ADEA to "Intervene" to Address the Working Conditions at U.S. Airways Which Have Resulted from the Mandate of the Age-60 Rule

Carswell also argues that the AFL-CIO is liable under the ADEA for breaching an "affirmative responsibility" it owed Carswell by failing to "intervene" and "oppose discriminatory practices" at U.S. Airways when it learned of Carswell's claims. Motion to Dismiss Response, pp. 9-10. Aside from omitting mention of any possible means through which the AFL-CIO could have excused U.S. Airways' compliance with the Age-60 Rule, Carswell wholly misunderstands the nature of a union's "affirmative responsibility" regarding the promotion of non-discriminatory employment policies.

There is a line of federal authority holding that, under federal anti-discrimination laws, an international union has an "affirmative duty" to remedy past discrimination that is perpetuated by facially-neutral employment policies in workplaces governed by a collective bargaining

---

[7] For the same reason, the AFL-CIO stands in a much different position than the employer association in United States v. Local 638, Enterprise Ass'n of Steam, Hot Water, Hydraulic Sprinkler, Pneumatic Tube, Compressed Air, Ice Machine, Air Conditioning & General Pipefitters, 360 F. Supp. 979 (S.D.N.Y. 1973), aff'd, 501 F.2d 622 (2d Cir. 1974). In that case, the district court found that an association of contractors was a proper party to a Title VII action where the association had "greater influence over and responsibility for employment practices applying to the industry as a whole than any single employer." Id. at 995. Here, in light of the Age-60 Rule, even on the facts alleged by Carswell, the AFL-CIO had no influence on U.S. Airways' retirement policies.

agreement signed by a local union of the international.  See, e.g., Berger I, 843 F.2d 1395; Myers v. Gillman Paper Corp., 544 F.2d 837 (5th Cir. 1977); Sagers v. Yellow Freight Sys., Inc., 529 F.2d 721 (5th Cir. 1976).[8]  However, nothing in this line of cases suggests that unions have a broad duty to "intervene" or "oppose" discrimination that is caused by an employer's compliance with a federal regulation.  In all of these cases, the union's duty to address discrimination was confined only to matters that could be addressed within the collective bargaining relationship between the unions and the employers of the employees that they represented.  In fact, courts have held that unions have no affirmative responsibility under Title VII (which contains language identical to the ADEA's regarding a union's liability for discrimination, compare 42 U.S.C. § 2000e-2(c) with 29 U.S.C. § 623(c)) to investigate and remedy discrimination that is attributable to an employer's failure to properly investigate claims of racial and sexual harassment.  See EEOC v. Pipefitters Ass'n Local Union 597, 334 F.3d 656, 660-61 (holding that nothing in the statutory language of Title VII supports the contention that unions have an "affirmative duty . . . to investigate and rectify discrimination by the employer."); Thorn v. Amalgamated Transit Union, 305 F.3d 826, 833 (8th Cir. 2002) ("[N]owhere in [Title VII] do we find language imposing upon unions an affirmative duty to investigate and take steps to remedy employer discrimination.").

In other words, a union may have an affirmative duty to take measures upon learning of discriminatory employment practices that fall within the purview of collective bargaining;

---

[8] These cases also stress that liability for a international union that is not actually a party to the collective bargaining agreement at issue depends on the existence of an agency relationship between the international union and the signatory to the agreement.  See, e.g., Myers, 544 F.2d at 851 ("There must be a 'sufficient connection' between the labor organization and the discriminatory practice to render the organization liable."); see also Berger I, 843 F.2d at 1427-29 (an international union's "'affirmative duty' to end discrimination" is not "abstract and unbounded," but is instead limited by "longstanding agency principles.").  For the reasons discussed above, see supra at pp. 4-11, the relationship that was present in each of these cases does not exist here.

16

however, Carswell has identified no authority holding that a union has a legal duty to employees to attempt to remedy discrimination that is caused, not by policies jointly agreed to by the employee's union and employer—i.e., policies for which the union acts as the employee's exclusive representative in bargaining with the employer—but instead by circumstances beyond the union's control, such as an employer's compliance with a validly-promulgated federal regulation.[9]

Here, there is no dispute that U.S. Airways was required to comply with the Age-60 Rule. See Motion to Dismiss Response, p.3 ("The parties are also in agreement that the airlines and unions must abide by the rule."). Where, as here, the alleged discrimination is caused by the operation of a federal regulation that is not the subject of collective bargaining, there can be no actionable duty under the ADEA on the part of the AFL-CIO to "oppose" such discrimination.

For this reason, and for the foregoing reasons, the Amended Complaint should be dismissed as against the AFL-CIO**.**

                                                                            Respectfully Submitted,

Dated: September 25, 2007                     /s/ Leon Dayan
                                                                 Leon Dayan (D.C. Bar No. 444144)
                                                                 Joshua B. Shiffrin (D.C. Bar No. 501008)
                                                                 BREDHOFF & KAISER P.L.L.C.
                                                                 805 Fifteenth Street NW, Suite 1000
                                                                 Washington, DC 20008

                                                                 Counsel for Defendant AFL-CIO

---

[9] Indeed, the definition of "labor organization" in the ADEA supports the conclusion that Congress only intended the ADEA to regulate the conduct of unions in their dealings with employers: a "labor organization" under the ADEA is defined as "a labor organization engaged in an industry affecting commerce . . . which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment . . . ." 29 U.S.C. § 630. This limitation on a union's liability is logical, as it is only through its role as an employees' exclusive representative in dealing with employers that a union has any unique power to affect an employee's working conditions. Lobbying activities directed at Congress and federal agencies can be—and are—carried out by myriad organizations other than unions.