**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————
                                          )
GENE H. CARSWELL,                         )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )        Civil Action No. 07-651 (RBW)
                                          )
AIR LINE PILOTS ASSOCIATION,              )
INTERNATIONAL,  et al.,                   )
                                          )
                    Defendants.           )
                                          )
———————————————————)


**MEMORANDUM OPINION**

Gene H. Carswell filed this civil lawsuit against US Airways Group, Inc. ("US Airways"),

the Air Line Pilots Association, International (the "ALPA"), and the American Federation of

Labor and Congress of Industrial Organizations (the "AFL-CIO") for alleged violations of the

Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621-34 (2000), and alleged

"breach of [the] duty of fair representation and breach of contract" by the ALPA and the AFL-

CIO under the Railway Labor Act, 45 U.S.C. §§ 151-88 (2000), based on the "forced

termination[]" of the plaintiff's employment as a pilot by US Airways in 2007,  Plaintiff's First

Amended Complaint (the "Am. Compl.") ¶ 1,[1] in accordance with a federal regulation

promulgated by the Federal Aviation Administration that "bar[red] individuals who ha[d]

---

[1] The plaintiff styled his amended complaint as "a collective action" brought "on behalf of himself and other similarly situated individuals throughout the United States." Am. Compl. ¶ 1. However, the Court denied the plaintiff's motion for class certification without prejudice in an order entered on August 10, 2007. Thus, the only plaintiff in this proceeding at this time is Carswell.

reached their 60th birthday from serving as pilots or co[-]pilots in flight operations covered by [the regulation]," id. ¶ 9 (citing 14 C.F.R. § 121.383(c) (the "Age 60 Rule")).  On March 4, 2008, the Court issued a memorandum opinion in which it concluded that the plaintiff's amended complaint should be dismissed in its entirety, see generally Carswell v. Air Line Pilots Ass'n, Int'l, Civil Action No. 07-651 (RBW), 2008 WL 564945 (D.D.C. March 4, 2008), and entered an order effectuating that decision the same day.  Currently before the Court are the Defendant American Federation of Labor and Congress of Industrial Organizations' Motion for Sanctions Pursuant to [Federal Rule of Civil Procedure] 11, in which the AFL-CIO requests sanctions based on the allegations set forth in the plaintiff's original complaint, and the Defendant American Federation of Labor and Congress of Industrial Organizations' Second Motion for Sanctions Pursuant to [Federal Rule of Civil Procedure] 11 (the "Def.'s Second Mot."), in which the AFL-CIO seeks additional sanctions based on the allegations made by the plaintiff in his amended complaint.  After carefully considering the plaintiff's original and amended complaints, the AFL-CIO's motions, and all memoranda and exhibits relevant thereto,[2] the Court concludes

---

[2]  In addition to the plaintiff's original complaint (the "Compl."), his amended complaint and the AFL-CIO's sanctions motions, the Court considered the following documents in reaching its decision: (1) the Memorandum in Support of Defendant American Federation of Labor and Congress of Industrial Organizations' Motion for Sanctions Pursuant to [Federal Rule of Civil Procedure] 11 (the "Def.'s Mem."), (2) the Supplemental Memorandum in Support of Defendant American Federation of Labor and Congress of Industrial Organizations' Motion for Sanctions Pursuant to [Federal Rule of Civil Procedure] 11 (the "Def.'s Suppl. Mem."), (3) the Plaintiff's Memorandum in Opposition to the Motions for Sanctions Filed by the American Federation of Labor and Congress of Industrial Organizations (the "Pl.'s Opp'n"), and (12) the Defendant American Federation of Labor and Congress of Industrial Organizations' Reply Memorandum in Support of Its Motion for Sanctions Pursuant to [Federal Rule of Civil Procedure] 11.

for the reasons that follow that it must grant the AFL-CIO's motions for sanctions, albeit in a minimal amount.[3]

Under Rule 11, an attorney or party signing any "pleading, motion, or other paper" filed with the court certifies that the filing "is not being presented for any improper purpose, . . . [that] the claims, defenses, and other legal contentions therein are warranted[,] . . . [and that] the factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). The rule is "aimed at curbing abuses of the judicial system," Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 397 (1990), and to that end "sets up a means by which litigants certify to the court, by signature, that any papers filed are well founded." Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 542 (1991). Accordingly, false certifications may result in the imposition of sanctions. Id. at 11(c)(1).

"Rule 11 sanctions are harsh punishment intended for those who frustrate judicial proceedings." Cauderlier & Assocs., Inc. v. Zambrana, 463 F. Supp. 2d 63, 64 (D.D.C. 2006). But while the rule "must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, . . . any interpretation must give effect to the [r]ule's central goal of deterrence." Cooter & Gell, 496 U.S. at 393. "Hence, when the Rule 11 proceeding is commenced by motion filed by one of the parties, the courts have, without exception, held counsel to an objective standard of reasonableness." Lucas v. Spellings, 408 F. Supp. 2d 8, 10

---

[3] For purposes of brevity, the Court will refrain from recapitulating the factual and procedural background of this case. A full accounting of these details is set forth in the Court's memorandum opinion regarding the various motions to dismiss filed by the defendants in this case. See Carswell, slip op. at 3-9, 2008 WL 564945, at ** 1-3 (setting forth the factual and procedural background of this case).

3

(D.D.C. 2006); <u>see also</u> <u>Bus. Guides</u>, 498 U.S. at 554 ("Rule 11 imposes an objective standard of reasonable inquiry on represented parties who sign papers or pleadings.").

"[O]nce the district court finds that a pleading is not well grounded on fact, not warranted by existing law or a good faith argument for the extension, modification[,] or reversal of existing law, or is interposed for any improper purpose, Rule 11 <u>requires</u> that sanctions of some sort be imposed." <u>Rafferty v. NYNEX Corp.</u>, 60 F.3d 844, 852 (D.C. Cir. 1995) (internal quotation and citation omitted). "However, Rule 11 expressly states that monetary sanctions may not be awarded against a represented party for a violation of subsection (b)(2), regarding frivolous legal claims." <u>Reynolds v. U.S. Capitol Police Bd.</u>, 357 F. Supp. 2d 19, 24 (D.D.C. 2004) (citing Fed. R. Civ. P. 11(c)(2)(A)). The rule "also requires that a motion for sanctions be filed separately from other motions or requests and describe the specific conduct that is allegedly deserving of sanctions." <u>Naegele v. Albers</u>, 355 F. Supp. 2d 129, 143 (D.D.C. 2005).

With respect to the first of its two motions, the AFL-CIO argues that sanctions are appropriate under Rule 11 because the plaintiff "repeatedly lumps the AFL-CIO together with [the] ALPA" in his complaint even though "the AFL-CIO is not . . . a party to any collective bargaining agreement involving pilots at US Airways" and is not "a bargaining agent for [the plaintiff] or for any other group of pilots potentially included in [the plaintiff's] class action allegations." Def.'s Mem. at 3. According to the AFL-CIO, "[a]ny minimal investigation into the relationship between the AFL-CIO, [the] ALPA, and [the plaintiff] prior to filing suit would have demonstrated that the factual allegations and the legal theories of the [c]omplaint were meritless," <u>id.</u> at 10, yet the plaintiff "refused to amend his pleadings to comport with the requirements of Rule 11(b)" despite being "clearly informed by the AFL-CIO of the factual and

4

legal deficiencies in [his c]omplaint," id. at 12.  The AFL-CIO repeats these arguments in its

second sanctions motion, only this time with respect to the plaintiff's amended complaint.  Def.'s

Second Mot. at 1, ¶¶ 1-4.[4]

The plaintiff counters that his "claims and allegations against the AFL-CIO are well-

based," Pl.'s Opp'n at 2, because "[t]here can be no dispute that the [AFL-CIO] and [the] ALPA

have routinely . . . proclaimed and demonstrated their interaction and solidarity on public issues,"

and have "continually held themselves out as working together on behalf of pilots," id. at 4.  As

support for his position, he points to documents attached to his own affidavit submitted in

opposition to the motions for sanctions as evidence that (1) the ALPA maintains a link to the

AFL-CIO's website on its own internet site, (2) presidents of the ALPA also serve as vice-

presidents of the AFL-CIO's Transportation Trades Department (the "TTD"), are members of the

AFL-CIO Executive Counsel, and are vice-presidents of the AFL-CIO, in which capacity at least

one former ALPA president "organized street rallies with the AFL-CIO that took place in

December [of] 2005," and (3) the TTD and the ALPA have jointly filed documents with public

agencies in the past.  Id. at 3-4.  In light of this evidence, the plaintiff argues that "sanctions are

not appropriate . . . and that, instead, he should be given a reasonable opportunity to discover the

real relationship between the [AFL-CIO] and [the] ALPA."  Id. at 5.

As the Court explained at length in its memorandum opinion regarding the AFL-CIO's

motion to dismiss, the notion–implicit in the plaintiff's opposition to the AFL-CIO's motions for

---

[4] As the AFL-CIO correctly notes, the plaintiff's counsel, while not a signatory to the plaintiff's original
complaint, essentially "affirmed to the [C]ourt that the [plaintiff's] case had arguable merit" when she entered her
notice of appearance on May 11, 2007.  Turner v. Sungard Bus. Sys., Inc., 91 F.3d 1418, 1421 (11th Cir. 1996).
The plaintiff's attorney is therefore equally responsible for any unfounded factual assertions made in the plaintiff's
original complaint.

sanctions, and explicitly stated in his opposition to the AFL-CIO's motion to dismiss–that the

AFL-CIO can be held vicariously liable for the actions of the ALPA as the ALPA's principal is

not supported by the plaintiff's purported evidence because that evidence does not suggest that

the AFL-CIO controlled the actions of the ALPA.  Carswell, slip op. at 22-27, 2008 WL 564945,

at **12-15.  Thus, there is no question that the "legal contentions" set forth in the plaintiff's

oppositions to the various motions filed by the AFL-CIO are unsound.  But the fact that the

plaintiff was wrong to believe that the ALPA acted as an agent of the AFL-CIO in entering into

its collective bargaining agreement with US Airways does not mean that the argument itself is

unreasonable, and the Court is not inclined to sanction the plaintiff for pursuing it.

        Less defensible, however, is the fact that the plaintiff did not allege the "facts" adduced in

his oppositions to the AFL-CIO's motions for dismissal and for sanctions in his original

complaint; indeed, he did not allege a principal-agent relationship between the AFL-CIO and the

ALPA at all.  Instead, the plaintiff alleged that "[a]lthough [the] ALPA and the AFL-CIO were

paid by pilot union members to represent pilot interests, they colluded with US Airways to

discriminate against US Airways pilots," and that "[t]he two unions contracted with US Airways

to remove US Airways['] pilots from their corporate employment following the first day of the

following month of their 60th birthday."  Compl. ¶ 6.  He further alleged that "[the] ALPA and

the AFL-CIO . . . support[ed] the Age 60 Rule and . . . breach[ed] their duty of representation to

their union members [by] lobby[ing] against the pilots they [we]re supposed to be representing."

Id. ¶ 27.

        These allegations are "not well grounded on fact."  Rafferty, 60 F.3d at 852.  The plaintiff

has not produced so much as a scintilla of evidence indicating that the AFL-CIO has ever taken

any position with respect to the Age 60 Rule, let alone "colluded" with the ALPA and US

Airways to support that rule.  Moreover, the plaintiff's allegation that the AFL-CIO "contracted"

with US Airways is plainly inaccurate: the agreement itself bears only the signatures of the

ALPA and US Airways.  See Memorandum of Law in Support of Defendant American

Federation of Labor and Congress of Industrial Organizations' Motion to Dismiss Plaintiff's

Amended Complaint, Ex. 1 (Excerpts from ALPA-US Airways Collective Bargaining Agreement

and ALPA-US Airways Letter of Agreement) at 4; see also id. at 8 (bearing the signature of

representatives from the same two entities for subsequent letter of agreement entered into by the

ALPA and US Airways in 2004).

 The plaintiff's amended complaint suffers from these same defects.  As with his original

complaint, the plaintiff alleges that "[t]he AFL-CIO and [the] ALPA breached their 'duty of fair

representation' and breached the collective bargaining agreement they had with [the p]laintiff,"

Am. Compl. ¶ 4 (emphasis added), that "[t]he two union defendants contracted with . . . US

Airways to remove US Airways['] pilots from their corporate employment," id. ¶ 5 (emphasis

added),[5] and that "[the] ALPA and the AFL-CIO continue[d] to aggressively lobby against

permitting [United States] pilots to fly commercial aircraft in [United States] airspace past the

age of 60," id. ¶ 36 (emphasis added).  The implication of these allegations is not that the AFL-

CIO directed the ALPA to enter into its collective bargaining agreement with US Airways or

lobby in favor of the Age 60 Rule, but rather that the AFL-CIO itself engaged in these acts.  That

---

[5] Elsewhere, the plaintiff alleges that the collective bargaining agreement between US Airways and the ALPA was "supported" by the AFL-CIO, Am. Compl. ¶¶ 96, 110, but these apparent attempts to acknowledge the fact that the AFL-CIO was not a signatory to the collective bargaining agreement do not cure the other allegations in the plaintiff's amended complaint that describe the AFL-CIO has having been a party to that contract.

the plaintiff has now abandoned these allegations in favor of a principal-agent theory of liability for the AFL-CIO only further underscores the lack of any evidentiary support for the allegations themselves.

Had the plaintiff alleged facts sufficient or nearly sufficient to establish a principal-agent relationship between the AFL-CIO and the ALPA in the first instance, or even amended his complaint to that effect after receiving the AFL-CIO's letter entreating him to dismiss the AFL-CIO as a party to this case, the need for sanctions might not be apparent. But where, as here, a plaintiff makes sensational allegations with respect to a defendant without any factual basis whatsoever, and then tries to rescue his claims against that defendant from dismissal by introducing an entirely different theory of liability in his legal memoranda, the failure of the plaintiff and his counsel "to make sure the original complaint was well grounded in fact is clearly a violation of Rule 11." Barlow v. McLeod, 666 F. Supp. 222, 229 (D.D.C. 1986). Under such circumstances, sanctions must be imposed to discourage misconduct of this sort in the future.

This Court exercises "virtually untrammeled" discretion in fixing the amount of sanctions to be imposed on the plaintiff and his counsel for their Rule 11 violations, provided that "sanctions are appropriate to the facts of the case." Hilton Hotels Corp. v. Banov, 899 F.2d 40, 46 (D.C. Cir. 1990) (internal quotation and citation omitted). In this case, the plaintiff's misconduct was relatively minor given that he could have alleged from the outset a principal-agent relationship between the AFL-CIO and the ALPA in good faith in his pleadings instead of waiting to raise the argument in his memoranda of law in opposition to the AFL-CIO's motions. The Court will therefore direct the plaintiff and his counsel to pay $250 each to the Court's registry as a sanction for the plaintiff's unsupported factual allegations, and will refer this matter

8

to the Court's Committee on Grievances for further proceedings consistent with the Court's

memorandum opinion.

  **SO ORDERED** this 5th day of March, 2008.[6]


             REGGIE B. WALTON
             United States District Judge

---

[6] An order follows granting the AFL-CIO's motions for sanctions, imposing sanctions in the amount of $250 for both the plaintiff and his counsel to be paid within thirty days of the entry of the order, and closing this case follows.